**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HANSEN BEVERAGE COMPANY, d/b/a
MONSTER BEVERAGE COMPANY,          Case No. 6:11-CV-___329___-ORL-___22DAB___

        Plaintiff,

vs.

CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC., JOE COOL,
INC., JOE COOL BIKE WEEK INC.,
DAVID BAKSHT, MICHELLE AMAR,
AND YOSEF AMAR,

        Defendants.

_____ /

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF,**
**AND DEMAND FOR JURY TRIAL**

**JURISDICTION AND VENUE**

1.      This is an action for: (a) trademark infringement and counterfeiting arising

under 15 U.S.C. § 1114, (b) federal dilution arising under 15 U.S.C. § 1125(c), (c) false

designation of origin arising under 15 U.S.C. § 1125(a), (d) copyright infringement arising

under 17 U.S.C. § 501 *et seq.*, (e) false attribution under 17 U.S.C. § 106(a), (f) cancellation

of Florida trademarks under **§** 495.101, Fla. Stat. (2010), (g) unfair competition arising under

§ 501.201, *et seq.*, Fla. Stat. (2010) (h) unfair competition arising under the common law of

the State of Florida, (i) statutory dilution arising under § 495.151, Fla. Stat., and (j)

cancellation of a New Jersey trademark under N.J. Stat. Ann. § 56:3-13.8.

2.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims for violations of the United States Trademark Act, Title 15 of the United States Code; and violations of the United States Copyright Act, Title 17 of the United States Code, arise under federal law.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case and controversy.  In addition, jurisdiction over all claims is proper under 28 U.S.C. § 1332 because there is a complete diversity of citizenship between the Plaintiff and the Defendants.

3.     Defendants are subject to the personal jurisdiction of this Court pursuant to § 48.193(1)(a), Fla. Stat. (2010), because Defendants have conducted, engaged in and carried out a business venture within the State of Florida; pursuant to § 48.193(1)(b), Fla. Stat. (2010), because Defendants have committed tortious acts within the State of Florida; and pursuant to § 48.193(2), Fla. Stat. (2010) because Defendants are engaged in substantial and not isolated business activities within the State of Florida.

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c).

**THE PARTIES**

5.     Plaintiff Hansen Beverage Company d/b/a Monster Beverage Company ("MBC") is a Delaware corporation having its principal place of business at 550 Monica Circle, Suite 201, Corona, California 92880.  Hansen Beverage Company does business as Monster Beverage Company.

6.     MBC is informed and believes, and on that basis alleges, that Defendant Consolidated Distributors, Inc. ("CDI") is a New York corporation with its principal place of business located at 719 Eastern Parkway, Brooklyn, New York 11213.  CDI is subject to the general and specific jurisdiction of this Court by virtue of its continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, false designation of origin, unfair competition, copyright infringement, false attribution, and dilution in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Plaintiff's claims.

7.     MBC is informed and believes, and on that basis alleges, that Defendant Mettemp, Inc. ("Mettemp") is a New York corporation with its principle place of business at 719 Eastern Parkway, Brooklyn, New York 11213.  Mettemp is subject to the general and specific jurisdiction of this Court by virtue of its continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, false designation of origin, unfair competition, copyright infringement, false attribution, and dilution in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Plaintiff's claims.

8.     MBC is informed and believes, and on that basis alleges, that Defendant Joe Cool, Inc. ("Joe Cool") is a Florida corporation with its principle place of business at 1052 N. Beach Street, Holly Hill, Florida 32117.  Joe Cool is subject to the general and specific jurisdiction of this Court by virtue of its continuous, systematic, and substantial presence

within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, false designation of origin, unfair competition, copyright infringement, false attribution, and dilution in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Plaintiff's claims.

9.      MBC is informed and believes, and on that basis alleges, that Defendant Joe Cool Bike Week Inc. is a Florida corporation with its principle place of business at 1052 N. Beach Street, Holly Hill, Florida 32117.  Joe Cool Bike Week Inc. is subject to the general and specific jurisdiction of this Court by virtue of its continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, false designation of origin, unfair competition, and dilution in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Plaintiff's claims.

10.      MBC is informed and believes, and on that basis alleges, that Defendant David Baksht resides at 12650 SW 6th St., Apt. K405, Pembroke Pines, FL 33027.  Baksht is subject to the general and specific jurisdiction of this Court by virtue of his continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, false designation of origin, unfair competition, and dilution in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Plaintiff's claims.

