UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HANSEN BEVERAGE COMPANY, d/b/a      Case No.6:11-cv-329-ORL-22DAB
MONSTER BEVERAGE COMPANY,

         Plaintiff,

v.

CONSOLIDATED DISTRIBUTORS, INC.,
METTEMP, INC., JOE COOL, INC., JOE
COOL BIKE WEEK INC., DAVID BAKSHT,
MICHELLE AMAR AND YOSEF AMAR,

         Defendants.

_____

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants, JOE COOL, INC., JOE COOL BIKE WEEK, INC., MICHELLE AMAR and YOSEF AMAR (collectively referred to as "Defendants"), by and through their undersigned counsel request this Honorable Court to enter an Order: (1) Denying Plaintiff's Motion for Preliminary Injunction; (2) returning the seized goods; and (3)allowing Defendant to recoup damages sustained by improper seizure, and in support thereof, state as follows:

### INTRODUCTORY STATEMENT

1.  On March 3, 2011, Plaintiff filed a Motion for Ex Parte Seizure Order and Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction; Supporting Memorandum of Law ("Motion for Preliminary Injunction") (DE 3) and Declarations in support thereof (DE 4, 5, 6, 10, 16, 28-1).

2.  On March 4, 2011, this Court entered a Temporary Restraining Order , Order to Show Cause, and Order of Seizure (DE 7).

3. As part of the March 4, 2011 Order, Defendants were directed to appear and show cause as to: (1) "Why a preliminary injunction should not issue against Defendants enjoining each of them, pending the final hearing and determination of the action, from such activities as described above and as from which Defendants have been temporarily enjoined;" and (2) "Why the seizure order should not be confirmed and why the items so seized should not remain in the custody of Plaintiff's attorney."

4. Defendants submitted their Unopposed Motion for Extension of Time to Respond to Plaintiff's Amended Motion for Preliminary Injunction and Continuance of Hearing (DE 21) on March 16, 2011.

5. On March 16, 2011, this Court entered an Order granting Defendants' Amended Unopposed Motion for Extension of Time to Respond to Plaintiff's Motion for Preliminary Injunction, up to and including March 23, 2011, Continuing the hearing on order to show cause until March 24, 2011, and maintaining the Temporary Restraining Order until completion of such hearing.

## MEMORANDUM OF LAW

**I.     Request for Preliminary Injunction Should be Denied**

   **A.     Preliminary Injunction is An Extraordinary Remedy**

The Supreme Court has said that: "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 1997); *quoting,* 11A C.: Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pgs. 129-30 (2d ed. 1995) (emphasis added; footnotes omitted). As the Seventh Circuit has warned: "[W]e have cautioned trial courts that '[t]he granting of a preliminary injunction is an

exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it,' presumably because it constrains one of the parties' freedom to engage in, as in this case, non-criminal behavior." *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F. 2d 1176, 10 U.S.P.Q. 2d 1001 (7th Cir. 1989); *See Ringling Bros.-Barnum & Bailey Combined Show, Inc. v. B.E. Windows Corp.*, 937 F. Sup.. 204, 40 U.S.P.Q. 2d 1010 (S.D.N.Y. 1996) ("Because of the great potential for harm which may occur from the issuance of a preliminary injunction, the party seeking the injunction must sustain a heavy burden." Preliminary injunction denied,); *Michael Caruso Co. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454, 1458 (S.D. Fla. 1998) ("[A] preliminary injunction 'is an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites.'" Preliminary injunction denied.); *Barbeque Marx, Inc. v. 551 Ogden Inc.*, 235 F. 3d 1041, 57 U.S.P.Q.2d 1307 (7th Cir. 2000) ("A preliminary injunction is a very serious remedy, 'never to be indulged in except in a case clearly demanding it.'" Preliminary injunction was reversed.).

For these reasons, the grant of a preliminary injunction has been characterized as "the exception, not the rule." *Prime Media, Inc. v. Primedia, Inc.*, 33 F. Supp. 2d 932, 935 (D. Kan. 1998) (preliminary injunction denied). A preliminary injunction represents a judicial power that "is best done sparingly." *Altira Group LLC v. Philip Morris Companies Inc.*, 207 F. Supp. 2d 1193, 63 U.S.P.Q.2d 1438 (D. Colo. 2002). ("A preliminary injunction is an extraordinary remedy granting a party a form of relief before it has proven its case on the merits." Preliminary injunction against alleged infringement was denied.).

    **B.**    <u>**Plaintiff Failed to Establish Requirements For Preliminary Injunctive Relief**</u>

Pursuant to *N. Am. Med. Corp. v. Axiom Worldwide, Inc*., 522 F.3d 1211, 1217 (11th. Cir. 2008), a district court may grant a preliminary injunction only if the movant establishes the following:

3

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

Plaintiff has failed to establish the requirements in requesting preliminary injunctive relief against Defendants. Accordingly, Plaintiff's Motion for Preliminary Injunction should be denied.

