**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HANSEN BEVERAGE COMPANY, d/b/a**
**MONSTER BEVERAGE COMPANY,**

        **Plaintiff,**

-vs-                                          **Case No. 6:11-cv-329-Orl-22DAB**

**CONSOLIDATED DISTRIBUTORS, INC.,**
**METTEMP, INC., JOE COOL, INC., JOE**
**COOL BIKE WEEK INC., DAVID**
**BAKSHT, MICHELLE AMAR, AND**
**YOSEF AMAR,**

        **Defendants.**

## ORDER

This cause comes before the Court for consideration of its Order (Doc. No. 7) granting Plaintiff Hansen Beverage Company's ("Plaintiff") motion for a temporary restraining order and ordering Defendants Consolidated Distributors, Inc., Mettemp, Inc., Joe Cool, Inc., Joe Cool Bike Week Inc., David Baksht, Michelle Amar, and Yosef Amar ("Defendants") to show cause why a preliminary injunction should not issue.[1] Defendants Joe Cool, Inc., Joe Cool Bike Week, Inc., Michelle Amar, and Yosef Amar filed a Response in Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. No. 32) on March 23, 2011. The Court held a show cause hearing on March 24, 2011, and has fully considered the parties' claims and

---

[1] Plaintiff has been unable to complete service of process on Defendant David Baksht, and he has neither answered the complaint nor filed any response with this Court.

1

arguments. The information presented at the hearing has led the Court to conclude that the temporary restraining order, which expired on March 24, 2011, should never have been entered; Plaintiff has not presented a substantial likelihood of success on the merits. Thus, a preliminary injunction will not be entered. The items seized shall be returned to Defendants.

The Court entered the temporary restraining order based on Plaintiff's representation that Defendants were selling t-shirts and other apparel bearing Plaintiff's "M Claw Trademark." In its complaint and motion for a temporary restraining order, Plaintiff repeatedly referred to the long stylized "*M*"[2] as the "M Claw Trademark." Plaintiff alleged that seizure was necessary because Defendants were selling and advertising counterfeit goods. Pursuant to 15 U.S.C. § 1116(d), a court may issue an order of seizure where there is a use of a counterfeit mark "in connection with the sale, offering for sale, or distribution of goods or services." A counterfeit is "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The designs on Defendants' t-shirts are not identical to Plaintiff's federal trademarks for its clothing, as required to show counterfeiting and to warrant an order of seizure. As Defendants explain, the outline and orientation of the three lines are different, and the "top ends" of the mark point in different directions. (Doc. No. 32 pp. 10-11) (citing Amar Aff. (Doc. No. 32-4) ¶ 9.)

More importantly, as Defendants argue, this particular mark, the long *M* by itself, is only trademarked for beverage cans. The trademarks for shirts, stickers, and other apparel include the words "Monster Energy" in a stylized font. Though Plaintiff referred to the

---

[2] The Court will refer to what Plaintiff terms the "M Claw Trademark" as "*M*." (*See, e.g.*, Doc. No. 2 ¶ 16.)

2

applicable trademarks in its complaint (Doc. No. 2 ¶ 18), it did not make clear to the Court that the trademark that applied to clothing and other merchandise included the "M Claw" symbol *and* the words "Monster Energy." Further, in its motion for temporary restraining order, though Plaintiff lists the federal trademark registrations and cites the exhibits, the list suggests that the trademark for stickers and clothing consists only of the *M*, which Plaintiff calls the "M Claw." (*See* Doc. No. 3 p. 6.)  However, as stated above, Plaintiff's trademark for clothing also includes the words "Monster Energy." The marks are therefore not identical. Plaintiff makes this misleading suggestion even more strongly in Count One of the complaint. In its allegations of trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114, the Plaintiff states that its trademark for cans[3] is the *M* with the words "Monster Energy," the trademark for nutritional supplements is "M Monster Energy," and the trademark for clothing is just the *M* – again, calling it the "M claw." (Doc. No. 2 ¶ 51.) Another example is that the section of the complaint that contains the allegations relating to the infringement is titled "Defendants' Infringement of the *M* Mark." (Doc. No. 2 p. 11.)  Plaintiff also compares an image of the *M* with a photograph of one of Defendants' t-shirts and contends that the comparison displays a "patent identify of trademarks." (Doc. No. 3 p. 15.) Again, Plaintiff does not reveal that the *M* is not identical to Plaintiff's actual trademark for clothing. Plaintiff appears to be aware of the difference between the marks for clothing and the marks for the cans because it alleges that "Defendants have directly copied [Plaintiff's] M Claw

---

[3] Plaintiff owns several trademarks for the beverages, including marks with only the *M* and marks with the *M* and the words, "Monster Energy." (*See* Doc. No. 2-1.)

Trademark and [Plaintiff's] can art design featuring its M Claw Trademark."  (Doc. No. 2 ¶ 45.)

Defendants also presented information regarding the senior and junior uses of the mark that led the Court to reconsider its previous determination.  It is now unclear whether Plaintiff has a substantial likelihood of success because of information from Defendants that they might be the senior user of the mark.  Plaintiff's federal trademarks associated with clothing and stickers were only first registered on January 18, 2011.  Defendants asserted at the hearing that they had been using similar marks on t-shirts since the opening of their store in the 1990s, which predates Plaintiff's marks.  (*See* Doc. Nos. 32-4 & 32-10.)  The sum of the information presented at the hearing and in the supporting documents casts doubt on the substantial likelihood of Plaintiff's success; thus, the Court declines to enter a preliminary injunction.

On or before April 1, 2011, Plaintiff shall return all seized items, including t-shirt transfers, t-shirts, and business records, to Defendants.  Defendants are cautioned, however, that further use of the previously enjoined trademark may increase their liability for any future damages should they be held liable for trademark infringement as a result of trial or further order.

Based on the foregoing, it is ORDERED as follows:

1. Plaintiff's Motion (Doc. No. 3), filed on March 3, 2011, is DENIED insofar as it requests a preliminary injunction.

2. On or before April 1, 2011, Plaintiff shall return all seized items to Defendants.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida, on March 30, 2011

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record

5