**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HANSEN BEVERAGE COMPANY, d/b/a
MONSTER BEVERAGE COMPANY,                 Case No. 6:11-CV-329-ORL-22DAB

                Plaintiff,

vs.

CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC., JOE COOL,
INC., JOE COOL BIKE WEEK INC.,
DAVID BAKSHT, MICHELLE AMAR,
AND YOSEF AMAR,

                Defendants.

_____ /

## PLAINTIFF HANSEN'S MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

## **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................1

II. RECONSIDERATION IS APPROPRIATE TO CORRECT CLEAR ERROR OF
    LAW .................................................................................................................2

III. HANSEN'S MOTION FOR SEIZURE AND PRELIMINARY INJUNCTION IS
     BASED ON ITS TRADEMARK INFRINGEMENT CLAIMS PURSUANT
     TO 15 U.S.C. § 1114(1)(A) AND 15 U.S.C. § 1125(A) AS WELL AS
     COUNTERFEITING PURSUANT TO 15 U.S.C. § 1114(1)(A)...................6

    A.    15 U.S.C. § 1114(1)(a) Provides Two Separate Grounds for Issuing a
                    Preliminary Injunction, Counterfeiting and Trademark Infringement....................7

    B.    15 U.S.C. § 1125(a) Provides a Third Independent Basis for Issuing a
                    Preliminary Injunction ................................................................................9

    C.    Hansen Relies on its Federal Registrations and Common Law Rights
                    in the M Claw Trademark Used in Connection with Beverages,
                    Clothing and Stickers................................................................................10

IV. HANSEN IS NOT REQUIRED TO SHOW THAT THE MARKS ARE
    IDENTICAL ..................................................................................................12

    A.    Defendants' Mark Is "Substantially Indistinguishable From" Hansen's
                    Federally Registered Marks as Used in the Marketplace, in Violation
                    of 15 U.S.C. § 1114(1)(A) and 15 U.S.C. § 1116(D)............................12

    B.    The Record Clearly Establishes that a Preliminary Injunction Should
                    Issue on the Basis of Trademark Infringement Under 15 U.S.C. §
                    1114(1)(a) and 15 U.S.C. § 1125(a) .......................................................13

V. DEFENDANTS HAVE NOT SHOWN THAT THEY ARE THE SENIOR USER................17

VI. CONCLUSION..................................................................................................18

# I.  <u>INTRODUCTION</u>

Hansen respectfully seeks reconsideration of the Court's Order denying Hansen's Motion for Preliminary Injunction.  Defendants' Opposition set forth a clearly erroneous legal standard governing the issuance of a seizure order and preliminary injunction in this case, which this Court relied upon in denying Hansen's Motion.  The Court also relied on Defendants' unsupported and flatly contradicted assertion that they are the senior user of the mark resulting in a misapprehension of the facts.  Although the record supports issuance of the seizure order for the reasons set forth below, Hansen is not seeking reconsideration of the portion of the order directing that it return all seized items.   Hansen only seeks reconsideration of this Court's denial of a preliminary injunction.

Based on Defendants' Opposition, the Court found that Hansen has not shown a substantial likelihood of success on the merits because "[t]he designs on Defendants' t-shirts are <u>not identical</u> to Plaintiff's federal trademarks for its clothing, <u>as required</u> to show counterfeiting and to warrant an order of seizure."  (ECF No. 40 at 2). (emphases added).  However, under the correct governing legal standard for issuance of a preliminary injunction in these circumstances, Hansen is not required to show that Defendants' design is "identical" to Hansen's federally registered mark exactly as shown in the registration.

The Court also stated that "[i]t is now unclear whether Plaintiff has a substantial likelihood of success because of information from Defendants that they might be the senior user of the mark."  (*Id.* at 4). This statement must be based on Defendants' unsupported representation that they have used an M mark on clothing since the mid 1990s.  Defendants submitted no evidence of any sales or advertising of such products back in the 1990s, let

alone the substantial and continuous use in commerce required to prove prior trademark rights.  In addition, Defendants' 2005 catalog does not show any such products and Defendant's employee voluntarily admitted that they did not begin selling the accused infringing t-shirts until July 2010.  Defendants' unsupported representations are insubstantial and incompetent evidence, and thus insufficient to defeat Hansen's motion for preliminary injunction.

