**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MONSTER ENERGY COMPANY, f/k/a
HANSEN BEVERAGE COMPANY,                    Case No. 6:11-CV-329-ORL-22DAB
d/b/a MONSTER BEVERAGE
COMPANY,

        Plaintiff,

   vs.

CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC., JOE COOL,
INC., JOE COOL BIKE WEEK INC.,
MICHELLE AMAR, YOSEF AMAR,
DAVID BAKSHT (a/k/a David Lipsker
a/ka David Bakshet a/ka D Bakht a/k/a
David Bakshet a/k/a DM Schneerson
a/k/a Abraham Shneorson),

        Defendants.

                  /

**MEC'S OPPOSITION TO DEFENDANTS CONSOLIDATED DISTRIBUTORS, INC.**
**AND DAVID BAKSHT'S MOTION TO SET ASIDE ENTRY OF DEFAULT;**
**REQUEST FOR ORAL ARGUMENT PURSUANT TO L.R. 3.01(j)**

    Plaintiff Monster Energy Company, f/k/a Hansen Beverage Company d/b/a

Monster Beverage Company ("MEC"),  respectfully requests this Honorable Court to

render an Order denying the motion to set aside entry of clerk's default filed by

Defendants David Baksht and his company, Consolidated Distributors, Inc. ("CDI"),

(collectively, "Defendants"), and in support states:

**I.  SUMMARY OF ARGUMENT**

    Defendants Baksht and CDI[1] have demonstrated an intentional and reckless

---

[1] Although a clerk's default has been entered against Baksht, CDI, and Mettemp,
Defendants' instant motion is submitted only on behalf of Baksht and CDI.  MBC has previously

disregard for this Court's proceedings, which is alone sufficient to deny vacating the default. Defendants admit they were fully aware of this case from its inception. In addition, their actions prove they have closely monitored this case's progress. Yet, Defendants failed to appear before this Court for more than a year. Defendants have also evaded and frustrated service, behaved dishonestly, and sent MEC and MEC's counsel numerous emails negotiating on their own behalf.

The record evidence belies Defendants' claim that Attorney Robert E. Pershes was serving as their legal counsel at any time. Indeed, in his Declaration submitted herewith, Attorney Pershes confirms that he has never represented Defendants Baksht (aka Lipsker), CDI, Mettemp or the National Trademark Center. Further, Defendants have failed to submit any evidence of a signed retainer agreement with Attorney Pershes, and Defendants have actively and openly worked against the interests of Attorney Pershes' clients (the Amar Defendants) by directly emailing MEC's counsel various messages, such as "send me the affidavit you want me to sign and settlement, looks like we've been had before you sign sepparate [sic] agreement with the amars which you may not wish to sign without attorney's fees," and "please call us we think we can find a resolution youd [sic] like with or without joe cool."

Both before and after the emails submitted with David Baksht's Declaration in support of Defendants' motion, Mr. Baksht sent several emails to MEC's counsel

---

settled with Defendants Yosef Amar, Michelle Amar, Joe Cool, Inc., and Joe Cool Bike Week, Inc. (the "Amar Defendants").

negotiating directly on behalf of himself and CDI without copying Mr. Pershes, thus indicating he was fully aware Attorney Pershes did not represent him or CDI.

Because Defendants have been unrepresented by counsel throughout this case, MEC's counsel was able to discuss settlement directly with them. To this end, MEC's counsel sent Defendant Baksht reminder emails about his companies' need for legal counsel, stating "you'll need an attorney [to] sign the Motion for Final Judgment on behalf of Consolidated Distributors and Mettemp," and "as any resolution of this case will require various filings with the Court, it will be necessary for CDI and Mettemp to be represented by counsel."

Other factors also justify maintaining the clerk's entry of default. Defendants failed to act timely to attempt to correct their default. They did not even appear until more than five months after MEC's first motion for entry of default against Defendants CDI, Baksht and Mettemp, more than two months after MEC's second motion for entry of default, and more than a month and a half after default was entered. Defendants also filed their motion more than eight weeks after the Court rendered a Consent Final Judgment between MEC and the Amar Defendants (Doc. 102), thus putting Baksht and CDI on notice that the Amar Defendants had settled without them. If Defendants truly believed Attorney Pershes was representing them in settlement negotiations, they should be able to produce at least one email substantiating the representation. Their failure to do so speaks volumes.

