UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| HANSEN BEVERAGE COMPANY, d/b/a MONSTER BEVERAGE COMPANY ("MBC"),<br><br>Plaintiff,<br><br>vs.<br><br>CONSOLIDATED DISTRIBUTORS, INC., METTEMP, INC., JOE COOL,INC., JOE COOL BIKE WEEK INC., DAVID BAKSHT, MICHELLE AMAR, AND YOSEF AMAR;<br><br>Defendants. | Case No. 6:11-CV-329-ORL-22DAB<br><br>**DEFENDANTS CONSOLIDATED DISTRIBUTORS, INC. AND DAVID BAKSHT'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF WITH DEMAND FOR JURY TRIAL** |

Defendants, CONSOLIDATED DISTRIBUTORS, INC. AND DAVID BAKSHT

(collectively referred to as "Defendants") hereby answer and assert their affirmative defenses to

the First Amended Complaint and assert their Counterclaim against Plaintiff as follows:

## JURISDICTION AND VENUE

1.      Defendants admit the allegations contained in Paragraph 1 of the Complaint for

jurisdictional purposes only, all else is denied.

2.      Defendants admit the allegations contained in Paragraph 2 of the Complaint for

jurisdictional purposes only, all else is denied.

3.      Defendants deny the allegations contained in Paragraph 3 of the Complaint and

demand strict proof thereof.

4.      Defendants admit the allegations contained in Paragraph 4 of the Complaint.

## THE PARTIES

5.       Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 5 of the Complaint and,, therefore, deny same and demand strict proof thereof.

6.       In response to the allegations contained in Paragraph 6 of the Complaint, Defendants admit that Defendant Consolidated Distributors, Inc. ("CDI") is a New York corporation with its principal place of business located at 719 Eastern Parkway, Brooklyn, New York 11213.   Defendants deny the remaining allegations contained in Paragraph 6 of the Complaint and demand strict proof thereof.

7.       Paragraph 7 is not addressed to these Defendants, however, to the extent any of the allegations in Paragraph 7 may be applied to these Defendants, they are deemed denied.

8.       Paragraph 8 is not addressed to these Defendants, however, to the extent any of the allegations in Paragraph 8 may be applied to these Defendants, they are deemed denied.

9.       Paragraph 9 is not addressed to these Defendants, however, to the extent any of the allegations in Paragraph 9 may be applied to these Defendants, they are deemed denied.

10.       In response to the allegations contained in Paragraph 10 of the Complaint, Defendants admit that Defendant David Baksht resides at 719 Eastern Parkway, Brooklyn, New York 11213.   Defendants deny the remaining allegations contained in Paragraph 10 of the Complaint and demand strict proof thereof.

11.       Defendants deny the allegations contained in Paragraph 11 of the Complaint and demand strict proof thereof.

12.       Paragraph 12 is not addressed to these Defendants, however, Defendants deny that Defendant Michelle Amar resides at 719 Eastern Parkway, Brooklyn, New York 11213, and to the

extent any of the remaining allegations in Paragraph 12 may be applied to these Defendants, they are deemed denied.

13.     Paragraph 13 is not addressed to these Defendants, however, Defendants deny that Defendant Yosef Amar resides at 719 Eastern Parkway, Brooklyn, New York 11213, and to the extent any of the remaining allegations in Paragraph 13 may be applied to these Defendants, they are deemed denied.

## COMMON LAW ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.     MBC's Trademarks

14.     Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 14 of the Complaint and, therefore, deny same and demand strict proof thereof.

15.     In response to the allegations contained in Paragraph 15 of the Complaint, Defendants admit that Plaintiff has alleged start of sale of its drink product in 2002.   Defendants deny the remaining allegations contained in Paragraph 15 of the Complaint and demand strict proof thereof.

16.     Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 16 of the Complaint and, therefore, deny same and demand strict proof thereof.

17.     Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 17 of the Complaint and, therefore, deny same and demand strict proof thereof.

18.     Defendants lack knowledge and lack information to either admit or deny the

allegations contained in Paragraph 18 of the Complaint and, therefore, deny same and demand strict proof thereof.

19.     In response to the allegations contained in Paragraph 19 of the Complaint, Defendants admit that Plaintiff alleged it filed various marks with the USFFO. Defendants deny the remaining allegations contained in Paragraph 19 of the Complaint and demand strict proof thereof.

20.     Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 20 of the Complaint and, therefore, deny same and demand strict proof thereof

21.     Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 21 of the Complaint and, therefore, deny same and demand strict proof thereof.

22.     Defendants deny the allegations contained in Paragraph 22 of the Complaint and demand strict proof thereof.

23.     In response to the allegations contained in Paragraph 23 of the Complaint, Defendants admit that Plaintiff has various drink products. Defendants deny the remaining allegations contained in Paragraph 23 of the Complaint and demand strict proof thereof.

24.     In response to the allegations contained in Paragraph 24 of the Complaint, Defendants admit that Plaintiff's products are sold with the mark M and the word "Monster". Defendants lack knowledge and lack information to either admit or deny the remaining allegations contained in Paragraph 24 of the Complaint and, therefore, deny same and demand strict proof thereof.

25.     Defendants lack knowledge and lack information to either admit or deny the

allegations contained in Paragraph 25 of the Complaint and, therefore, deny same and demand strict proof thereof.

26.      Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 26 of the Complaint and, therefore, deny same and demand strict proof thereof.

27.      Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 27 of the Complaint and, therefore, deny same and demand strict proof thereof.

### B.      **Defendants Infringement of the Mark**

28.      Defendants deny the allegations contained in Paragraph 28 of the Complaint and demand strict proof thereof, however, Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 28 as to the other Defendants.

29.      Paragraph 29 is admitted as to these Defendants, however, Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 29 as to the other Defendants.

30.      Defendants deny the allegations contained in Paragraph 30 of the Complaint and demand strict proof thereof.

31.      Defendants deny the allegations contained in Paragraph 31 of the Complaint and demand strict proof thereof.

32.      In response to the allegations contained in Paragraph 32 of the Complaint, Defendants admit that Consolidated filed the application to the Trademark Office.   Defendants deny the remaining allegations contained in Paragraph 32 of the Complaint and demand strict

proof thereof.

