UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HANSEN BEVERAGE COMPANY,**

        **Plaintiff,**

v.                                       Case No:  6:11-cv-329-Orl-22DAB

**CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC. and DAVID
BAKSHT,**

        **Defendants.**
_____/

**ORDER**

This cause comes before the Court on Defendant Consolidated Distributors, Inc.'s ("CDI") Motion for Leave to Amend Counterclaim (Doc. No. 127), filed on May 8, 2012, and Plaintiff Hansen's Beverage Company's ("Hansen") response thereto (Doc. No. 134), and Defendant's reply (Doc. No. 138).

**I.     BACKGROUND**

On March 3, 2011, Hansen Beverage Company ("Hansen"), filed under seal an action for trademark infringement and copyright infringement, claiming that Defendants were infringing its famed "M Claw" trademark by selling and advertising goods containing the mark. (Doc. Nos. 1 & 2). At that time, Hansen requested the Court to enter an *ex parte* seizure order to obtain the "counterfeit products" Defendants intended to sell during Daytona Bike Week 2011.

After the Court entered a temporary restraining order and *ex parte* seizure order, the United States Marshals raided Defendants' Florida warehouse and office and seized merchandise and

business records.[1]  Soon after this raid, it came to light that Hansen's famed "M Claw" trademark by itself was limited to only beverage cans while the "M Claw" with the words "Monster Energy" in a stylized font was the mark trademarked for shirts, stickers, and other apparel. Hansen's representations to the Court suggested that the "M Claw" mark alone applied to stickers and clothing.  Based on this finding, the Court denied Hansen's request for a preliminary injunction and ordered it to return the seized items to the Defendants.[2]  (Doc. No. 40).  The Court denied Hansen's motion for reconsideration of the denial of a preliminary injunction (Doc. No. 52) and Hansen's request to vacate the order pursuant to a settlement agreement (Doc. No. 101).

On January 19, 2012, the Court entered a Consent Final Judgment and Permanent Injunction as to Defendants Joe Cool, Inc., Joe Cool Bike Week Inc.,[3] Michelle Amar, and Yosef Amar ("Amar Defendants").[4]  (Doc. No. 102).  The scope of the settlement's applicability was limited to the Amar Defendants.  Pursuant to the settlement, the Amar Defendants admitted that they sold and distributed items bearing designs that the parties contended might have a likelihood of being found to be confusingly similar to Hansen's "M Claw" mark.  (*Id.* at ¶ 7).  As well, among other representations, the Amar Defendants asserted that they would not claim ownership in any trademarks that the parties contended were confusingly similar to Hansen's "M Claw" mark.  (*Id.* at ¶ 8).  Finally, according to the settlement, the Amar Defendants agreed that all of their claims and defenses asserted by them, including their wrongful seizure claim, were dismissed with prejudice.  (*Id.* at ¶ 10); (*see* Doc. No. 85 at ¶¶ 145-161).

---

[1] The word "Defendants" refers to all of the original Defendants to this action.  In its filings, CDI claims that Joe Cool Bike Week, Inc. is a part of a joint venture between CDI and Joe Cool, Inc..
[2] At this time, CDI had not yet appeared in the case.
[3] Yosef Amar signed the settlement as President and authorized signatory of Joe Cool, Inc. and Joe Cool Bike Week Inc.
[4] The settlement did not apply to David Baksht, Consolidated Distributors, Inc., and Mettemp Inc., who at the time had failed to plead or respond to Hansen's Amended Complaint.

On January 30, 2012, Magistrate Judge David Baker granted Hansen's motion for entry of a clerk's default against Consolidated Distributors, Inc. ("CDI"), Mettemp Inc., and David Baksht. (Doc. No. 104). However, on April 25, 2012, upon the motion of David Baksht and Consolidated Distributors, Inc. ("Baksht Defendants") (Doc. No. 110), the Court set aside the default only as to the Baksht Defendants and not as to Mettemp, Inc. (Doc. No. 120).

