**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MONSTER ENERGY COMPANY, f/k/a
HANSEN BEVERAGE COMPANY,
d/b/a MONSTER BEVERAGE
COMPANY,

　　　　　　　　Case No. 6:11-CV-329-ORL-22DAB

　　　　　　　　Plaintiff,

vs.

CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC., and DAVID
BAKSHT (a/k/a David Lipsker a/k/a
David Bakshet a/k/a D Bakht a/k/a DM
Schneerson a/k/a Abraham
Shneorson),

　　　　　　　　Defendants.

_____ /

**PLAINTIFF'S OPPOSITION TO DEFENDANT CONSOLIDATED DISTRIBUTORS,
INC.'S MOTION TO COMPEL PLAINTIFF'S RULE 30(b)(6) WITNESS TO
APPEAR FOR DEPOSITION IN THIS DISTRICT, TO COMPEL
LYNDA ZADRA-SYMES, ESQ. TO APPEAR FOR DEPOSITION
AND TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiff Monster Energy Company, formerly known as Hansen Beverage
Company d/b/a Monster Beverage Company ("MEC"), respectfully requests the
Court enter an order denying Defendant Consolidated Distributors, Inc.'s
("Consolidated") motion to compel.

**I.　INTRODUCTION**

Defendants unilaterally scheduled and served notices for the depositions of
MEC and Rodney Sacks (MEC's Chairman and CEO) without making any effort to

1

confer with MEC's counsel regarding the witnesses' availability. The depositions were noticed to take place in Florida. MEC's headquarters are located in California, its top management all live and work in California, and its lead counsel is located in California. Defendants also unilaterally noticed a deposition date for MEC's counsel, Lynda Zadra-Symes. Initially, this deposition was also noticed for Florida, in direct violation of F.R.C.P. 45.

Because Defendants never consulted with MEC regarding the dates of the depositions, Mr. Sacks and MEC's other Rule 30(b)(6) representative were only available in California on the specific dates selected by Defendants and could not travel to Florida on those dates. Similarly, Ms. Symes had previously scheduled and paid for a trip to take her children to college on the date Defendants selected for her deposition. When MEC notified Defendants of these issues involving the witnesses' availability on the Defendants' noticed dates, Defendants immediately filed this motion without any effort to meet and confer with MEC.

Contrary to Defendants' representations in its motion, MEC has never refused to make its 30(b)(6) witnesses available for deposition in Florida or to make Ms. Symes available for deposition. Indeed, MEC has offered dates on which its 30(b)(6) witnesses can be available for a deposition in Florida or California. MEC initially and reasonably requested that if it made its witnesses available in Florida, Defendants also make their representatives, David Baksht and Menachem Schneorson, available in Florida as required by Local Rule 3.04. Ultimately, with the discovery cut-off looming, MEC offered dates for its corporate witnesses to be

deposed in Florida, without requiring reciprocity.   MEC also has provided dates when Ms. Symes would be available.

The scheduling issues underlying this motion could have been resolved with a simple phone call between counsel prior to filing this motion as required by this Court's Case Management Order.  This Court's Case Management Order states that "[t]he term 'confer' in Rule 3.01(g) requires a substantive conversation *in person or by telephone* in a good faith effort to resolve the motion without court action and does not envision an exchange of ultimatums by fax or letter. . .  Counsel must respond promptly to inquiries and communications from opposing counsel."  (Case Management Order, Dkt. No. 121 at § II.A (emphasis in original).)

Throughout this litigation, Defendants' counsel, Mr. Mortner, has steadfastly refused to participate in telephone conferences with MEC's counsel, in spite of MEC's numerous requests.  (*See, e.g.*, Ex. 1 [Email from P. Stewart to M. Mortner of Aug. 13, 2012]; Ex. 2 [Email from P. Stewart to M. Mortner of Aug. 14, 2012]; Ex. 3 [Email from J. Sganga to M. Mortner of Aug. 23, 2012]; Ex. 4 [Email from P. Stewart to M. Mortner of Aug. 27, 2012].)   Recently, Mr. Mortner has sought to further constrict the lines of communication, demanding that only one person representing MEC communicate with him.  (Ex. 5 [Email from M. Mortner to P. Stewart of Aug. 24, 2012].)  Further compounding the communication problems, Mr. Mortner has been delinquent in responding to emails and letters from MEC's counsel, in some cases taking more than a month to respond substantively to MEC's counsel's inquires regarding routine matters such as deposition scheduling.  This is the antithesis of the

