**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| MONSTER ENERGY COMPANY, f/k/a HANSEN BEVERAGE COMPANY, d/b/a MONSTER BEVERAGE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>CONSOLIDATED DISTRIBUTORS, INC., METTEMP, INC., and DAVID BAKSHT (a/k/a David Lipsker a/k/a David Bakshet a/k/a D Bakht a/k/a DM Schneerson a/k/a Abraham Shneorson),<br><br>Defendants. | Case No. 6:11-CV-329-ORL-22DAB |

_____/

**PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF**
**DEFENDANTS' EXPERT DR. KENNETH EUGENE LEHRER**

Plaintiff Monster Energy Company, formerly known as Hansen Beverage Company d/b/a Monster Beverage Company ("MEC"), respectfully moves for an order excluding the testimony of Defendants' expert Dr. Kenneth Eugene Lehrer.

**I. INTRODUCTION**

Defendants intend to present Dr. Kenneth Eugene Lehrer as an expert witness to testify regarding the interpretation of securities laws and MEC's compliance with such laws. MEC's compliance with securities laws, however, is not at issue in this trademark and copyright infringement action. Moreover, Dr. Lehrer is an economist, not a lawyer, an accountant, or an expert on the SEC, and is not

1

qualified to offer opinions regarding compliance with securities laws. Further, his opinions are not based on reliable methods.

In this action, MEC asserts that Defendants' t-shirts bearing their  "3DL" design infringe MEC's registered ("M Claw") and trademarks and copyrighted design. MEC has used its M Claw mark since 2002, as set forth in MEC's trademark registrations and evidenced by MEC's accounting reports, sales documents, and numerous photographs and videos showing MEC's sponsored athletes and musicians and others wearing clothing bearing MEC's M Claw marks with and without "MONSTER ENERGY." Defendants, however, challenge MEC's assertion that it began using the M Claw mark in connection with clothing in 2002, and claim that their use of the 3DL design predates MEC's use of the M Claw mark.

In his August 15, 2012 expert report ("the Report")[1], Dr. Lehrer opines that if MEC was using its M Claw mark in connection with clothing since 2002, MEC's annual 10-K reports filed with the SEC from 2004-2011 did not comply with securities laws because MEC did not report on clothing as a separate segment of its

---

[1] Defendants served only one report disclosing Dr. Lehrer's opinions and testimony pursuant to Fed. R. Civ. P. 26(a)(2), and Dr. Lehrer has not been deposed in this action. The Report is attached as Exhibit 79 to the Declaration of Lauren Keller Katzenellenbogen ("Katzenellenbogen Decl.").

business in those annual reports.[2] The Report ultimately concludes that either MEC violates securities laws, or is falsely representing to the Court that it is in the clothing business at all. The Report fails to address the fact that MEC sells almost two billion dollars worth of beverages each year, and that while MEC's clothing-related revenues are worth millions of dollars, they are a very small percentage of MEC's overall business. Nor does Dr. Lehrer compare MEC's clothing business to the smallest segment of MEC's business identified in its SEC filings, a beverage division that generates nearly $95 million in sales annually, and represented 5.6% of consolidated net sales in 2011. Katzenellenbogen Decl. Ex. 80 (2011 10-K) pp. 34, 37, 100. It is unremarkable that MEC does not include a separate line item for every single aspect of its business in its SEC filings, regardless of how small. And it is unreliable for an economist to opine that as a result, SEC law has been violated or else the business did not exist.

Although Dr. Lehrer provides general background information on the Securities Exchange Act of 1934 and the Sarbanes-Oxley Act of 2002, Dr. Lehrer does not identify any specific law that he believes MEC has violated. Rather, Dr. Lehrer appears to base his opinions on a general "duty to avoid material omissions [] found in both SEC antifraud and financial reporting rules such as the Exchange Act." Lehrer Rep. ¶ 21. Dr. Lehrer also does not identify any specific industry standard or

---

[2] The SEC filings referenced in Dr. Lehrer's Report and in this motion are actually filed by MEC's parent company Monster Beverage Corporation ("MBC") of which MEC is the primary operating subsidiary. Additionally, MBC or its predecessor has filed 10-Ks since long before 2004; however, Lehrer's report only addresses MBC's 10-Ks from 2004-2011.

practice as a basis for his opinions that MEC has failed to comply with securities laws.

