UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, f/k/a HANSEN BEVERAGE COMPANY, d/b/a MONSTER BEVERAGE COMPANY ("MBC"),<br><br>Plaintiff,<br><br>vs.<br><br>CONSOLIDATED DISTRIBUTORS, INC., METTEMP, INC., JOE COOL, INC., JOE COOL BIKE WEEK INC., DAVID BAKSHT, MICHELLE AMAR, AND YOSEF AMAR;<br><br>Defendants. | Case No. 6:11-CV-329-ORL-22DAB |

**RESPONSE OF DEFENDANT CONSOLDIATED DISTRIBUTORS, INC. TO PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT DR. KENNETH EUGENE LEHRER (DOC 174)**

Defendant Consolidated Distributors, Inc. ("CDI") for its opposition to Plaintiff's motion to exclude the testimony of CDI's expert Dr. Eugene E. Lehrer, submits the following Memorandum, together with the Declaration of Dr. Lehrer, filed herewith as Exhibit 1.

**ARGUMENT**

The legal principles governing the admissibility of expert testimony are well settled. Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an

opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) the Supreme Court held that the trial court had a "gatekeeper" function designed to ensure that any and all expert testimony is both relevant and reliable. The importance of this gate keeping function "cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*), cert. denied, 544 U.S. 1063 (2005).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. *Frazier*, 387 F.3d at 1260. Expert testimony is admissible if "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted). "The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1261 (11th Cir. 2004); see also *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). The admission of expert testimony is a matter within the discretion of the district court, which is accorded considerable leeway in making its determination. *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1103 (11th Cir. 2005); *Frazier*, 387 F.3d at 1258.

The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he or she intends to address. *US v. Hansen*, 262 F. 3d 1217, 1234 (11th Cir. 2001); *City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 563 (11th Cir. 1998). Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. *Frazier*, 387 F.3d at 1260-61.

The second requirement, discrete and independent from the witness's qualifications, is reliability. *Frazier*, 387 F.3d at 1261. While the criteria used to evaluate the reliability of non-scientific, experience-based testimony may vary from case to case, the district court must evaluate the reliability of the testimony before allowing its admission at trial. *Id.* at 1261-62. It is not, however, the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. *Rosenfeld*, 654 F.3d at 1193.

### A.   Qualifications

According to his Curriculum Vitae (submitted as an attachment to Dr. Lehrer's Declaration, and filed herewith as Exhibit 2), Dr. Lehrer earned his Ph.D. in economics in 1980. In the past twenty-eight years, Dr. Lehrer has appeared as an expert witness in approximately 1,700 cases concerning disputed issues involving business formations, contractual disputes, banking, lost profits, due diligence, securities, security analysis, standards of care in finance, stocks and other related economic and financial matters.  Dr. Lehrer has held Securities Licenses – Series 7 and Texas Series 63 and is a Registered Investment Advisor with the SEC.  As a Registered Investment Advisor he has the right to offer third parties, for a fee, investment advice based upon his economic / financial analysis.

From an analytical point of view, Dr. Lehrer is qualified, based upon Dr. Lehrer's

experience, background, education and licenses, to determine the appropriateness of the amount and level of public disclosure in documentation such as 10-Ks. A copy of Dr. Lehrer's Curriculum Vitae is annexed hereto. See Lehrer Declaration, ¶3, filed herewith as Exhibit 1.

Dr. Lehrer holds four (4) degrees from New York University in the areas of Finance, Business Administration and Economics. See Lehrer Decl., ¶ 4, Exhibit 1 hereto.

Dr. Lehrer has been involved in the analysis and preparation of 10-Ks throughout his career. Dr. Lehrer is a Director of Aztec Oil and Gas, Inc. ("Aztec"), a publicly traded company, and for a period of approximately two years, 2005-2006, Dr. Lehrer served as Aztec's Chief Financial Officer. As an officer and director of Aztec, Dr. Lehrer has participated in the creation and preparation of the firm's publicly available documentation, as filed with the Securities Exchange Commission, including 10-Ks. See Lehrer Decl., ¶ 5, Exhibit 1 hereto.

