UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MONSTER ENERGY COMPANY, f/k/a
HANSEN BECERAGE COMPANY,
d/b/a MONSTER BEVERAGE
COMPANY,

Case No. 6:11-CV-329-ORL-22DAB

Plaintiff,

vs.

CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC. and DAVID
BAKSHT (a/k/a David Lipsker, a/k/a David
Bakshet a/k/a D Bakht, a/k/a DM Schneerson
a/k/a Abraham Shneorson),

Defendants.

---

**AFFIDAVIT OF DR. KENNETH EUGENE LEHRER**

**THE STATE OF TEXAS**       )
                             ) ss.:
**COUNTY OF HARRIS**         )

BEFORE ME, the undersigned authority, on this day personally appeared Dr. Kenneth Eugene Lehrer who, after being duly sworn, upon his oath stated and deposed as follows:

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../......

PAGE 2.

1. My name is Dr. Kenneth Eugene Lehrer. I am over the age of 21 and I am fully competent to make, and not disqualified by law from making, this affidavit. All of the statements set forth herein are based on information and documents provided to me, as well as my years of training and experience. The statements set forth herein are within my areas of expertise, and they are within my personal knowledge and are true and correct.

2. As part of this affidavit is my preliminary expert report, along with a statement of my qualifications and credentials and other supporting data as required under the Federal Rules of Civil Procedure. All of these documents were prepared by me, and are my work.

3. I hold four (4) degrees from New York University ("NYU"), including a Bachelor of Science degree in Finance (B.S. - 1967), a Masters in Business Administration degree in Banking (MBA - 1969), a Master of Arts degree in Economics (M.A. - 1972), and a Doctorate in Urban Economics (DPA - 1980).

4. I am a member of the following organizations:

- National Association of Business Economists,
- American Academy of Economic and Financial Experts,
- American Law and Economics Association,
- Houston Business Economists,
- National Association of Forensic Economists,
- American Economic Association,
- North American Economics and Finance Association,
- Southern Economic Association,
- Western Economic Association, and
- The Finance Club and Money Marketeers, both affiliated with New York University.

5. I am the holder of a Texas General Real Estate Appraisers License (License

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 3.

No. TX-1337797-G) and the holder of a Texas Real Estate Brokers License (License No. 0256992) and I am also registered with the Securities and Exchange Commission as an Investment Advisor under the 1940 Investment Advisors Act.

6. In years past, I have held the General Securities Licenses (Series 7) and the Texas Uniform Securities (Series 63) Licenses.

7. During the course of my business career that commenced in June 1970, I have served as a banking officer at Bankers Trust Company, a significant commercial bank in New York City (subsequently sold); have been an officer and corporate director for numerous companies engaged in the overall stream of business and commerce; served as a member of the Grand Jury of the State of New York; served as Chairman of the Board of Directors of four (4) Savings and Loans for the Federal Home Loan Bank of Dallas (Dallas, Texas) that had been declared insolvent and placed under the care and operation of the FHLBB and I have served in various other capacities for other organizations of the United States Federal Government.

8. For approximately twenty years (1984 – 2002) I served as an Adjunct Professor of Real Estate and Finance at the University of Houston, Graduate School of Business Administration on a continuing basis. I presently serve as an Adjunct Professor of Finance and Economics at the University of Phoenix (Houston Campus). As part of my teachings, especially for the time at the University of Houston, the concepts of finance, corporate financial analysis and securities analysis were an integral part of the course curriculum.

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 4.

9. I am a practicing economist who specializes in the preparation of institutional reports, real estate studies and business valuations that includes – business valuations, fairness and solvency opinions, advisory opinions, market and feasibility analysis, loan presentations for financial institutions, investment analysis and business plans in the financial area. Approximately 2/3rds of my time is spent on non-litigation activities.

10. I have performed many similar financial / banking / securities / economic analysis as to the one performed in the present case.

11. I have served as an expert witness in approximately 1,700 cases in the State of Texas and throughout the nation in State and Federal District Courts over the past twenty – eight (28) years concerning disputed issues involving business formations, contractual disputes, banking, lost profits, due diligence, securities, security analysis, standards of care in finance, stocks and other related economic and financial matters. I have direct personal and expert personal knowledge, training and experience in the areas of corporate financial and security analysis and investments in many areas of the United States since 1970.

