**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

MONSTER ENERGY COMPANY, f/k/a
HANSEN BEVERAGE COMPANY,
d/b/a MONSTER BEVERAGE
COMPANY,

                        Plaintiff,

vs.

CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC., and DAVID
BAKSHT (a/k/a David Lipsker a/k/a
David Bakshet a/k/a D Bakht a/k/a DM
Schneerson a/k/a Abraham
Shneorson),

                        Defendants.

Case No. 6:11-CV-329-ORL-22DAB

_____ /

**PLAINTIFF MONSTER ENERGY COMPANY'S MOTIONS _IN LIMINE_ (NOS. 1-6)**

      Plaintiff Monster Energy Company ("MEC") respectfully requests that the Court grant the following motions _in limine_:

**I.   MOTION _IN LIMINE_ NO. 1 TO PRECLUDE DEFENDANTS FROM PRESENTING EVIDENCE OR ARGUMENT REGARDING MEC'S SEC FILINGS**

      MEC hereby moves this Court for an order preventing Defendants from presenting evidence or argument regarding MEC's SEC filings.  As explained in MEC's separate pending Motion to Exclude the Testimony of Defendants' Expert Dr. Kenneth Lehrer (D.I. 174), Defendants have indicated they intend to introduce MEC's SEC filings for two purposes, neither of which is proper: 1) to argue that MEC has violated securities laws because MEC did not report its clothing business as a

separate business segment in its filings; and 2) to argue that MEC and its licensees have not marketed clothing bearing the M Claw Trademark because clothing sales are not separately listed in the filings.  By the present motion *in limine*, MEC seeks to exclude all evidence or argument regarding MEC's SEC filings to ensure that it is not presented at trial, either through Dr. Lehrer's testimony or through other means.

This is an action for trademark and copyright infringement and unfair competition.  *See* D.I. 130; *see also* D.I. 122 and 137.  The sufficiency and accuracy of MEC's SEC filings and MEC's compliance with securities laws are irrelevant to these claims and all asserted defenses to them.  Accordingly, the SEC filings should be excluded under Rule 402.  Fed. R. Evid. 402; *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994) ("If the court determines that the defendant's proffered evidence is irrelevant or otherwise inadmissible, it should issue a ruling in limine precluding the introduction of that information at trial.").

Likewise, MEC's SEC filings are irrelevant to the issue of the existence or quantity of MEC's clothing sales.  CDI seeks to infer that MEC has made no clothing sales from the fact that MEC's SEC filings, which currently report over $ 1.7 billion in annual sales, (*see* D.I. 178, Ex. 80 at MEC0017349) do not separately itemize and report clothing sales.  No reasonable jury could make such a strained inference.

The extensive documentation produced by MEC, including MEC's accounting reports, sales documents, shipping details, and numerous photographs and videos showing athletes, musicians, and others wearing clothing bearing MEC's M Claw demonstrate that MEC has marketed clothing bearing the M Claw since 2002.  As

explained in MEC's Motion to Exclude, MEC's clothing business does not appear separately in MEC's SEC filings for the simple reason that although the activity is substantial, Generally Accepted Accounting Principles (GAAP) do not require the clothing business to be separately disclosed due to its small size in relation to the massive size of MEC's beverage business.  *See* D.I. 174 at 3; D.I. 176 ¶ 10.  In view of this extensive evidence, there can be no legitimate dispute that MEC used its M Claw Trademark in connection with clothing throughout 2004 to 2011, the time period of MEC's SEC filings.  Nor can Defendants present evidence that the SEC or MEC's auditors ever questioned MEC's financial reporting with respect to its clothing business.  Therefore, the SEC filings are irrelevant to MEC's use of the M Claw on clothing and should be excluded under Rule 402.  Fed. R. Evid. 402.

Furthermore, while MEC can ascertain no probative value in Defendants' use of the SEC filings either to make arguments concerning MEC's compliance with securities laws or MEC's marketing of clothing, such argument is certainly "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time" and should be excluded under Rule 403.  Fed. R. Evid. 403.  District courts possess broad discretion to exclude evidence pursuant to Fed. R. Evid. 403.  "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."  *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992); *see also United States v. Ellisor*, 522 F.3d 1255, 1270-71 n.20 (11th Cir. 2008) (excluding marginally relevant evidence under

Fed. R. Evid. 403 because trial would be greatly prolonged by plaintiff's need to rebut the evidence).  There is great risk of prejudicing the jury due to unwarranted confusion whether MEC is a reputable corporation that lives up to its reporting obligations.  Thus, all evidence and argument about the SEC filings should be excluded.