11.     MBC is informed and believes, and on that basis alleges, that Defendant Michelle Amar resides at 719 Eastern Parkway, Suite 3, Brooklyn, New York, 11213.  Amar is subject to the general and specific jurisdiction of this Court by virtue of his continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, false designation of origin, unfair competition, and dilution in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Plaintiff's claims.

12.     MBC is informed and believes, and on that basis alleges, that Defendant Yosef Amar resides at 719 Eastern Parkway, Suite 3, Brooklyn, New York, 11213.  Yosef Amar is subject to the general and specific jurisdiction of this Court by virtue of his continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, false designation of origin, unfair competition, and dilution in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Plaintiff's claim.

## COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

**A.**     **MBC's Trademarks**

13.     MBC is a nation-wide leader in the business of designing and selling beverages, including energy drinks.

14.    In 2002, prior to Defendants' acts described herein, MBC launched its MONSTER ENERGY® drink brand, bearing its now famous Ⓜ trademark ("M Claw Trademark") in a green color on a black background as shown below.



15.    MBC's successful line of MONSTER™ drinks has now grown to include numerous other well-known products, including, but not limited to Lo-Carb MONSTER, MONSTER Khaos, MONSTER Assault, MONSTER M-80, MONSTER Mixxd, Java MONSTER, MONSTER Hitman, Nitrous MONSTER, and the X-PRESSO MONSTER products.

16.    Since MBC's launch of the original MONSTER ENERGY® drink in 2002, and prior to Defendants' acts described herein, MBC has continuously used marks that incorporate its famous Ⓜ ("M Claw Trademark"), individually or in combination with other terms, (collectively the "M Claw and MONSTER Marks").

17.    Since 2002, MBC also has used, and continues to use, its M Claw Trademark in connection with clothing including t-shirts, hooded shirts, hooded sweatshirts, sweat shirts,

6

jackets, pants, bandanas, sweat bands, gloves, and headgear.  True and correct examples of apparel bearing MBC's M Claw Trademark marketed by MBC and its licensees are shown below.



18.     MBC is the owner of numerous trademark registrations for marks that incorporate its famous M Claw Trademark, such as U.S. Trademark Registrations Nos. 2,903,214; 3,434,821; 3,434,822; 3,057,061; 3,044,315; 3,044,314; 3,134,841 (— beverages); 3,134,842; 3,908,601; and 3,908,600.  Attached hereto as Exhibits "A" through "J" are true and correct copies of MBC's trademark registrations, which are incorporated herein by reference.

19.     Pursuant to 15 U.S.C. § 1065, Registration No. 2,903,214 for the M Claw Trademark is now incontestable.

20.     In addition, MBC is the owner of a valid copyright registration for its can art design featuring its M Claw Trademark, including at least Registration No. VA 1-727-577. Attached as Exhibit "K" is a true and correct copy of MBC's copyright registration, which is incorporated herein by reference.

21.     The containers of MBC's MONSTER ENERGY® drinks are prominently marked with MBC's M Claw Trademark.  Since 2002, MBC has spent hundreds of millions of dollars in promoting, advertising, and marketing its MONSTER ENERGY® drinks and M Claw Trademark.  MBC's promotional efforts include – by way of example but not limitation – substantial print media, internet advertising, point of sale materials, sponsorship of athletes, sponsorship of live and televised events, contests, and attendance at trade shows.  MBC's M Claw Trademark is prominently featured in MBC's advertisements and promotions for its MONSTER™ line of energy drinks.

22.     Shown below are true and accurate representative pictures illustrating just a few of MBC's MONSTER™ family of products bearing its famous M Claw Trademark:



23.     As seen in these pictures, each of MBC's MONSTER™ products are sold using the prominently displayed ℳ ® trademark.  Since the initial launch of its original MONSTER ENERGY® drink in 2002, MBC has continuously used its M Claw Trademark in connection with its MONSTER™ family of products and in extensive and widespread promotional, advertising and marketing activities relating to those products.

24.     MBC's MONSTER brand energy drinks have been tremendously successful, with retail sales in 2009 alone totaling over two billion dollars ($2,000,000,000.00 U.S.).

25.     MBC also sponsors over 200 extreme sports athletes and athletic events in connection with its MONSTER ENERGY® drinks, bearing the M Claw Trademark.  Many of these athletes promote the MONSTER ENERGY® drinks, bearing the M Claw Trademark on their clothing, uniform, and gear as shown, for example, below.