### (1) **Plaintiff Failed to Establish Likelihood of Success on the Merits**

#### (a) **Improper Comparison done**

Plaintiff has not totally been candid in this matter. The actual registered mark in connection with goods consisting of clothing is Exhibit "J" to the complaint which in full is the letter M cover the words "Monster Energy". Together they constitute the total mark. Also see Exhibit "K" which covers stickers. All other Exhibits to the complaint are marks for beverages or drinks. The comparison provided by Plaintiff for the Court's review is based upon a counterfeit standard; that was also error.

First, 15 USC §1114 only applies to registered mark for the sale or offering for sale of goods with which such use is likely to cause confusion or mistake or deceive.

All of the trademark registration exhibits A to the complaint are for beverages while only Exhibit J is for clothing and Exhibit K is for stickers. However, in both exhibits J and K the complete trademark is the M together with the words "Monster Energy" direct adjacent to the "M". Attached as Exhibit 1 are photos of a T-shirt from no later than 2009 which shows Plaintiff using the mark as registered. Monster is the dominant feature. Further, it appears Plaintiff improperly marked the T-shirt with registration for the M.

4

Second, comparing the full trademark to the three drooping lines of Defendant, we find that they do not meet the criteria of 18 USC §230 (e)(1)(A)(ii) and (iii) which defines a counterfeit mark as one being identical with or substantially indistinguishable from a mark registered on the principal register in the United States Patent and Trademark Office. This comparison is applied to or used in connection with goods or services for which the mark is registered. This is important since even famous marks can, from afar, appear to be similar. See Exhibit 2.

The proper claim for relief, if any, would be under 15 USC § 1125. To prevail under this section, the Plaintiff must demonstrate that (1) he is the prior owner of the mark and (2) the defendant's mark is the same or confusingly similar to the Plaintiff's mark, such that there is a likelihood of confusion for consumers as to the proper origin of the goods. *Conagar Inc. v. Singleton*, 743 F2d 1508, 1512 (11th Cir. 1984); *Harley-Davidson Motor Co. v. Iron Eagle of Central Fla. Inc.*, 973 F. Supp. 1421, 1424 (M.D. Fla. 1997).

However, first the Court must address whether the Plaintiff's mark is distinctive enough to deserve protection. *Ice Cold Auto air of Clearwater Inc. v. Cold Air & Accessories Inc.*, 828 F. Supp. 925 (M.D. Fla. 1993). The M Mark here stands for Monster the very name of the drink it promotes. See Exhibits A to I. Therefore as a letter of the alphabet it must be considered to be generic or at best descriptive. A descriptive mark must acquire secondary meaning to be protectable. In order to establish secondary meaning for a term, Plaintiff "must show that the term in the mind of the public is not the product but the producer". *Kellogg Co. v. Natural Biscuit Co.*, 305 US 111, 118 (1938). The Fifth Circuit has noted that absent a consumer survey, the matter is not subject to direct proof, and explained when evaluating a plaintiff's advertising expenses "it must be remembered that the question is not the extent of promotional efforts but

5

their effectiveness in altering". The meaning of the mark to the consuming public. *Aloe Crème Laboratory Inc. v. Milson Inc.*, 423 F2d 845, 850 (5th Cir. 1970). A Google search of M reveals 13 Billion hits. Currently found in the United states Patent and Trademark Office ("USPTO") for a word mark M are 3,446 records. See Exhibit 3 (being the first 500 listings at the USPTO).

Numerous courts have held that letter or number combination are merely descriptive. *See Walt-West Enterprises v. Gannett Co.*, 695 F. 2d. 1050 (7th Cir. 1982)(FM107 is descriptive for a radio station); *CPP Insurance Co. v. General Motors Corp.*, 212 USPQ 257 (CD Cal. 1980) (CPP descriptive of a Consumer Protection Plan). *Nature's Bounty Inc. v. Basic Organics*, 432 F. Supp. 546 (EDNY 1977)("B-100" descriptive of a 100 Milligan B12 vitamin tablet). Side by side comparison is not a proper test. The test is the consumers' state of mind when faced with the marks individually. *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F. 2d. 366, 382 (7th Cir. 1976) cert. denied 479 US 830 (1976); *also see Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F3d. 532, 538-39 (2nd Cir. 2005)(remanding in light of Court's side by side comparison). Nor is a mark dissection proper. It is the overall commercial impression conveyed by the mark as a whole that determines the issue of likely confusion. *Sun-Fun Prods. Inc. v. Suntan Research & Dev. Inc.*, 656 F2d. 186, 189 (5th Cir. 1981).