For these important and compelling reasons, Hansen respectfully requests the Court to render an Order granting reconsideration of its Order denying Hansen's Motion for a Preliminary Injunction and directing Defendants to respond to Hansen's motion for reconsideration within five (5) days of the Court's Order.

## II.  <u>RECONSIDERATION IS APPROPRIATE TO CORRECT CLEAR ERROR OF LAW</u>

A motion for reconsideration may be granted based on three primary grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.  *Sanzone v. Hartford Life & Accident Ins. Co.*, 519 F. Supp. 2d 1250, 1255 (S.D. Fla. 2007); *Ace Am. Ins. Co. v. First Choice Marine, Inc.*, 2010 WL 3125945, at *1 (M.D. Fla. July 29, 2010).  Hansen respectfully requests reconsideration of the Court's Order denying Hansen's preliminary injunction motion to correct a clear error of law.

Defendants' Opposition appears to have incorrectly led the Court to conclude that seizure is only appropriate for counterfeit goods that are "identical" to a registered mark.[1]  To be sure, in denying Hansen's motion the Court held that "[t]he designs on Defendants' t-shirts are not identical to Plaintiff's federal trademarks for its clothing, as required to show counterfeiting and to warrant an order of seizure."  The Court then proceeded to deny Hansen's motion because Defendants' t-shirts do not include the words "Monster Energy" as shown in Hansen's trademark registration covering clothing.  (Cmplt. Ex. I).  However, that is not the correct legal standard.

The record clearly establishes that Hansen has strong common law trademark rights in its M Claw trademark as used in the marketplace since 2002, both with and without the words "Monster Energy."  (Sacks Decl. ¶¶ 6, 9, 14, 25-29, Exs. 14, 15).  Courts may issue seizures and preliminary injunctions based on claims for trademark infringement of registered or unregistered marks pursuant to 15 U.S.C. § 1114(1)(a) or 15 U.S.C. § 1125(a) as well as in cases of counterfeiting pursuant to 15 U.S.C. § 1114(1)(a).  *See Dell Inc. v. BelgiumDomains, LLC*, 2007 WL 6862341 at *5-6 (S.D. Fla. Nov. 21, 2007) ("Such seizures outside the scope of the Trademark Counterfeiting Act are also available and appropriate in cases of infringement of registered or unregistered trademarks, even if those infringements do not rise to the level of counterfeiting.").

---

[1] Due to the expedited briefing schedule set by the Court after Hansen consented to Defendants' request for a continuance of the original (expired) briefing schedule and hearing, Hansen did not have the opportunity to file a Reply to Defendants' Opposition to address and correct Defendants' erroneous statements of the law.

Hence, seizures and preliminary injunctions in trademark infringement actions are not limited to cases that rise to the level of counterfeiting of federally registered marks.  *See Ferrellgas Partners L.P. v. Barrow*, 143 Fed. Appx. 180, 191-92 (11th Cir. 2005) (affirming entry of preliminary injunction based on a finding of trademark infringement).

Moreover and as discussed further below, even a *prima facie* case of trademark counterfeiting does not require that the Defendants' mark be "identical" to Hansen's federally registered mark exactly as it is shown in the drawing in the registration.  Instead, it is sufficient if the mark is "substantially indistinguishable from" Hansen's registered mark as perceived by customers.   Applying this standard, Hansen respectfully submits that a preliminary injunction is warranted because (a) Defendants' mark is substantially indistinguishable from Hansen's mark as used on clothing in the marketplace since 2002 and as shown in the dominant M Claw portion of its federal registration for clothing;



and (b) Hansen has shown a likelihood of success on the merits of its non-counterfeit trademark infringement claims under 15 U.S.C. § 1114(a) and 1125(a).   Hansen's likelihood of success on the merits is further supported by a recently conducted secondary meaning survey, not available at the time Hansen filed its TRO motion, showing a "significantly high

level of secondary meaning" in the M claw, without the words "Monster Energy."  (Ford Decl. ¶ 6) ("approximately sixty-five percent (64.81%) of the relevant universe associate the "M" claw with the named source, Monster, or a sole, yet anonymous, source.  In my opinion this is a significantly high level of secondary meaning.").[2]

Additionally, Hansen respectfully submits that the Court's holding that "[i]t is now unclear whether Plaintiff has a substantial likelihood of success because of information from Defendants that they might be the senior user of the mark" is clearly erroneous due to a misapprehension of the facts as intended and caused by Defendants' unsupported representation of prior use.  Defendants presented no evidence to support their bald assertion that they have used their mark since prior to 2002, which is the year Hansen first started using in commerce its M Claw mark on t-shirts and clothing both with and without the words "Monster Energy" thereunder.