Defendants also failed to allege any meritorious defenses against MEC's claims, and instead plead only bare legal conclusions that are not credible and fail to

provide even a minimum level of the specificity required to meet their burden. Finally, maintenance of the clerk's default weighs in favor of the public's interest in this case, precisely because it provides a remedy against Defendants' inexcusable course of conduct.

Accordingly, MEC respectfully submits that the Clerk's entry of default against these Defendants should be rightfully and justly upheld.

## II. BACKGROUND

### A.   Defendants Received the Initial Complaint in March 2011

More than a year ago, in March 2011, MEC filed its Complaint against the Defendants, Mettemp and the Amar Defendants, asserting claims for trademark infringement, counterfeiting, copyright infringement and other related causes of action. Doc. 2. Defendants admit having actual notice of this lawsuit shortly after it was filed. Doc.110-1 ¶ 3.

On March 10, 2011, Defendant Baksht spoke with MEC's counsel about potentially agreeing to voluntarily accept service on behalf of himself, CDI and his other company, Mettemp. Mitchell Dec. ¶ 6. That same day, MEC's counsel sent a follow up email to Baksht at davidlipsker@gmail.com, requesting confirmation of voluntary acceptance of service, to which Baksht responded "please send me package e mail." *Id.* at ¶ 7, Ex. 1. That same day MEC's counsel emailed Baksht a link to the electronic form service documents and verified that Baksht (or someone acting at his behest) accessed these service documents through the provided link. *Id.* at ¶¶ 8-9, Exs. 2, 3. Shortly thereafter, Baksht emailed MEC's counsel that "you

have the name wrong its lipsker where did get name baksht".   Symes Dec. ¶ 5, Ex.

25.   On March 14, 2011, MEC's counsel again sent Baksht an email requesting he

accept service of process on behalf of himself, CDI and Mettemp.   Mitchell Dec. ¶

11, Ex. 5.   After receiving a blank email from Baksht on April 13, 2011, MEC's

counsel again asked Defendants to accept service of process, to which Baksht

replied: "you have reached the wrong e mail addrs [sic]."   *Id.* at ¶ 12, Ex. 6.   In his

Declaration and exhibits supported in support of Defendants' motion, David Baksht

now admits that he uses the email davidlipsker@gmail.com.   Doc. 110-1 ¶¶ 6-7, pp.

10-11.

## B.   Defendants Repeatedly Evaded Service

Defendants Baksht and CDI repeatedly evaded and frustrated MEC's efforts

to serve its initial Complaint and Amended Complaint.   *See* Docs. 57, 58, 98 pp. 3-

8.[2]   As part of such efforts, MEC hired a private investigator and discovered that

Baksht uses numerous aliases, including the aliases of David Lipsker, David

Bakshet, D. Bakht, DM Schneerson, shneerson, and Abraham Shneorson, and

appears to deliberately insert errors into publicly filed documents to hide his actual

identity and whereabouts. Docs. 78 ¶¶ 2-5, 79 ¶¶ 5-9, 98, pp. 3, 6-8, 98-1 ¶¶ 2-6,

pp. 5-9, 14-16.   As of June 21, 2011, MBC's investigator confirmed that David

Lipsker and David Baksht are the same person through telephone calls made to a

phone number linked to Baksht's best-known physical address.   Doc. 98-2 ¶¶ 5-6.

---

[2]   MEC initially attempted to serve CDI with the Complaint by serving it on Mr. Amar, whose name appeared as president or VP of CDI in CDI trademark applications.   Docs. 29, 58 ¶ 4-7, 58-1 pp. 2-7. Mr. Amar subsequently claimed he had no authority to accept service for CDI.   Doc. 79 ¶ 9.

Service of the initial Complaint was eventually effected on Defendant Baksht on May 2, 2011 in compliance with New York law.  Doc. 57, p. 2.[3]  (service effective 10 days after filing proof of service).  Service of the Amended Complaint (including Baksht's alias names) was effected on Defendant Baksht (and aliases) on August 28, 2011 via New York State law.  Docs. 89 pp. 1-2, 98 pp. 3-4 (effective 10 days after filing proof of service).