33.     In response to the allegations contained in Paragraph 33 of the Complaint, Defendants admit that Yosef Amar signed the application to the Trademark Office.   Defendants deny the remaining allegations contained in Paragraph 33 of the Complaint, refer to the application for a full and complete statement of its terms and demand strict proof thereof.

34.     In response to the allegations contained in Paragraph 34 of the Complaint, Defendants admit that Consolidated filed the application to the Florida Department of State Division of Corporations.   Defendants deny the remaining allegations contained in Paragraph 34 of the Complaint and demand strict proof thereof.

35.     In response to the allegations contained in Paragraph 35 of the Complaint, Defendants admit that Yosef Amar signed the application to the Florida Department of State Division of Corporations. Defendants deny the remaining allegations contained in Paragraph 35 of the Complaint, refer to the application for a full and complete statement of its terms and demand strict proof thereof.

36.     In response to the allegations contained in Paragraph 36 of the Complaint, Defendants admit that Consolidated filed the application to the Florida Department of State Division of Corporations.   Defendants deny the remaining allegations contained in Paragraph 36 of the Complaint and demand strict proof thereof.

37.     In response to the allegations contained in Paragraph 37 of the Complaint, Defendants admit that Yosef Amar signed the application to the Florida Department of State Division of Corporations. Defendants deny the remaining allegations contained in Paragraph 37 of the Complaint, refer to the application for a full and complete statement of its terms and demand strict proof thereof.

38.     In response to the allegations contained in Paragraph 38 of the Complaint, Defendants admit that Consolidated filed the application to the Florida Department of State Division of Corporations.   Defendants deny the remaining allegations contained in Paragraph 38 of the Complaint and demand strict proof thereof.

39.     In response to the allegations contained in Paragraph 39 of the Complaint, Defendants admit that Yosef Amar signed the application to the Florida Department of State Division of Corporations. Defendants deny the remaining allegations contained in Paragraph 39 of the Complaint, refer to the application for a full and complete statement of its terms and demand strict proof thereof.

40.     In response to the allegations contained in Paragraph 38 of the Complaint, Defendants admit that Consolidated filed the application to the New Jersey Division of Revenue. Defendants deny the remaining allegations contained in Paragraph 40 of the Complaint and demand strict proof thereof.

41.     Defendants deny the allegations contained in Paragraph 41 of the Complaint and demand strict proof thereof, except refer to the application for a full and complete statement of its terms.

42.     Defendants deny the allegations contained in Paragraph 42 of the Complaint and demand strict proof thereof.

43.     Defendants deny the allegations contained in Paragraph 43 of the Complaint and demand strict proof thereof.

44.     Defendants deny the allegations contained in Paragraph 44 of the Complaint and demand strict proof thereof.

45.     Defendants deny the allegations contained in Paragraph 45 of the Complaint and

demand strict proof thereof.

46.      Defendants deny the allegations contained in Paragraph 46 of the Complaint and demand strict proof thereof.

47.      Defendants deny the allegations contained in Paragraph 47 of the Complaint and demand strict proof thereof.

48.      Defendants deny the allegations contained in Paragraph 48 of the Complaint and demand strict proof thereof.

49.      Defendants deny the allegations contained in Paragraph 49 of the Complaint and demand strict proof thereof.


## COUNT ONE

(Trademark Infringement and Counterfeiting Under 15 U.S.C. § 1114)

50.      As to Paragraph 50 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-49 above, in their entirety, as if fully recited herein.

51.      Defendants deny the allegations contained in Paragraph 51 of the Complaint and demand strict proof thereof.

52.      Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 52 of the Complaint and, therefore, deny same and demand strict proof thereof.

53.      Defendants deny the allegations contained in Paragraph 53 of the Complaint and demand strict proof thereof.

54.      Defendants deny the allegations contained in Paragraph 54 of the Complaint and demand strict proof thereof.

55.     Defendants deny the allegations contained in Paragraph 55 of the Complaint and demand strict proof thereof.

56.     Defendants deny the allegations contained in Paragraph 56 of the Complaint and demand strict proof thereof.

57.     Defendants deny the allegations contained in Paragraph 57 of the Complaint and demand strict proof thereof.

58.     Defendants deny the allegations contained in Paragraph 58 of the Complaint and demand strict proof thereof.

## COUNT TWO

(Federal Dilution of the Trademark Under 15 U.S.C. § 1125(C))

59.     As to Paragraph 59 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-58 above, in their entirety, as if fully recited herein.

60.     Defendants deny the allegations contained in Paragraph 60 of the Complaint and demand strict proof thereof.

61.     Defendants deny the allegations contained in Paragraph 61 of the Complaint and demand strict proof thereof.

62.     Defendants deny the allegations contained in Paragraph 62 of the Complaint and demand strict proof thereof.

63.     Defendants deny the allegations contained in Paragraph 63 of the Complaint and demand strict proof thereof.

64.     Defendants deny the allegations contained in Paragraph 64 of the Complaint and demand strict proof thereof.

65.     Defendants deny the allegations contained in Paragraph 65 of the Complaint and demand strict proof thereof.

66.     Defendants deny the allegations contained in Paragraph 66 of the Complaint and demand strict proof thereof.

## COUNT THREE

(False Designation of Original Under 15 U.S.C. § 1125(A))

67.     As to Paragraph 67 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-66 above, in their entirety, as if fully recited herein.

68.     Defendants deny the allegations contained in Paragraph 68 of the Complaint and demand strict proof thereof.

69.     Defendants deny the allegations contained in Paragraph 69 of the Complaint and demand strict proof thereof.

70.     Defendants deny the allegations contained in Paragraph 70 of the Complaint and demand strict proof thereof.

71.     Defendants deny the allegations contained in Paragraph 71 of the Complaint and demand strict proof thereof.

72.     Defendants deny the allegations contained in Paragraph 72 of the Complaint and demand strict proof thereof.

73.     Defendants deny the allegations contained in Paragraph 73 of the Complaint and demand strict proof thereof.

74.     Defendants deny the allegations contained in Paragraph 74 of the Complaint and demand strict proof thereof.

## COUNT FOUR

(Copyright Infringement Under 17 U.S.C. § 501)

75.      As to Paragraph 75 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-74 above, in their entirety, as if fully recited herein.