On March 16, 2012, the Baksht Defendants filed their answer and counterclaim (Doc. No. 109), and on April 27, 2012, they filed an amended answer and amended counterclaim (Doc. No. 122). Finally, on May 8, 2012, CDI[5] filed a motion for leave to amend the counterclaim to: (1) join Hansen's Chief Executive Officer ("CEO") Rodney Sacks ("Sacks"), Hansen's local counsel Richard E. Mitchell ("Mitchell") and his law firm GrayRobinson, P.A., and Hansen's lead counsel Lynda Zadra-Symes ("Zandra-Symes") and her law firm Knobbe Martens Olson & Bear, LLP to the existing abuse of process count and (2) to seek punitive damages under its wrongful seizure and abuse of process counts. (Doc. No. 127).

CDI argues, in short shrift, that Hansen's CEO and counsel committed an abuse of process by seeking a wrongful *ex parte* seizure and committing a fraud on the court. (*Id.* at pp. 6-7). As well, CDI claims, without further elaboration, that it may seek punitive damages based on its allegations in its counterclaim. Hansen and its counsel responded to the motion, arguing, *inter alia*, that the proposed amended counterclaim is futile because Hansen's CEO and counsel are protected by Florida's litigation privilege. (Doc. No. 134). The Court ordered CDI to file a reply, which it did on June 11, 2012 (Doc. No. 138). However, as set forth below, CDI misconstrues Florida's litigation privilege while accusing opposing counsel of violating *Federal Rule of Civil Procedure* 11.

---

[5] David Baksht was not included in the motion.

## II. LEGAL STANDARD AND ANALYSIS

Whether to grant a motion for leave to amend pursuant to *Federal Rule of Civil Procedure* 15(a) is within the discretion of the Court; however, if the Court denies leave to amend, it must provide a reason for such denial. *Foman v. Davis*, 371 U.S. 178, 182 (1962). When exercising this discretion, the Court must ask whether the underlying facts and circumstances relied upon by a plaintiff may be a proper subject of relief; if they are, leave to amend is routinely granted. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (citation omitted); *Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1405 (11th Cir. 1994) (citation omitted). Notwithstanding, the Court may deny leave to amend the complaint under Rule 15(a) when "such amendment would be futile." *Hall*, 367 F.3d at 1263 (Leave to amend is futile when as amended, the claim is still subject to dismissal.); *see Foman*, 371 U.S. at 182 (listing other reasons for denial such as undue delay, bad faith or dilatory motive on movant's part, undue prejudice to opposing party, or repeated failure to cure deficiencies by amendment).

### A. *Abuse of Process*

To state a claim for an abuse of process, CDI must allege plausible facts showing that Hansen's CEO and counsel: (1) made an illegal, improper, or perverted use of process; (2) had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) as a result of such action on the part of Hansen's CEO and Counsel, CDI suffered damage. *Della-Donna v. Nova Univ., Inc.*, 512 So. 2d 1051, 1055 (Fla. 4th DCA 1987) (citations omitted). The Court need not reach the issue of whether CDI has pleaded plausible claims for abuse of process nor does the Court need to reach Hansen's defenses regarding whether CDI has standing, whether there is personal jurisdiction over Sacks, or whether there is a federal preemption issue. This is so because this case is a paradigm for the application of Florida's

litigation privilege. The Court finds that Florida's litigation privilege applies to CDI's proposed abuse of process claims against Hansen's CEO and counsel, and thus, leave to amend is futile. *See Hall*, 367 F.3d at 1263

In *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Company*, the Florida Supreme Court extended Florida's litigation privilege (an absolute immunity) to any tortious act occurring during the course of a judicial proceeding so long as the act has some relation to the proceeding. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d 606, 608 (Fla. 1994) (answering a certified question from the Eleventh Circuit as to whether a counsel is immune from suit when he certifies to a trial court that he intends to call opposing counsel as a witness in order to obtain a disqualification and then fails to subpoena or call the opposing counsel as a witness at trial). The court extended the privilege from its prior holdings that limited the absolute immunity to statements made during the course of a judicial proceeding by parties to the proceeding, judges, witnesses, or counsel. *Id.* (citation omitted).