timeliness, cooperation and professionalism that the Court expects of counsel.  *See* Board of Governors of the Florida Bar, *Ideals and Goals of Professionalism* ¶ 6.5 ("Upon receiving an inquiry concerning a proposed time for a hearing, deposition, meeting, or other proceeding, a lawyer should promptly agree to the proposal or offer a counter suggestion.") (incorporated in Case Management Order, Dkt. No. 121 at 2).  Accordingly, it is solely due to Defendants' lack of communication and refusal to discuss scheduling that the parties have not yet scheduled dates for the depositions of MEC's Rule 30(b)(6) witnesses and Ms. Symes.  Thus, Defendants' motion to compel the depositions of MEC's Rule 30(b)(6) representatives and Ms. Symes is improper and should be denied.

Additionally, Defendants seek an order compelling MEC to produce its confidential documents and to provide confidential deposition testimony without a confidentiality agreement or protective order.  In fact, MEC has produced its confidential documents for inspection by Defendants' counsel at MEC's local counsel's offices in this district.  Because the parties have been unable to agree to a confidentiality agreement, however, MEC has been unable to produce copies of its confidential documents.  Defendants have refused to inspect MEC's documents and instead filed this motion to compel MEC to produce copies of its confidential documents and to produce MEC's Rule 30(b)(6) representative for deposition on topics involving sensitive business matters without any confidentiality protections.  As set forth in detail in MEC's Motion for Protective Order, Defendants seek MEC's highly sensitive business information including license agreements, royalty rates,

4

detailed sales and financial information regarding suppliers and costs to produce t-shirts, distribution contracts, and information concerning MEC's development of its M Claw trademark and copyrighted design.  MEC should not be required to produce such information without adequate confidentiality protections.  Accordingly, MEC respectfully requests that this Court grant MEC's Motion for Protective Order and deny this motion to compel.

## II.  DEFENDANTS' MOTION TO COMPEL MEC'S RULE 30(B)(6) DEPOSITION AND MR. SACKS' DEPOSITION IS BASELESS

### A.  MEC Has Offered Dates for its Rule 30(b)(6) Deposition in Either Florida or California

Defendants seek an order compelling MEC's Rule 30(b)(6) designees to appear for deposition in Florida because, according to Defendants, MEC has only offered to make its Rule 30(b)(6) witnesses available for deposition in California. That is incorrect.  In fact, MEC has offered to make its Rule 30(b)(6) designees available in either California or in Florida.

Without consulting MEC regarding the dates its witnesses were available for deposition, Defendants served notices for the deposition of Rodney Sacks, MEC's Chairman and CEO, setting it for August 22, 2012 and for MEC pursuant to Rule 30(b)(6) setting it for August 23, 2012.  (Exs. 6-7 [7/27/12 Notice of Deposition of Rodney Sacks, 7/27/12 Notice of Deposition of MEC]).  On August 22 and 23, 2012, the dates unilaterally chosen by Defendants for Mr. Sacks' and MEC's depositions, Mr. Sacks and MEC's other Rule 30(b)(6) designee Tom Kelly, MEC's  Senior Vice President of Finance, were only available for deposition in California where MEC is

located and where the witnesses live.  Accordingly, MEC offered to make the witnesses available in California on those dates.  Def's Ex. 3.  MEC also, however, offered to make Mr. Sacks and Mr. Kelly available in Florida on other dates when the witnesses would be available to travel to Florida.  (Ex. 12 [Email from J. Sganga to M. Mortner of Aug. 20, 2012].)