Dr. Lehrer's testimony fails all three prongs of the *Daubert* test for admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence.[3] Under the first prong, qualification of the expert, Dr. Lehrer's testimony fails because Dr. Lehrer is not a lawyer and is not licensed or qualified to give advice on compliance with securities laws. Dr. Lehrer even acknowledges in the Report that he is not qualified to give legal advice. Yet, his opinions are based solely on his interpretation of securities laws. Although Dr. Lehrer purports to base his opinions on industry practices, Dr. Lehrer does not identify any industry practices as the basis for his opinions. Moreover, Dr. Lehrer is also not qualified to offer opinions on industry practices in the beverage industry as he has no experience or training relating to the beverage industry or beverage companies' compliance with securities laws.

Under the second prong, reliability, Dr. Lehrer's testimony should be excluded because he fails to explain how his experience in business and economics leads to his conclusions that MEC failed to comply with securities laws, and because there is

---

[3] Other courts have previously excluded Dr. Lehrer's testimony. *Equitable Mortgage Corp. v. Mortgage Guaranty Ins. Corp.*, 719 F. Supp. 620, 626 (S.D. Miss. 1990) (excluding Lehrer's opinion because it was "fundamentally unsupported."); *Marobie-FL, Inc. v. National Assoc. of Fire Equipment Dist. et al.*, No. 96 C 2966, 2001 U.S. Dist. LEXIS 10292 (N.D. Ill. July 9, 2001) (barring Lehrer's testimony on pass along damages as based on "analytical guess-work [that] is not to be confused with expert opinion founded upon valid research."). Thus, it is not unusual for Dr. Lehrer to provide testimony based on insufficient facts, data, and methods.

simply too great a gap between the data and Dr. Lehrer's ultimate conclusions. Specifically, Dr. Lehrer theorizes that MEC did not, in fact, use its M Claw mark in connection with clothing between 2004 and 2011 based solely on MEC's 10-K reports. However, MEC's extensive evidence of its use of the M Claw on clothing proves that this cannot be correct. And Dr. Lehrer provides no explanation of how he could come to this conclusion based solely on MEC's 10-K filings while failing to review MEC's financial statements produced to Defendants in this action and failing to investigate the actual clothing sales by MEC which are conducted openly and publicly. Moreover, Dr. Lehrer's interpretation of securities laws has not been subjected to peer review or publication and is contrary to generally accepted practices in the relevant community. For example, other beverage companies such as Coca-Cola and Anheuser-Busch that own registrations for their trademarks used in connection with clothing follow the same practice as MEC and do not separately report on clothing as a segment of their business in their annual 10-K reports.

Under the final prong, fit or relevance, Dr. Lehrer's testimony fails because whether MEC complied with securities laws is not at issue in this action and cannot legitimately assist a trier of fact in determining whether MEC has used its M Claw mark in connection with clothing since 2002. Moreover, Dr. Lehrer's testimony should be excluded under Rule 403 of the Federal Rules of Evidence because it is highly prejudicial to MEC and has little to no probative value. Accordingly, MEC respectfully requests that this Court bar Defendants from offering Dr. Lehrer as an expert witness.

## II. CERTIFICATION OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 3.01(g), counsel for MEC, Paul Stewart of Knobbe Martens Olsen & Bear, LLP, conferred in good faith with counsel for the Defendants regarding the relief requested in this motion and was unable to reach an agreement. The conference took place via email on September 28, 2012.