As a professor of Finance at the University of Houston and as a professor of Economics at the University of Phoenix, Dr. Lehrer has taught students for over 20 years on the duties of corporate public disclosure and the analysis of public disclosure documents. See Lehrer Decl., ¶ 6, Exhibit 1 hereto.

Finally, Plaintiff's motion incorrectly states that other courts have previously excluded Dr. Lehrer's testimony. Specifically, Plaintiff refers to *Equitable Mortgage Corp. v. Mortgage Guaranty Ins. Corp.*, 719 F. Supp. 620, 626 (S.D. Miss. 1990) and *Marobie-FL, Inc. v. National Assoc. of Fire Equipment Dist. et al.*, No. 96 C 2966, 2001 U.S. Dist. LEXIS 10292 (N.D. Ill. July 9, 2001). In fact, Dr. Lehrer's testimony was admitted in both of these cases, however, in those two cases, the courts declined to rely on Dr. Lehrer's testimony. See Lehrer Decl., ¶ 10, Exhibit 1 hereto.

Based on the foregoing, the Court should find that Dr. Lehrer has sufficient knowledge and experience in financial analysis to qualify him to testify as an expert in this action.

B.     Reliability

The opinions to be testified to by Dr. Lehrer involve financial analysis, not scientific testing or evaluation, and not the offering of legal opinions. "One simply cannot 'test' an opinion or methodology with regard to the standard of care for an investment advisor..." quoting *In Re International Management Associates, LLC*, Bankr. Court, ND Georgia 2012, Case No. 06-62966, Adversary No. 10-06090.

Dr. Lehrer is not offering legal opinions but financial opinions regarding the financial disclosures of Plaintiff.

Plaintiff mischaracterizes Dr. Lehrer's Expert Report (Doc 178-34, and Exhibit 3 filed herewith), stating, "Dr. Lehrer theorizes that MEC did not, in fact, use its M Claw mark in connection with clothing between 2004 and 2011 based solely on MEC's 10-K reports." In fact, Dr. Lehrer offered no opinion as to whether Plaintiff used its M Claw mark in connection with clothing. Rather, Dr. Lehrer's report intended to opine that the sale of clothing and other associated athletic and sporting items, which, Plaintiff's CEO Rodney Sacks denotes as important to the company, was not disclosed in the company's public documents, and hence there was a material omission of an important and integral part of the organization's financial operations. See Lehrer Decl., ¶ 7, Exhibit 1 hereto.

Plaintiff's statement that Dr. Lehrer's review of Plaintiff's 10-Ks is insufficient to support his opinion, without the review of Plaintiff's financial statements disclosed in this action, is incorrect, because Plaintiff's 10-Ks all include the certified financial statements of the company.

5

See Lehrer Decl., ¶ 8, Exhibit 1 hereto.

Moreover, Dr. Lehrer's opinion regarding material omissions is based upon the central importance placed upon the M Claw mark to Plaintiff's overall business, as described in the Declaration of CEO Rodney Sacks and in the 10-Ks themselves. Hence, Dr. Lehrer opined in his report,

> Any significant income producing business of the company that involves the use of their valuable trademarks, such as on clothing and associated items for sale into the overall stream of business and commerce on a sustained basis, as opposed to SOLELY the use of their trademark only in relation to their core beverage business must be disclosed in documentation supplied to the general investing public. (Doc 178-34, ¶28.)

See Lehrer Decl., ¶ 9, Exhibit 1 hereto.

### C.     Helpfulness

An expert's testimony "fits" the case if there is a connection between the proffered testimony and an issue that is in dispute. *In re TMI Litigation*, 193 F.3d 613, 665 (3d Cir. 1999).