12. The data, thoughts and opinions expressed herein below are from an economic / finance / banking and securities point of view and are not legal interpretations or conclusions, as the undersigned is not an attorney, but is relying upon his – education, background and experience of the generally accepted policies, practices and procedures of - security analysis, corporate financial analysis, banking and corporate reporting with agencies such as the United States Securities and Exchange Commission ("SEC").

13. The securities and financial marketplaces of the Unites States became truly

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 5.

regulated markets commencing with the passage of the Securities Acts of 1933, which regulates the offer and sale of securities based upon requirements that issuers fully disclose all material information that a reasonable shareholder would require in order to decide about a potential investment, and with the passage of the Securities Exchange Act of 1934, which regulates the secondary trading of securities between parties unrelated to the issuer.

14. These rules and regulations have been constantly updated over time, the Sarbanes - Oxley Act of 2002 also known as the Public Company Accounting Reform and Investor Protection Act (in the Senate) and Corporate and Auditing Accountability and Responsibility Act (in the House), is a law that set new or enhanced standards for all United States public company boards, management and public accounting firms.

15. Based upon the series of long existing laws, as well as the revised and updated Sarbanes - Oxley Act of 2002, corporate documentation supplied to the public has been required to make strides in reliability. In effect, organizations and corporate offices that create and supply documentation to the general public via filings with the Securities and Exchange Commission have been put on notice and clearly advised that their documentation is being subjected to the highest standards of review, disclosure, reliability and honesty.

16. The Securities Exchange Act of 1934 (the Exchange Act) sets up a mandatory disclosure system for public companies that operates at several stages. The required disclosures and forms of disclosure vary depending on the situation and the registrant. In general, under Section 13(a) of the Exchange Act, companies with registered

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 6.

publicly held securities and of a certain size are Exchange Act "reporting companies," meaning that they must disclose continuously by filing annual reports (10-Ks), quarterly reports (10-Qs), and reports when certain events occur (8-Ks), per SEC rules. These periodic reports include or incorporate by reference types of information that would help investors decide whether a company's security is a good investment.

17. Information in these reports includes information about the company's officers and directors, the company's line of business, audited financial statements, the management discussion and analysis section (in which the company's management discusses the prior year's performance and plans for the next year), and audited financial statements.

18. The Form 10-K must be signed by the principal executive officer, the principal financial officer, the controller or principal accounting officer and a majority of the Board of Directors. The issuer's principal executive and financial officers are each required to certify that the report fully complies with the public company reporting provisions of the Exchange Act and the information contained in the report fairly presents in all material respects the financial conditions and results of operations of the company.

19. These officers must, among other things, certify that

(i) they have reviewed the report;

(ii) based on their knowledge, the report does not contain any untrue statement of material fact or omit to state a material fact necessary in order to make the statements, made in the light of the

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 7.

circumstances under which such statements were made, not misleading with respect to the period covered by the report; and

(iii)    based on their knowledge, the financial statements and other financial information in the report fairly represent in all material respects the financial condition, results of operations and cash flows of the company as of, and for, the periods presented in the report.

20.    Lying through omission consists of making statements that paint an incomplete or inaccurate picture, and not revealing other material information necessary to present the entire truth. The federal securities laws require public companies, whenever they speak, to disclose all material information that would be necessary to present the truth entirely.

21.    The duty to avoid material omissions is found in both SEC antifraud and financial reporting rules such as the Exchange Act. Failure to comply with this duty can, in extreme cases, result in criminal prosecution.

22.    Both public and private sector organizations have issued guidelines on materiality for nonfinancial information. In general, they are modeled on the definition of materiality for financial information by describing it in terms relevant to decision making, putting it in the context of other information, and assessing its qualitative and quantitative importance with respect to this other information and decision making.

23.    With specific reference to the Monster Beverage Corporation ("MBC") and

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 8.

their Form 10-Ks for the fiscal years 2004 to 2011, a careful review and analysis this documentation denotes that the document clearly fails to disclose in any of these years that the organization is engaged in or earns any income from the sale of clothing, t-shirts, hooded shirts, hooded sweatshirts, sweatshirts, jackets, pants, bandanas, sweat bands, gloves, headgear and other associated clothing wear since 2002. MBC's first Form 10-k was filed with SEC for the fiscal year ending December 31, 2004.