## II.  MOTION *IN LIMINE* NO. 2 TO PRECLUDE THE UNSUPPORTED TESTIMONY OF YOSEF AMAR REGARDING PRIOR USE OF A "THREE SKINNY LINES" DESIGN

MEC hereby moves this Court for an order excluding the uncorroborated testimony of Yosef Amar concerning alleged prior use of a "skinny 3DL" design.

Defendants concede that they did not begin using the 3DL design — the design MEC has accused of infringement — until 2010.  *See* D.I. 185 at 11 (referring to 3DL as "2010 3DL"), 12 ("Fat" 3DL created in 2010).  Defendants nevertheless argue that they are entitled to priority based upon former Defendant Joe Cool's use of a different design, which Defendants have recently named the "skinny 1993 3DL mark" or simply the "three skinny lines."  The three skinny lines design can be seen to the left of the large 3DL design in the following image, which comes from a Joe Cool t-shirt for the 2011 Daytona Beach Bike Week:



In order to establish priority based on the three skinny lines design, Defendants must show 1) that the three skinny lines design is the legal equivalent of the 3DL design such that consumers consider both the same mark; and 2) that Joe Cool or CDI has continuously used the three skinny lines design from before MEC began using its M Claw Trademark in 2002 to Joe Cool's first use of the 3DL design in 2010.  *See Data Concepts, Inc. v. Digital Consulting, Inc.,* 150 F.3d 620, 623 (6th Cir. 1998).  This motion *in limine* relates only to the second prong.

The only evidence concerning any prior use by Joe Cool of the "three skinny lines" is the bare testimony of Mr. Amar.  During his August 29, 2012 deposition, Mr. Amar claimed for the first time that he used the three skinny lines design in

1993.  *See* Ex. 1 at 112:16-115:13.[1]  Although Mr. Amar testified concerning his **first** use of this design, he did not testify that the design was in **continuous** use from before 2002 until the first use of the 3DL design in 2010.  *Id.*  Defendants, moreover, have no evidence at all of continuous use.  Indeed, the Amar family conducted a 140-hour search for documentary evidence of prior use, *see* Ex. 7, but turned up nothing.  Ex. 1 at 123:10-124:4.  Because the evidence of continuous use is completely lacking, Mr. Amar's testimony regarding first use is entirely irrelevant.

In addition, even if Mr. Amar had testified as to both prior and continuous use, Mr. Amar's uncorroborated testimony still is insufficient as a matter of law to support a finding of prior use.  "[B]are assertions of continuous use are insufficient to create a genuine issue of material fact" for trial.  *World Triathlon Corp. v. Dunbar,* No. Civ. 05-00351JMS/KSC, 2006 WL 897586, at *4 (D. Haw. Apr. 6, 2006).

In fact, *World Triathlon* is directly on point.  In *World Triathlon*, the defendants offered uncorroborated testimony that they had continuously used plaintiff's federally registered "Ironman" mark since the late 1970s, predating plaintiff's use.  *Id.*  Unlike the Defendants in the present case, the defendants in *World Triathlon* did offer some documentary evidence of "sporadic use" in "the 1980s, 1990s, and 2000s," but no evidence of continuous use other than the uncorroborated testimony.  The court held that the defendants' bare testimony of continuous use, even when combined with documentary evidence of sporadic use, fell "well short" of "demonstrat[ing]

---

[1] Unless otherwise noted, all exhibits herein are attached to the Declaration of Paul A. Stewart, filed concurrently herewith.

continuous commercial use" and granted summary judgment in plaintiff's favor. *Id.* Defendants here have taken *World Triathlon* to the extreme and offer **no** documentary evidence, whatsoever, showing use of the three skinny lines design prior to 2010.

A similar rule of corroboration has existed in patent cases for over a century. In patent cases, uncorroborated oral testimony regarding prior use, even by disinterested witnesses, is not admissible and is properly excluded. *See Tex. Digital Sys. v. Telegenix*, Inc., 308 F.3d 1193, 1217 (Fed. Cir. 2002) (affirming the exclusion of uncorroborated testimony); *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371-73 (Fed. Cir. 1998) (recounting the history of the courts' refusal to accept uncorroborated testimony of prior use of an invention); *Duramed Pharms., Inc. v. Watson Labs., Inc.,* 701 F. Supp. 2d 1163, 1167 (D. Nev. 2010) ("As a general rule, corroboration of oral testimony regarding prior invention or use is required before the evidence is admissible."), *aff'd in part, rev'd in part on other grounds*, 413 Fed. Appx. 289 (Fed. Cir. 2011).