26.     As a result of MBC's substantial use and promotion of its M Claw Trademark in connection with its MONSTER™ line of products, its M Claw Trademark has acquired great value as a specific identifier of MBC's products and serves to identify and distinguish MBC's MONSTER™ line of products from those of others.  Customers in this Judicial District and elsewhere readily recognize MBC's M Claw Trademark as a distinctive designation of the origin of MBC's MONSTER™ and MONSTER ENERGY® brand drinks, products, and promotional items.  The M Claw Trademark is an intellectual property asset of enormous value as a symbol of MBC and its quality products, reputation and goodwill.

**B.     Defendants' Infringement of the Ⅲ ® Mark**

27.     On information and belief, Defendants are engaged in the business of producing, distributing and selling clothing, including but not limited to t-shirts, shirts, caps, and visors.   Defendants operate under several trade names including Consolidated Distributors, Inc., Mettemp, Inc., Joe Cool, Inc., and Joe Cool Bike Week, Inc.

28.     At no time has MBC ever given any of the Defendants license, permission or authority to use and display MBC's M Claw Trademark on any of Defendants' products.

29.     Without permission or consent from MBC, Defendants are offering and selling clothing and related products unlawfully bearing the Ⅲ ® mark "(Counterfeit Products"), some of which are shown below:



30.     Defendants' Counterfeit Products prominently display a slavish replica of MBC's M Claw Trademark in green on a black background, as used on MBC's original MONSTER ENERGY® drink can and various clothing items.

31.     With full knowledge of MBC's trademark rights, Defendant Consolidated Distributors fraudulently filed Application Serial No. 85/080,820 GREEN DIAG LINES with the United States Patent and Trademark Office ("Trademark Office") for an M claw design that is identical, or confusingly similar to, MBC's M Claw Trademark.  The applied-for mark is shown below:



12

32.     Defendants' application to the Trademark Office included a declaration falsely and fraudulently signed by "Amar" stating that "he[] believes the applicant to be the owner of the trademark/service mark sought to be registered" and that "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely … to cause confusion." Defendants made this statement with full knowledge of its falsity as Defendants were aware of the fame of MBC's M Claw Trademark at the time they made the statement.  Defendants intended the Trademark Office to rely on this declaration, and the Trademark Office did, in fact, rely on this declaration in considering the application for registration.

33.     With full knowledge of MBC's trademark rights, Defendant Consolidated Distributors fraudulently filed Trademark no. TM10000000884 DAYTONA BEACH AND LOGO DESIGN OF 3 DROPPING GREEN LINES with the Florida Department of State Division of Corporations for an M claw design that is identical, or confusingly similar to, MBC's M Claw Trademark.  A true and correct copy of this applied-for mark is shown below:



34.     Defendants' application to the Florida Department of State Division of Corporations included a declaration falsely and fraudulently signed by "Yosef Amar" stating that "I, being sworn, depose and say that I am the owner and the applicant herein, or that I am authorized to sign on behalf of the owner and applicant herein, and to the best of my knowledge no other person except a related company has registered this mark in this state or has the right to use such mark in Florida either in the identical form thereof or in such near resemblance as to be likely, when applied to the goods or services of such other person to cause confusion, to cause mistake or to deceive."  Defendants made this statement with full knowledge of its falsity as Defendants were aware of the fame of MBC's M Claw Trademark at the time they made the statement.  Defendants intended the Florida Department of State Division of Corporations to rely on this declaration, and the Florida Department of State Division of Corporations did, in fact, rely on this declaration in considering the application for registration.

35.     With full knowledge of MBC's trademark rights, Defendant Consolidated Distributors fraudulently filed Trademark No. TM10000001063 DESIGN OF 3 DROOPING GREEN LINES ON ANGLE with the Florida Department of State Division of Corporations for an M claw design that is identical, or confusingly similar to, MBC's M Claw Trademark.  A true and correct copy of this applied-for mark is shown below:



36.     Defendants' application to the Florida Department of State Division of Corporations included a declaration falsely and fraudulently signed by "Yosef Amar" stating that "I, being sworn, depose and say that I am the owner and the applicant herein, or that I am authorized to sign on behalf of the owner and applicant herein, and to the best of my knowledge no other person except a related company has registered this mark in this state or has the right to use such mark in Florida either in the identical form thereof or in such near resemblance as to be likely, when applied to the goods or services of such other person to cause confusion, to cause mistake or to deceive."  Defendants made this statement with full knowledge of its falsity as Defendants were aware of the fame of MBC's M Claw Trademark at the time they made the statement.  Defendants intended the Florida Department of State Division of Corporations to rely on this declaration, and the Florida Department of State Division of Corporations did, in fact, rely on this declaration in considering the application for registration.