As a letter mark you must look at the specifics of the lettering style which may be sufficient to avoid confusion. The two AK letters for wearing apparel were held <u>not</u> to be confusingly similar. *In re TSI Brands Inc.*, 67 USPQ 2d 1657, 2002 WL 834465 (TTAB. 2002).

 

The Trademark Board held that SUZLON mark and logo was not confusing. *National Rural Electric Cooperative Association v. Suzlon Wind Energy Corp.*, 78 USPQ 2d 1881, 2006 WL 1151404 (TTAB 2006) aff'd 214 Fed. Appx. 987 (Fed. Cir. 2007) (Petition to cancel denied, Board noting that the Senior user's logo was suggestive of electric lines…, while the defendant's logo was not and also included its own word mark SUZLON).

 

The Ninth Circuit found two highly stylized "O" logos both used on motorcycle helmets,

 

not to be confusingly similar "[i]n the absence of evidence of actual confusion or intent to deceive, we decline to grant O'Neal a virtual monopoly on the use of the letter "O" on motorcycle helmets. The mere fact that the two companies are direct competitors and happen to use the same letter in their products is not sufficient to show infringement." *One Industries LLC v. Jim O'Neal Distributing Inc.*, 578 F. 3d 1154, 1165 (9th Cir. 2009) cert. denied 130 S. Ct, 739 (2010). In this case the marks when totally considered are quite different.

**(b)** **Criteria for Review of the Marks**

**i.** **Similarity of the Marks**

The Eleventh circuit has held that the validity of a mark is determined by viewing the trademark as a whole and not just by viewing the individual words or parts. *Lone Star Steakhouse & Saloon Inc. v. Lone Star Steakhouse & Saloon of Georgia Inc.*, 106F3d 355, 362 (11th Cir.) modified on reh'g 122 F.2d 1379 (11th Cir.1997). Here plaintiff persists in comparing one feature of the marks rather than considering the overall impression created by the marks. *Ice Cold Auto Air of Clearwater Inc.*, 828 F. Supp. at 936 (*citing Bell South Advertising & Publishing Corp. v. Real Color Pages*, 792 F. Supp 775, 781 (MD Fla. 1991)). "The analysis should include a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed." *Id.*

Examples of marks found not to cause confusion:

Myrtle Beach
King of Beaches



Anheuser-Busch, Inc. v. L&L Wings, 962 F.2d 316 (4th Cir.) (Myrtle Beach King of Beaches with picture of beer can not likely to cause confusion with Budweiser King of Beers), *cert. denied*, 506 U.S. 872 (1992).

8

Cliff Notes v. Spy Notes

 

Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group., Inc., 886 F.2d 490 (2d Cir. 1989) (Spy Notes cover not likely to cause confusion with Cliffs Notes cover).

Miami · Mice



Universal City Studios, Inc. v. Casey & Casey, Inc., 622 F. Supp. 201 (S.D. Fla. 1985) (Miami Mice T-shirt not likely to cause confusion with *Miami Vice* TV series).

Farmers Almanac / New York Magazine

 

Yankee Publ'g, Inc. v. News Am. Publ'g, Inc., 809 F. Supp. 267 (S.D.N.Y. 1992) (*New York* magazine cover not likely to cause confusion with *Farmer's Almanac* cover).

Plaintiff's mark depicts a three pronged M with flanges off each prong all uniformly facing one direction, with the center prong higher than the outer two prongs. The prongs are uniform in appearance and continue as one piece as you travel its length. This creates a visual appearance of an M as the flanges at their end virtually touch the adjacent prong. It has a very neat, clean appearance.

Under the M is the word "Monster" in heavy type set and underneath that in capital letters the word "ENERGY".

The Joe Cool mark is three irregular scratch type lines similar to that made by a claw. The outline is very irregular and at the top end there are pointed structures that go in different directions. The center scratch is set below the outside scratches and the center scratch is broken at the bottom portion. There is usually associated with the mark an eagle, motorcycle, name of a city or event. Further, there is usually a small elongated version placed on the side of the design. Thus the overall appearance and impression is quite distinctive and different from the Plaintiff's

mark. Thus the appearance and manner in which the logos are displayed are dissimilar. See Declaration of Yosef Amar Exhibit 4 attached hereto.

### ii. Similarity of Goods

It is not disputed that the marks are both placed on T-shirts, or tank tops or caps. However Plaintiff's mark of just the M is only related to beverages. No claim is made by Plaintiff in any of its Trademark filings to color. Thus, only the silhouette of the M is being sought as a protected feature.

### iii. Similarity of Sales Methods

Defendants do not dispute that their sales methods are similar.

### iv. Similarity of Advertising Methods

Defendants do not dispute that their advertising methods are similar .

### (c) Defendant's Intent

Defendants do not hope to gain any competitive advantage by association with Plaintiff's mark as anyone familiar with the mark. In fact such association is not possible as the marks are distinctive.