In truth and fact, Defendants' employee and agent both voluntarily disclosed that Defendants did not use the mark prior to July 2010, when Defendants filed their Florida registrations, and Defendants have come forward with no evidence refuting these admissions. (Chiaradio Decl. ¶¶ 7-10).  A bald assertion of prior use without any supporting evidence is simply insufficient to support a finding that Defendants may be the senior user of the mark. *Circuit City Stores Inc. v. CarMax Inc.*, 165 F.3d 1047, 1053 (6th Cir. 1999) (finding defendant failed to establish that it had superior common law rights compared to an owner of

---

[2] Counsel for Hansen referenced this secondary meaning survey in oral argument at the Order to Show Cause hearing.  The Declaration of Gerry Ford setting forth the survey results is submitted herewith without its lengthy exhibits.  Hansen will supplement the record with these exhibits upon the Court's request.

federal registration of the mark because there was no documentary evidence to support the defendant's claim and one of the witnesses who offered testimony in support of the defendant's claim was a party to the lawsuit).

## III. HANSEN'S MOTION FOR SEIZURE AND PRELIMINARY INJUNCTION IS BASED ON ITS TRADEMARK INFRINGEMENT CLAIMS PURSUANT TO 15 U.S.C. § 1114(1)(a) AND 15 U.S.C. § 1125(a) AS WELL AS COUNTERFEITING PURSUANT TO 15 U.S.C. § 1114(1)(a)

In its Complaint and Motion, Hansen asserts distinct claims for (1) trademark infringement of its federally registered marks pursuant to 15 U.S.C. § 1114(1)(a); (2) infringement of its common law rights in the M Claw mark and unfair competition pursuant to 15 U.S.C. § 1125(a); and (3) counterfeiting of its federally registered marks pursuant to 15 U.S.C. § 1114(1)(a).[3]  Each of these distinct claims provides a separate ground for issuance of a preliminary injunction and seizure order.

Although 15 U.S.C. § 1116(d) expressly authorizes the seizure of goods for use of a counterfeit mark pursuant to 15 U.S.C. § 1114(1)(a), the availability of relief in the form of a seizure order and preliminary injunction is not solely based on Hansen's counterfeiting claim.  *See Dell Inc.*, 2007 WL 6862341, at *5; *Pepe, Ltd. v. Ocean View Factory Outlet Corp.*, 770 F. Supp. 754, 759 (D.P.R. 1991) ("Even if [] defendants' duplication of plaintiffs'

---

[3]  Contrary to Defendants' statement at page 12 of their Opposition, Hansen did not base its motion for seizure and preliminary injunction on its federal dilution claim, and thus, Hansen was not required to prove fame (an element of dilution claims) to show a likelihood of success on the merits.  Additionally, on page 5 of their Opposition, Defendants assert that their mark does not meet the criteria of 18 U.S.C. § 230 [*sic*].  However, 18 U.S.C. § 2320 is a criminal counterfeiting statute that Hansen has not asserted.

mark were not considered a counterfeit of a registered mark as the [] defendants contend, the plaintiffs would have a right to *ex parte* seizure of the goods bearing the mark PEPE and/or duplicating its trade dress under the federal and state law of unfair competition."); *see also Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167 (11th Cir. 2002) (affirming district court's issuance of preliminary injunction based on trademark infringement of an unregistered mark pursuant to 15 U.S.C. § 1125(a)).