Defendant CDI used similar tactics to evade and frustrate service.  *See* Docs. 79 ¶¶ 5-9, 98 at pp. 6-8, 98-1, ¶ 4, pp.13-14.[4]  On July 28, 2011, service of the Amended Complaint was effected on CDI and Mettemp pursuant to Florida Law. Doc. 87 ¶¶ 5-6, 98 at p. 8.[5]

## C.   Defendants Have Carefully Monitored This Litigation

Defendant Baksht has repeatedly communicated directly with MEC's counsel regarding the progress of the litigation and potential settlement.  For example, on April 13, 2011, Baksht sent two emails to MEC's counsel, including one threatening

---

[3] On June 17, 2011, MEC filed a Motion for Default against David Baksht.  Doc. 77.  After discovering Defendants' aliases, MEC filed its Motion to Amend the Complaint on June 30, 2011. Doc. 78.  The Court denied MEC's Motion for Default against Baksht as moot and granted MEC's motion to amend re: aliases.  Doc. 81.  The Amended Complaint was filed on July 8, 2011. Doc. 82.

[4] Defendant CDI is no stranger to default proceedings.  Default judgment was recently entered against CDI on December 19, 2011 in Case No. 6:11-cv-233-Orl-35DAB as a result of CDI's failure to appear.  In that case, the court found CDI had made fraudulent statements in its trademark application and had made false allegations of trademark infringement.

[5] On September 29, 2011, MEC filed a Motion for Entry of Default against Defendants CDI, Baksht and Mettemp, Doc. 90, which the Court denied without prejudice on October 7, 2011, requesting a memorandum on service under New York law. Doc. 91.  On December 15, 2011, MEC and the Amar Defendants filed a Joint Motion for Entry of Consent Final Judgment and Permanent Injunction.  Doc. 95. On December 22, 2011, MEC filed a revised Motion for Entry of Default Re: Baksht, CDI and Mettemp, including a supporting memorandum of New York law. Doc. 98.

Rule 11 sanctions and a bar complaint.  Mitchell Dec. ¶ 13, Exs. 7-8. That same day, Baksht directly emailed MEC a warning that "we are not sure you are being [made] aware of dangers posed to your position in this case a counter claim was [filed] for the [cancellation] of the monster energy mark registration…" *Id.* at ¶ 14, Ex. 9.

On June 6, 2011, Baksht emailed MEC's counsel stating: "if you ever want to talk to us re resolution of the case feel free to call us."  *Id.* at ¶ 16, Ex. 11.  That day Baksht also forwarded to MEC's counsel an email from Baksht to the Amar Defendants and Attorney Robert Pershes (Amar Defendants' counsel) stating: "neither you nor Joe cool inc. nor any one else other then consolidated distributors inc have authority to cancel or withdraw any trademark registrations or applications or sign any documents whatsoever on behalf of consolidated." *Id.* at ¶ 17, Ex. 12. On July 8, 2011 Defendant Baksht emailed MEC's counsel stating "please call us we think we can find a resolution [you'd] like with or without joe cool." *Id.* at ¶ 18, Ex. 13.

On July 14, 2011, MEC's counsel sent Baksht an email attaching proposed settlement documents and expressly stating that an attorney must sign the Motion for Final Judgment on behalf of Consolidated and Mettemp.  *Id.* at ¶ 19, Ex. 14.  On July 15, Defendant Baksht confirmed that Defendants "will look at this after the week end."  *Id.* at ¶ 20, Ex. 15.  Later that same day, MEC's counsel received another email from Defendant Baksht stating that "we understood persher [sic] is negotiating the global settlement for the parties, before or after the amar depo." *Id.* at ¶ 21, Ex. 16.  Shortly thereafter, Attorney Pershes confirmed in writing to MEC's counsel that

"neither Mr. Baksht nor, his entities are my client, and I do not converse with them." *Id.* at ¶ 22, Ex. 17.