76.      Defendants deny the allegations contained in Paragraph 76 of the Complaint and demand strict proof thereof.

77.      Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 77 of the Complaint and, therefore, deny same and demand strict proof thereof

78.      Defendants lack knowledge and lack information to either admit or deny the allegations contained in Paragraph 78 of the Complaint and, therefore, deny same and demand strict proof thereof.

79.      Defendants deny the allegations contained in Paragraph 79 of the Complaint and demand strict proof thereof.

80.      Defendants deny the allegations contained in Paragraph 80 of the Complaint and demand strict proof thereof.

81.      Defendants deny the allegations contained in Paragraph 81 of the Complaint and demand strict proof thereof.

82.      Defendants deny the allegations contained in Paragraph 82 of the Complaint and demand strict proof thereof.

## COUNT FIVE

(False Attribution Under 17 U.S.C. § 106(A))

83.     As to Paragraph 83 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-82 above, in their entirety, as if fully recited herein.

84.     Defendants deny the allegations contained in Paragraph 84 of the Complaint and demand strict proof thereof.

85.     Defendants deny the allegations contained in Paragraph 85 of the Complaint and demand strict proof thereof.

86.     Defendants deny the allegations contained in Paragraph 86 of the Complaint and demand strict proof thereof.

87.     Defendants deny the allegations contained in Paragraph 87 of the Complaint and demand strict proof thereof.

88.     Defendants deny the allegations contained in Paragraph 88 of the Complaint and demand strict proof thereof.

89.     Defendants deny the allegations contained in Paragraph 89 of the Complaint and demand strict proof thereof.

## COUNT SIX

(Cancellation of Florida Trademarks under § 495.101, FLA. STAT. (2010))

90.     As to paragraph 90 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-89 above, in their entirety, as if fully recited herein.

91.     Defendants deny the allegations contained in Paragraph 91 of the Complaint and demand strict proof thereof.

92.     Defendants deny the allegations contained in Paragraph 92 of the Complaint and demand strict proof thereof.

93.     Defendants deny the allegations contained in Paragraph 93 of the Complaint and demand strict proof thereof.

94.     Defendants deny the allegations contained in Paragraph 94 of the Complaint and demand strict proof thereof.

95.     Defendants deny the allegations contained in Paragraph 95 of the Complaint and demand strict proof thereof.


## COUNT SEVEN

(Florida Statutory Unfair Competition)

96.     As to Paragraph 96 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-95 above, in their entirety, as if fully recited herein.

97.     Defendants deny the allegations contained in Paragraph 97 of the Complaint and demand strict proof thereof.

98.     Defendants deny the allegations contained in Paragraph 98 of the Complaint and demand strict proof thereof.

99.     Defendants deny the allegations contained in Paragraph 99 of the Complaint and demand strict proof thereof.

100.     Defendants deny the allegations contained in Paragraph 100 of the Complaint and demand strict proof thereof.

101.     Defendants deny the allegations contained in Paragraph 101 of the Complaint and demand strict proof thereof.

102.    Defendants deny the allegations contained in Paragraph 102 of the Complaint and demand strict proof thereof.

## COUNT EIGHT

(Florida Common Law Unfair Competition)

103.    As to Paragraph 103 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-102 above, in their entirety, as if fully recited herein.

104.    Defendants deny the allegations contained in Paragraph 104 of the Complaint and demand strict proof thereof.

105.    Defendants deny the allegations contained in Paragraph 105 of the Complaint and demand strict proof thereof.

106.    Defendants deny the allegations contained in Paragraph 106 of the Complaint and demand strict proof thereof.

107.    Defendants deny the allegations contained in Paragraph 107 of the Complaint and demand strict proof thereof.

108.    Defendants deny the allegations contained in Paragraph 108 of the Complaint and demand strict proof thereof.

## COUNT NINE

(Statutory Dilution Under § 495.151, Fin. Stat. (2010))

109.    As to Paragraph 109 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-108 above, in their entirety, as if fully recited herein.

110.    Defendants deny the allegations contained in Paragraph 110 of the Complaint and

14

demand strict proof thereof.

111.    Defendants deny the allegations contained in Paragraph 111 of the Complaint and demand strict proof thereof.

112.    Defendants deny the allegations contained in Paragraph 112 of the Complaint and demand strict proof thereof.

113.    Defendants deny the allegations contained in Paragraph 113 of the Complaint and demand strict proof thereof.

114.    Defendants deny the allegations contained in Paragraph 114 of the Complaint and demand strict proof thereof.

115.    Defendants deny the allegations contained in Paragraph 115 of the Complaint and demand strict proof thereof.

## COUNT TEN

(Cancellation of New Jersey Trademark under N.J. Stat. Ann. § 56:3-13.8)

116.    As to Paragraph 116 of the Complaint, Defendants repeat, reallege and incorporate by reference their responses to Paragraphs 1-115 above, in their entirety, as if fully recited herein.

117.    Defendants deny the allegations contained in Paragraph 117 of the Complaint and demand strict proof thereof.

118.    Defendants deny the allegations contained in Paragraph 118 of the Complaint and demand strict proof thereof.

119.    Defendants deny the allegations contained in Paragraph 119 of the Complaint and demand strict proof thereof.

120.    Defendants deny the allegations contained in Paragraph 120 of the Complaint and

demand strict proof thereof.

121.     As to any allegations in the Amended Complaint not specifically admitted, it should be deemed denied.

## AFFIRMATIVE DEFENSES

122.     As and for their First Affirmative Defense and while denying any liability to or damages suffered by Plaintiff, Defendants state that Plaintiff's claims are barred by the doctrine of unclean hands.   Specifically, Plaintiff has mismarked and misused registration markings on apparel associated with Monster Energy.