The court reasoned that "participants in litigation must be free to engage in unhindered communication . . . [and] be free to use their best judgment in prosecuting or defending a lawsuit without the fear of having to defend their actions in a subsequent civil action for misconduct." *Id.* However, these infractions are not without remedy because "just as '[r]emedies for perjury, slander, and the like committed during judicial proceedings are left to the discipline of the courts, the bar association, and the state,' other tortious conduct occurring during litigation is equally susceptible to that same discipline." *Id.* (internal citation omitted). As well, the trial court may use its contempt power to enforce its orders and "to protect the court from acts obstructing the administration of justice." *Id.* at 608-09.

5

In *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, the Florida Supreme Court further extended the litigation privilege, stating that it applied it to all causes of action, whether they arise out of common law torts or statutory violations. *Echevarria, McCalla, Raymer, Barrett & Frappier*, 950 So. 2d 380, 384 (Fla. 2007); *see also Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1274 (11th Cir. 2004) ("Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings. The privilege initially developed to protect litigants and attorneys from liability for acts of defamation, but has since been extended to cover all acts related to and occurring within judicial proceedings." (citation omitted)). For example, in *Latam Investments, LLC v. Holland & Knight, LLP*, Florida's Third District Court of Appeal addressed whether the Florida litigation privilege applied to a claim for abuse of process. *Latam Invs., LLC*, -- So. 3d --, No. 3D10-3042, 2011 WL 4949997, at *1 (Fla. 3d DCA Oct. 19, 2011). During post-judgment efforts to collect on a judgment entered in a client's favor, a law firm issued subpoenas and writs of garnishment; however, it was later determined that the court did not have subject matter jurisdiction over the underlying lawsuit. *Id.* The court determined that the litigation privilege applied because the law firm's acts occurred during and were related to the judicial proceeding. *Id.* at *2. As well, the court elaborated that the litigation privilege does not abolish an abuse of process claim because the litigation privilege is limited to "actions taken during a judicial proceeding and which are related to the judicial proceeding." *Id.* Therefore, an abuse of process claim arises when actions are taken outside of a judicial proceeding or when actions that are taken during a judicial proceeding but are unrelated to a judicial proceeding. *Id.* (citation omitted); *see also Suchite v. Kleppin*, No. 10-21166-CIV, 2011 WL 1814665, at *3 (S.D. Fla. April 29, 2011) ("The litigation privilege can apply to bar claims for abuse of process." (citations omitted)).

In the present action, Hansen argues that Florida's litigation privilege should apply to the abuse of process claims lodged against Sacks and Hansen's counsel; thus, rendering CDI's motion for leave to amend futile as it relates to CDI's amended abuse of process claims. (Doc. No. 134 at pp. 5-12). Although the litigation privilege is an affirmative defense, it can be considered on a motion to dismiss if the complaint demonstrates the existence of the defense. *Kidwell v. Gen. Motors Corp.*, 975 So. 2d 503, 505 n.2 (Fla. 2d DCA 2007) (citation omitted).

As previously stated, the basis for CDI's abuse of process claim against Sacks is his declaration in support of the temporary restraining order. Accepting CDI's allegations as true regarding Sack's declaration for purposes of this motion only, the Court still finds that Sack's declaration is clearly within Florida's litigation privilege because it was an act "occurring during the course of a judicial proceeding" that had "some relation to the proceeding." *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608. It is also of note that "the common law's protection for witnesses is 'a tradition so well grounded in history and reason'." *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983). In fact, even pre-*Levin*, Florida's Third District Court of Appeal held, "The law is well settled that a witness in a judicial proceeding . . . is absolutely immune from any civil liability, save perhaps malicious prosecution, for testimony of other sworn statements which he or she gives in the course of the subject proceeding." *Cruz v. Angelides*, 574 So. 2d 278, 278 (Fla. 3d DCA 1991) (per curiam) (citations omitted). Therefore, it is clear from the face of CDI's proposed counterclaim that the litigation privilege applies to Sack's alleged actions. *Cf. Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1302, 1303 (11th Cir. 2003) (finding that Florida's litigation privilege applies to claims of improper or obstructive motions and other misconduct during trial such as taking false litigation positions).