MEC initially proposed that the depositions of the parties take place in New York and California where the parties are located so as to minimize the burden on the witnesses.  (Ex. 8 [Email from P. Stewart to M. Mortner of Aug. 3, 2012].)  On August 3, 2012, after receiving Defendants' deposition notice of MEC indicating their intent to take MEC's deposition in Orlando, MEC's counsel sent an email to Mr. Mortner offering that if Defendants would agree to conduct the depositions of MEC and Mr. Sacks in California, MEC would similarly agree to conduct the depositions of Consolidated and Consolidated's witnesses, Mr. Schneorson, and Mr. Baksht, in New York.  (*Id.*)

On August 7, 2012, Mr. Mortner responded that the depositions of parties and officers of parties should be conducted in Florida.  (Ex. 9 [Email from M. Mortner to P. Stewart of Aug. 7, 2012].)  MEC's counsel responded the same day, requesting that Consolidated reconsider its position in the interests of efficiency for all parties concerned:

> In light of your preference to have all party depositions in Florida, we will be serving tonight or tomorrow amended notices of deposition for Consolidated, Mr. Baksht, and Mr. Schnoerson, noticing their

depositions for Orlando, Florida.  However, we do ask again that you
reconsider your position on this.  You already will be traveling to
California for the depositions of Ms. Symes and Ms. Reed.  We would
work with you to coordinate their schedules with the schedule for the
depositions of Monster Energy and Mr. Sacks so that you could
complete all of these depositions in a single trip to California.  And, of
course, you would not need to travel at all for the depositions of
Consolidated, Mr. Baksht, and Mr. Schneorson if we schedule these
for New York.  In contrast, as matters now stand, you still will be
traveling once to California, and you will also be traveling twice to
Florida for the party depositions.  In light of this, please give some
further thought to whether you truly want the party depositions to take
place in Florida.

(Ex. 10 [Email from P. Stewart to M. Mortner of Aug. 7, 2012].)  Hearing no response
to this request for reconsideration, on August 8, 2012, MEC served amended
deposition notices of Consolidated, Mr. Baksht and Mr. Schneorson setting the
depositions for Florida rather than New York as previously noticed.

On August 15, 2012, Mr. Mortner requested the names of MEC's 30(b)(6)
witnesses and confirmation of the depositions.  (Ex. 11 [Email from M. Mortner to P.
Stewart of Aug. 15, 2012].)  MEC's counsel responded on August 16, 2012, with the
names of the designees and indicated that their schedules would only permit them to
be available in California on the dates unilaterally set by Defendants.  (Ex. 3 to Mot.)

The following day, without any further discussion and without informing MEC's counsel that Defendants intended to file a motion to compel, Consolidated filed this Motion.

Promptly thereafter, on August 20, 2012, MEC's counsel sent Mr. Mortner an email offering dates when Mr. Sacks would be available for deposition in Florida:

> We were surprised by Consolidated's motion to compel filed on August 17th, as we did not have an opportunity to meet and confer to resolve the issues raised in the motion.   In particular, we have not refused to make Mr. Sacks available for deposition in Florida.   Rather, he is available on the dates you noticed for the deposition only in California. He can be available in Florida on August 27, 28 or 29 for a deposition. However, in light of your email today indicating that Mr. Baksht is only available for deposition in New York, we again ask that we conduct all the depositions of the parties in their home states and avoid unnecessary travel for both of us to Florida.

(Ex. 12 [Email from J. Sganga to M. Mortner of Aug. 20, 2012].)  Unfortunately, soon after proposing these dates, MEC's counsel learned that one of MEC's senior personnel passed away and his funeral would be held on August 27, 2012, making MEC's officers unavailable to be deposed in Florida on August 27 or 28.   MEC's counsel promptly advised Mr. Mortner of the change to the schedule and proposed alternative dates of August 30 or 31, or later.  (Ex. 13 [Email from J. Sganga to M. Mortner of Aug. 23, 2012].)  To facilitate a deposition on August 31 or later, MEC

has offered to stipulate to extend the deadline for taking depositions. The Defendants have declined this request, resulting in a separate motion to extend the discovery period. *See* Dkt. No. 145.