## III. ARGUMENT

A. **Expert Testimony Must Meet the Standards of Fed. R. Evid. 702**

Fed. R. Evid. 702 governs the admissibility of expert testimony and requires that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (U.S. 1993), the Supreme Court held that, "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." The 11th Circuit also has emphasized that "[t]he importance of Daubert's gatekeeping requirement cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

In determining the admissibility of expert testimony under Rule 702, courts in the Eleventh Circuit "consider whether: (1) the expert is qualified to testify

competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Frazier*, 387 F.3d at 1260; *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999). The proponent of expert testimony bears the burden to show that the testimony complies with all three of these requirements. *Frazier*, 387 F.3d at 1260. Defendants cannot meet this burden.

**B.     Dr. Lehrer is Not Qualified to Offer Opinions Regarding Interpretation of Securities Laws and their Requirements**

In his August 15, 2012 Report, Dr. Lehrer expressly states that his opinions are not "legal interpretations or conclusions, as the undersigned [Dr. Lehrer] is not an attorney." Yet despite this disclaimer, Dr. Lehrer offers a number of opinions as to interpretation of the securities laws and what they require. Specifically, Dr. Lehrer opines that under federal securities laws:

- Lying through omission consists of making statements that paint an incomplete or inaccurate picture, and not revealing other material information necessary to present the entire truth. ***The federal securities laws require*** public companies, whenever they speak, to disclose all material information that would be necessary to present the truth entirely.
- Failure to comply with [the duty to avoid material omissions] can, in extreme cases, result in criminal prosecution.
- Any significant income producing business of the company that involves the use of their valuable trademarks, such as on clothing and associated items . . . ***must be disclosed*** in documentation supplied to the general investing public.

7

- The lack of disclosure over a prolonged period of time denotes that the lack of such disclosures was not a 'minor error' or insignificant oversight ***and thus violates a considerable number of disclosure rules, regulations and directives*** of the appropriate oversight and governing agencies in the securities and financial market arenas of the United States financial and investment sectors.

Lehrer Rep. ¶¶ 20, 21, and 28. (emphasis added.) Further, Dr. Lehrer's ultimate conclusion -- that MEC either failed to comply with securities laws or has not been selling clothing – is based solely on Dr. Lehrer's interpretation of the securities laws. Lehrer Rep. ¶ 26. Dr. Lerhrer did not inspect any of MEC's financial records on which MEC's SEC filings are based, or apparently even view websites such as MEC's website http://gear.monsterenergy.com/ or MEC's Monster Army website, http://shops.hookit.com/monsterarmy/ on which clothing with the M Claw mark is available for sale.

As an initial matter, Dr. Lehrer's opinions regarding the interpretation of securities laws are not an appropriate subject for expert testimony. *See Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 368 (4th Cir. 1986) (the trial court properly excluded expert testimony where the Appellants proffered "an expert witness to testify in substantial part to the meaning and applicability of the securities laws to the transactions [in the case], giving his expert opinion on the governing law."). "[A] court should seldom, if ever, allow an 'expert' to opine on the meaning of a statute, regulation, or a contract." *Sharp Realty & Mgmt., LLC v. Capitol Specialty Ins. Corp*, No. CV-10-AR-3180-C, 2012 U.S. Dist. LEXIS 75353, at *33 (N.D. Ala. May 31, 2012).

Moreover, Dr. Lehrer is not qualified to offer such opinions regarding the interpretation of securities laws as Dr. Lehrer is not a lawyer and has no legal training. Dr. Lehrer also is not a licensed Certified Public Accountant (CPA) and thus cannot file reports with the SEC.[4] In fact, Dr. Lehrer does not appear to be an accountant at all. Dr. Lehrer also has never worked for the SEC. Rule 702 requires that an expert be qualified to testify competently on matters that he intends to address. *Frazier*, 387 F.3d at 1260. Although experts may be qualified either through training and education or through experience, neither Dr. Lehrer's education in economics, banking, and finance nor his experience in brokering real estate and investments and in banking qualifies Dr. Lehrer to offer legal opinions. As a non-lawyer, Dr. Lehrer cannot have any experience in providing legal advice regarding compliance with securities laws, as that would constitute practicing law without a license. Lehrer Rep. ¶ 12.