An issue in this case is Monster's claimed date of first use in the ordinary course of trade of its M Claw mark on clothing. Monster has claimed that the date is in 2002. However, as a result of discovery in this action, it has been established that Monster has no knowledge of its sales revenues from apparel, if any, for the years 2002-2009. Thomas J. Kelly, Senior Vice President-Finance for Monster, testified, as follows:

> Q. So sitting here today, Mr. Kelly, does Monster know for any year the amount of revenues it earned from the sale of apparel?
>
> A. Again, we talked about the 2002 to 2009 that there's data there that, you know, just hasn't been compiled in a report that I could answer that question. So I know we talked about the 2010 and '11 that there's -- you know, when we consider revenue is listed on the 10-K and sales, it was that more specific of your

6

> question?
>
> Q.  No. I'm just -- what's on the 10-K or not on the 10-K, the question is could you put your finger -- could you go back to your office and say this is – and  say, yes, here's the number, this is what we earned in revenues for the sale of apparel for any year in the last ten years?
>
> A.  Without running a specialized report. I couldn't just run that report for you or get that number for you so. . .
>
> Q.  You have not run that report in preparation for this -- in connection with this litigation; is that correct?
>
> A.  Well, we submitted this one for 2011 and 2010, I believe.  We, you know -- we produced this report which shows the amount of, you know, the sales price of -- that was charged to a distributor, and then in the column of net -- net invoice -- sorry, the extended invoice amount would have been the amount that it is shown on the bottom of an invoice of how much that we had charged to a distributor or customer.
>
> Unofficial Transcript of Thomas Kelly Depo., 57:14-58:18, filed herewith as Exhibit 4.

In fact, Mr. Kelly states in his Declaration (Doc 176) that reporting of Monster's revenues from its sales of clothing  appeared as "a reduction in the operating expense line."  Kelly Decl., p.3, ¶5.  In other words, there is no reporting of sales revenues.  So there is no way to verify whether Monster sold apparel in 2002 and in subsequent years as it claims to have.

Regarding licensing,  Monster was able to assemble revenue data from the licensing of its trademark to clothing manufacturers.  However, this licensing activity and income only began in 2007 or 2008.  See Schedule 1, annexed to the Expert Report of David Hanson, submitted by Plaintiff and annexed hereto as Exhibit 5.  See also Unofficial Transcript of Thomas Kelly Depo., 63:14—64:9, Exhibit 4 hereto.

Based on the foregoing, Dr. Lehrer's expert testimony regarding Monster and its CEO's

omission in reporting their revenues from sales of clothing in public filings, or even to report that the company sold any clothing, would be helpful in assisting the jury to determine whether Monster actually had sales in any given year, and particularly in its early years. This will help the jury determine the date of first use of Monster's M Claw mark on clothing in the ordinary course of trade. Therefore, the Court should find that this particular report and the testimony Dr. Lehrer proposes to provide at trial will assists the trier of fact to determine a fact in issue, the date of first use of Monster's M Claw mark.

### D. Conclusion

Based on the foregoing, the Court should find that Dr. Lehrer's expert testimony qualifies under the standards that the Supreme Court announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786 (1993) and that it meets the requirements of Fed. R. Evid. 702. Specifically, Dr. Lehrer is qualified to provide expert testimony, his testimony is based on sufficient facts and data, his opinions are the result of reliable principles and methods (that applicable case law supports), and he has reliably applied those principles and methods to the facts of this proceeding.

WHEREFORE, Defendants Consolidated Distributors, Inc. respectfully requests that the Court deny Plaintiff's motion to exclude testimony of Defendants' expert Dr. Kenneth Eugene Lehrer, and grant such further relief for Defendant CDI as the Court deems just and proper.

Respectfully submitted this 18th day of October, 2012.

/s/ Peter J. Mackey
Peter J. Mackey

| | |
|---|---|
| MOSHE MORTNER, ESQ. | Florida Bar No.: 0629138 |
| New York Bar No.: 2085801 | Kristina Hager Snyderman |
| mm@mortnerlaw.com | Florida Bar No.: 0089327 |
| The Mortner Law Offices | MACKEY LAW GROUP, P.A. |
| 40 Wall Street, 28th Floor | 1402 Third Avenue West |
| New York, NY 10005 | Bradenton, FL 34205 |
| 646-820-8770 Telephone | (941) 746-6225 Telephone |
| 646-304-3169 Facsimile | (941) 748-6584 Facsimile |
| Lead Counsel pro hac vice for Defendant | Local Counsel for Defendants, |
| CONSOLIDATED DISTRIBUTORS, INC. | CONSOLIDATED DISTRIBUTORS, INC. |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.