24.   In a document sworn and subscribed to by Rodney C. Sacks, Chairman of the Board of Directors and the Chief Executive Officer of Monster Beverage Corporation, dated March 2, 2011, Mr. Sacks notes on page 2 of the document – "Since 2002 MBC also has used, and continues to use, its M Claw Trademark in conjunction with clothing including t-shirts, hooded shirts, hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands, gloves and headgear. Examples of clothing bearing MBC's M Claw Trademark marketed by MBC and / or its licensees are shown below." [pictorial examples from Mr. Sacks' declaration are included in his declaration but omitted herein.] See Declaration of Rodney Sacks In Support Motion For Temporary Restraining Order (Doc 5), pages 2-3.

25.   The foregoing allegations are also made in the following documents filed by MBC in this action:

(i)  The Second Amended Complaint (Doc 130), paragraph 14;

(ii) Plaintiff's Motion For Ex Parte Seizure Order And Temporary Restraining

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 9.

Order (Doc 3), page 5;

26. If an analyst, such as the undersigned, concludes that Rodney C. Sacks (CEO) is fully aware of his corporate undertakings and the sources of income wherein MBC has engaged their resources over time, especially since 2002, then the undersigned clearly denotes a significant disclosure conflict between documentation supplied by Mr. Sacks and Monster Beverage Corporation in documentation supplied to the general investing public via the Securities and Exchange Commission and his declaration of March 2011. **Both CANNOT BE CORRECT.**

27. Via the documentation that Monster Beverage Corporation and Mr. Sacks supplied to the general investing public via the Securities and Exchange Commission, MBC solely in the business to develop, market, sell and distribute "alternative" beverage category beverages under a wide variety of brand names, especially Monster Energy Drinks that represent 90.0%+ of the organizations net sales for the years ended December 31, 2011, 2010 and 2009. The "alternative" beverage category combines non-carbonated ready to drink iced teas, lemonades, juice cocktails, single-serve juices and fruit beverages, ready to drink dairy and coffee drinks, energy drinks, sports drinks, and single-serve still water (flavored and unflavored and enhanced) with "new age" beverages, including sodas that are considered natural, sparkling juices and flavored sparkling beverages. Nowhere is there any mention of clothing and other similar items bearing MBC's, M Claw Trademark.

28. Further financial and corporate analysis in regards to the financial

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 10.

disclosures of the Monster Beverage Corporation denotes that if their trademarks are so immensely valuable then an analyst can clearly conclude that matters associated with or affecting the trademark (or a series of trademarks) are material to potential investors and require adequate disclosure under the rules and regulations of the Securities and Exchange Commission ("SEC") and associated legislation. Any significant income producing business of the company that involves the use of their valuable trademarks, such as on clothing and associated items for sale into the overall stream of business and commerce on a sustained basis, as opposed to SOLELY the use of their trademark only in relation to their core beverage business must be disclosed in documentation supplied to the general investing public. Clearly, licensing agreements for a wide variety of substantial and significant clothing sales is an item of significant financial substance that has been omitted from a wide variety of documentation supplied to the general investing public over a prolonged period of time. This lack of disclosure over a prolonged period of time denotes that the lack of such disclosures was not a "minor error" or insignificant oversight and thus violates a considerable number of disclosure rules, regulations and directives of the appropriate oversight and governing agencies in the securities and financial market arenas of the United States financial and investment sectors.

29.   Reflecting upon an analysis of the above documentation, Mr. Sacks and the Monster Beverage Corporation have **EITHER** failed to make full, proper and adequate disclosure to the investing public via documentation filed with the SEC in omitting any reference to their corporate enterprises sale of clothing since 2002 **OR** have filed inaccurate

AFFIDAVIT OF DR. KENNETH EUGENE LEHRER - MONSTER ENERGY COMPANY VS. CONSOLIDATED DISTRIBUTORS, INC.
AUGUST, 2012
CONTINUED ..../.....

PAGE 11.

pleadings and an inaccurate declaration in a cause of action known as *Monster Energy Company vs. Consolidated Distributors, Inc., et al.* in the United States District Court, Middle District of Florida, Orlando Division, Case No. 6:10-CV-329-ORL-22DAB.

Further affiant saith not.

_____
Dr. Kenneth Eugene Lehrer

SWORN AND SUBSCRIBED TO before me on this 15th day of August, 2012.

_____
NOTARY PUBLIC IN AND FOR THE
STATE OF TEXAS

DONNA BYBEE
Notary Public,
State of Texas
Comm. Exp. 04-11-13