As the Federal Circuit and Supreme Court have both explained, "Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information." *Woodland Trust*, 148 F.3d at 1372 (quoting *Barbed Wire Patent Case*, 143 U.S. 275, 284 (1892)). "The temptation to remember in such cases and the ease with which honest witnesses can convince themselves after many years of having had a conception at the basis of a valuable patent, are well known in this

branch of law." *Id.* (quoting *Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 60 (1923)). "This view is reinforced, in modern times, by the ubiquitous paper trail of virtually all commercial activity. It is rare indeed that some physical record (*e.g.*, a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist." *Id.* at 1373.

Precisely these same considerations exist in trademark cases, and precisely the same rule should be followed here, as it was in *World Triathlon*, 2006 WL 897586, at *4. Accordingly, because Mr. Amar's bare testimony is insufficient to substantiate a claim of prior use, and because no other evidence corroborates Mr. Amar's testimony, that testimony should be excluded under Rules 402 and 403.

## III. MOTION *IN LIMINE* NO. 3 TO EXCLUDE DEFENDANTS FROM PRESENTING EVIDENCE OR ARGUMENT THAT MEC DID NOT USE ITS M CLAW TRADEMARK BEFORE FILING ITS "INTENT-TO-USE" TRADEMARK APPLICATIONS

MEC hereby moves this Court for an order preventing Defendants from presenting evidence or argument that MEC's filings at the United States Patent and Trademark Office ("Trademark Office") from 2009 and later either 1) establish that MEC had not yet begun to use the M Claw Trademark on clothing, and/or 2) are evidence of fraud.

MEC is the owner of two trademark registrations relevant to this motion. The first is Reg. No. 4,051,560, filed in 2010, for the following trademark for use on clothing:

The second is Reg. No. 3,908,601, filed in 2009, for the following trademark, also for use on clothing:



Both registrations affirmatively state on their face that the trademarks were first used in commerce on June 30, 2002. D.I. 130, Exs. A10, A13.

MEC filed the applications for both of these trademarks as "intent-to-use" applications. Defendants have argued that MEC's decision to file its trademark applications as "intent-to-use" applications means that MEC had not yet used its trademarks on clothing at the time it filed its applications. *See, e.g.*, Ex. 2 at 12. Similarly, Defendants have argued that MEC's decision to seek extensions of time to file papers identifying its date of first use again means that MEC had not yet begun using its trademarks on clothing at the time MEC sought these extensions. *Id.* Defendants also have indicated they may argue that if MEC had already used the marks in commerce at the time of its filing, then these filings somehow operate as a fraud on the Trademark Office. *Id.* These arguments are plainly erroneous as a matter of law and improper.

In order to receive a federal trademark registration, an applicant files a trademark application with the Trademark Office. Federal trademark applications may be filed under Sections 1(a) or 1(b) of the Lanham Act. *See* 15 U.S.C. §§ 1051(a), 1051(b). Applications filed under Section 1(b), 15 U.S.C. § 1051(b), are

called "intent-to-use" applications.  Ex. 3 ¶ 2.  An applicant who files an "intent-to-use" application must satisfy one extra procedural requirement before the application will issue as a registration.  Specifically, the applicant must file an "Amendment to Allege Use" or a "Statement of Use," confirming that the trademark is in use on all of the goods listed in the registration.  *See* 15 U.S.C. §§ 1051(c), 1051(d).

An intent-to-use application can be filed even where the applicant has already used the mark in commerce on some or all of the goods listed in the application. Ex. 3 ¶¶ 2, 7-8.  This is made explicit by the Trademark Manual of Examining Procedure ("TMEP"), the guidebook used by the Trademark Office in examining all trademark applications.  The TMEP expressly permits an intent-to-use applicant to file an Amendment to Allege Use or a Statement of Use that **predates** the filing date of the intent-to-use application.  TMEP § 903.  As explained in Section 903 of the TMEP:

> An applicant filing under §1(b) is not required to state dates of use in the original application, but must include dates of use in an allegation of use under §1(c) or §1(d). . . .  **A §1(b) applicant may assert dates of use that are earlier than the filing date of the application in an amendment to allege use or statement of use.**

*Id.* (emphasis added).