37.     With full knowledge of MBC's trademark rights, Defendant Consolidated Distributors fraudulently filed Trademark No. TM10000001102 3 DROOPING LINES DESIGN, LOGO WITH THE WORD FLORIDA with the Florida Department of State Division of Corporations for an M claw design that is identical, or confusingly similar to, MBC's M Claw Trademark.  A true and correct copy of this applied-for mark is shown below:



15

38.     Defendants' application to the Florida Department of State Division of Corporations included a declaration falsely and fraudulently signed by "Yosef Amar" stating that "I, being sworn, depose and say that I am the owner and the applicant herein, or that I am authorized to sign on behalf of the owner and applicant herein, and to the best of my knowledge no other person except a related company has registered this mark in this state or has the right to use such mark in Florida either in the identical form thereof or in such near resemblance as to be likely, when applied to the goods or services of such other person to cause confusion, to cause mistake or to deceive." Defendants made this statement with full knowledge of its falsity as Defendants were aware of the fame of MBC's M Claw Trademark at the time they made the statement. Defendants intended the Florida Department of State Division of Corporations to rely on this declaration, and the Florida Department of State Division of Corporations did, in fact, rely on this declaration in considering the application for registration.

39.     With full knowledge of MBC's trademark rights, Defendant Consolidated Distributors fraudulently filed Trademark No. TM23557 THE WORD WILDWOOD AND DESIGN OF THREE DROOPING LINES with the New Jersey New Jersey Division of Revenue for an M claw design that is identical, or confusingly similar to, MBC's M Claw Trademark. A true and correct copy of this applied-for mark is shown below:



40.     On information and belief, Defendants' application to the New Jersey Division of Revenue falsely and fraudulently declared: "The applicant attests that he or she is the owner

of the mark, and that the mark is in use in this State, and that, to his or her knowledge, no other person has registered the mark, either with the US Patent and Trade Mark office or with the Treasurer, or has the right to use the mark or a mark in such near resemblance as to be likely, when used in connection with the goods or services of such other person, to cause confusion, or to cause mistake, or to deceive." Defendants made this statement with full knowledge of its falsity as Defendants were aware of the fame of MBC's M Claw Trademark at the time they made the statement. Defendants intended the New Jersey Division of Revenue to rely on this declaration, and the New Jersey Division of Revenue did, in fact, rely on this declaration in considering the application for registration.

41.     MBC is informed and believes, and on that basis alleges, that Defendants are using MBC's M Claw Trademark in an attempt to falsely associate their Counterfeit Products with MBC or to otherwise trade upon MBC's valuable reputation and customer good will in its M Claw Marks and MBC's high quality products sold in connection with those marks.

42.     MBC is informed and believes, and on that basis alleges, that Defendants' use of MBC's M Claw Trademark is designed and intended to cause confusion, mistake or deception as to the source of Defendants' Counterfeit Products.

43.     MBC is informed and believes, and on that basis alleges, that it is Defendants' purpose to cause consumers and potential customers to believe that Defendants' counterfeit clothing products are associated with MBC or MBC's MONSTER family of products when, in truth and fact, they are not.

44.     By virtue of the acts complained of herein, Defendants have created a likelihood of injury to MBC's business reputation and goodwill, caused a likelihood of

consumer confusion, mistake and deception as to the source of origin or relationship of MBC's and Defendants' goods, and has otherwise competed unfairly with MBC by unlawfully trading on and using MBC's M Claw Trademark without MBC's permission or consent.

45.     MBC is informed and believes, and on that basis alleges, that Defendants have directly copied MBC's M Claw Trademark and MBC's copyrighted can art design featuring its M Claw Trademark.

46.     MBC is informed and believes, and on that basis alleges, that Defendants' acts complained of herein are willful and deliberate.

47.     Defendants' acts complained of herein have caused damage to MBC in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from their wrongful actions and infringements.