### (d) Actual Confusion

Plaintiff has shown not one instance of actual confusion. *Popular Bank of Florida v. Banco Popular de Puerto Rico*, 9 F.Supp.2d 1347,1360 (S.D. Fla. 1998). "Such instances of confusion include consumer inquiries regarding possible affiliation between the parties or attempts to purchase goods or services actually offered by the other party". *Id.* Here we have had no confusion.

Although no absolute measure exists as to how many instances are sufficient to establish likelihood of confusion, the court must evaluate the evidence in light of the totality of the circumstances. Id.

### (2) The Monster Mark is Not Famous and No irreparable Harm Will Occur

Every mark which heavily advertises is not famous. Federal Dilution Law (after amendment) requires that for a mark to be famous, it must be "widely recognized by the general consuming public of the United States. As a designation of source of the goods or services of the mark's owner. 15 USC § 1125 (c)(2). Extent of actual recognition has two prongs; (1) how widely is the mark known geographically and (2) is the mark known by the "general consuming public" and not simply by purchaser in a particular product market.

Plaintiff failed to show it is a famous mark. Exhibit 5 hereto. Beverage Digest ranks companies and brands on a national basis. See Declaration of Robert E. Pershes, Exhibit 6 hereto. Although Hansen is known as number six (with only a 0.8 percent share for all products, which brands "Monster" does not appear. Although number of cans sold may be large , it is a very small part of the market and not necessarily a brand known outside its niche market. Niche markets, such as that of Monster beverages, are not protected. The Trademark Dilution revision Act of 2006 did not change that a mark must be famous, but added the general condition that the mark must be "widely recognized by the general consuming public of the United States". Clearly, from the submission of the Plaintiff, Monster beverage is not widely recognized.

The fact that there is some closeness between the marks, three jagged lines does not produce confusion and irreparable harm. In fact, the differences identified show that there would be no confusion as to the marks by the niche market involved, resulting in no harm or damage to the Plaintiff.

### (3) Harm to Defendants Exceeds that Suffered by Plaintiff

The Defendant is a family owned business, operating in the beach area of Holly Hill for over seventeen years, primarily selling T-shirts. The disruption, seizure and damage to reputation has caused and is causing irreparable damages to the Defendant. Further, Plaintiff has threatened all of the Defendant's customers with suit making it difficult if not impossible to conduct business. See Exhibit 4, Declaration of Yosef Amar.

### (4) The Public Interest

As there is no confusion here, because the mark of the Plaintiff is not the same or confusingly similar to that of Defendant, no harm to the public will be incurred by permitting the defendants to sell their goods. In fact, the public is deprived of products designed for it that should be available. The Court should not be granting a monopoly to the use of an M to Plaintiff because it uses of an M for its drink Monster on the aluminum can. There having been not one instance of confusion that Plaintiff can document, it is clear that after all these years no confusion exists. See Exhibit 4, Declaration of Yosef Amar.

### CONCLUSION

This court should not grant Plaintiff a Preliminary Injunction, and the goods of Defendant should be returned.

Plaintiff has failed to show that the goods are counterfeit, failed to show a likelihood of confusion, failed to show any actual confusion, failed to show that their mark was famous, failed to show that their mark was famous at the time of use by the Defendant of the Defendant's mark, and failed to show that they are the senior user of the mark.

WHEREFORE, this Court should deny the motion for Preliminary Injunction, vacate the Restraining Order, direct that the goods of Defendant be returned and respectfully request this

Court to enter an Order Denying the Grant of A Preliminary Injunction and Returning the Goods to the Defendants.

Dated: March 23, 2011    Respectfully submitted,

        s/ ROBERT E. PERSHES
        Robert E. Pershes, Esq.
        Florida Bar No. 0301906
        Attorney for Defendants
        Joe Cool, Inc., Joe Cool Bike Week, Inc.,
        Michelle Amar and Yosef Amar
        BUCKINGHAM, DOOLITTLE & BURROUGHS, LLP
        5355 Town Center Road, Suite 900
        Boca Raton, Florida  33486
        Telephone:  561 241-0414
        Facsimile:   561 241-9766
        Email: rpershes@bdblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        s/ ROBERT E. PERSHES
        Robert E. Pershes, Esq.
        Florida Bar No. 0301906

## **SERVICE LIST**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.6:11-cv-329-ORL-22DAB

Richard E. Mitchell, Esq.
Rick.mitchell@gray-robinson.com
Michael D. Porter, Esq.
Michael.porter@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, FL 32801
Tel. (407) 843-8880
Fax. (407) 244-5690
Local Counsel for Plaintiff
Notification of electronic filing generated by CM/ECF

«BOCA:257756_v1/30600-1191»