"Rather, all the requested relief may be granted in the alternative under the broad injunctive powers of the Lanham Act, 15 U.S.C. § 1114; the All Writs Act, 28 U.S.C. § 1651; and the inherent power of this Court to fashion equitable remedies" as well as Fed. R. Civ. P. 65.  *Dell Inc.*, 2007 WL 6862341, at *5.  The legislative history of 15 U.S.C. § 1116(d) makes it "clear that Congress intended to <u>expand rather than limit</u> the right to *ex parte* seizure, and that its discussion of *ex parte* seizure in terms of counterfeits of registered marks was <u>not meant to eliminate, or indeed even limit</u>, the right to *ex parte* seizures for violations of 15 U.S.C. § 1125 or violation of state or local laws of unfair competition other than requesting the court to keep in mind the concern of Congress for procedural safeguards."  *Pepe, Ltd.*, 770 F. Supp. at 759 *(emphases added)*.

A.     <u>15 U.S.C. § 1114(1)(a) Provides Two Separate Grounds for Issuing a Preliminary Injunction, Counterfeiting and Trademark Infringement</u>

15 U.S.C. § 1114(1)(a) is not limited to counterfeiting, and provides two (2) separate grounds for imposing liability on Defendants as follows:

> (1) Any person who shall, without the consent of the registrant—
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with

which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) . . .,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Specifically, 15 U.S.C. § 1114(1)(a) creates liability for using a "colorable imitation" of a federally registered mark even if it does not arise to the level of counterfeiting. The standard for determining whether Defendants' mark is a "colorable imitation" is the likelihood of confusion standard. 15 U.S.C § 1127 ("The term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive."); *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 527-528 (2d Cir. 1983) ("[S]ection 1127 defines the term 'colorable imitation' as 'any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive.'"). There is no requirement that the Defendants' mark be identical to the registered mark. *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1262 (M.D. Fla. 2009) (court found non-identical marks, "Homes & Land" and "Homes & Loans Magazine," to be similar because the two marks were similar in appearance and sound); *BellSouth Corp. v. Internet Classifieds of Oh.,* 1997 WL 33107251, at *16 (N.D. Ga. 1997) (the court found that the defendants' mark, "The Real Pages," were nearly identical to the plaintiff's marks, "The Real Yellow Pages" and "The Real White Pages," and conveyed similar impressions and granted a permanent injunction against the defendants). "An infringer is not absolved from liability merely because it has not replicated every single aspect of a trademark . . . The scope of protection of the [registered mark] is not limited to an exact replication of the mark as it

appears on the registration certificate."  *J. T. McCarthy*, Section 23:76 at 23-291, citing

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.*, 717 F. Supp. 96 (S.D.N.Y. 1989).

**B.**      **15 U.S.C. § 1125(a) Provides a Third Independent Basis for Issuing a**

  **Preliminary Injunction**

Hansen's claims for unfair competition pursuant to 15 U.S.C. § 1125(a) also provide

an independent basis for granting a preliminary injunction or seizure and are based on

infringement of Hansen's common law rights in its unregistered M Claw trademark without

the words "Monster Energy."  Pursuant to 15 U.S.C. § 1125 (a)(1)(A):

> Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or
> device, or any combination thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading representation of fact,
> which—
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the
> affiliation, connection, or association of such person with another person, or
> as to the origin, sponsorship, or approval of his or her goods, services, or
> commercial activities by another person, or
> **(B)** . . .,
> shall be liable in a civil action by any person who believes that he or she is or
> is likely to be damaged by such act.

Undisputed record evidence establishes that since 2002 Hansen has used its M Claw

trademark without the words "Monster Energy" on t-shirts and other clothing throughout the

United States.  (Sacks Decl. ¶ 6).  Moreover, the M Claw mark is an inherently distinctive

mark entitled to a presumption of secondary meaning.  *Tally-Ho, Inc. v. Coast Cmty. Coll.

Dist.*, 889 F.2d 1018, 1026 (11th Cir. 1989).  In addition, Hansen has obtained a secondary

meaning survey report conducted by renowned survey expert, Gerry Ford, establishing a

significantly high level of secondary meaning in Hansen's M Claw mark, without the words

"Monster Energy".  (Ford Decl. ¶ 6).  Further, the record evidence includes instances of

actual confusion in the form of Defendant Joe Cool's customers referring to "Monster" when calling in orders for Defendants' products.  (Chiaradio Decl. ¶ 6).