On July 26, 2011, Defendant Baksht sent MEC's counsel an email stating "you never called re my offer." *Id.* at ¶ 23, Ex. 18. On August 1, Defendant Baksht emailed MEC's counsel stating "A jury consists of twelve persons chosen to decide who has the better lawyer." *Id.* at ¶ 24, Ex. 19. On August 23, 2011, Defendant Baksht emailed MEC's counsel stating, "send me the affidavit you want me to sign and settlement, looks like we've been had before you sign sepparate [sic] agreement with the amars which you may not wish to sign without attorney's fees." *Id.* at ¶ 25, Ex. 20. MEC's counsel responded by stating, among other things, that "[a]s any resolution of this case will require various filings with the Court, it will be necessary for CDI and Mettemp to be represented by Counsel." *Id.* at ¶ 27, Ex. 21. In addition, Baksht sent emails with details of the proceedings to MEC, MEC's counsel, Attorney Pershes, and the Amar Defendants. *See, e.g., id.* at ¶¶ 13-15, 17, Exs. 7-10, 12. Defendants also stated that they "are litigation consultants to attorneys in trademark cases". *Id.* at ¶ 13, Ex. 8.

In August 2011, Defendant Baksht filed a grievance with the Florida Bar against MEC's local counsel in connection with this case, upon which the Florida Bar closed the file because "[t]here is insufficient evidence from the materials provided that Mr. Mitchell has violated any of the rules adopted by the Supreme Court of Florida which govern attorney discipline." *Id.* at ¶¶ 26, 28, Ex. 22.

Defendants engaged in other activities demonstrating that they were following the proceedings and knew Attorney Pershes did not represent them.  In May 2011 (two months after Attorney Pershes' proposed retainer letter attached to Defendant Baksht's declaration), CDI filed a Request with the US Patent & Trademark Office for Extension of Time to Oppose MEC's federal trademark application for the ⫲ ("M-Claw") mark, specifically for the trademark class code of clothing.  Symes Dec. ¶ 3, Ex. 23.[6]  In the request, CDI stated that it "need[ed] additional time to seek counsel" and "need[ed] additional time to investigate the claim" and "is engaged in settlement discussions with applicant [MEC]."  *Id.* (emphasis added).[7]

On March 29, 2011, the USPTO rejected CDI's trademark application for its ("3DL") mark for being "nearly identical" to MEC's previously registered ("Monster Energy M-Claw") mark in connection with clothing.  *Id.* at ¶ 8, Ex. 28 at pp. 8-9.   Subsequently, on September 12, 2011, CDI filed a response seeking suspension of its 3DL application "because applicant [CDI] is currently in litigation with the owner of cited marks…."  *Id.* at ¶ 8, Ex. 28 at p. 12 (emphasis added).

---

[6] MEC owns numerous other federal trademark registrations that incorporate its M-Claw mark for use in connection with various products, including those listed in the Amended Complaint.  Doc. 82 ¶¶ 19-20, Exs. A-C, G, I, J.

[7] The extension request lists the email address davidlipsker@gmail.co.; CDI's Extension of Time to Oppose terminated in September 2011. MEC received federal registration for its M-Claw mark for clothing in November 2011.  Symes Decl. ¶¶ 3-4, Exs. 23-24.

### III. <u>LEGAL STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 55(a), default is entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  Once default is entered, the court has discretion to vacate default for good cause.  *Turner v. Smith, Dean & Assocs.* No. 8:10-cv-1665-JDW-AEP, 2011 WL 589473, *1 (M.D. Fla. Feb. 10, 2011).  "A party seeking to vacate a default has the <u>burden of showing good cause </u>as to why the default should be vacated."  *Almacen Boyaca Cia. Ltda. v. Gran Golfo Express*, 771 F. Supp. 354, 355 (S.D. Fla. 1991) (emphasis added).

Although good cause "is not susceptible to a precise formula . . . some general guidelines are commonly applied."  *Compania Interamericana Export-Import, S.A. v. Compania Dominicana De Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).  Some factors considered, include "whether the default was culpable or willful, whether setting it aside would prejudice the adversary, [] whether the defaulting party presents a meritorious defense [,] whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default." *Id.*  "However, if a party willfully defaults by displaying either an <u>intentional or reckless disregard for the judicial proceedings</u>, the court need make no other findings in denying relief."  *Id.* at 951-52 (emphasis added).