123.     As and for their Second Affirmative Defense and while denying any liability to or damages suffered by Plaintiff, Defendants state that Plaintiff's claims are barred by the doctrine of unclean hands. Specifically, based upon Plaintiff's representations, this Court entered a Temporary Restraining Order, Order to Show Cause, and Order of Seizure on March 4, 2011 ("TRO and Seizure Order") [DE 7], which authorized federal marshals to essentially raid Defendant Joe Cool's office and warehouse in Daytona Beach, which occurred on March 7, 2011. The order permitted the federal marshals not only to search, seize, and impound the merchandise that Plaintiff had misrepresented was counterfeit; it also authorized them to seize and impound Defendant Joe Cool's pertinent business records. Based on what was later revealed, the Court realized that Plaintiff, through its misrepresentations, effectively abused this legal process. Accordingly, Plaintiff is not entitled to further equitable relief after having misrepresented its case.

124.     As and for their Third Affirmative Defense and while denying any liability to or damages suffered by Plaintiff, Plaintiffs mark lacks secondary meaning.   In particular, Defendants state that Plaintiff's mark, i.e., the letter "M," is generic, or descriptive at best, and has

not become distinctive as purchasers do not associate the letter "M" with Plaintiff in connection with clothing.

125.    As and for their Fourth Affirmative Defense and while denying any liability to or damages suffered by Plaintiff, Plaintiffs mark in the context of t-shirts and apparel is generic.   In particular, while, arguably a claw mark that appears to be ripped through an aluminum can may be a fanciful trademark for a beverage, a claw mark is a generic symbol in connection with t-shirts and apparel, and has not become distinctive as purchasers do not associate a claw mark with Plaintiff in connection with clothing.

126.    As and for their Fifth Affirmative Defense and while denying any liability to or damages suffered by Plaintiff, Defendants state their denial that there is a likelihood of confusion. Specifically, Defendants state that no likelihood of confusion is created because the marks themselves are not confusingly similar, as Plaintiffs registered use of the M Claw mark alone, as set forth in the trademark registrations under Exhibits A to I and K to the Complaint, is limited to beverages and stickers.   Plaintiff's registered trademark for use on apparel is not limited to the "M" mark alone, but instead, the entire mark consists of Plaintiffs "M" mark plus the words "Monster Energy," as set forth in the trademark registration under Exhibit J to the Complaint. In direct contrast, Defendants' use of their 3DL mark is limited to apparel, including t-shirts and tank-tops and is not an "M" but three drooping lines that form the image of a claw mark.

127.    As and for their Sixth Affirmative Defense and while denying any liability to or damages suffered by Plaintiff, Defendants state in the alternative, that in the event any likelihood of confusion is found, Plaintiff is not the senior user of the mark.   Specifically, Defendants state they have priority of usage of the mark over Plaintiff, as the mark was used by Defendants Joe Cool, Inc. for clothing prior to any use by Plaintiff.

128.     As and for their Seventh Affirmative Defense and while denying any liability to or damages suffered by Plaintiff, Defendants state in the alternative, that Monster committed acts of fraud on the U.S.P.T.O. in obtaining the Registration No. 3908601, for the M Claw mark together with the words "MONSTER ENERGY" for use on clothing, thereby defeating that registration's incontestable status.

129.     Defendants reserve the right to amend and/or supplement their affirmative defenses to the Complaint as additional information is learned through discovery.

WHEREFORE, Defendants respectfully request this Court to dismiss each and every one of Plaintiffs claims upon the merits with prejudice, enter judgment against Plaintiff, awarding Defendants their taxable costs and attorney's fees as permitted by law, together with such other and further relief as the Court deems just and proper.


## AMENDED COUNTERCLAIMS OF CONSOLIDATED DISTRIBUTORS, INC. FOR DAMAGES AND INJUNCTIVE RELIEF WITH DEMAND FOR JURY TRIAL

130.     Defendant/Counterclaimant, CONSOLIDATED DISTRIBUTORS, INC. ("Defendant") by and through its undersigned counsel, hereby sues Plaintiff/Counterclaim-Defendant, MONSTER ENERGY COMPANY, formerly known as HANSEN BEVERAGE COMPANY, d/b/a MONSTER BEVERAGE COMPANY ("Plaintiff" and "Monster") and alleges as follows:


## PARTIES, JURISDICTION AND VENUE

131.     This is an action for:

a)     Damages and injunctive relief for reverse confusion under 15 U.S.C.

18

1125(a);

     b)     Damages, including punitive damages, and attorney's fees and costs for wrongful seizure under 15 U.S.C. 1116(d);

     c)     Declaratory Judgment under 28 U.S.C. § 2201; and

     d)     Under Florida common law, damages and injunctive relief for unfair competition, abuse of process and tortuous interference in contractual relations.

132.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1338 because Defendant's claims for violations of the United States Trademark Act, Title 15 of the United States Code, arises under federal law. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs state law claims because those claim are so related to the federal claims that they form part of the same case or controversy. In addition, jurisdiction over all claims is proper under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds seventy-five-thousand dollars.   Finally, the Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201

133.     Plaintiff is subject to the personal jurisdiction of this Court pursuant to Fla. Stat. § 48.193(1)(a) because Plaintiff has conducted, engaged in and carried out a business venture within the State of Florida; pursuant to Fla. Stat. § 48.193(b) because Plaintiff has committed tortious acts within the State of Florida; and pursuant to Fla. Stat. §48.193(2) because Plaintiff has engaged in substantial and not isolated business activities within the State of Florida.

134.     Plaintiff is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 550 Monica Circle, Suite 201, Corona, California 92880.

135.     Defendant/Counterclaimant Consolidated Distributors, Inc. ("CDI") is a New York

corporation with its principal place of business located at 719 Eastern Parkway, Brooklyn, New York 11213.

136.    CDI is in the business of trademark licensing mainly for apparel.

137.    Defendant, Joe Cool, Inc. is a Florida corporation with its principle place of business at 1052 N. Beach St., Holly Hill, Florida 32117.

138.    Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this Judicial District.

## GENERAL ALLEGATIONS

139.    CDI is the owner of the following marks: "Wildwood," "Design of 3 Drooping Green Lines On Angle," "Daytona Beach & Design of 3 Drooping Green Lines," and "Florida and Design of 3 Drooping Lines" (collectively the "3DL marks").