With respect to attorney Lynda Zadra-Symes and her law firm Knobbe Martens Olson & Bear, LLP, CDI alleges that Zadra-Symes and her firm committed an abuse of process by filing Hansen's *ex parte* motion for a temporary restraining order and seizure order and by making misrepresentations and material omissions to the Court. (Doc. No. 127-1 at ¶¶ 73-74 & 93-95). CDI's claim against Zadra-Symes and her law firm is also barred by Florida's litigation privilege. The filing of a motion in court and an attorney's representations to the court clearly fall within the privilege. *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608.

Regarding attorney Richard Mitchell and his law firm GrayRobinson, P.A., CDI alleges that Mitchell and his firm committed an abuse of process by filing Hansen's *ex parte* motion for a temporary restraining order and seizure order and making misrepresentations and material omissions to the Court. (Doc. No. 127-1 at ¶¶ 73-74). As well, on March 16, 2011, CDI alleges that Mitchell and his law firm committed an abuse of process by sending cease and desist letters to CDI's customers identified in CDI's wrongfully seized business records, causing harm to CDI's business and reputation.[6] Allegedly, Mitchell wrote in the letters that CDI's customers, "by offering to sell t-shirts purchased from Defendants, were infringing upon certain of [Hansen's] trademarks, namely, its M Claw mark." (*Id.* at ¶¶ 84 & 90-92). CDI further alleges that one of the purposes of the wrongful seizure was to seize Defendants' customer lists so Hansen and its counsel could destroy Defendants' business reputation via the cease and desist letters. (*Id.* at ¶ 87).

As to Mitchell and his law firm's filing of the *ex parte* motion and their representations to the Court, CDI's claim is barred by Florida's litigation privilege because such actions, again, clearly

---

[6] It was not until March 30, 2011 that the Court denied Hansen's motion for preliminary injunction and ordered Hansen to return all seized items and business records. (Doc. No. 40).

fall within the privilege. *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608.

Regarding Mitchell and his firm's cease and desist letters to CDI's customers, the issue is whether such actions occurred during the course of a judicial proceeding and had some relation to the proceeding. At the time Mitchell and his firm sent cease and desist letters, they were operating under a valid temporary restraining order (Doc. No. 7). *See supra* note 6. These letters were part of Mitchell and his firm's efforts to effectuate the temporary restraining order by preventing those who were in active concert or participation with CDI from selling or offering to sell any clothing bearing the alleged trademarked "M Claw." (*See* Doc. No. 7 at pp. 4-5). Thus, these letters were part of a judicial proceeding and had some relation to a judicial proceeding. *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608. These acts are similar to those of Holland & Knight, LLP and its attorneys in *Latam Investments, LLC* who issued subpoenas and writs of garnishment after a judgment was entered. *See Latam Investments, LLC*, 2011 WL 4949997, at *1, *2. To rule otherwise would mean that any time an attorney or law firm engages in steps to effectuate a restraining order or preliminary injunction, the attorney or the attorney's firm subject themselves to a lawsuit. This flies in the face of the public policy underlying Florida's litigation privilege. *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608; *see also* Restatement (Second) of Torts § 586 ("An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."); *Wright v. Yurko*, 446 So. 2d 1162, 1164

(Fla. 5th DCA 1984) (citing the *Restatement*); *Sussman v. Damian*, 355 So. 2d 809, 811 (Fla. 3d DCA 1977) (same).

The present case is distinguishable from *North Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324 (M.D. Fla. 2009), a case not binding on this Court. In *North Star*, the court addressed debt collection practices in which an attorney sent to an alleged debtor a stipulation of an entry of final judgment execution withheld and a letter. *Id.* at 1327-29. The court found the litigation privilege to be inapplicable, anchoring its reasoning in concerns about debt collection activity. *Id.* at 1329, 1330-31; *see also id.* at 1332 (raising concerns about the privilege in this particular situation eviscerating the Florida Consumer Collection Practices Act and giving too much leeway to attorney debt collectors in their collection activity). At bar, there is no collection activity, and the cease and desist letters were sent to third parties and were sent in connection with a temporary restraining order. These facts alone distinguish the present case from *North Star*.