Mr. Mortner has been unwilling to accept MEC's offered dates for the 30(b)(6) depositions or to propose alternative dates. For example, Mr. Mortner refused MEC's offer to sit for deposition on August 31, on the ground that discovery was set to close on August 30, even though MEC had repeatedly offered to seek a stipulated extension of the discovery period. (Ex. 15 [Aug. 23, 2012 email from M. Mortner to J. Sganga]). The Defendants' position was ironic at best, since it was the Defendants who created this very scheduling difficulty by noticing all of their depositions for within one week of the close of discovery. Most recently, Mr. Mortner has taken the position that the depositions should not even be scheduled until the Court rules on Defendants' motion to compel production of documents. (Ex. 5 [Email from M. Mortner to P. Stewart of Aug. 24, 2012].) Additionally, although Mr. Mortner previously agreed that the party depositions should occur in Florida, on August 20, 2012, Mr. Mortner wrote to MEC's counsel that Mr. Baksht would only be available for his deposition in his apartment in Brooklyn, New York. (Ex. 14 [Email from M. Mortner to P. Stewart of Aug. 20, 2012].) Thus, Defendants are now insisting that MEC's 30(b)(6) designees travel to Florida for their depositions while Mr. Baksht is deposed in his home.[1]

---

[1] Despite this promise that Mr. Baksht would be available for a deposition in his apartment, Defendants cancelled Mr. Baksht's deposition on less than 24 hours' notice, after counsel for MEC had irreversibly boarded a non-stop flight from

**B.     Defendants' Demand to Depose MEC in Florida While Insisting that Baksht's Deposition Proceed in New York is Unreasonable**

MEC's proposal that the depositions of MEC's Rule 30(b)(6) representatives proceed in California while the depositions of Defendants' representatives proceed in New York is based on fairness and efficiency for both parties.  MEC has been and remains willing to make its representatives available for deposition in Florida, provided that Defendants likewise makes their representatives, Mr. Baksht and Mr. Schneorson, available for deposition in Florida.  But Defendants want to have it both ways: they want MEC's officers to travel across the country to be deposed in Florida, while maintaining that MEC must travel to New York to take Mr. Baksht's deposition in his home.

Local Rule 3.04 provides that "a non-resident defendant who intends to be present in person at trial may reasonably be deposed at least once in this District either during the discovery stages of the case or within a week prior to trial . . . " Defendants have never indicated that Mr. Baksht does not intend to be present in person at trial.  Accordingly, the same Local Rule that Defendants rely on in seeking to compel MEC's witnesses to appear in Florida applies equally to Mr. Baksht. While insisting that Mr. Baksht be deposed in New York, Consolidated has never articulated any reason why the depositions of all of the parties should not proceed in their home states.  Defendants' counsel, Mr. Mortner, has stated that he must be present at all of the depositions, and that Defendants' Florida counsel would not be

---

California to New York for the deposition.  As of now, the deposition of Mr. Baksht still has not been taken.

taking any depositions in this case.  (Ex. 15 [Email from M. Mortner to J. Sganga of August 23, 2012]).  Thus, Defendants' counsel must travel whether the depositions of MEC and Mr. Sacks proceed in Florida or in California.  Further, Defendants' counsel will have to travel to California anyway to take the depositions of MEC's counsel Lynda Zadra-Symes and Diane Reed noticed by Defendants.  The only result of requiring MEC's and Mr. Sacks' depositions to proceed in Florida is that MEC's Chairman and CEO, Mr. Sacks, and Senior Vice President of Finance, Mr. Kelly along with MEC's counsel will be forced to travel to Florida.  This strongly suggests that Defendants' sole motivation for demanding a Florida location for MEC's depositions is to increase the inconvenience and costs for MEC and its counsel, and to needlessly complicate the scheduling process.

Accordingly, MEC requests that the Court deny Defendants' motion to compel MEC's 30(b)(6) witnesses to appear in Florida for the reason that it would be more efficient for the parties and their counsel for the depositions of parties to take place in the parties' home states.  Alternatively, if the Court is inclined to order that MEC's 30(b)(6) deposition occur in Florida, MEC requests that the Court likewise require the defendants' party witnesses to appear in Florida for their depositions.