Although Dr. Lehrer purports to opine on generally accepted policies, practices, and procedures, Dr. Lehrer's Report does not specifically identify any generally accepted policies and procedures as the basis for his opinions. Moreover, Dr. Lehrer is also not qualified to offer opinions on generally accepted practices of

---

[4] According to the report, Dr. Lehrer has held the General Securities Licenses (Series 7) in years past and is registered with the Securities and Exchange Commission as an Investment Advisor. However, the Series 7 qualification exam does not cover requirements for 10-K filings with the SEC (*see* http://www.finra.org/web/groups/industry/@ip/@comp/@regis/documents/industry/p124292.pdf), and both the Series 7 and registration as an Investment Advisor are qualifications that relate to selling investments such as stocks, bonds, and mutual funds and do not relate to preparing or filing 10-Ks with the SEC.

beverage companies in complying with securities laws as Dr. Lehrer has no beverage industry experience. Dr. Lehrer's business experience appears to be entirely in brokering real estate and investments and in banking. Lehrer Rep. at ¶¶ 5-7. Because Dr. Lehrer is not qualified to opine on interpretation of and compliance with securities laws, or on general practices of beverage companies, his testimony should be excluded.

**C.    Dr. Lehrer's Testimony Should be Barred Because his Methodology is Not Reliable**

Even if Dr. Lehrer were qualified, his testimony should be excluded because it does not meet the second prong of the *Daubert* test, which requires that the methodology on which the expert bases his opinions be sufficiently reliable. To evaluate the reliability of scientific expert opinion, courts consider, to the extent practicable: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier*, 387 F.3d at 1262 (citing *Daubert* 509 U.S. at 593-94.). "The same criteria which are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (U.S. 1999) and *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999) ("In determining whether an expert's testimony is reliable, the Daubert factors are applicable in cases where an expert eschews reliance on any

rigorous methodology and instead purports to base his opinion merely on 'experience' or 'training.'")).  "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261. Importantly, the expert's bald assurance of validity is not enough.  *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995).

Dr. Lehrer's conclusions stated in his Report have no reliable basis.  Dr. Lehrer appears to be relying primarily on experience to reach his conclusions.  Dr. Lehrer's Report, however, fails to provide the required explanation of how his experience leads to his conclusions or why it is a sufficient basis for these conclusions.  Specifically, Dr. Lehrer concludes that Rodney Sacks and MEC "have **EITHER** failed to make full, proper and adequate disclosure to the investing public via documentation filed with the SEC in omitting any reference to their corporate enterprises sale of clothing since 2002 **OR** have filed inaccurate pleadings and an inaccurate declaration" in this case stating that MEC has been selling clothing since 2002. Lehrer Rep. ¶ 29 (emphasis in original).  Yet, Dr. Lehrer does not identify any specific industry practices that he believes MEC has violated.  Further, while Dr. Lehrer provides general background information on when certain securities laws were enacted and opines generally that these laws require disclosure of all material information, Dr. Lehrer does not identify any specific securities laws that he contends MEC has violated.  As set forth above, Dr. Lehrer admits that he is not a

11

lawyer and is not qualified to offer legal opinions.  *Id.* ¶ 12.  Yet, his conclusions rest entirely on his unsupported interpretation of securities laws without even specifically identifying which laws he purports to apply.  Nor does his Report address any investigation into whether MEC actually does sell clothing bearing the M Claw trademark.