This is confirmed by the case law.  For example, the defendant in *World Wide Sales, Inc. v. Church & Dwight Co., Inc.*, No. 08-C-1198, 2009 WL 3765881 (N.D. Ill. Nov. 9, 2009) made a similar argument to Defendants here, namely, that the plaintiff

had committed fraud on the Trademark Office by filing an intent-to-use application after it had actually used the mark in commerce.  *Id.* at *8-9.  The court disagreed and held that an intent-to-use application does not provide **any evidence** from which a reasonable jury could find an intent to mislead the Trademark Office, a prerequisite for the defendant's fraud claim.  *Id.*

Consistent with the TMEP and the case law, intent-to-use applications may be filed by an applicant already using a trademark for a variety of reasons.  For example, intent-to-use applications are commonly filed when an applicant has used the mark in commerce, but cannot confirm the actual dates of first use for one or more products named in the application without further research.  Ex. 3 at ¶ 2.  The intent-to-use application allows the applicant to research its dates of first use while the application is under examination, and later file a "Statement of Use" providing that information.  *Id.*

Thus, the fact that MEC filed "intent-to-use" trademark applications is wholly irrelevant to the issues before the Court and should be excluded under Rule 402.  It is not probative of whether MEC was using its trademarks at the time it filed the applications.  Nor is the fact that MEC sought extensions of time to file its Statements of Use.  Moreover, even if the Court were somehow to find probative value in the "intent-to-use" nature of MEC's applications, Defendants' improper arguments and inferences would cause the serious danger of unfair prejudice to MEC, confusing the issues, and misleading the jury, and should be excluded under Rule 403.

### IV.  MOTION *IN LIMINE* NO. 4 TO EXCLUDE THE COURT'S ORDERS DENYING PRELIMINARY INJUNCTION (D.I. 40) AND DENYING RECONSIDERATION (D.I. 52)

MEC hereby moves this Court for an order excluding any argument or reference to the Court's orders denying MEC's motion for preliminary injunction and reversing the seizure order (D.I. 40) and denying reconsideration of the preliminary injunction decision (D.I. 52).

It is well settled that findings made in connection with preliminary relief are indeed preliminary and will be freely revisited by the courts when presented with a full record at trial.  *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *David Vincent, Inc. v. Broward County, Fla.*, 200 F.3d 1325, 1331 n.8 (11th Cir. 2000) (findings of fact and conclusions of law by a court during preliminary injunction proceedings are not binding at a subsequent trial on the merits); *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1061-63 (3d Cir. 1991).  It is also well settled that a court's prior findings of fact cannot be given preclusive effect to deprive a party of its right to a jury trial on issues of fact underlying a legal claim for damages.  *Burns v. Lawther*, 53 F.3d 1237, 1242 (11th Cir. 1995) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509-12 (1959)); *Healthcare Affiliated Services, Inc. v. Lippany*, 701 F. Supp. 1142, 1149 (W.D. Pa. 1988).

Courts routinely exclude evidence and argument concerning prior preliminary injunction decisions under Rules 402 and 403 because of their limited relevance and the risk that the court's preliminary findings will have undue influence on the jury.  *See, e.g.*, *TVT Records v. Island Def Jam Music Group*, 250 F. Supp. 2d 341, 347

(S.D.N.Y. 2003) (excluding evidence of court's prior determinations made in context of preliminary injunction, noting such determination would otherwise be "likely to unduly influence the jury in its role as trier of fact"); *Park West Radiology v CareCore National LLC*, 675 F. Supp. 2d 314, 323-24 (S.D.N.Y. 2009) (excluding evidence of preliminary injunction ruling, noting it was "likely to unduly influence the jury"); *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, No. 4:02-cv-40327, 2004 WL 5508752, *2 (S.D. Iowa Sept. 9, 2004) (unpublished) (precluding reference to Federal Circuit decision reversing preliminary injunction); *Judkins v. HT Window Fashions Corp.*, Civil Action No. 07-025l, 2009 WL 3400989, *1 (W.D. Pa. Oct. 20, 2009) (unpublished) (precluding evidence concerning preliminary injunction decision (citing *Belgium v. United States*, 452 F.3d 1289, 1294 (Fed. Cir. 2006)).