48.     Defendants' acts complained of herein have caused MBC to suffer irreparable injury to its business.  MBC will suffer substantial loss of goodwill and reputation unless and until Defendants are preliminarily and permanently enjoined from their wrongful actions complained of herein.

## COUNT ONE

### (Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114)

49.     MBC realleges Paragraphs 1-48, as if fully set forth herein.

50.     This is a claim for trademark infringement and counterfeiting arising under 15 U.S.C. § 1114.

51.     MBC owns valid and enforceable registered trademarks for its M Claw Trademark, including at least Registration Nos. 2,903,214; 3,434,821; 3,434,822; 3,044,314 (M MONSTER ENERGY-nutritional supplements); 3,134,841 (涎涎涎-beverages); 3,134,842 (M MONSTER ENERGY-beverages), 3,908,601 (M claw-clothing), and 3,908,600 (M claw-stickers).

52.     Defendants have used in commerce, without permission of MBC, reproductions, counterfeits, copies or colorable imitations of MBC's M Claw Trademark in connection with   the manufacturing, distributing, selling, offering for sale, advertising, and/or promoting of Defendants' clothing products.

53.     Without permission of MBC, Defendants are reproducing, counterfeiting, copying, or colorably imitating MBC's M Claw Trademark and apply such reproductions, counterfeits, copies, or colorable imitations to merchandise, labels, signs, packages, receptacles or advertisement intended to be used in commerce upon or in connection with the manufacturing, distributing, selling, offering for sale, advertising, and/or promoting of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

54.     MBC is informed and believes, and on that basis alleges, that the activities of Defendants complained of herein constitutes willful and intentional use of counterfeits and infringements of MBC's M Claw Trademark, and that Defendants did so with the intent to unfairly compete against MBC, to trade upon MBC's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into

believing that Defendants' Counterfeit Products are associated with, sponsored by, originated from, or are approved by MBC, when in truth and fact they are not.

55.    MBC is informed and believes, and on that basis alleges, that Defendants had actual knowledge of MBC's ownership and prior use of MBC's M Claw Trademark, and without the consent of MBC, have willfully violated 15 U.S.C. § 1114.

56.    Upon information and belief, Defendants' infringement has been willful and deliberate.

57.    Defendants' aforementioned acts have injured MBC and damaged MBC in an amount to be determined at trial.   By their actions, Defendants have irreparably injured MBC.   Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

## COUNT TWO

### (Federal Dilution of the ⫿ ® Mark Under 15 U.S.C. § 1125(C))

58.    MBC hereby realleges Paragraphs 1-57, as if fully set forth herein.

59.    This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

60.    MBC's M Claw Trademark is famous, and became so prior to Defendants' acts complained of herein.

61.    Defendants' unauthorized commercial use of MBC's M Claw Trademark in connection with the advertisement, offering for sale and sale of Defendants' Counterfeit

Products has caused and is likely to continue to cause dilution of the distinctive quality of the famous M Claw Trademark.

62.     Defendants' acts are likely to tarnish, injure, or trade upon MBC's business, reputation or goodwill, and to deprive MBC of the ability to control the use of its M Claw Trademark and quality of products associated herewith.

63.     Upon information and belief, Defendants' dilution has been willful and deliberate.

64.     Defendants' acts have injured MBC in an amount to be determined at trial.

65.     Defendants' acts have irreparably injured MBC.  Such irreparable injury will continue until and unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

## COUNT THREE

### (False Designation of Original Under 15 U.S.C. § 1125(A))

66.     MBC hereby realleges Paragraphs 1-65, as if fully set forth herein.

67.     This is a claim for false designation of origin arising under 15 U.S.C. § 1125(a).

68.     Defendants have created a false designation of origin by using in commerce, without MBC's permission, marks identical to MBC's M Claw Trademark in connection with the advertisement, offering for sale, and/or sale of Defendants' Counterfeit Products.

69.     MBC is informed and believes, and on that basis alleges, that Defendants did so with the intent to compete against MBC, to trade upon MBC's reputation and goodwill by

causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' Counterfeit Products are associated with, sponsored by or approved by MBC, when in truth and fact they are not.

70.     MBC is informed and believes, and on that basis alleges, that Defendants had actual knowledge of MBC's ownership and prior use of its M Claw Trademark, and without the consent of MBC, have willfully violated 15 U.S.C. § 1125(a).