**C.**     **Hansen Relies on its Federal Registrations and Common Law Rights in the M**

         **Claw Trademark Used in Connection with Beverages, Clothing and Stickers**

In denying Hansen's motion, the Court found that Hansen's repeated references to its long stylized M as the M Claw trademark were misleading because the mark as shown in Hansen's federal registration for use in connection with clothing also includes the words "Monster Energy."  However, Hansen referred throughout its brief to the stylized M as the M Claw trademark because Hansen was relying on its trademark infringement claims and common law rights not just its counterfeiting claim.  Defendants' assertion that Hansen is limited to relying on its federal registration for its mark in connection with clothing is incorrect.  (Opp'n at 4).  Hansen also properly relies upon its federal registrations and common law rights in the M Claw trademark used in the marketplace in connection with beverages, clothing and stickers.

Obtaining federal registrations for its trademarks does not restrict Hansen's trademark rights, it enhances them by providing *prima facie* evidence.  *See* 15 U.S.C. § 1115.  As explained in the McCarthy treatise:

> While the presumptive validity of the mark is limited to the goods or services specified in the registration, the remedies are not so limited.  The remedies of a registered trademark owner are not limited to the goods or services specified in the registration, but extend to the use of the mark on any goods or services on which unauthorized use of the mark is likely to cause confusion.  It is irrelevant that the alleged infringer's goods fall in a different Patent and Trademark Office Classification than that of the goods in the registration.

*J. T. McCarthy*, Section 23:76, p. 23-291.  *See also*, *Pure Foods v. Minute Maid Corp*., 214 F.2d 792, 796, 102 U.S.P.Q. 271 (5th Cir. 1954) ("The remedies of an owner of a registered trade-mark, however, are not limited to the goods specified in the certificate but extend to any goods on which the use of an infringing mark 'is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods.'"); *American Foods, Inc. v. Golden Flake, Inc*., 312 F.2d 619, 136 U.S.P.Q. 286 (5th Cir. 1963) (accord with Pure Foods); *Continental Motors Corp. v. Continental Aviation Corp*., 375 F.2d 857, 861, 153 U.S.P.Q. 313 (5th Cir. 1967) ("The remedies of the owner of a registered trademark are not limited to the goods specified in the certificate, but extend to any goods on which the use of an infringing mark is 'likely to cause confusion …' Confusion, or the likelihood of confusion, not competition, is the real test of trademark infringement."); *Louis Rich, Inc. v. Horace W. Longacre, Inc*., 423 F. Supp. 1327, 1338, 195 U.S.P.Q. 308 (E.D. Pa. 1976) ("[P]laintiff's mark is protected by … the Lanham Act even though the alleged infringement was not as to the goods specified in plaintiff's certificate of registration.").

Additionally, as an exhibit to the Complaint Hansen submitted a copy of its federal registration for its mark used in connection with clothing showing the M Claw as the dominant portion of the mark.  Because Hansen can properly rely on that registration as a basis for its infringement claims and because Hansen has extensively used that mark in the marketplace without "Monster Energy" since 2002, Hansen's references to the mark as the M Claw trademark were not intended in any way to mislead the Court.

Because Hansen asserted distinct claims for trademark infringement under 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1125(a) as well as its claim for counterfeiting under 15 U.S.C.

§ 1114(1)(a), Hansen respectfully submits that this Court erred in holding that Hansen was not entitled to a preliminary injunction because it did not show a likelihood of success on its claim for counterfeiting.

## IV.  HANSEN IS NOT REQUIRED TO SHOW THAT THE MARKS ARE IDENTICAL

**A.     Defendants' Mark Is "Substantially Indistinguishable From" Hansen's Federally Registered Marks as Used in the Marketplace, in Violation of 15 U.S.C. § 1114(1)(A) and 15 U.S.C. § 1116(D)**

15 U.S.C. § 1127 defines "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."   In Congress' joint report on trademark counterfeiting legislation, (130 Cong. Rec. H12078 (Daily Ed. Oct. 10, 1983) (Joint statement on trademark counterfeiting legislation), Congress stated that the definition of "substantially indistinguishable" will need to be elaborated on a case-by-case basis to the courts.  This congressional report went on to emphasize that:

> obviously, a mark need not be absolutely identical to a genuine mark in order to be considered "counterfeit."   Such an interpretation would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways.