## IV.  DEFENDANTS FAIL TO SHOW GOOD CAUSE

### A.      Defendants Intentionally and Recklessly Disregarded the Proceedings

Defendants' willful default in intentionally and recklessly disregarding these proceedings is sufficient to deny their motion.  *Compania*, 88 F.3d at 951.

#### 1.      *Defendants Knowingly Delayed Their Appearance*

"Upon proper notification of pending action parties must respond diligently, or face the concededly harsh consequences of a judgment resulting not from consideration of the merits, but from the parties' own inaction."  *Rogers v. Allied Media (In re Rogers)*, 160 B.R. 249, 254 (Bankr. N.D. Ga. 1993) (quoting *Federal Deposit Ins. Corp. v. Francisco Inv. Corp.,* 873 F.2d 474, 478 (1st Cir. 1989)); see also, *Compania*, 88 F.3d at 952.

In his Declaration, David Baksht admits that Defendants received notice of the action shortly after it was filed.   Doc. 110-1 ¶ 3.   Despite knowing of the proceedings and having received the complaint and other service documents (Mitchell Dec. ¶¶ 6-9), Defendants failed to respond to this action until more than a year after MEC's initial complaint (Doc. 2) and more than eight months after MEC filed the Amended Complaint (Doc. 82).   Defendants' actual knowledge of the Complaint obligated Defendants to respond to the litigation.  *Katz v. MRT, LLC*, No. 07-61438-CIV, 2008 WL 2368210, *2 (S.D. Fla. June 10, 2008) (determining that moving party's failure to act was willful because "receiving a copy of the Complaint . . . is all that was required to make him aware of his obligation to respond to the Complaint.").   Indeed, entry of default has been upheld in cases involving much

shorter delays than one year.  See, e.g., *Almacen Boyaca,* 771 F. Supp. at 357 (10 month delay not reasonable); *Heaton v. Bonacker & Leigh*, 173 F.R.D. 533, 536 (M.D. Ala. 1997) (five month delay not reasonable).  Further, Defendants' strategy of evading service is evidence that Defendants' lengthy delay in making an appearance was a tactical choice.  *See Swaim v. Moltan Co.*, 73 F.3d 711, 721 (7th Cir. 1996) ("What is rotten in this record is [defendant's] continued effort to avoid service of process and frustrate the efficient administration of justice.  Such circumstances warrant the use of default.").

Defendants' actions also demonstrate that Defendants monitored the proceedings closely and knew detailed facts about the Court file and documents. *See, e.g.*, Mitchell Dec. ¶¶ 13-15, Exs. 7-10.  Baksht also filed a complaint against MEC's local counsel with the Florida State Bar in connection with this case, sought to oppose MEC's federal trademark application at the USPTO, and requested a suspension of CDI's federal trademark application because "applicant [CDI] is currently in litigation with the owner of cited marks [MEC] in case no 6:11-CV-329 . . ."  *Id.* at ¶¶ 26, 28, Ex. 22; Symes Dec. at ¶¶ 4, 8, Exs. 24, 28 at p. 12.

### 2.      *Defendants Knew They Were Not Represented By Counsel*

Defendants' contention that they believed Attorney Pershes was representing them is not credible in light of the record evidence, such as Mr. Pershes' Declaration that "I was not retained by and have never represented Defendants Consolidated Distributors Inc., Mettemp Inc., and/or David Baksht (a/k/a David Lipsker) in this case or any other case."  Pershes Dec. ¶ 5.

Attorney Pershes' March 11, 2011 letter (Doc. 110-1 at pp. 5-8) specifically states that it is an offer of terms and that to be represented, Baksht had to satisfy the conditions precedent of signing and returning the engagement agreement and paying a retainer fee: "If you agree to these terms, please <u>sign below</u> and return one copy signed to me, <u>along with the requested retainer so we may commence representation.</u>" Doc. 110-1 p. 8 (emphasis added). Baksht provides no evidence, nor does he even allege that the proposed retainer agreement was ever executed.