140.    The 3DL Marks were registered in the name of CDI as follows:

| Mark | State | Registration No. | Registration Date |
|------|-------|------------------|-------------------|
| Wildwood | New Jersey | TM23557 | September 29, 2010 |
| Design of 3 Drooping Green Lines on Angle | Florida | T10000001063 | October 7, 2010 |
| Daytona Beach & Design of 3 Drooping Green Lines | Florida | T10000000884 | August 9, 2010 |
| Florida and Design of 3 Drooping Lines | Florida | T100000001102 | October 21, 2010 |

141.    Joe Cool, Inc. is in the business of selling pre-printed clothing, primarily t-shirts with a heat transfer iron-on affixed to the t-shirt.

142.    Joe Cool, Inc. sells graphic design t-shirts and heat transfers in its retail shop and wholesale to other shops and distributors.

143.    In addition, Joe Cool Inc. has been a heat transfer and pre-printed apparel manufacturer for over 20 years.

144.    Joe Cool Inc. began using the 3DL marks in the mid 1990's.

145.    Joe Cool Inc., has used, promoted and advertised the 3DL marks continuously since 1993 and acquired substantial common law rights in the marks.

146.    Since 1993, Joe Cool Inc., has expended considerable funds in all terms of advertising, marketing and promotion of the 3DL marks to other distributors and end users.

147.    The 3DL marks have been utilized for numerous years by a multitude of clothing and heat transfer users.

148.    All of the uses of the 3DL marks are limited to apparel, including t-shirts and tank-tops.

149.    As a result of Joe Cool Inc.'s efforts, the 3DL marks are known in biker circles, *i.e.,* among motorcycle enthusiasts, and in beach shops for novelty t-shirts, sweatshirts and like clothing, as an indicator of the source of products provided in connection with the Marks, and establishing good will in the Marks.

150.    In or about July 2010, CDI and Joe Cool, Inc. entered into a joint venture partnership to exploit the 3DL marks (the "Joint Venture").   The Joint Venture consisted of and was formed with the following terms and overt acts:

    a)   Joe Cool Inc. assigned all right title and interest in the 3DL marks to CDI;

    b)   Yosef Amar, acting on behalf of CDI, registered the 3DL marks as trademarks in the name of CDI with the Florida Department of State, Division of Corporations and in New Jersey;

    c)   Yosef Amar, acting on behalf of CDI, filed a trademark application for the 3DL mark in the USPTO;

    d)   CDI granted a license to the Joint Venture for use of the 3DL marks;

    e)   CDI and Joe Cool, Inc. formed Joe Cool Bike Week, Inc. as an legal entity through which to conduct some of the Joint Venture's business through;

f)   CDI agreed to direct a nationwide sales marketing campaign, utilizing CDI's nationwide network of t-shirt and pre-printed apparel retailers;

g)   CDI agreed to arrange financing for the Joint Venture;

h)   CDI agreed to take responsibility for preparing paperwork for trademark registrations to be used for the Joint Venture and to police the trademarks licensed for the use of the Joint Venture's;

i)   CDI and Joe Cool, Inc. agreed that CDI and Joe Cool, Inc. would each receive 50% of the profits from the Joint Venture, mainly from the sale of t-shirts and heat transfers utilizing the 3DL mark and related marks;

j)   To get the Joint Venture started, CDI arranged an interest-free and collateral-free loan to Yosef Amar, the principal of Joe Cool Inc., in the amount of $10,000 for the purpose of financing the production of heat transfer stickers utilizing the 3DL marks to be used for the Joint Venture.   The loan was to be repaid from the sale of t-shirts;

k)   Joe Cool, Inc. produced 100,000 heat transfer stickers utilizing the 3DL marks and began the process of affixing the heat transfers to t-shirts to create pre-printed t-shirts for the Joint Venture;

l)   CDI and Joe Cool, Inc. began marketing wholesale sales of the pre-printed t-shirts and the heat transfers;

151.   Plaintiff's use of the M Claw Trademark did not start until 2002, and such use is still not well known within the general population.

152.   Plaintiff's registered use of the M Claw mark alone, *i.e.*, with no other graphics or words, is limited to beverages and stickers, as set forth in the trademark registrations under Exhibits A to H and J to the Amended Complaint.

153.   For use on clothing, Plaintiff's registered trademarks consists only of the M Claw mark together with the words "Monster Energy," as set forth in the trademark registration under Exhibit I to the Amended Complaint.

## COUNTERCLAIM COUNT I

(Cancellations of Registrations)

154.    Defendant realleges Paragraphs 130-153, as if fully set forth herein.

155.    Monster filed registrations/applications in the United States Patent and Trademark
Office for an M Claw mark on clothing along with the words "Monster Energy," to wit
Registration No. 3908601, registered on January 18, 2011 (Exhibit I to the Amended Complaint)
and pending Application No. 85094362, filed on July 28, 2010.

156.    Although Defendant does not believe there is confusion or the likelihood of
confusion, nevertheless, should it be found confusion exists, Defendant and its assignors are the
senior users

157.    Based on the foregoing the registrations of Monster should be cancelled.


## COUNTERCLAIM COUNT II

(Reverse Confusion, 15 U.S.C. § 1125(A))

158.    Defendant realleges Paragraphs 129-157, as if fully set forth herein.

159.    In the alternative, in the event Defendant's 3DL mark is found to be confusingly
similar to Plaintiffs M Claw Trademark, this is a claim for damages and relief from reverse
confusion arising under 15 U.S.C. § 1125.

160.    Plaintiff has created a false designation of origin or symbol, or device, or
combination thereof, likely to cause confusion or to cause mistake or to deceive as to the
affiliation, connection, or association of their product with Defendant's 3DL mark in connection
with the advertisement, offering for sale of apparel by Plaintiff.

161.    Plaintiff as the junior user has saturated the market with its M Claw Trademark that

is similar or identical to that of Defendant's 3DL mark.

162.   Plaintiff's saturation of the market with its substantially similar or identical mark has overwhelmed Defendant and its licensees as the senior users.