In its reply to Hansen's response, CDI constructs a limitation on Florida's litigation privilege[7] that has no reasonable basis in Florida case law. CDI first misinterprets *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, limiting it to its facts and ignoring the long line of cases that cite to the case as holding that the litigation privilege applies to all tort actions. (Doc. No. 138 at p. 2). In sum, CDI's representation contradicts Florida law.

Next, CDI misleads the Court in its analysis of *American National Title & Escrow of Florida, Inc. v. Guarantee Title & Trust Co.*. In *American National Title & Escrow*, Florida's Fourth District Court of Appeal, based on Florida's litigation privilege, affirmed summary judgment for an attorney in an abuse of process claim. *American National Title & Escrow*, 748

---

[7] As discussed below, CDI claims that there is a specific limitation on Florida's litigation privilege when an abuse of process claim is at issue.

10

So. 2d 1054, 1055 (Fla. 4th DCA 1999). The attorney's firm brought a petition for an injunction appointing the attorney as a receiver, and, as receiver, the attorney took control of a business and entered the home of the business' president to obtain records. *Id.* The business claimed that the attorney misused the receivership appointment process for collateral purposes. *Id.* CDI does not quibble with this holding; however, it claims in a subsequent proceeding that the court returned to the issue of a litigation privilege. (Doc. No. 138 at p. 2 (CDI notes this reconsideration by using bold and italic font and capitalization so that it reads "***ON MOTION FOR CLARIFICATION***")).

CDI's representation to the Court gives the impression that the district court of appeal was clarifying its 1999 ruling while in fact, the district court of appeal was clarifying a completely different ruling from January 2, 2002. The issue the district court of appeal was actually analyzing was whether the litigation privilege applied to a motion to dismiss claims against non-law firm defendants when the non-law firm defendants requested the court to consider facts outside of the complaint. *Am. Nat'l Title & Escrow of Fla., Inc. v. Guarantee Title & Trust Co.*, 810 So. 2d 996, 998 (Fla. 4th DCA 2002). Noting that its earlier decision relating to the law firm and attorney was at the summary judgment stage, the court declined to affirm the trial court's order on a motion dismiss that considered extraneous facts. *Id.* Moreover, the court clarified that because the pertinent facts with respect to these defendants involved giving false information to law enforcement authorities, it was not an action occurring during a judicial proceeding. *Id.* CDI utterly misconstrues the litigation privilege by extrapolating from *American National Title & Escrow* that the district court of appeal carved out a limitation to the litigation privilege such that the privilege only applies when a defendant's actions are pursuant to

11

a court's order.[8] (Doc. No. 138 at p. 3 (quoting *American National Title & Escrow*, 810 So. 2d at 998 ("We affirmed because the misconduct alleged against the firm was done pursuant to court orders and was therefore protected by the absolute immunity afforded conduct related to judicial proceedings."))). No such limitation exists. The fact that the attorney and law firm, as a receiver, were acting pursuant to a court's order only strengthens their claim of the litigation privilege's applicability.

For additional support of its limitation argument, CDI cites *State Farm Mutual Automobile Insurance Company v. Duval Imaging, LLC*, 411 F. App'x 268 (11th Cir. Jan. 28, 2011) (per curiam) as holding that the absolute litigation immunity does not apply to an abuse of process claim. (Doc. No. 138 at p. 4). Again, this contention directly conflicts with the laws of Florida and is an overstatement. *See Echevarria, McCalla, Raymer, Barrett & Frappier*, 950 So. 2d at 384 (Fla. 2007) (extending litigation privilege to all statutory and common law causes of action). Additionally, CDI fails to provide a complete analysis of *Duval Imaging*. In *Duval Imaging*, an insurance company accused an imaging service company's member who was serving as the company's receiver of, in his personal capacity, committing fraud by operating an unaccredited diagnostic imaging clinic and submitting false and fraudulent claims to the insurance agency. *Id.* at 269-70. The circuit court affirmed the denial of immunity, holding that although a receiver is entitled to immunity to causes of action arising from a court-ordered receivership, this immunity does not protect a receiver from acts done in his personal capacity and not as a receiver. *Id.* at 271. Therefore, because there was a question of material fact as to whether the member was acting in his receivership capacity or in his personal capacity, the circuit court affirmed the district court's denial of the member's motion for summary judgment. CDI fails to explicate