### III.  MEC HAS NOT REFUSED TO PRODUCE MS. SYMES FOR A DEPOSITION

Defendants also seek an order compelling MEC's counsel, Lynda Zadra-Symes, to appear for a deposition.  MEC, however, has already agreed to make Ms. Symes available for a deposition and even proposed dates when Ms. Symes would be available.  As the correspondence quoted in Consolidated's motion makes clear,

MEC has never suggested that Ms. Symes would not appear for a deposition, only that she was unavailable for a period of ten days, including the date on which Defendants unilaterally scheduled her deposition.  (Mot. at 6.)

On August 3, 2012, MEC served a subpoena for Ms. Symes deposition improperly setting the deposition to proceed in Florida, well over 100 miles from the location of service of the subpoena in California, contrary to Fed. R. Civ. P. 45(b)(2)(B).  After Ms. Symes objected to the location of the deposition, Defendants served an amended subpoena on August 8, 2012 setting the deposition for August 29, 2012 in California.  Ms. Symes long ago planned and paid for a trip from August 20-30, 2012 to help her children move into their dorm rooms at college in Pennsylvania and Massachusetts.  (Ex. 12 [Email from J. Sganga to M. Mortner of Aug. 20, 2012].)

Since Defendants' counsel unilaterally chose the date on which to notice Ms. Symes' deposition and failed to meet and confer before filing this motion, MEC did not have the opportunity to work with Defendants' counsel to schedule a date for Ms. Symes' deposition.  Moreover, Defendants' decision to file this motion rather than confer with MEC's counsel to set the deposition for a mutually agreeable date is just another example of Defendants' unwillingness to engage with MEC's counsel to discuss scheduling and discovery issues contrary to the guidelines in the Middle District Discovery Handbook.  *See* Middle District Discovery Handbook (2001) at § II.A.1. ("A courteous lawyer is normally expected to accommodate the schedules of opposing lawyers.  In doing so, the attorney should normally pre-arrange a

deposition with opposing counsel before serving the notice.  If this is not possible, counsel may unilaterally notice the deposition while at the same time indicating a willingness to be reasonable about any necessary rescheduling.")

On August 20, 2012, MEC's counsel sent Mr. Mortner an email explaining why Ms. Symes was not available on August 29 and proposing that the parties stipulate to allow Ms. Symes deposition to occur on August 31 or the week of September 4 when Ms. Symes returns from her trip.  (Ex. 12 [Email from J. Sganga to M. Mortner of Aug. 20, 2012].)   Consolidated has not accepted this invitation. Accordingly, Defendants' motion to compel Ms. Symes' deposition is improper and should be denied because Ms. Symes has already agreed to appear for deposition on a mutually agreeable date, and the sole reason that Ms. Symes deposition has not yet been scheduled is Defendants' failure to respond to dates proposed by MEC's counsel.

## IV.  MEC SHOULD NOT BE REQUIRED TO DISCLOSE ITS CONFIDENTIAL AND TRADE SECRET INFORMATION AND OCUMENTS WITHOUT A CONFIDENTIALITY AGREEMENT OR PROTECTIVE ORDER

Defendants further seek to compel MEC to produce its confidential, trade secret, and proprietary documents and to provide deposition testimony relating to such highly confidential information without any protection in the form of a confidentiality agreement or protective order .  (Mot. at 3–4, 8–9.)  As set forth in detail in MEC's Motion for Protective Order, MEC proposed that the parties enter into a confidentiality agreement so that MEC could safely produce its confidential information; however, Defendants refused to agree to a confidentiality agreement

providing an attorneys' eyes only level of protection.  (*See* Dkt. No. 148.) Accordingly, the parties have been unable to agree to a confidentiality agreement. Nonetheless, MEC has produced its confidential and highly confidential documents for Defendants' counsel to review at the offices of MEC's local counsel, Rick Mitchell, in this district.  (Ex. 16 [Email from L. Katzenellenbogen to M. Mortner of August 16, 2012]).  Defendants have refused to inspect MEC's documents and instead insist that MEC produce the documents without any confidentiality protection.