Moreover, the applicable *Daubert* factors for reliability weigh heavily against admitting Dr. Lehrer's testimony.  Under the first *Daubert* factor, whether the expert's theories can be and have been tested, Dr. Lehrer's theories can be tested and are provably wrong.  For example, Dr. Lehrer theorizes based solely on MEC's 10-K filings, that MEC's representation that it has been using its M Claw trademark in connection with clothing since 2002 is false.  Lehrer Rep. ¶¶ 26 and 29.  This theory is easily tested and is wrong.  MEC has produced extensive accounting records showing its sales of clothing since 2002 as well as purchase orders, sales invoices, shipping details and numerous photographs and video clips of athletes, musicians, and others wearing MEC's clothing bearing MEC's M Claw marks.  Kelly Decl. ¶¶ 6-8, Ex. 91; Katzenellenbogen Decl. Ex. 1.  In view of this extensive visual evidence and documentation, there can be no real dispute that during the period from 2004-2011, MEC used its M Claw trademark in connection with clothing.  Dr. Lehrer provides no explanation of how despite this extensive evidence, MEC's 10-K filings alone, could possibly lead to the conclusion that MEC was not using its M Claw mark in connection with clothing.  Where, as here, there is "simply too great an analytical

gap between the data and the opinion preferred" an expert's testimony should be excluded. *See GE v. Joiner*, 522 U.S. 136, 146 (U.S. 1997).

Similarly, Dr. Lehrer opines that MEC's 10-Ks for 2004-2011 "clearly fails to disclose in any of these years that the organization is engaged in or earns any income from the sale of clothing . . ." Lehrer Rep. ¶ 23. Dr. Lehrer also opines that MEC's "licensing agreements for a wide variety of substantial and significant clothing sales is an item of significant financial substance that has been omitted from a wide variety of documentation supplied to the general investing public . . " These opinions can be easily disproven by reviewing MEC's 10-K filings. Contrary to Dr. Lehrer's theories, MEC's 10-K's disclose income from the sale and licensing of clothing. Specifically, MEC's 10-K's refer to clothing as "premium items" or "point of sales items" to distributors and account for clothing sales as a reduction in costs.[5] Kelly Decl. ¶¶ 4-5; Katzenellenbogen Decl. Ex. 80 p. 52 (MEC's 2011 10-K). MEC's 10-K's also disclose licensing revenue in a line item entitled "other income." Katzenellenbogen Decl. Exs. 81-87 (Excerpts from MEC's 10-Ks). Consistent with the fact that clothing sales are accounted for in MEC's reported financial data, but not identified by a separate "clothing" line item, the smallest segment reported in MEC's 10-Ks is the warehouse segment that generates nearly $95 million in sales annually and accounted for 5.6% of MEC's net sales in 2011. Katzenellenbogen Decl. Ex. 80, pp. 36-37, 100 (MEC's 2011 10-K). Thus, contrary to Dr. Lehrer's

---

[5] Premium and point of sales (POS) items are accounted for in the category "operating expenses," or in the years 2004 and 2005, under the subcategories "selling, general, and administrative expenses" or "selling expenses," respectively.

conclusions, with MEC's gross sales of nearly $2 billion in 2011, an unreported segment may still constitute substantial sales and distribution of clothing. Kelly Decl. ¶ 10; Katzenellenbogen Decl. Ex. 80, p. 36-37 (MEC's 2011 10-K). Accordingly, a number of Dr. Lehrer's opinions and conclusions can be easily tested and proven false.

The second factor, whether the expert's theories have been subjected to peer review, also weighs against finding that Dr. Lehrer's theories are reliable. Dr. Lehrer cites to no publication or peer review of his theories on interpretation of, or compliance with, the securities laws. Accordingly, Dr. Lehrer has presented no evidence that his theories on compliance with securities laws have been subjected to peer review.