The Court should similarly exclude evidence of its preliminary injunction decisions here.  In order to prevail on its counterclaim for wrongful seizure, CDI must establish either that (1) MEC acted in bad faith in seeking the seizure order, or (2) the goods seized are "predominantly legitimate" merchandise.  *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, Case No. 8:09-cv-2137-T-30TBM, __ F. Supp. 2d __, 2012 WL 1231877 *15 (M.D. Fla. April 12, 2012); *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F. Supp. 2d 1247, 1264 (S.D. Fla. 2007); Fed. R. Civ. P. 56(c).  Both issues are questions of fact for the jury to decide.  *See Burns*, 53 F.3d at 1242.

So that the jury understands the context of the wrongful seizure issue, MEC proposes that the Court instruct the jury at the outset of the case that the seizure order issued and then was reversed.  However, the content of the Court's prior

orders are otherwise not probative of either the issue of MEC's alleged bad faith, or whether the goods are illegitimate, and should be excluded under Rule 402. Moreover, there can be no dispute that there is a substantial danger to MEC of unfair prejudice, confusing the issues, and misleading the jury if arguments or evidence concerning the Court's prior orders are permitted.  *See TVT Records*, 250 F. Supp. 2d at 347.  Accordingly, arguments and evidence concerning the Court's prior orders should be excluded under Rule 403.

### V.   <u>MOTION *IN LIMINE* NO. 5 TO EXCLUDE DEFENDANTS' EVIDENCE OF THIRD-PARTY "CLAW" TRADEMARK REGISTRATIONS AND NON-TRADEMARK USES</u>

MEC hereby moves this Court for an order excluding Defendants from introducing evidence or argument concerning: 1) third party "claw" trademark registrations, because they were not produced by Defendants during discovery; and 2) other third party "claws" that are not used as trademarks, because non-trademark use is irrelevant to the strength of MEC's M Claw Trademark, or any other issue before the Court.

### A.   <u>The Third-Party Trademark Registrations Should Be Excluded Because They Were Not Produced In Discovery</u>

In CDI's motion for summary judgment (D.I. 170), CDI cites to numerous third-party trademark registrations for trademarks that incorporate some form of a "claw" design.  *See* D.I. 170 at 16-17; D.I. 170-1.  Defendants should be prohibited from introducing evidence or argument at trial concerning any of these third-party trademark registrations because Defendants failed to produce any such registrations during discovery in this case.  The trademark registrations that Defendants attempt

to rely on are plainly responsive to several of MEC's requests for production, including Request Nos. 6 (seeking documents "that support, refute, or otherwise relate to Defendants' allegation that there is no likelihood of confusion") 60 (seeking documents "that support, refute, or otherwise relate to Defendants' affirmative defenses") and 62 (seeking documents "that support, refute, or otherwise relate to Defendants' counterclaims").   *See* Ex. 4 at 8, 18; Ex. 5 at 8, 18.   Accordingly, Defendants were under an obligation to produce the registrations during discovery. *See* Fed. R. Civ. P. 26(e)(1).

The Eleventh Circuit evaluates three factors when determining if untimely documentary evidence is properly excluded: (1) the importance of the evidence; (2) the reason for the failure to disclose the evidence earlier; and (3) the prejudice to the opposing party if the evidence is permitted.   *GamerModz, LLC v. Golubev*, No. 8:10-CV-1466-T-27TGW, 2011 WL 4755026, *7-8 (M.D. Fla. Aug. 3, 2011) (unpublished) (citing *Pete's Towing Co. v. City of Tampa, Fla.*, 378 Fed. Appx. 917, 920 (11th Cir. 2010) (unpublished)); Fed. R. Civ. P. 37(c)(1).   Each factor weighs in favor of exclusion.

First, the evidence is, at most, only minimally relevant.   There is substantial authority finding that third-party trademark registrations alone are irrelevant to the strength of a mark, and that instead it is the **use** of similar marks by third parties that can be relevant.   *See* 2 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:89 (4th ed. 2012).   Moreover, most of the registered designs are irrelevant because they bear no resemblance to MEC's M Claw Trademark or the

3DL design.   *See* D.I. 170-1 at 1-33.   Many of the registrations have been abandoned.   *Id.* at 8-10, 12, 15, 19, 22, 23, 25-28, 31.   Many of the registrations are also irrelevant because they are for very different goods, like chemical reagents.   *See, e.g., id.* at 15.