71.     Upon information and belief, Defendants' false designation of origin has been willful and deliberate.

72.     Defendants' aforementioned acts have injured MBC and damaged MBC in an amount to be determined at trial.

73.     By their actions, Defendants have irreparably injured MBC.  Such irreparable injury will continue until and unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

## COUNT FOUR

### (Copyright Infringement Under 17 U.S.C. § 501)

74.     MBC realleges Paragraphs 1-73, as if fully set forth herein.

75.     This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 501 *et seq*.

76.     MBC is the owner of a valid and enforceable copyright in the fanciful M Claw Trademark as well as can art including the M Claw Trademark used in connection with its

energy drink products ("Copyrighted Work").  The can art and M Claw Trademark design contain copyrightable subject matter under 17 U.S.C. §§ 101 *et seq.*

77.     MBC has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Work, and has obtained Copyright Registration No. VA 1-727-577 for MBC's can art prominently featuring its M Claw Trademark design.

78.     Defendants' deliberate copying of MBC's Copyrighted Work infringes and continues to infringe MBC's copyright in violation of 17 U.S.C. § 501(a).  Defendants are directly infringing on MBC's exclusive right to reproduce copies, make derivative works and distribute copies of its Copyrighted Work under 17 U.S.C. §§ 106(1)–(3).

79.     Upon information and belief, Defendants' infringement has been willful and deliberate.

80.     Defendants' acts have injured MBC in an amount to be determined at trial.

81.     MBC is being irreparably damaged by Defendants' infringement of MBC's copyright, and has no adequate remedy at law to address the harm Defendants are causing.

## COUNT FIVE

### (False Attribution Under 17 U.S.C. § 106(A))

82.     MBC hereby realleges Paragraphs 1-81, as if fully set forth herein.

83.     This is a claim for false attribution under 17 U.S.C. § 106(a).

84.     By virtue of the acts complained of herein, Defendants have intentionally distorted, mutilated, and otherwise modified MBC's copyrighted can art design featuring its M Claw Trademark in a way which is prejudicial to MBC's honor, reputation, and good will.

85.     Defendants' unauthorized use, modification, distortion, and mutilation of MBC's copyrighted can art design featuring its M Claw Trademark in connection with the advertisement, offering for sale and/or sale of Defendants' products has caused, and is likely to continue causing, customers to falsely attribute Defendants' goods to MBC.

86.     Defendants' acts are likely to tarnish, injure, or trade upon MBC's business, reputation or goodwill, and to deprive MBC of the ability to control the use of its copyrighted can art design featuring its M Claw Trademark and products associated therewith.

87.     Upon information and belief, Defendants' false attribution has been willful and deliberate.

88.     Defendants' acts have irreparably injured MBC.  Such irreparable injury will continue until and unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

## COUNT SIX

### (Cancellation of Florida Trademarks under § 495.101, FLA. STAT. (2010))

89.     MBC realleges Paragraphs 1-88, as if fully set forth herein.

90.     This is a claim for cancellation of Florida Trademark Nos. T10000000884, T10000001063, and T10000001102 under §§ 495.101 and 501.101, Fla. Stat.

91.     Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") permits the cancellation of any Florida trademark which was "granted improperly," "obtained fraudulently," and/or where "the registered mark is so similar, as to be likely to cause confusion or mistake or to deceive, to a mark registered by another person in the United

States Patent and Trademark Office, prior to the date of the filing of the application for registration by the registration hereunder. . ." Defendants' aforementioned acts resulted in an improper and fraudulently obtained Florida trademark, which so similarly represents MBC's M Claw Trademark that it is likely to cause confusion, mistake, and to deceive consumers as to the source of the mark.

92.    Upon information and belief, Defendants' violations of §§ 495.101 and 501.101, Fla. Stat.has been willful and deliberate.

93.    Defendants' acts have injured MBC in an amount to be proven at trial.

94.    By their actions, Defendants have irreparably injured MBC.  Such irreparable injury will continue until and unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

**COUNT SEVEN**

**(Florida Statutory Unfair Competition)**

95.    MBC realleges Paragraphs 1-94, as if fully set forth herein.

96.    This is a claim for unfair competition arising under § 501.201, *et seq*., Fla. Stat. (2010).

97.    FDUTPA makes it unlawful for "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Defendants' aforementioned acts constitute unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged MBC.

98.     By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the consumers and public and have unfairly competed in violation of Florida Statute § 501.201 *et seq*.