*Pepe, Ltd.,* 770 F. Supp. at 758.   Moreover, the defendant's mark is counterfeit for the purpose of civil remedies if it is indistinguishable from the form of the trademark as actually used by plaintiff in the marketplace, even if it is not the exact duplicate of the form of the mark as shown in plaintiff's federal registrations.  *Id.;  see also*, *Montres Rolex S.A.*, 718 F.2d at 530-32 (Court made the determination of whether a mark was a substantially

indistinguishable counterfeit by comparing the imitation to the registered mark as it was actually used on products in the marketplace rather than as it appears in the drawings printed in the certificate of registration.).

In this case, the Defendants' goods bear virtually exact reproductions of Hansen's famous M Claw trademark as it has appeared in the marketplace since 2002 on Hansen's authorized clothing items (Sacks Decl. ¶¶ 6, 49 and Mem. in Support of Mot. at 2, 5-9), including on the televised athletes who wear clothing bearing Hansen's authorized M Claw mark, without the words "Monster Energy" below.  (Sacks Decl. ¶¶ 25-26).  Hansen's use of its M Claw mark on clothing, both with and without the words "Monster Energy" has been continuous since at least 2002, and has acquired great goodwill and recognition among the public.  (Sacks Decl. ¶ 6).  The Defendants have acted to duplicate Hansen's authorized mark as it is actually and frequently used in the marketplace, with the prominent M Claw and without the words "Monster Energy."  Further, Defendants' mark is nearly identical to the dominant portion of Hansen's federally registered mark.   The purchasing public will therefore inevitably perceive Defendants' mark as Hansen's well known M Claw trademark.  This is sufficient to satisfy the "substantially indistinguishable" requirement to show that Defendants' mark is counterfeit.

**B.** **The Record Clearly Establishes that a Preliminary Injunction Should Issue on the Basis of Trademark Infringement Under 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1125(a)**

Even if this Court finds that Defendants' mark is not "substantially indistinguishable" enough to rise to the level of a counterfeit mark, this Court should still issue a preliminary

injunction because Hansen is likely to prevail on its claims of trademark infringement pursuant to 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1125(a).  "A district court should grant injunctive relief if the moving party shows: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest.  *Ferrellgas Partners LP,* 143 Fed. Appx. at 186 (reversing denial of preliminary injunction).

To establish a prima facie case in an ordinary trademark infringement suit, a plaintiff need only demonstrate "(1) that it has trademark rights in the mark or name at issue … and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods . . . created by the defendant's use of the … name …" *Ferrellgas Partners,* 143 Fed. Appx. at 186; *Tally-Ho,* 889 F.2d at 1029  (reversing district court's denial of a preliminary injunction for abuse of discretion).

In this case, Hansen has fully satisfied all the requirements demonstrating its likelihood of success on the merits of its trademark infringement claim pursuant to both 15 U.S.C. §1114(1)(a) (registered trademark infringement) and 15 U.S.C. § 1125(a) (false designation of origin, or common law trademark infringement).

Hansen has clearly shown that it has strong trademark rights in its M Claw mark (Sacks Decl. ¶¶ 3, 14, 41-42).  The evidence of record establishes Hansen's use of its M Claw mark (both with and without the words "Monster Energy") on clothing since at least 2002.  (Sacks Decl. ¶¶ 6, 9, 25-29).  In addition, Hansen's extensive use and promotion of its

M Claw mark (with and without the words "Monster Energy"), including but not limited to use and promotion in connection with energy drinks, sponsorship of athletes (wearing M Claw branded clothing) and sponsorship of televised sports events, has resulted in overwhelming nationwide recognition and goodwill in the M Claw mark.  (Sacks Decl. ¶¶ 8-10, 14-17, 25-29).  The Defendants' mark is virtually identical to Hansen's M Claw mark as it is used in the marketplace on clothing.  (Sacks Decl. ¶¶ 6, 9, 25-26, ECF No. 35-1 p.1)

Likelihood of confusion between Hansen's M Claw mark and Defendants' mark is inevitable.[4]   In fact, the unrebutted record shows that Defendants' employees sold the infringing t-shirts to a customer (Mr. Chiaradio) who asked for clothing with the "Monster logo" and even referred to their own goods as "Monster merchandise."  (Chiaradio Decl. ¶ 6).  In addition, Defendants' employee voluntarily admitted that Joe Cool's customers often call in sales orders and refer to "Monster" when placing an order for clothing bearing the Defendants' mark.  (*Id.*).  Defendants did not even attempt to rebut this evidence in their opposition papers.