The bank statement attached to Baksht's Declaration (Doc. 110-1) is not even from his or CDI's account. *Id.* at 9. Defendants present no evidence showing the money even went to Yosef Amar, or that the money was used as a loan from CDI to Yosef Amar and Joe Cool, or that Amar or Attorney Pershes ever agreed that Amar's repayment could be used as these Defendants' retainer.

And on July 18, 2011, at the same time Defendants claim they believed Mr. Pershes was negotiating settlement on their behalf, Attorney Pershes confirmed in writing that he was not even communicating with Defendants. Mitchell Dec. ¶ 22, Ex. 17 ("Neither Mr. Baksht nor, his entities are my client, and I do not converse with them."). Shortly thereafter, Defendant Baksht sent emails to MEC's counsel negotiating on his own behalf, thus indicating that he was fully aware Attorney Pershes did not represent him or CDI. *Id.* at ¶¶ 23, 25 Exs. 18, 20. Moreover, MEC's counsel repeatedly requested Defendants to retain legal counsel. *Id.* at ¶¶ 19, 27, Exs. 14, 21.

Throughout this case, Attorney Pershes consistently confirmed to MEC's counsel and the Court that he did not represent Defendants. *See* Doc. 19 (Pershes' Notice of Appearance).   At the preliminary injunction hearing and in response to questions about the appearances of CDI, Mettemp and Baksht, "[c]ounsel inform[ed] the court there has been no appearance for [CDI, Mettemp, and Baksht]."  Doc. 35; *see also* Doc. 40 p.1, n.1.  As proceedings continued, Attorney Pershes continued to make plain in the Amar Defendants' filings that he represented only the Amar Defendants.  *See, e.g.,* Docs. 36, 85, 95, 102.  Because Defendants had access to these public and readily available records and were monitoring the lawsuit, they must have known (or at the very minimum should have known) that Attorney Pershes did not represent them in this case.

Finally, Defendants' own actions during these proceedings prove they knew Attorney Pershes did not represent them.  Defendants frequently sent MEC emails regarding settlement discussions and the Court record, and would not have done so if they truly believed that Attorney Pershes represented them.  Mitchell Dec. ¶¶ 10, 16, 18, 20, 23, 25, Exs. 4, 11, 13, 15, 18, 20.

### 3.   *Defendants Engaged in Dishonest and Obstructive Behavior*

In support of their instant motion, Defendants submit emails from "david lipsker" at davidlipsker@gmail.com and declared under penalty of perjury that these emails were from David Baksht.  Doc. 110-1 pp. 2-4, 10-11.  However, in prior communications with MEC's counsel, Baksht denied he was David Lipsker, and also represented that davidlipsker@gmail.com is not his email.  Mitchell Dec. ¶ 12 Ex. 6;

Symes Dec. ¶ 5, Ex. 25.  Additionally, Defendants sent emails apparently trying to work against a settlement between MEC and the Amar Defendants.  Mitchell Dec. ¶¶ 17-18, Exs. 12-13.   Defendants also sent MEC and its counsel numerous unprofessional emails.  See, e.g., *id.* at ¶¶ 13-14, 24, Exs. 7-9, 19; Symes Dec. ¶ 5, Ex. 25.

## B.   Other Factors Justify Maintaining the Default

Although Defendants' inexcusable disregard for these proceedings is sufficient alone to deny Defendants' motion, additional factors further support the denial of Defendants' requested relief.

### 1.   *Defendants Did Not Act Promptly to Correct Their Default*

Defendants filed their motion to lift entry of default more than five months after MEC's first motion for default against Defendants Baksht, CDI and Mettempt, more than two months after MEC's second motion for default, and more than a month and a half after default was entered.  These delays further support denying Defendants' motion to vacate.  See *Turner,* 2011 WL 589473 at *2 (refusing to lift entry of default where defendant chose "to wait more than a month before filing its motion to vacate").