163.   Defendant is informed and believes, and on that basis alleges that Plaintiff did so with the intent to compete against Defendant causing confusion and mistake among customers and the public.   Accordingly, Plaintiff's marketing targets customers in motor-sport and motorcycle circles.

164.   Defendant is informed and believes, and on that basis alleges, that Plaintiff had actual knowledge and/or constructive knowledge of Defendant's prior use of their 3DL mark, and without the consent of Defendant, has willfully violated 15 U.S.C. § 1125(a).

165.   Upon information and belief, Plaintiff's conduct has been willful and deliberate.

166.   Plaintiff's aforementioned acts have injured Defendant and damaged Defendant in an amount in excess of seventy-five-thousand dollars ($75,000.00) to be determined at trial.

167.   By its actions, Plaintiff has irreparably injured Defendant. Such irreparable injury will continue until and unless Plaintiff is preliminarily and permanently enjoined by this Court from further violation of Defendant's' rights, for which Defendant has no adequate remedy at law.


**COUNTERCLAIM COUNT III**

(Florida Common Law Unfair Competition)

168.   Defendant realleges Paragraphs 130-167, as if fully set forth herein.

169.   In the alternative, this is a claim for common law unfair competition arising under Florida common law.

170.   By virtue of the acts complained of herein, Plaintiff has intentionally caused a

likelihood of confusion among the public and has unfairly competed in violation of Florida common law.

171.    Upon information and belief, Plaintiff's violations of Florida unfair competition common law has been willful and deliberate.

172.    Plaintiff's acts have injured Defendant in an amount to be proven at trial.

173.    By its actions, Plaintiff has irreparably injured Defendant. Such irreparable injury will continue until and unless Plaintiff is preliminarily and permanently enjoined by the Court from further violation of Defendant's rights, for which Defendant has no adequate remedy at law.

## COUNTERCLAIM COUNT IV

### (Wrongful Seizure, 15 USC 1116(d)(11))

174.    Defendant realleges Paragraphs 130-173, as if fully set forth herein.

175.    On March 3, 2011, Plaintiff filed a Motion for an Ex Parte Seizure Order and Temporary Restraining Order and Order to Show Cause for Preliminary Injunction; Supporting Memorandum of Law ("Motion for Preliminary Injunction") [DE 3] and Declarations in support thereof.

176.    Based upon Plaintiff's representations, this Court entered a Temporary Restraining Order, Order to Show Cause, and Order of Seizure on March 4, 2011 (the "TRO and Seizure Order") [DE 7].

177.    The TRO and Seizure Order authorized federal marshals to essentially raid Defendants' office and warehouse in Daytona Beach, which occurred on March 7, 2011.   The TRO and Seizure Order permitted the federal marshals not only to search, seize, and impound the merchandise that Plaintiff had represented was counterfeit; it also authorized them to seize and

impound Defendants' and the Joint Venture's pertinent business records.

178.   On March 7, 2011, as a result of the TRO and Seizure Order, federal marshals seized and impounded Defendants' merchandise, catalogues, iron-on stickers, and business records located at Joe Cool, Inc.'s and Joe Cool Bike Week, Inc.'s store, at 1052 N. Beach St., Holly Hill, Florida 32117.

179.   Defendant was a victim of the ex parte seizure as the TRO and Seizure Order was directed at Defendant, the seized merchandise was property belonging to CDI and Joe Cool, Inc. and their Joint Venture, in which Defendant owned a 50% interest, and the seized business records were property of CDI and Joe Cool, Inc. and their Joint Venture, including customer lists.

180.   Subsequently, the Court issued its Order on March 30, 2011 [DE 40], denying Plaintiff's Motion for Preliminary Injunction and ordered that the seized property be returned to Defendants.   The Court held that the TRO and Seizure Order should never have been entered, as it was based in part, on Plaintiff's "misleading and less than candid statements." [See DE 40].

181.   On April 13, 2011, this Court entered its Order denying Plaintiff's Motion for Reconsideration, again holding that "the temporary restraining order and order of ex parte seizure should never have been entered..." [DE 52, pg. 2].

182.   The TRO and Seizure Order was obtained by Plaintiff in bad faith.   Thus the Court held,

> Even in the short course of this litigation a pattern has emerged. Plaintiff files documents with the Court, which the Court expects to represent the situation accurately. Upon closer examination, however, the Court realizes that the most revealing or important aspect of Plaintiff's documents was ignored or misrepresented by Plaintiff. This pattern especially disturbs the Court considering the nature of Plaintiff's requested relief: first, an order of ex parte seizure and a temporary restraining order, now a preliminary injunction. These are extraordinary remedies; none are warranted in this case.   [DE 52, pg. 2].

183.    Plaintiff sought the seizure in bad faith for the improper purpose of preventing the sale of legitimate goods.   Plaintiff's bad faith is demonstrated by the following findings of the Court regarding Plaintiff's misrepresentations, material omissions and misleading statements in support of its motion for seizure:

a)   [Plaintiff] did not make clear to the Court that the trademark that applied to clothing and other merchandise included the "M Claw" symbol and the words "Monster Energy."

b)   Further, in its motion for temporary restraining order, though Plaintiff lists the federal trademark registrations and cites the exhibits, the list suggests that the trademark for stickers and clothing consists only of the M, which Plaintiff calls the "M Claw." (See Doc. No. 3 p. 6.) However, as stated above, Plaintiff's trademark for clothing also includes the words "Monster Energy." The marks are therefore not identical.

c)   Plaintiff makes this misleading suggestion even more strongly in Count One of the complaint.   In its allegations of trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114, the Plaintiff states that its trademark for cans is the M with the words "Monster Energy," the trademark for nutritional supplements is "M Monster Energy," and the trademark for clothing is just the M – again, calling it the "M claw." (Doc. No. 2 ¶ 51.)

d)   Another example is that the section of the complaint that contains the allegations relating to the infringement is titled "Defendants' Infringement of the M Mark." (Doc. No. 2 p. 11.)

e)   Plaintiff also compares an image of the M with a photograph of one of Defendants' t-shirts and contends that the comparison displays a "patent identify of trademarks." (Doc. No. 3 p. 15.) Again, Plaintiff does not reveal that the M is not identical to Plaintiff's actual trademark for clothing.