---

[8] At the hearing held on June 26, 2012, CDI's counsel clarified his analysis further, claiming this limitation existed only in the abuse of process context.

*Duval Imaging* and instead misleads the Court by exclaiming that the Eleventh Circuit held that the "litigation privilege does not provide absolute immunity in an abuse of process case." (*See* Doc. No. 138 at p. 4).

Finally, CDI claims that in *Montejo v. Martin Memorial Medical Center, Inc.*, Florida's Fourth District Court of Appeal "held that the litigation privilege could not be afforded to defendants who did not act under the color of judicial authority." (*Id.*). Again, CDI fails to provide a complete representation of a case. In *Montejo*, an undocumented native of Guatemala working in Florida was injured in a car crash and hospitalized at Martin Memorial Medical Center. *Montejo*, 935 So. 2d 1266, 1267 (Fla. 4th DCA 2006). After realizing the patient would require around-the-clock care, the hospital intervened in the patient's guardianship proceeding, seeking permission to discharge the patient and transport him back to Guatemala for care. *Id.* The hospital's motion was granted. The guardian filed a motion to appeal and to stay the trial court's order. Despite the trial court order requiring the hospital to file a response by 10:00 am as to the motion to stay, the hospital transferred the patient to Guatemala around 7:00 am that morning the response was due. The district court of appeal reversed the trial court's granting of transportation because the trial court lacked subject matter jurisdiction and because of insufficient evidence. *Id.* at 1268. Later, the guardian accused the hospital of false imprisonment; the hospital argued its actions were protected by Florida's litigation privilege. *Id.*

The district court of appeal held that the litigation privilege did not apply because the misconduct did not occur during the course of a judicial proceeding or in an effort to prosecute or defend a lawsuit but rather after the judicial proceedings were concluded. *Id.* at 1270. The court also emphasized that the trial court was without subject matter jurisdiction when it entered its order in favor of transportation. *Id.* at 1270 n.2. CDI's emphasis on the district court of

appeal's finding that the hospital was not acting under color of judicial authority is detached from context. The court refers to the color of law when discussing plaintiff's false imprisonment claim because the color of law is an essential defense to a false imprisonment claim and thus a reason why the immunity does not apply. *See id.* at 1270-71. In essence, CDI's attempt at constructing a limitation on the litigation privilege is like jamming a square peg into a round hole. It simply doesn't fit.

Based on the foregoing, CDI's counsel engages in inaccurate analysis while accusing opposing counsel of misstating Florida law and violating Rule 11. CDI's counsel states that Hansen's counsel's analysis of Florida's litigation privilege "is so spectacularly wrong" (Doc. No. 138 at p. 2); however, in reality, it is CDI's counsel who misses the mark. CDI's counsel representations come perilously close to a Rule 11 violation.

Importantly, CDI is not without remedy. In *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, the Florida Supreme Court clarified, "[J]ust as '[r]emedies for perjury, slander, and the like committed during judicial proceedings are left to the discipline of the courts, the bar association, and the state,' other tortious conduct occurring during litigation is equally susceptible to that same discipline." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608. In fact, on August 25, 2011, David Baksht filed with The Florida Bar a grievance against Richard Mitchell. (Doc. No. 117 at ¶ 25). On November 29, 2011, The Florida Bar found that there was insufficient evidence from the materials submitted to find Richard Mitchell violated the rules of the Florida Supreme Court that govern attorney discipline. (Doc. No. 117-22).[9]

---

[9] As CDI's counsel must have been aware of David Baksht's August 2011 filing of a grievance with The Florida Bar, it is inexplicable why CDI's counsel did not attempt to include an abuse of

B. *Punitive Damages*

CDI is seeking to amend its counterclaim to include punitive damages for its wrongful seizure count and its abuse of process count (Doc. No. 127 at p. 8). In its response, Hansen fails to address CDI's request for punitive damages.