Defendants' document requests and deposition topics seek MEC's highly sensitive business information including license agreements, royalty rates, detailed sales and financial information regarding suppliers and costs to produce t-shirts, distribution contracts, and information concerning MEC's development of its M Claw trademark and copyrighted design.  As set forth in detail in MEC's Motion for Protective Order, MEC is concerned about producing this type of information without an attorneys' eyes only level of protection because Defendants have been selling t-shirts with a design that is nearly identical to MEC's famous M Claw design.  The information Defendants have requested such as documents showing the pantone colors MEC uses in its M Claw design, for example, would enable Defendants to make even better copies of MEC's M Claw design.  Additionally, the parties in this lawsuit are competitors in the market for t-shirts, and permitting the defendants themselves to review MEC's highly confidential financial and business information would provide the defendants a competitive advantage.  Further, Defendants have a

history of filing applications to register trademarks nearly identical to well known trademarks owned by others and showing a lack of respect for the judicial process by, for example, evading service, which indicates that Defendants may not comply with a confidentiality agreement.

Courts in this District and elsewhere have issued protective orders with an attorneys' eyes only level of protection for discovery materials, particularly in trademark infringement cases.  (Dkt. No. 148 at 9-13.)  Conversely, Consolidated's argument against an "attorneys' eyes only" category relies on a single unpublished, nonprecedential decision that was not a trademark infringement suit.  (Mot. at 3–4 (citing *Vistakon Pharmaceuticals, LLC v. Bausch & Lomb, Inc.*, Case No. 3:09-cv-176-J-32MCR (M.D. Fla. 2009).)  Defendants also argue that an "attorneys' eyes only" category would conflict with the Court's admonition that motions to file under seal are disfavored.  (*Id.*)  Yet MEC's proposed protective order requires only that a party wishing to file "attorneys' eyes only" materials must seek the Court's permission to file under seal.  The Court, of course, has discretion to grant or deny that request.  Thus, MEC's request does not conflict with this Court's guidance regarding filing under seal.

Accordingly, MEC respectfully requests that this Court grant MEC's Motion for Protective Order and deny Defendants' motion to compel production of MEC's confidential documents and information without any protection for confidentially.

## V.  CONCLUSION

Based on the foregoing, MEC respectfully requests that this Court deny

Defendants' motion in its entirety.

Respectfully submitted,


Dated: August 30, 2012             By: /s/ *Lauren Keller Katzenellenbogen*
                                   JOHN B. SGANGA, JR. ESQ.
                                   (Admitted *Pro Hac Vice*)
                                   john.sganga@kmob.com
                                   LYNDA J. ZADRA-SYMES, ESQ.
                                   (Admitted *Pro Hac Vice*)
                                   lynda.zadra-symes@kmob.com
                                   PAUL A. STEWART, ESQ.
                                   paul.stewart@kmob.com
                                   LAUREN K. KATZENELLENBOGEN, ESQ.
                                   (Admitted *Pro Hac Vice*)
                                   lauren.katzenellenbogen@kmob.com
                                   KNOBBE, MARTENS, OLSON & BEAR, LLP
                                   2040 Main Street, Fourteenth Floor
                                   Irvine, California  92614
                                   (949) 760-0404  Telephone
                                   (949) 760-9502  Facsimile

                                   Lead Trial Counsel for Plaintiff,
                                   MONSTER ENERGY COMPANY f/k/a
                                   HANSEN BEVERAGE COMPANY d/b/a
                                   MONSTER BEVERAGE COMPANY

                                   – and –

                                   RICHARD E. MITCHELL, ESQ.
                                   Florida Bar No.: 0168092
                                   rick.mitchell@gray-robinson.com
                                   GRAYROBINSON, P.A.
                                   301 East Pine Street, Suite 1400
                                   Orlando, Florida  32801
                                   (407) 843-8880  Telephone
                                   (407) 244-5690  Facsimile

                                   Local Counsel for Plaintiff,
                                   MONSTER ENERGY COMPANY f/k/a
                                   HANSEN BEVERAGE COMPANY d/b/a
                                   MONSTER BEVERAGE COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

  /s/ *Lauren Keller Katzenellenbogen*  
Lauren Keller Katzenellenbogen