The fourth factor, whether the technique is generally accepted in the relevant community, also weighs heavily against Dr. Lehrer's theories. Dr. Lehrer's theory that MEC failed to comply with securities laws is contrary to generally accepted practices in the relevant community. Dr. Lehrer opines that MEC violated applicable securities laws by not separately reporting on its clothing sales and licensing in its 10-K filings. Yet, other publicly held beverage companies that sell clothing (including through their websites) and hold numerous registrations for their trademarks used in connection with clothing, such as Coca-Cola and Anheuser-Busch, similarly do not report on their clothing sales in their 10-K filings. Katzenellenbogen Decl. Exs. 88-89 (Coca-Cola 10-K, Anheuser-Busch 10-K); *see also* Ex. 90 (http://www.coca-colastore.com/products/cocacola_apparel). Thus, MEC's practice is consistent with

generally accepted practices in the community, and Dr. Lehrer has offered no evidence to show general acceptance of his theory that MEC's practice does not comply with securities laws.  Accordingly, the three applicable *Daubert* factors all weigh heavily toward a finding that Dr. Lehrer's opinions and conclusions are unreliable and should be excluded.

**D.     Dr. Lehrer's Testimony Should be Barred Because it is Not Relevant to Any Fact in Issue**

Dr. Lehrer's testimony should also be excluded for the independent reason that it does not meet the third requirement of Rule 702 and *Daubert* – that the testimony assist the trier of fact in determining a fact in issue.  *See Frazier* 387 F.3d at 1262.  The Supreme Court in *Daubert* refers to this consideration as one of "fit" and explains "evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night."  *Daubert*, 509 U.S. at 591.  Here, Dr. Lehrer's testimony is not relevant to any fact at issue and does not meet the requirement of "fit" because MEC's compliance with securities laws is not at issue.  Further, whether MEC complied with securities laws cannot legitimately assist the trier of fact in determining whether MEC has been using its M Claw mark in connection with clothing since 2002.

Moreover, even if Dr. Lehrer's testimony otherwise met the admissibility requirements, which it does not, Dr. Lehrer's testimony should be excluded because it is highly prejudicial to MEC. "Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the

15

Case 6:11-cv-00329-ACC-DAB   Document 174   Filed 10/01/12   Page 16 of 18 PageID 4023

admissibility requirements may still be excluded by applying Rule 403." *Frazier*, 387 F.3d at 1263. Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury. *Id.* Here, Dr. Lehrer's testimony has little if any probative value and is highly likely to confuse and mislead the jury. Dr. Lehrer's opinions expressed in the Report (that MEC's accounting practices are improper, that MEC's clothing sales never happened, or simply that the clothing business is very small component of MEC's primary, billion dollar beverage business) are not probative of the trademark and copyright infringement issues in this action and are likely to distract and mislead the jury from the actual issues. Accordingly, Dr. Lehrer's testimony should be excluded for the additional reason that it is not relevant and is highly prejudicial.

## IV. <u>CONCLUSION</u>

Because Dr. Lehrer's testimony does not meet any of the three *Daubert* requirements for expert testimony, qualification, reliability, and fit, MEC respectfully requests that the Court enter an order excluding the testimony of Defendants' expert, Dr. Kenneth Eugene Lehrer.

Respectfully submitted,

Dated:  October 1, 2012            By: */s/ Lauren Keller Katzenellenbogen*
    JOHN B. SGANGA, JR. ESQ.
    (Admitted *Pro Hac Vice*)
    john.sganga@kmob.com
    LYNDA J. ZADRA-SYMES, ESQ.
    (Admitted *Pro Hac Vice*)

lynda.zadra-symes@kmob.com
PAUL A. STEWART, ESQ.
paul.stewart@kmob.com
LAUREN K. KATZENELLENBOGEN, ESQ.
(Admitted *Pro Hac Vice*)
lauren.katzenellenbogen@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, California  92614
(949) 760-0404  Telephone
(949) 760-9502  Facsimile

Lead Trial Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

– and –

RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida  32801
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

Local Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

    /s/ Lauren Keller Katzenellenbogen  
    Lauren Keller Katzenellenbogen

14033466