The second factor favors exclusion as well because Defendants failure to comply with their discovery obligations is unexcused.   Fact discovery closed on September 24, 2012.   D.I. 166 at 2.   Defendants never produced any third-party trademark registrations to MEC during discovery, or afterwards.   Instead CDI merely attached the registrations to its own summary judgment motion, filed on September 30, 2012.   *See* D.I. 170-1.   Because the trademark registrations were obtained from the website of the Trademark Office, Defendants can offer no reason why these registrations could not have been located by Defendants and produced to MEC prior to the close of discovery.

Finally, MEC will be prejudiced if Defendants are permitted to rely on these third-party registrations.   By failing to produce the registrations during discovery, Defendants have effectively prevented MEC from conducting any of its own discovery into these marks, including to ascertain whether they are currently in use or abandoned, how they are being used, the types of products and services involved, and the dates of first use.   This type of information is relevant to the weight, if any, a reasonable jury could give to Defendants' proposed trademark-registration evidence.

**B.** **The Book Covers, Movie Posters, Fonts, And Other Designs That Were Not Used As Trademarks Should Be Excluded As Completely Irrelevant**

In its summary judgment motion, CDI also cites to numerous designs of book covers, movie posters, and type fonts that purportedly resemble claws but which are not used as trademarks to signify a brand or source of goods.  *See* D.I. 170 at 16-17; D.I. 170-2; D.I. 170-3.   CDI argues that this evidence somehow affects the strength of MEC's M Claw Trademark.  *Id.*  This is contrary to the law.  Non-trademark use is irrelevant to the strength of MEC's M Claw Trademark, or any other issue before the Court.  *See* 1 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:3 (4th ed. 2012).   Accordingly, the Court should exclude Defendants' evidence of non-trademark use under Rule 402.  Moreover, Defendants arguments concerning non-trademark use are legally unsupported, and will only serve to confuse the issues, mislead the jury, and cause unfair prejudice to MEC, requiring exclusion under Rule 403.

**VI.** **MOTION *IN LIMINE* NO. 6 TO EXCLUDE DEFENDANTS FROM PRESENTING EVIDENCE OR ARGUMENT THAT MEC'S M CLAW TRADEMARK IS GENERIC FOR CLOTHING OR DESCRIPTIVE OF CLOTHING**

MEC hereby moves this Court for an order precluding Defendants from presenting any evidence or argument that MEC's M Claw Trademark, shown below, is generic or descriptive.



Defendants' Third and Fourth Affirmative Defenses in this case assert that MEC's highly stylized M Claw Trademark is somehow the generic name for t-shirts

or is descriptive of t-shirts.  D.I. 137 ¶¶ 113, 114.  But a stylized letter M or a stylized claw does not describe any property or characteristic of t-shirts or other clothing.  Its only significance is that MEC is the source of the clothing.  In other words, its only significance is that it is a trademark.  For this reason, Defendants' argument could only result in confusing the issues and misleading the jury.  Moreover, Defendants have failed to put forth any evidence or make any legal arguments supporting their defenses of genericness and descriptiveness in response to discovery requests.  Accordingly, Defendants should be precluded from presenting new evidence of genericness or descriptiveness at trial, from relying on existing evidence to support a genericness or descriptiveness argument at trial, or otherwise arguing at trial that the M Claw Trademark is generic or descriptive.

A trademark is "generic" when the trademark is the name of the same product which it is alleged to identify the source of.  *See Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. Fla. 1999*).*  The classic example is that the mark APPLE would be generic to designate the fruit of an apple tree, but APPLE is not generic when used to designate computers.  *See, e.g.*, 2 J. T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 12:1 (4th ed. 2012).  In other words, a mark is generic when it refers to the product itself that it describes.  *See Frehling Enters.*, 192 F.3d at 1335.  Similarly, a trademark is "descriptive" if it "is one that directly and immediately conveys some knowledge of the characteristics of a product or service."  2 J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 11:16 (4th ed. 2012).  For example, "LE CROISSANT SHOP" is

descriptive of restaurant services because it describes one of the items that can be purchased at the restaurant. *Id.*

On its face, the M Claw Trademark, $\text{\textbf{Ш}}$ , is not the generic name for shirts or descriptive of any quality or characteristic of shirts. It is just a stylized version of the letter M that resembles a claw. The letter M, in stylized form or in ordinary form, simply does not say anything about the qualities or characteristics of shirts. Similarly, the letters "GM" are not a generic name for cars, nor do the letters provide a descriptive quality of cars. Instead "GM" is a trademark that indicates the source of the car — General Motors. Accordingly, Defendants' genericness and descriptiveness arguments can only confuse and mislead the jury.

Because the genericness and descriptiveness defenses appear so meritless on their face, MEC asked Defendants during discovery to describe the basis for their genericness and descriptiveness defenses. Specifically, in Interrogatory No. 18, MEC asked Defendants to describe the bases for their Fourth Affirmative Defense that MEC's M Claw Trademark is generic. Ex. 2 at 18; Ex. 6 at 18. Similarly, in Interrogatory No. 6, MEC asked Defendants to describe the bases for their Third Affirmative Defense that the M Claw Trademark is descriptive and lacks secondary meaning. Ex. 2 at 11; Ex. 6 at 10-11.

In their responses to both interrogatories, Defendants stated only that the evidence was "held by consulting experts." *Id.* But Defendants never put forth any expert testimony on genericness or descriptiveness. Moreover, despite the requirements of Rule 26(e), Defendants never provided supplemental responses to

these interrogatories to otherwise explain the bases of their genericness and descriptiveness defenses.   Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, a party that fails to provide information in response to an interrogatory as required by Rule 26(e) may not use that information at trial unless the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).

Here, Defendants' failure to provide substantive interrogatory responses was neither justified nor harmless.  It would be unfair to permit Defendants to present new evidence for the first time at trial, surprising MEC, and posing an unwarranted burden on MEC to oppose such evidence.  If Defendants wanted to argue MEC's M Claw Trademark is generic or descriptive, they should have offered the promised expert opinions or put forth their arguments and support in response to MEC's timely interrogatories.  The failure to do so has consequences — Defendants should be precluded from offering evidence or arguments regarding genericness and descriptiveness at trial.  *See* Fed. R. Civ. P. 37; *See also, Acafrao v. U.S. Century Bank*, No. 09-21695-CIV-SEITZ/O'SULLIVAN, 2010 WL 4261435 (S.D. Fla. Aug. 4, 2010) (excluding agreement in contract dispute under Fed. R. Civ. P. 37(c)(1) where plaintiffs failed to respond to or supplement interrogatory response); *ChemFree Corp. v. J. Walter, Inc.*, No. 1:04-CV-3711-JTC, 2009 WL 2914276 (N.D. Ga. May 26, 2009) (precluding defendants from presenting previously undisclosed evidence at trial in support of certain non-infringement contentions where defendants failed to present arguments in response to interrogatory seeking the same).

Exclusion of Defendants' genericness and descriptiveness arguments would be particularly appropriate here.   Any new argument by Defendants that the M Claw Trademark is generic or descriptive would be entirely misleading to the jury and of little probative value if any.  As discussed above, the M Claw Trademark is not a synonym for shirts and does not in any way describe the qualities or characteristics of shirts.   The M Claw Trademark is just a stylized M that resembles a claw.   It signifies nothing except the source of the goods, namely MEC.

Accordingly, Defendants' genericness and descriptiveness arguments, and any supporting evidence, should be precluded from trial.   This evidence and arguments were not disclosed during discovery and are irrelevant under Rule 402 and misleading, confusing, and prejudicial to MEC under Rule 403.

Respectfully submitted,

Dated: November 1, 2012         By: /s/ *Paul A. Stewart*
                                JOHN B. SGANGA, JR. ESQ.
                                (Admitted *Pro Hac Vice*)
                                john.sganga@kmob.com
                                PAUL A. STEWART, ESQ.
                                (Admitted *Pro Hac Vice*)
                                paul.stewart@kmob.com
                                LAUREN K. KATZENELLENBOGEN, ESQ.
                                (Admitted *Pro Hac Vice*)
                                lauren.katzenellenbogen@kmob.com
                                KNOBBE, MARTENS, OLSON & BEAR, LLP
                                2040 Main Street, Fourteenth Floor
                                Irvine, California  92614
                                (949) 760-0404  Telephone
                                (949) 760-9502  Facsimile

                                Lead Trial Counsel for Plaintiff,
                                MONSTER ENERGY COMPANY f/k/a
                                HANSEN BEVERAGE COMPANY d/b/a
                                MONSTER BEVERAGE COMPANY

– and –

RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida  32801
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

Local Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of November, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ *Paul A. Stewart*
Paul A. Stewart

14183146