99.     Upon information and belief, Defendants' violations of § 501.201, *et seq*., Fla. Stat. (2010) has been willful and deliberate.

100.    Defendants' acts have injured MBC in an amount to be proven at trial.

101.    By their actions, Defendants have irreparably injured MBC.  Such irreparable injury will continue until and unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

## COUNT EIGHT

### (Florida Common Law Unfair Competition)

102.    MBC hereby realleges Paragraphs 1-101, as if fully set forth herein.

103.    This is a claim for common law unfair competition arising under Florida common law.

104.    By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the public and have unfairly competed in violation of Florida common law.

105.    Upon information and belief, Defendants' violations of Florida unfair competition common law has been willful and deliberate.

106.    Defendants' acts have injured MBC in an amount to be proven at trial.

107.    By their actions, Defendants have irreparably injured MBC.  Such irreparable injury will continue until and unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

## COUNT NINE

### (STATUTORY DILUTION UNDER § 495.151, FLA. STAT. (2010))

108.    MBC hereby realleges Paragraphs 1-107, as if fully set forth herein.

109.    This is a claim for dilution arising under §  495.151, Fla. Stat. (2010).

110.    MBC's M Claw Trademark is famous, and became so prior to Defendants' acts complained of herein.

111.    Defendants' unauthorized commercial use of the M Claw Trademark in connection with the advertisement, offering for sale and/or sale of Defendants' products has caused and is likely to continue to cause dilution of the distinctive quality of the famous M Claw Trademark.

112.    Defendants' acts are likely to tarnish, injure, or trade upon MBC's business, reputation or goodwill, and to deprive MBC of the ability to control the use of its M Claw Trademark and products associated therewith.

113.    Upon information and belief, Defendants' violations of §  495.151, Fla. Stat. (2010) has been willful and deliberate.

114.    Defendants' acts have irreparably injured MBC.  Such irreparable injury will continue until and unless Defendants are preliminarily and permanently enjoined by this

Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

## COUNT TEN

### (Cancellation of New Jersey Trademark under N.J. Stat. Ann. § 56:3-13.8)

115.    MBC realleges Paragraphs 1-114 as if fully set forth herein.

116.    This is a claim for cancellation of New Jersey Trademark No. TM23557 under N.J. Stat. Ann. § 56:3-13.8.

117.    N.J. Stat. Ann. § 56:3-13.8 permits the cancellation of any New Jersey trademark which was "obtained fraudulently" and/or where "the registered mark is so similar, as to be likely to cause confusion or mistake or to deceive, to a mark registered by another person in the United States Patent and Trademark Office, prior to the date of the filing of the application for registration under this act. . .".  Defendants' aforementioned acts resulted in an improper and fraudulently obtained New Jersey trademark, which so similarly represents MBC's M Claw Trademark that it is likely to cause confusion, mistake, and to deceive consumers as to the source of the mark.

118.    Upon information and belief, Defendants' fraudulent trademark application has been willful and deliberate.

119.    Defendants' acts have injured MBC in an amount to be proven at trial.  By their actions, Defendants have irreparably injured MBC.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of MBC's rights, for which MBC has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues raised by the pleadings which are triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff MBC respectfully requests the Court to award MBC the following relief:

1.      That the Court render a final judgment in favor of MBC and against Defendants on all claims for relief alleged herein;

2.      That the Court render a final judgment declaring Defendants have violated and willfully violated the provisions of 15 U.S.C. § 1114 by infringing and counterfeiting MBC's trademark rights in its federally registered M Claw Trademark;

3.      That the Court render a final judgment declaring that Defendants have violated and willfully violated the provisions of 15 U.S.C. § 1125(c) by diluting MBC's famous M Claw Trademark;

4.      That the Court render a final judgment declaring that Defendants have violated and willfully violated the provisions of 15 U.S.C. § 1125(a) by infringing MBC's M Claw Trademark through the marketing, sale and promotion of Defendants' Counterfeit Products;

5.      That the Court render a final judgment declaring that Defendants violated 17 U.S.C. § 501(a) by infringing MBC's Copyrighted Work;

6.      That Defendants be adjudged to have unfairly competed with MBC under § 501.201, *et seq*., Fla. Stat.;

7.      That Defendants be adjudged to have unfairly competed with MBC under Florida common law;

8.      That Defendants be adjudged to have violated and willfully violated the provisions of § 495.151, Fla. Stat. by diluting MBC's famous M Claw Trademark;

9.      That the court render a final judgment declaring that Defendants violated 17 U.S.C. § 106(a) by falsely attributing MBC's Copyrighted Work as Defendants' design;

10.     That Defendants, its principals, agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith temporarily, preliminarily, and permanently enjoined from:

a.      using MBC's M Claw Trademark in connection with Defendants' goods, using the M Claw Trademark in advertising, promoting, selling or offering to sell Defendants' goods, and/or using confusingly similar variations of the M Claw Trademark in any manner that is likely to create the impression that Defendants' goods originate from MBC, are endorsed by MBC, or are connected in any way with MBC;

b.      copying, reproducing, distributing, displaying, creating derivative works of MBC's M Claw Mark and/or importing, manufacturing, or producing any products bearing copies of MBC's M Claw Trademark, including without limitation any and all products displaying the "3-DROOPING LINES" mark;

c.      otherwise infringing or diluting the M Claw Trademark;

    d.      falsely designating the origin of Defendants' goods;

    e.      unfairly competing with MBC in any manner whatsoever; and

    f.      causing a likelihood of confusion or injury to MBC's business reputation;

11.    That Defendants be directed to file with this Court and serve on MBC within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction pursuant to 15 U.S.C. § 1116 and 17 U.S.C. § 502;

12.    That the court issue an Ex Parte Order under 15 U.S.C. § 1114(1)(a) authorizing and requiring the immediate seizure of all infringing materials in the care, custody or control of any Defendant;

13.    That Defendants, its principals, agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith temporarily, preliminarily, and permanently enjoined from:

    a.    Claiming ownership in any trademarks, trade dress, copyrighted works, or designs confusingly similar to MBC's M Claw Trademark and Copyrighted Can Art Design with M Claw Trademark;

    b.    Filing any trademark applications for any trademarks, trade dress, copyrighted works, or designs confusingly similar to MBC's M Claw Trademark and Copyrighted Can Art Design with M Claw Trademark;

14.     That the Court issue an Order cancelling Florida Trademark Nos. T10000000884, T10000001063, and T10000001102;

15.     That the Court issue an Order cancelling New Jersey Trademark TM23557;

16.     That MBC be awarded damages for Defendants' trademark infringement pursuant to 15 U.S.C. § 1117 in the form of either: (i) Defendants' profits, damages sustained by MBC and the costs of the action; or (ii) statutory damages pursuant to 15 U.S.C. § 1117(c), at MBC's election before the entry of a final judgment, together with prejudgment and post-judgment interest;

17.     That the amount of the damages be increased three times and that the amount of profits be increased as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117, to properly compensate MBC for Defendants' actions;

18.     That Defendants' actions be deemed willful;

19.     That MBC be awarded its damages and Defendants' profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504. Alternatively, if MBC elects, that MBC be awarded statutory damages pursuant to 17 U.S.C. §504;

20.     That an award of reasonable costs, expenses and attorneys' fees be awarded to MBC pursuant to 15 U.S.C. § 1117 and 17 U.S.C. §504;

21.     That Defendants be required to deliver and destroy within thirty (30) days all devices, literature, advertising, packaging, goods and other materials bearing the infringing trademarks, trade dress or copyrighted works pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503; and

22.     That MBC be awarded such other and further relief as this Court may deem just and warranted.

Respectfully submitted this 3rd day of March, 2011.

RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
MICHAEL D. PORTER, ESQ.
Florida Bar No.: 0031149
michael.porter@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida  32801
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

Local Counsel for Plaintiff,
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

– and –

LYNDA J. ZADRA-SYMES, ESQ.
(Pending Pro Hac Vice Admission)
California Bar No.: 156511
lynda.zadra-symes@kmob.com
LAUREN K. KATZENELLENBOGEN, ESQ.
(Pending Pro Hac Vice Admission)
California Bar No.: 223370
lauren.katzenellenbogen@kmob.com
CINDY N. NGUYEN, ESQ.
(Pending Pro Hac Vice Admission)
California Bar No.: 267994
cindy.nguyen@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, California  92614
(949) 760-0404  Telephone
(949) 760-9502  Facsimile

Lead Trial Counsel for Plaintiff,
HANSEN  BEVERAGE  COMPANY  d/b/a
MONSTER BEVERAGE COMPANY

10678331

33