Hansen has also met the additional requirements for establishing entitlement to a preliminary injunction.  The record establishes a substantial threat of irreparable injury to Hansen if the injunction is not granted because it will lose control over its valuable M Claw mark and the extensive goodwill and reputation Hansen has built in that mark with an

---

[4] In their Opposition, Defendants admitted that the parties' goods (clothing), the sales methods, and the advertising methods are the same for both parties.  Defendants' statement on page 11 of the Opposition that Hansen's M Claw mark (without "Monster Energy") is used only in connection with beverages is incorrect.  Hansen has extensively used the M Claw Mark (without "Monster Energy") in connection with clothing as well.  (See  Sacks Decl. ¶¶ 6, 9, 25-29).

investment of more than $800 million since launching products bearing the M Claw mark in 2002. (Sacks Decl. ¶ 14). The record shows that Joe Cool's employees are selling its T shirts as "Monster merchandise" and that Joe Cool's customers already call to order T shirts by referencing Hansen's "Monster" mark. (Chiaradio Decl. ¶¶ 6, 11). This irreparable harm outweighs the harm an injunction may cause the defendant. *See Alfa Corp. v. Alfa Mortgage Inc.,* 560 F. Supp. 2d 1166, 1177 (M.D. Ala. 2008) (stating that irreparable harm and no adequate remedy at law is usually recognized in trademark infringement cases since there is no adequate remedy at law to redress infringement and infringement by its nature causes irreparable harm and granting a permanent injunction against the defendant).

Defendants cannot claim harm by being required to cease sale of infringing goods. *See Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006) (providing that the harm caused by an injunction to a counterfeiter is not a legally cognizable harm since selling counterfeit goods is an illegal act to begin with); *Ideal Industries, Inc. v. Gardner Bender, Inc*., 612 F.2d 1018, 1026 (7th Cir. 1979) ("One entering a field already occupied by another has a duty to select a trademark that will avoid confusion. . . . Having adopted [a trademark which causes confusion, defendant] cannot now complain that having to mend its ways will be too expensive."); *National Car Rental System, Inc. v. National Car Sales*, 1990 WL 293401, *5 (M.D. Fla.) ("Because Defendant knowingly adopted Plaintiff's trademarks and trade dress, it cannot now complain that having to mend its ways will be too expensive. If Defendant's customers default and Defendant loses any money, no one but Defendant is to blame."). Moreover, Defendants' 2005 catalog includes numerous other products that do not bear the infringing M Claw trademark. (Supp Chiaradio Decl., ECF No.

28-1, Ex. C 1, 2 and 3).   Finally, granting the injunction would not disserve the public

interest.  In fact, it serves the policy of the Lanham Act in preventing likelihood of confusion

among consumers.  *Gen. Motors Corp. v. Phat Cat Carts, Inc.*, 504 F. Supp. 2d 1278, 1288

(M.D. Fla. 2007) (The public is interested in fair competitive practices and in the protection

of trademarks and tradenames, and therefore finding that granting a preliminary injunction

against a counterfeiter would further the public interest);  *Two Pesos, Inc. v. Taco Cabana,

Inc.*, 505 U.S. 763, 782 n.15 (1992) (By protecting trademarks, Congress hoped "to protect

the public from deceit, to foster fair competition, and to secure to the business community the

advantages of reputation and good will by preventing their diversion from those who have

created them to those who have not. This is the end to which this bill is directed.").

## V.   DEFENDANTS HAVE NOT SHOWN THAT THEY ARE THE SENIOR USER

In denying Hansen's Motion, the Court stated that "[i]t is now unclear whether

Plaintiff has a substantial likelihood of success because of information from Defendants that

they might be the senior user of the mark."   This statement must be based on the

representation in Defendant Yosef Amar's declaration that Defendants have used their mark

since the mid 1990's.   However, Defendants provided no evidence to support Mr. Amar's

conclusory allegation of use since the mid 1990's.   Moreover, Mr. Amar's statement is

contradicted by information volunteered by Defendants' employees who stated that

Defendants did not use the mark prior to July 2010, when Defendants filed their Florida

trademark registrations. [5] (Chiaradio Decl. ¶¶ 7-10).  Additionally, Defendants' 2005 catalog did not include any items bearing an M design.  (*Id.* Ex. 3).

To the contrary, since 2002 Hansen has used its M Claw trademark both with and without "Monster Energy" thereunder..  (*See* Sacks Decl. ¶ 6).

To establish prior use, Defendants must not only show use of the M design but must also show use of the M design as a trademark that performs "the trademark function of identifying the source of the merchandise to the customers."  *Thoroughbred Legends, LLC v. The Walt Disney Co.*, 2008 WL 616253, at *5 (N.D. Ga. 2008) (quoting *Rock & Roll Hall of Fame & Museum v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998)).  Defendants' unsupported assertion is not substantial, competent evidence of any prior use let alone prior trademark use.   Showing trademark use requires commercial activity and actual and continuous use.  *Tally-Ho, Inc.*, 889 F.2d at 1022.   Defendants have presented no evidence of such use prior to Hansen's substantial and continuous use commenced in 2002. Accordingly, this Court's finding that Defendants might be the senior user was based on a misapprehension of the facts as intended and caused by Defendants and is clearly erroneous.

## VI.  CONCLUSION

This Court's Order denying Hansen's Motion for a Preliminary Injunction is based on an erroneous legal standard because Hansen is not required to show that Defendants' mark is "identical"  to Hansen's federally registered mark.   And even if the Court does not find that Defendants' mark rises to the level of counterfeit, the record still warrants the issuance of a

---

[5] Defendants' Florida registration should not be accorded any weight because state trademark law cannot trump rights provided by federal registrations.  *Jaguar Cars Ltd. v. Skandrani*, 771 F. Supp. 1178, 1185 (S.D. Fla. 1991).

preliminary injunction based on Hansen's strong showing of a likelihood of success on the merits of its trademark infringement claims.   Additionally, this Court's finding that Defendants might be the senior user was based on a misapprehension of fact and is clearly erroneous based on the evidence.

For these important and compelling reasons, Hansen respectfully requests the Court to render an Order granting reconsideration of its Order denying Hansen's motion for preliminary injunction and directing Defendants to file their response to this motion within five (5) days of the Court's Order.

Respectfully submitted,

Dated: March 31, 2011          By: *Lynda J. Zadra-Symes*
                                    LYNDA J. ZADRA-SYMES, ESQ.
                                    (Admitted *Pro Hac Vice*)
                                    California Bar No.: 156511
                                    lynda.zadra-symes@kmob.com
                                    LAUREN K. KATZENELLENBOGEN, ESQ.
                                    (Admitted *Pro Hac Vice*)
                                    California Bar No.: 223370
                                    lauren.katzenellenbogen@kmob.com
                                    KNOBBE, MARTENS, OLSON & BEAR, LLP
                                    2040 Main Street, Fourteenth Floor
                                    Irvine, California  92614
                                    (949) 760-0404  Telephone
                                    (949) 760-9502  Facsimile

                                    Lead Trial Counsel for Plaintiff,
                                    HANSEN BEVERAGE COMPANY d/b/a
                                    MONSTER BEVERAGE COMPANY

                                    – and –

                                    RICHARD E. MITCHELL, ESQ.
                                    Florida Bar No.: 0168092
                                    rick.mitchell@gray-robinson.com
                                    MICHAEL D. PORTER, ESQ.
                                    Florida Bar No.: 0031149
                                    michael.porter@gray-robinson.com

19

GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida  32801
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

Local Counsel for Plaintiff,
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2011, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system.

/s/ *Lynda J. Zadra-Symes*
**LYNDA J. ZADRA-SYMES, ESQ.**