### 2.   *Defendants Do Not Present a Meritorious Defense*

"In contrast to the customary response to a complaint, there exists a higher burden of proof to establish a meritorious defense in a motion to remove an entry of default."  *In re Rogers,* 160 B.R. at 254.  "While a mere denial may suffice in an answer, the defendant <u>must go beyond a mere denial and present more evidence</u> at

this stage of the proceeding to justify setting aside the default." *Id.* (emphasis added); *Turner*, 2011 WL 589473 at *2 (denying motion to vacate because "[d]efendant has not offered any facts or argument to explain how its defenses are likely to succeed."); *Turner Broadcasting Sys. v. Sanyo Electric, Inc.,* 33 B.R. 996, 1002 (N.D. Ga. 1983), *aff'd*, 742 F.2d 1465 (11th Cir. 1984) ("It is well settled that general denials and conclusive statements are insufficient to establish a meritorious defense; the movant must present a factual basis for its claim"); *United States v. Topeka Livestock Auction, Inc.*, 392 F. Supp. 944, 951 (N.D. Ind. 1975) (finding it is "absolutely essential" that the defaulting party "claim with specificity" meritorious defenses).

Defendants first alleged defense—that MEC seeks to improperly extend marks, mismark, and misuse registration marks—does not state any facts which, if true, would create a plausible defense, and the motion does not provide any evidence that would support any such allegations.   MEC own numerous federally registered trademarks that include its M-Claw mark, including U.S. Trademark Registration No. 4051650 for the mark ("M-Claw") in connection with clothing[8], (Symes Dec. ¶ 4, Ex. 24) and Registration No. 3908601 for the mark ("Monster Energy M-Claw") in connection with clothing.    (Doc. 82; ¶ 19; Exs. A-C, G, I, J).

_____

[8] Registration No. 4051650 issued after the Amended Complaint was filed.  Symes Dec. ¶ 4, Ex. 24. If this case is permitted to proceed, MEC will seek to amend the Complaint to add this Registration.

These registrations constitute *prima facie* evidence of MEC's exclusive right to use the marks on or in connection with the goods listed in the registrations.  15 U.S.C. § 1115.  Additionally, since 2002 MEC has used its M-Claw and Monster Energy M-Claw marks in connection with many goods including clothing.  Doc. 82 ¶ 18.

Defendants' second and third alleged defenses—that the letter M and claw marks are generic and lack secondary meaning as indicators of source of MEC's goods—also fail to state plausible defenses.  MEC's federal registrations are *prima facie* evidence that MEC's M-Claw and Monster Energy M-Claw marks have acquired distinctiveness in the marketplace.  15 U.S.C. § 1115.  Moreover, pursuant to 15 U.S.C. § 1065, MEC's U.S. Trademark Registration No. 2903214 for use in connection with beverages has become incontestable.   Doc. 82 ¶¶ 19-20. Defendants provide no factual basis to counter MEC's assertion that MEC has developed and cultivated significant good will and brand recognition in its distinctive M-Claw and Monster Energy M-Claw marks.  Doc. 82 ¶¶ 14-27.

Defendants allege that their mark is not likely to confuse consumers because there are some differences between MEC's M Claw Trademark and Defendants' infringing mark.  But a mark does not have to be identical to be likely to confuse consumers.  Likelihood of confusion is based on a number of factors, none of which require that the marks be identical.  *Tana v. Dantanna's*, 611 F.3d 767, 774-75 (11th Cir. 2010).  Moreover, Defendants do not allege any facts to support their defense. The marks are undeniably similar as demonstrated by the USPTO's rejection of

CDI's application for its   ("3DL") mark because it is "nearly identical" to MEC's

previously registered  mark. Symes Dec. ¶ 8, Ex. 28 at p. 8.  CDI's 3DL mark also incorporates the same colors MEC uses for its M-Claw and Monster Energy M-Claw marks.  See Doc. 82 ¶ 18.

Defendants' allegations in their fifth alleged defense and counterclaims for "Reverse Confusion", unfair competition and cancellation of MEC's U.S. Trademark Registrations are similarly defective.  Defendants' allegations rely on alleged prior use of the 3DL mark by Joe Cool, not any prior use by Defendants.  To plead a viable prior use defense, Defendants must sufficiently allege that Joe Cool used its 3DL mark prior to MEC's first use of its M-Claw Mark, that Joe Cool's alleged prior use performed the trademark function of identifying the source of the merchandise to consumers, and that Joe Cool's use was continuous.  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1218 (11th Cir. 2000).  Defendants have presented insufficient facts to support this defense.  Moreover, Joe Cool expressly assigned to MEC any prior rights Joe Cool might have in the 3DL mark.  Pershes Dec. ¶ 7, Ex. 1. Hence, the record evidence refutes Defendants' purported defenses and counterclaims.

Defendants' claims that David Baksht is not a proper party to this action and that MEC has failed to state a cause of action against Baksht also fail to reference any allegations, facts, or evidence to support such a defense.

### 3.    *Setting Aside the Entry of Default Would Prejudice MEC*

Defendants' delay has unduly prejudiced MEC, for the "expense a [party] incurs in prosecuting a suit in which the defendant has defaulted and presented no

meritorious defense, unduly prejudices the plaintiff." *In re Rogers*, 160 B.R. at 255 (quoting *Turner Broadcasting*, 33 B.R. at 1003).   Additionally, long delays risk causing serious prejudice to a plaintiff's claims.  *Heaton*, 173 F.R.D. at 536 (citing *Robinson v. United States*, 734 F.2d 735, 738 (11th Cir. 1984)) (delay of five months risked causing serious prejudice).  Here, Defendants delayed over a year after receiving MEC's first Complaint and more than eight months since they received MEC's Amended complaint.  In the interim, Defendants repeatedly evaded service even though they were aware of the Complaint.  As a result, rewarding Defendants for their wrongful behavior in this case would be unfairly prejudicial to MEC.

### 4.        Default Will Not Cause Significant Financial Loss to Defendants

MEC's pending Motion for Final Default Judgment, (Doc. 112), does not request an award of attorneys' fees, and instead merely seeks an award of statutory damages for an amount to be decided in the Court's discretion.   This financial exposure was certainly foreseeable to Defendants and has arisen on account of Defendants' own willful failure to respect and follow the Court's rules.

### 5.        The Public Interest Favors Denying Defendants' Motion

In light of Defendants' conduct, granting them a vacatur of the clerk's default would greatly harm the public's interest in enforcing compliance with rules of procedure.  To be sure,

> The default procedure offers a useful remedy to a good faith litigant who is confronted by an obstructionist adversary.  It also represents a means of encouraging an unwilling or uncooperative party to honor the rules established for litigation in the federal courts and provides the nondefaulting party an expeditious path to follow when his adversary does not do so or

simply abandons the contest.   <u>But if default is to be an effective sanction, relief under Rule 55(c) cannot be granted too readily.</u>

*Atlanta Gas Light Co. v. Semaphore Advertising, Inc.,* 747 F. Supp. 715, 718 (S.D. Ga. 1990) (internal quotations omitted and emphasis added).

## IV. <u>CONCLUSION</u>

WHEREFORE, Plaintiff MEC respectfully requests the Court to render an Order denying Defendants' Motion to Set Aside the Clerk's Entry of Default and granting Plaintiff MEC's pending Motion for Default Final Judgment in favor of MEC and against Defendants Consolidated, Mettemp and Baksht.   Pursuant to Local Rule 3.01(j), MEC respectfully requests oral argument on this motion and estimates that one (1) hour will be required.

Respectfully submitted,

Dated:  April 2, 2012            By:  s/ *Lynda J. Zadra-Symes*

RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida  32801
(407) 843-8880  Telephone
(407) 244-5690  Facsimile


Local Counsel for MEC, formerly
HANSEN BEVERAGE COMPANY
d/b/a  MONSTER BEVERAGE
COMPANY

JOHN B. SGANGA, JR. ESQ.
*(Admitted Pro Hac Vice)*
john.sganga@kmob.com
LYNDA J. ZADRA-SYMES, ESQ.
*(Admitted Pro Hac Vice)*
lynda.zadra-symes@kmob.com
LAUREN K. KATZENELLENBOGEN, ESQ.
*(Admitted Pro Hac Vice)*
lauren.katzenellenbogen@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, California  92614
(949) 760-0404  Telephone
(949) 760-9502  Facsimile

Lead Trial Counsel for MEC, formerly
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of April 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

_s/ Lynda J. Zadra-Symes_
LYNDA J. ZADRA-SYMES