[DE 40, pp. 2-3].

184.    In addition, Monster mislead the Court by asserting in its Complaint for purposes of its infringement claim, Monster mislead the Court "Pursuant to 15 U.S.C. § 1065, Registration No.

2,903,214 for the M Claw Trademark is now incontestable."   However, that statement by Monster

was misleading because Registration No. 2,903,214 is for the use of the M Claw mark on beverage

cans - not on apparel.

185.   The Court found that Plaintiff misrepresented Defendants as "fly by night"

counterfeiters, when in fact, Defendants' business had a permanent and established nature, having

operated a retail store in Daytona Beach for seventeen years. [DE 52].

186.   Evidencing the willfulness of Plaintiff's misrepresentations, material omissions and

misleading statements to the Court in support of the TRO and Seizure Order, the Court found,

> Plaintiff appears to be aware of the difference between the marks for
> clothing and the marks for the cans because it alleges that
> "Defendants have directly copied [Plaintiff's] M Claw Trademark
> and [Plaintiff's] can art design featuring its M Claw Trademark."
> (Doc. No. 2 ¶ 45.) [DE 40, pp. 3-4].

187.   Furthermore, the goods seized were legitimate merchandise, not counterfeit

merchandise.   Thus, the Court held,

> The designs on Defendants' t-shirts are not identical to Plaintiff's
> federal trademarks for its clothing, as required to show
> counterfeiting and to warrant an order of seizure. As Defendants
> explain, the outline and orientation of the three lines are different,
> and the "top ends" of the mark point in different directions. (Doc.
> No. 32 pp. 10-11) (citing Amar Aff. (Doc. No. 32-4) ¶ 9.)
>
> More importantly, as Defendants argue, this particular mark, the
> long *M* by itself, is only trademarked for beverage cans. The
> trademarks for shirts, stickers, and other apparel include the words
> "Monster Energy" in a stylized font.

[DE 40, p.2]

188.   But for Plaintiff's knowing misrepresentations, material omissions and misleading

statements, the Court would not have issued the TRO and Seizure Order, and upon revelation of

the true facts at a show cause hearing the Court ordered the seized property returned to Defendants

and denied Plaintiff's application for a preliminary injunction.   Thus the Court found,

> The Court, however, is well aware that based on Plaintiff's representations to this Court, the Court issued an order authorizing federal marshals to essentially raid Defendants' office and warehouse in Daytona Beach, which occurred on March 7, 2011… Based on what was later revealed, the Court realized that Plaintiff, through its misrepresentations, effectively abused this legal process. [DE 52, pp. 2-3]

189.     Defendant has suffered damage by reason of the wrongful seizure because Defendant's customers now perceive all of Defendant's merchandise as counterfeit goods and Defendant's intellectual property as infringing.

190.     Furthermore, as a result of the Wrongful Seizure on March 7, 2011, Plaintiff obtained seized business records belonging to Defendants.   Among the wrongfully seized records were customer lists and information identifying Defendants' wholesale customers of t-shirts bearing the 3DL marks.

191.     Upon information and belief, on or about March 16, 2011, Plaintiff's counsel Richard E. Mitchell, Esq. sent demand letters to Defendants' customers identified in the wrongfully seized business records (the "Demand Letters").   Upon information and belief, the letters demanded that Defendants' customers cease and desist from marketing, promoting, selling or offering to sell any clothing and related products acquired from Defendants bearing the 3DL mark.   Upon information and belief, the demand letters alleged that Defendants' customers, by offering to sell t-shirts purchased from Defendants, were infringing upon certain of Plaintiff's MONSTER ENERGY trademarks, namely, its M Claw mark.

192.     Defendant suffered damages as a result of the publication of the Demand Letters. The Demand Letters were intended to and have deterred third persons from associating or dealing with Defendants and have injured Defendants' and the Joint Venture's business or reputations.

193.     The Demand Letters caused confusion among Defendants' customers and the 3DL marks licensees and damage to the 3DL marks as intellectual property, causing significant

economic harm to CDI.

194.    Notwithstanding the fact that the Demand Letters may have been authorized by the TRO and Seizure Order, Plaintiff's misrepresentations, material omissions and misleading statements which caused the Court to issue the TRO and Seizure Order and gave rise to the seizure of Defendants' business records were the proximate cause of the injury to Defendant that resulted from the Demand Letters.

195.    Defendant has suffered damage by reason of a wrongful seizure because Defendant was temporarily restrained from selling or advertising apparel with Defendants' 3DL Mark.

196.    Defendant has suffered damage by reason of a wrongful seizure, including, but not limited to lost profits, damage to business representation and loss of good will, and lost revenue, the exact amounts of which cannot be determined at this time, as said damages are still accruing, but, upon information and belief, are in an amount of at least $20,000,000.

197.    Defendant has suffered damage by reason of a wrongful seizure because Defendants have incurred reasonable attorneys' fees and will incur additional attorney fees in prosecuting this counterclaim.


**COUNTERCLAIM COUNT V**

(Florida Common Law Tort of Abuse of Process)

198.    Defendant realleges Paragraphs 130-197, as if fully set forth herein.

199.    Plaintiff's ex parte motion for the issuance of a temporary restraining order and seizure order against Defendants was illegal, improper, and perverted the process by which the Court issues ex parte temporary restraining orders and seizure orders.

200.    The acts by Plaintiff, including Plaintiff's misrepresentations, material omissions

and misleading statements, alleged above, that were made to the Court in support of Plaintiff's ex parte motion for the issuance of a temporary restraining order and seizure order constituted misuse of process after it was issued so as to exert leverage over Defendant.

201.    Plaintiff had an ulterior motive or purpose in exercising the illegal, improper and perverted process; to wit, Plaintiff sought at the very beginning of this action to achieve victory without the need of prevailing on its claims at trial and without allowing Defendants the opportunity to defend themselves, by disrupting and destroying Defendants' legitimate business through the wrongful issuance of the TRO and Seizure Order and the sending of the related Demand Letters.

202.    Defendant was injured as a result of Plaintiff's acts, including, but not limited to lost profits, damage to business representation and loss of good will, and lost revenue, the exact amounts of which cannot be determined at this time, as said damages are still accruing, but, upon information and belief, are in an amount of at least $20,000,000.

## COUNTERCLAIM COUNT VI

(Declaratory Judgment)

203.    Defendant realleges Paragraphs 130-202, as if fully set forth herein.

204.    On January 19, 2012, a Joint Consent Final Judgment and Permanent Injunction was filed in this action (Doc. 102) by Plaintiff and Joe Cool, Inc., Joe Cool Bike Week, Inc., Michelle Amar and Yosef Amar.

205.    Shortly prior thereto, on or about October 25, 2011, Monster, as the assignee, and Yosef Amar and Joe Cool, Inc. as assignors, entered into an Assignment Agreement pertaining to the 3DL marks.

206.    The Assignment Agreement contains an assignment from and Yosef Amar and Joe

Cool, Inc. to Monster as follows:

> Assignors Joe Cool, Inc. and Yosef Amar, do hereby assign unto Assignee any and all rights, title and interest, in any registrations, applications or pending applications, known or unknown (inclusive of those registration, possible registrations and applications contained herein), as well as in the above-identified 3DL marks and design, the Registrations and pending Application to the extent ownership or any other interest may have been acquired by Assignors, together with any common law rights and the goodwill symbolized by said 3DL marks, Registrations and Applications which may have been acquired by Assignors, concurrent with the transfer of certain tangible assets as indicia of said goodwill.

207. The Assignment Agreement also states,

> WHEREAS,   Assignors, Yosef Amar and Joe Cool, Inc. claim no interest in the 3DL marks registrations as Consolidated Distributors, Inc. owns these registrations, but Joe Cool, Inc., may have acquired rights in the 3DL marks including, but not limit to, common law rights, trade name rights, copyrights, and the right to recover for past infringement in the United States."

208. CDI contends that it owns all right, title and interest in the 3DL marks and that no right, title or interest was assigned by Joe Cool Inc. and Yosef Amar through the Assignment Agreement.

209. The Assignment Agreement is void.

210. In the Assignment Agreement, Monster states that it "is desirous of acquiring all right, title and interest in and to said 3DL marks, Registrations and pending application in the United States."

211. CDI desires that the instant lawsuit between CDI and Monster should resolve all claims and potential claims extant between CDI and Monster.

212. Accordingly, CDI seeks a declaratory judgment that Monster has no right, title or interest in the 3DL marks.

213. CDI seeks injunctive relief restraining Monster, and its agents, servants,

employees, successors and assigns, and all those in privity with it, from bringing any lawsuit or threat against CDI for copyright infringement for its use of the 3DL marks, including but not limited to CDI's sales, marketing, distribution and licensing.

## **COUNTERCLAIM COUNT VII**

(Florida Common Law Tort of Interference with Contractual Relations)

214.    Defendant realleges Paragraphs 130-202, as if fully set forth herein.

215.    Legal contracts existed between CDI and Joe Cool, Inc. for the licensing of the 3DL marks and the operation of the Joint Venture between CDI and Joe Cool, Inc. for the exploitation of the 3DL marks.

216.    Monster knew about the said contracts, because Monster knew that Joe Cool, Inc. was a licensee of CDI's 3DL marks.

217.    Monster purposefully intended to interfere in the license agreements between CDI and Joe Cool, Inc. and in the Joint Venture agreement by wrongfully inducing Yosef Amar and Joe Cool, Inc. to abrogate the said agreements by entering into the above mentioned Assignment Agreement with Monster.

218.    In part, Monster effectuated its interference in CDI's contractual relations by terrorizing Yosef Amar by wrongfully causing a raid on Mr. Amar's place of business by federal marshals.

219.    Monster's interference proximately caused damage to CDI.

220.    CDI has suffered actual damages, including loss of revenues from the sale of merchandise by the Joint Venture.

## DEMAND FOR JURY TRIAL

Defendant hereby demands a jury trial as provided by Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaimant, Consolidated Distributors, Inc., respectfully requests this Court to:

A.     Dismiss each and every one of Plaintiff, MONSTER ENDERGY COMPANY, formerly known as HANSEN BEVERAGE COMPANY, d/b/a MONSTER BEVERAGE COMPANY's claims upon the merits with prejudice.

B.     Deny Plaintiff injunctive relief and damages.

C.     Find no confusion between Plaintiffs mark and Defendant's mark.

D.     In the alternative, if there is any likelihood of confusion found between the Plaintiff's mark and Defendant's mark, declare Defendant the senior user of the mark and vacate/cancel the trademark applications and registrations of Plaintiff as to clothing, or other goods as applicable.

E.     Award Defendant actual damages and punitive damages.

F.     Grant Defendant actual damages, attorneys' fees and costs, and punitive damages under 15 U.S.C. 1116(d) for wrongful seizure of goods.

G.     Award Defendant pre-judgment and post-judgment interest.

H.     Declare that Plaintiff has no right title and interest in the 3DL marks.

I.     Award Defendant injunctive relief.

34

J.      Declare the case exceptional and award Defendant attorneys' fees

and costs as permitted by law.

K.      Award Defendant such other relief as this Court deems proper and

just.

Respectfully submitted this 27th day of April, 2012.

MOSHE MORTNER, ESQ.
New York Bar No.: 2085801
mm@mortnerlaw.com
The Mortner Law Offices
40 Wall Street, 28th Floor
New York, NY 10005
646-820-8770 Telephone
646-304-3169 Facsimile
Lead Counsel for Defendants,
CONSOLIDATED DISTRIBUTORS, INC.
and
DAVID BAKSHT

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

MOSHE MORTNER, ESQ.
New York Bar No.: 2085801
mm@mortnerlaw.com
The Mortner Law Offices
40 Wall Street, 28th Floor
New York, NY 10005
646-820-8770 Telephone
646-304-3169 Facsimile
Lead Counsel for Defendants,
CONSOLIDATED DISTRIBUTORS, INC.
and
DAVID BAKSHT