Pursuant to 15 U.S.C. § 1116(d)(11), CDI may seek punitive damages for its wrongful seizure count if the seizure was sought in bad faith. *See* 15 U.S.C. § 1116(d)(11). For support, CDI notes several findings by the Court that Hansen made multiple misleading statements and representations to the Court when Hansen sought a temporary restraining order and seizure order. (Doc. No. 127-1 at ¶¶ 57-59). However, CDI had the opportunity to include punitive damages in its first amended counterclaim but failed to do so. It is unclear why CDI did not include punitive damages in its first amended counterclaim. The Court will not reward parties that engage in sloppy pleadings. *See Foman*, 371 U.S. at 182 (listing other reasons for denial such as undue delay, bad faith or dilatory motive on movant's part, undue prejudice to opposing party, or repeated failure to cure deficiencies by amendment). Therefore, leave to amend to seek punitive damages under the wrongful seizure count is denied.

With respect to the abuse of process count, "[p]unitive damages are a form of extraordinary relief for acts and omission so egregious as to jeopardize not only the particular plaintiff in the lawsuit, but the public as a whole, such that a punishment—not merely compensation—must be imposed to prevent similar conduct in the future." *BDO Seidman, LLP v. Banco Espirito Santo Int'l*, 38 So. 3d 874, 876 (Fla. 3d DCA 2010). The character of negligence necessary to sustain a punitive damages award is one of "gross and flagrant character, evincing . . . [an] entire want of care which raise[s] the presumption of a conscious indifference to consequences." *Id.* (citation

---

process claim against Richard Mitchell in the Counterclaim or the Amended Counterclaim. However, this is not dispositive to the Court's ruling.

omitted). With respect to an abuse of process count, Florida's Third District Court of Appeal has held that punitive damages are recoverable in an abuse of process claim. *Bothman v. Harrington*, 458 So. 2d 1163, 1171 (Fla. 3d DCA 1984) (citation omitted).[10]

In the present case, to support its claim for punitive damages, CDI cites to allegations in its wrongful seizure count (Doc. No. 127-1 at ¶¶ 57-59), which are incorporated by reference into its abuse of process count, and to allegations in its abuse of process count relating to Hansen's CEO and counsel. (*Id.* at ¶¶ 80, 87, 95). The Court finds that CDI relies partially on the basis of its claims against Hansen's CEO and counsel, which the Court has found to be futile. As to the other allegations on which CDI relies, it is unclear why CDI did not include punitive damages in its first amended counterclaim. Again, the Court will not reward parties that engage in sloppy pleadings. *See Foman*, 371 U.S. at 182 (listing other reasons for denial such as undue delay, bad faith or dilatory motive on movant's part, undue prejudice to opposing party, or repeated failure to cure deficiencies by amendment). Therefore, leave to amend to seek punitive damages under the abuse of process count is denied

### III. CONCLUSION

Based on the foregoing, it is **ORDERED** that CDI's Motion for Leave to Amend Counterclaim (Doc. No. 127), filed on May 8, 2012, is **DENIED**.

---

[10] The case *Bothman* relies upon, *Stoler v. Levinson*, 394 So. 2d 462 (Fla. 3d DCA 1981) (per curiam), does not offer much in the way on analysis regarding whether punitive damages may be recovered in an abuse of process claim. The case cited by CDI does not involve an abuse of process claim. *See Wackenhut Corp v. Canty*, 359 So. 2d 430 (Fla. 1978).

**DONE** and **ORDERED** in Orlando, Florida on June 28, 2012.

*/s/ Anne C. Conway*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties