UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, f/k/a HANSEN BEVERAGE COMPANY, d/b/a MONSTER BEVERAGE COMPANY ("MBC"),<br><br>        Plaintiff,<br><br>    vs.<br><br>CONSOLIDATED DISTRIBUTORS, INC., METTEMP, INC., JOE COOL, INC., JOE COOL BIKE WEEK INC., DAVID BAKSHT, MICHELLE AMAR, AND YOSEF AMAR;<br><br>        Defendants. | Case No. 6:11-CV-329-ORL-22DAB |

**DEFENDANTS CONSOLIDATED DISTRIBUTORS, INC. AND DAVID BAKSHT'S MOTION TO EXCLUDE EVIDENCE AND ARGUMENT ABOUT DAVID BAKSHT'S PRIOR BUSINESS ACTIVITIES**

Defendants Consolidated Distributors, Inc., and David Baksht hereby oppose Plaintiff's Motions I*n Limine* Nos. 1, 2, 4 and 5 to exclude evidence and argument at trial (Doc 195).

I.    **MONSTER'S MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE OR ARGUMENT REGARDING MEC'S SEC FILINGS SHOULD BE DENIED.**

Monster seeks an order preventing Defendants from presenting evidence or argument regarding MEC's SEC filings.  Plaintiff presents two arguments.  First, Monster contends its compliance with securities laws are irrelevant to the trademark and copyright claims in this action and all asserted defenses to them.  Second Monster argues, MEC's SEC filings are irrelevant to the issue of the existence or quantity of MEC's clothing sales because "Generally

Accepted Accounting Principles (GAAP) do not require the clothing business to be separately disclosed due to its small size in relation to the massive size of MEC's beverage business." Plaintiff's Brief, p.3.

Defendant contends that the evidence contained in Monster's SEC filings, and specifically its 10-K reports, is relevant to this action in two material issues. These arguments were previously presented to the Court in opposition to Monster's motion to exclude the testimony of Defendant's expert Dr. Kenneth Lehrer (Doc 184). Plaintiff's motion is *sub judice.* As noted these arguments were presented in the section of Defendants' brief titled "Helpfulness," which is intended to show that this evidence will assist the trier of fact to understand the evidence or to determine a fact in issue. See *Rosenfeld v.Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).

The two relevant purposes underscoring Defendant's intention to offer into evidence Monster's SEC filings are: (i) to rebut Monster's allegation that its first use of the M-Claw mark on clothing was in 2002; and (ii) to attack the credibility of Monster's principle witness, its CEO Rodney Sacks.

First, an issue in this case is Monster's claimed date of first use in the ordinary course of trade of its M Claw mark on clothing. Monster has claimed that the date is in 2002. However, Defendants believe that Monster cannot prove this claim and that a jury would find first use in 2007 or 2008, when Monster began the licensing of its trademark to clothing manufacturers.

Dr. Lehrer has opined in his report (Doc 178-34) that owing to the value of the M-Claw mark to Monster's overall business, the failure to report the use of the mark in areas other than the company's core beverage business would have been a material omission in Monster's SEC

filings.  Therefore, evidence regarding Monster and its CEO's omission in reporting revenues

from sales of clothing in public filings or use of the M Claw mark in the clothing business would

be helpful in assisting the jury to determine whether Monster actually used the M Claw mark

on clothing in a given year, and particularly in its early years.  This will help the jury determine

the date of first use of Monster's M Claw mark on clothing in the ordinary course of trade.

Second, as noted, the existence of a material omission in the Monster's SEC filings is

relevant to the credibility of Monster's central fact witness in this case, its CEO Rodney Sacks.

Since the SEC filings certified by Mr. Sacks appear to contradict Mr. Sacks' testimony that the M

Claw mark was used on clothing since 2002, and not just used on clothing but used in the

ordinary course of trade.

Based on the foregoing the Court should deny Monster's motion *in limine* and should

permit Defendant to present evidence and argument regarding MEC's SEC filings.


II.      **MONSTER'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE THE TESTIMONY OF YOSEF AMAR
         REGARDING PRIOR USE OF A "THREE SKINNY LINES" DESIGN SHOULD BE DENIED.**

Monster seeks an order excluding the testimony of Yosef Amar concerning alleged prior

use of a "skinny 3DL" design.  Monster argues that Mr. Amar's testimony on this dispositive

issue should be excluded "because Mr. Amar's bare testimony is insufficient to substantiate a

claim of prior use, and because no other evidence corroborates Mr. Amar's testimony."

However, based on the evidence of spoliation set forth above, CDI contends Mr. Amar's

testimony should not be excluded, because Plaintiff willfully, and in bad faith, spoliated

material documents and things during the pendency of this matter that supported Mr. Amar's

testimony.  The documents and things in question consist of art work, heat transfers and  t-

shirts dating from the 1990's that bore CDI's 3DL marks and would have established the continuous use in commerce of the 3DL mark since that time.  These documents and things (the "1990's 3DL Evidence") would support CDI's claim of priority of its marks, and were previously in the possession of CDI's assignor of the 3DL marks, Joe Cool, Inc.

As recounted above, the 1990's 3DL Evidence was turned over "to Counsel for Hansen for destruction," during the pendency of this litigation, pursuant to a confidential settlement agreement between Plaintiff and Joe Cool, Inc. and the other Amar Defendants, dated October 25, 2011.  (See Doc 185-1.)  Thus, the very evidence that Plaintiff claims is lacking, proof of the existence and use of the 3DL marks in the 1990's, is the same evidence that was turned over to Plaintiff's counsel "for destruction" as part of Plaintiff's settlement with the Amar Defendants.

On October 25, 2011, Monster and Defendants Joe Cool, Inc., Joe Cool Bike Week Inc., Michelle Amar, and Yosef Amar ("Amar Defendants") executed a Confidential Settlement Agreement in connection with this action.  See Exhibit 1 hereto (the "Amar Settlement Agreement").  Yosef Amar signed the settlement as President and authorized signatory of Joe Cool, Inc. and Joe Cool Bike Week Inc.  The Amar Settlement Agreement contained the following term regarding destruction of evidence:

> 7.2     Within 15 business days of execution of this Settlement Agreement, the Amar Defendants will prepare for delivery to Counsel for Hansen for destruction all existing inventory of products and promotional materials, including catalogs, brochures, labels, and hangtags, bearing Hansen's (M Claw) mark or design or any mark confusingly similar thereto (including the designs referenced in Defendants' pleadings as the "3DL" design). The Amar Defendants shall have the right to damage the goods so that they are not useable; however, the goods shall still be identifiable. The Amar Defendants represent and warrant that their current inventory of products bearing Hansen's (M Claw) mark or design or any mark confusingly similar thereto (including

4

the design referenced in Defendants' pleadings as the "3DL" design) is as follows:

T-Shirts Clothing 277, hats -5, sweatshirts -1

Stickers  Big – 38,750, Small – 19,025

Other (specify) *Hangtags 52,800*

*Decal Sheets -300*

Counsel for Hansen will coordinate and arrange for receipt of these items.

In the same Settlement Agreement, Plaintiff was careful to preserve its rights to prosecute its infringement claims against Defendants CDI and Baksht, providing,

> WHEREAS, the parties wish to resolve all disputes between them. The parties acknowledge that not all Defendants in the Lawsuit are parties to this Settlement Agreement, and this Settlement Agreement will not terminate the Lawsuit or claims as to and against Defendants Consolidated Distributors, Inc., Mettemp, Inc., and David Baksht…

On January 19, 2012, the Court entered a Consent Final Judgment and Permanent Injunction as to the Amar Defendants.  (Doc. No. 102).  The scope of the settlement's applicability was limited to the Amar Defendants.  The settlement did not apply to defendants David Baksht or Consolidated Distributors, Inc.

Subsequently, during the discovery phase of this action, CDI caused a subpoena to be served on Joe Cool, Inc. *for all documents and things that related to the development, production, sales and marketing of products bearing the 3DL marks from 1993 to 2011*.  See Exhibit 2 hereto.  In addition, CDI served a demand for discovery on Plaintiff for all documents and things related to the Amar Settlement Agreement.  Neither of these discovery requests produced documents or things evidencing the early development, production and marketing of

the 3DL marks in the 1990's and early 2000's from Joe Cool, Inc. or Plaintiff.  This is because

such documents and things were turned over by Joe Cool to Plaintiff's counsel, pursuant to the

Amar Settlement Agreement and were not preserved until the end of all pending litigation, but

were purposely destroyed.

On August 29, 2012, Yosef Amar testified at his deposition as to the disposition of

evidenciary materials pertaining to the 1993, original "Skinny" or "elongated" 3DL mark,

stating:

> Q Okay. Now, your other registrations were -- were federal and
> Florida. Why did you apply for this registration in New Jersey?
>
> A Why?
>
> Q Yes.
>
> A Because we sold it -- the original design was sold everywhere,
> you know, also New Jersey.
>
> Q What -- what do you mean, the original design was sold
> everywhere?
>
> A The small one the side right here (indicating).
>
> Q Oh, I see. The original elongated –
>
> A The original, yeah, elongated.
>
> Q Okay. But, again, since -- since this particular logo includes both
> the elongated and the modified 3DL, this logo you started using in
> 2010 or later; is that correct?
>
> A It -- yeah, yeah, 2010.
>
> Q Okay. Do you -- if I asked you this before, I apologize, but for
> the original elongated version of the three drooping lines, do you
> have any of the original heat transfers that you used to create
> that?
>
> A I don't have anything left because I -- I had to package and --
> and damage everything that we have and send back according to

the settlement agreement to Monster.

Q Okay. So that would have included any of the elongated ones?

A Oh, yeah.

Q And that would have included the elongated ones?

A Yeah.

Amar Depo., pp.122:3-123:9.  See also Mr. Amar's testimony at 87:24-88:7, and 101:1-9 (Doc 172).

Further on in Mr. Amar's deposition, Mr. Amar testified that the continuous sale of the

3DL marks was evidenced by the material destroyed as a result of Monster's settlement with

Joe Cool, Inc.  Mr. Amar testified as follows:

Q Okay. So you know you started selling in 1993; you know you don't currently sell, but you're not sure when you stopped selling?

A No. Definitely right now I don't sell because, you know, I gave, you know, whatever left over on those probably in the -- in the -- in the stuff that we gave to Monster. We cut them up and put them in boxes and gave everything to Monster, anything that was, you know, close -- close to the design.

Deposition of Yosef Amar taken on August 29, 2012, pp.87:24-88:7, (Doc 172)

Plaintiff's Reply papers in support of Plaintiff's Motion for Summary Judgment contain

evidence and admissions that now provide the Court with sufficient evidence to make a factual

finding of spoliation.  Specifically, the Declaration of Richard E. Mitchell (Doc 194, ¶8) states

that Mr. Mitchell authorized the shredding of 2,250 pounds of evidenciary material, including

clothing items, heat transfers and hang tags, that were provided to Plaintiff by Joe Cool, Inc.

pursuant to the Confidential Settlement Agreement between Plaintiff and the Joe Cool, Inc.  In

addition, the exhibits to the Mitchell Declaration provide documentary evidence and

photographic evidence of the shredding of the Joe Cool, Inc. evidenciary materials during the pendency of this action.  Finally, the Mitchell Declaration provides evidence that the shredding that was done by the authority of Plaintiff's counsel was also done pursuant to the direction of Mr. Mitchell's client, Plaintiff Monster Energy Company. See Mitchell Decl., ¶8.

As stated in *Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment* (Doc 185, p.4), Yosef Amar testified that among the evidenciary materials which Plaintiff has now admitted to shredding was the original heat transfers that Mr. Amar used to create the 1993 original "Skinny" 3DL mark.  This evidence is crucial to Defendant's claim of priority of its mark.

Parenthetically, it must be noted that the evidence that was shredded also happens to be the very items of merchandise that Plaintiff claimed were counterfeits in its motion for *ex parte* seizure and are the very items of merchandise upon which Plaintiff bases its claims of infringement in its Complaint.

Plaintiff seeks to blame its conduct on the Court, by stating, "In fact, the final consent judgment approved by the Court acknowledged that the Joe Cool merchandise was to be surrendered to MEC "for destruction." D.I. 102 at ¶ 9."  See Plaintiff's Reply Brief in Support of Plaintiff's Motion for Summary Judgment. (Doc 192, p.5).  However, the *Consent Final Judgment and Permanent Injunction* (Doc 102) filed January 19, 2012, which came before the Court on the joint motion of Plaintiff and the Amar Defendants, contained the following handwritten amendation by the Court:

> However, the Court makes no findings as to the validity of
> Hansen's claims, including but not limited to its claims of its
> alleged valid federal trademarks and valid copyrights and common
> law rights claims.  ***This settlement is only effective between***

> ***Hansen and the Amar Defendants.  It is not applicable to other Defendants.*** Further, this settlement cannot be used for any other purpose except between Hansen and the Amar Defendants. ***Any findings of law or facts that may be perceived to arise from this settlement are not those of the Court and, again, have no binding effect beyond Hansen and the Amar Defendants.***

(Doc 102, ¶1. Emphasis supplied.)

Accordingly, Plaintiff was on notice by the Court that with regard to Defendants CDI and David Baksht, the settlement with Joe Cool, Inc. had no effect.  Nevertheless, subsequently, on March 8, 2012, Plaintiff's proceeded to shred the crucial evidence provided by Joe Cool, Inc. See Mitchell Decl., ¶14 (Doc 194).

Plaintiff had the right to possession of the Joe Cool, Inc. evidence pursuant to the settlement, and Plaintiff had a right to destroy these evidenciary materials, ***but only after the claims against the remaining Defendants were resolved***.

Until the claims against all Defendants were resolved, Plaintiff had an affirmative duty to preserve this crucial evidence.  "[T]he law imposes a duty upon litigants to keep documents that they know, or reasonably should know, are relevant to the matter." *Wilson v. Wal-Mart Stores, Inc.*, No. 5:07-cv-394-Oc-10GRJ, 2008 WL 4642596, at *2 (M.D.Fla. Oct. 17, 2008) (footnote omitted).  See also *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317 (S.D.Fla. 2010), citing *See Southeastern Mechanical Services, Inc. v. Brody,* No. 8:08-CV-1151-T-30EAJ, 2009 WL 2242395, at *2 (M.D.Fla. Jul. 24, 2009)(noting that "[o]nce a party files suit or reasonably anticipates doing so... it has an obligation to make a conscientious effort to preserve electronically stored information that would be relevant to the dispute.").

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable

litigation." *Graff v. Baja Marine Corp*., 310 F. App'x 298, 301 (11th Cir. 2009) quoting *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir. 1999).

In the Eleventh Circuit, "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (*per curiam*) (emphasis added); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009).  Here, there is ample evidence of Plaintiff's bad faith.  Plaintiff knew that the documents and things relating to the 3DL marks turned over to Plaintiff by the Amar Defendants was the very subject of this lawsuit. Plaintiff knew that the Amar Defendants had pled that the 3DL marks had priority over Plaintiff's M Claw mark (See Amar Defendants' Answer (Doc 36, ¶140-142, 164-166 ).  Plaintiff also knew that the Amar Defendants had assigned the 3DL marks to CDI and that CDI was not a settling party.  Therefore, it was reasonable for Plaintiff to foresee that CDI would claim in this pending litigation that the 3DL marks had priority over Plaintiff's M Claw mark, just as the Amar Defendants had pled. Consequently, Plaintiff should have known that the documents and things turned over to Plaintiff by the Amar Defendants needed to be preserved and examined as evidence central to this case. Nevertheless, Plaintiff purposely and affirmatively destroyed this relevant evidence during the pendency of this litigation.  Accordingly, the trier of fact could find bad faith in Plaintiff's destruction of evidence.   See *Doe v. Miami-Dade County*, 797 F. Supp. 2d 1296 9 (SD Fla 2011).

CDI raises the fact issue of spoliation in opposition to a motion for summary judgment, because based on these facts a jury could apply a negative inference against Plaintiff.  As CDI argued in Response to Plaintiff's Motion for Judgment (Doc 185), in this context *Josendis v. Wall*

*to Wall Residence Repairs, Inc.*, 662 F. 3d 1292 (11th Cir.2011) is instructive.  In *Josendis*, the

Honorable Edward R. Korman, United States District Judge for the Eastern District of New York,

sitting by designation, stated in a dissenting opinion that the doctrine of spoliation "provides a

basis for denying a motion for summary judgment where there is sufficient probative evidence

for a jury to find an act of spoliation and to draw the inference derived from such an act." Judge

Korman opined, "A factual finding of spoliation is necessary only where the district judge seeks

to impose a particular sanction beyond submitting the issue to the jury."  Thus, Judge Korman

notes, in *Kronisch v. US*, 150 F. 3d 112, 127 (2nd Circuit 1998) that the "the district court

presumed for purposes of considering the motion for summary judgment that defendants had

an obligation to preserve the files and that the destruction was intentional," and this approach

was characterized as "sound" by the Second Circuit.  *Cf. Bashir v. Amtrak,* 119 F.3d 929, 931

(11th Cir.1997) (per curiam), the Court of Appeals agreed with the district court that "there was

no probative evidence in this case to indicate appellees purposely lost or destroyed the relevant

portion of the [evidence]." Consequently, the Court of Appeals concluded that the district court

had not erred in granting the motion for summary judgment.  Granting summary judgment to

Plaintiff would encourage spoliation, reward Plaintiff's act of spoliation by making Plaintiff's

claim of priority irrebuttable solely because of plaintiff's act of spoliation, and deny defendant

its due process right to present a defense to Plaintiff's claim of priority.  See *Caswell v. Ford*

*Motor Company, et. al.*, 2005 WL 3372882 (M.D. Fla. 2005), fn. 7., citing *Torres v. Matsushita*

*Electric Corp.*, 762 So.2d 1014,  (Fla. 5th DCA 2000).

Based on the testimony of Yosef Amar (Doc 172), the Confidential Settlement

Agreement between the Amar Defendants and Plaintiff and the Declaration of Richard E.

Mitchell, the Court can find that there exists sufficient probative evidence for a jury to find an

act of spoliation.  Therefore, without actually finding that there was in fact spoliation, this

evidence is sufficient to provide a basis for denying Plaintiff's motion for to exclude the

testimony of Yosef Amar, because Mr. Amar's testimony must be considered by a jury along

with the evidence of spoliation, from which the jury could draw a negative inference against

Plaintiff that supports Mr. Amar's testimony.


III.     **MONSTER'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE THE COURT'S ORDERS DENYING PRELIMINARY INJUNCTION (Doc 40) AND DENYING RECONSIDERATION (Doc 52) SHOULD BE DENIED.**

Monster seeks an order excluding any argument or reference to the Court's orders

denying Monster's motion for preliminary injunction and reversing the seizure order (Doc 40)

and denying Monster's motion for reconsideration of the preliminary injunction decision (Doc

52).  Plaintiff argues,

> Courts routinely exclude evidence and argument concerning prior
> preliminary injunction decisions under Rules 402 and 403 because
> of their limited relevance and the risk that the court's preliminary
> findings will have undue influence on the jury. *See, e.g., TVT
> Records v. Island Def Jam Music Group,* 250 F. Supp. 2d 341,
> 347(S.D.N.Y. 2003) (excluding evidence of court's prior
> determinations made in context of preliminary injunction, noting
> such determination would otherwise be "likely to unduly
> influence the jury in its role as trier of fact")…

However, the cases cited by Plaintiff, which concern motions for preliminary injunction

are not relevant here.  In *TVT Records v. Island Def Jam Music Group,* 250 F. Supp. 2d 341,

347(S.D.N.Y. 2003), cited by Plaintiff, the court ***granted*** a preliminary injunction, and the

defendant sought an order to exclude the plaintiff from arguing that the defendant "attempted

to and/or would have succeeded in interfering with TVT's alleged contract …, **but were prevented from doing so only by this Court's preliminary injunction**." *Id.* (Emphasis supplied.) This argument has no relevance here. The other cases string cited by Plaintiff also offer no guidance on the issue raised in this motion.

Here, Plaintiff moved *ex parte* for an order of seizure. Plaintiff also moved for a preliminary injunction, but the portion of Plaintiff's motions that are relevant to Defendant's counterclaim of Wrongful Seizure, relate to the motion for seizure, not preliminary injunction.

A court has good grounds to exclude a decision denying a motion for preliminary injunction, because the decision addresses ultimate issues of fact that the jury must decide at trial. Clearly the trial court's finding of "no likelihood of success on the merits" in denying a preliminary injunction could be highly prejudicial to a jury.

However, here Defendant would seek to introduce the Court's decisions as evidence of Plaintiff's bad faith in moving for a seizure order. The relevance of the Court's decisions to Defendant CDI's Wrongful Seizure counterclaim is to demonstrate that Plaintiff acted in bad faith by willfully misleading the Court as to the facts supporting a seizure order. "Misleading" is a subjective concept. However, no better evidence shows that Plaintiff was misleading than the Court's own finding that Plaintiff mislead the Court and gave the Court "erroneous impressions." These are not findings by the Court of ultimate facts in issue, such as whether Defendant's conduct was infringing, or whether Plaintiff has a likelihood of success on the merits, and so the potential for prejudice from the introduction in evidence of the Court's decisions on the seizure order is outweighed by the probative value of this evidence.

IV.    **MONSTER'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE OF THIRD-PARTY "CLAW" TRADEMARK REGISTRATIONS AND NON-TRADEMARK USES SHOULD BE DENIED.**

Monster seeks an order excluding Defendants from introducing evidence or argument of "1) third party "claw" trademark registrations, because they were not produced by Defendants during discovery."  Plaintiff's Brief, p. 14.

Monster contends that the third party "claw" trademark registrations that Defendant CDI submitted in support of its motion for Summary Judgment. (Doc 170-1) should be excluded because they were not produced before the end of discovery.

As noted by Plaintiff, the Eleventh Circuit looks at three factors when determining if untimely documentary evidence is properly excluded: (1) the importance of the evidence; (2) the reason for the failure to disclose the evidence earlier; and (3) the prejudice to the opposing party if the evidence is permitted. *GamerModz, LLC v. Golubev,* No. 8:10-CV-1466-T-27TGW, 2011 WL 4755026, *7..8 (M.D. Fla. Aug. 3, 2011) (unpublished) (citing *Pete's Towing Co. v. City of Tampa, Fla.,* 378 Fed. Appx. 917, 920 (11th Gir. 2010) (unpublished)); Fed. R. Civ. P. 37(c)(1).

Plaintiff claims that this evidence of third-party registrations from the USPO website should have been produced in response to Plaintiff's catch-all discovery demands for documents "that support, refute, or otherwise relate to Defendants' allegation that there is no likelihood of confusion" or "that support, refute, or otherwise relate to Defendants' affirmative defenses" or "counterclaims."

Defendant respectfully submits that Plaintiff's document requests referred to above and by Plaintiff are so broad in their scope as to include every possible document that may be

14

relevant in this case, and Defendant simply did not consider that these third-party registrations, in the public domain, needed to be produced in response to these general requests.  Defendant is not saying that these USPTO documents are not responsive to these requests, but that the requests were so broad as to not give Defendant sufficient guidance and awareness that third party registrations would constitute responsive documents.  In fact, the requests referred to by Plaintiff are designed so that they can be used to support an argument to exclude any not "timely produced" document.

Furthermore, Plaintiff's claim of prejudice rings hollow.  First, discovery closed on September 25, 2012 and the third-party registrations were produced on September 30, 2012, just 5 days later.  Plaintiff is hardly prejudiced by this delay.  Second, Plaintiff contends that it is prejudiced because it cannot "ascertain whether they are currently in use or abandoned, how they are being used, the types of products and services involved, and the dates of first use." Yet, Plaintiff acknowledges in the same argument that it already has ascertained most of this information, stating, "Many of the registrations have been abandoned. Id. at 8-10, 12, 15, 19, 22, 23, 25-28, 31. Many of the registrations are also irrelevant because they are for very different goods, like chemical reagents. See, e.g., Id. at 15."  See Plaintiff's Memo, p. 16.

Based on the foregoing Defendant CDI respectfully requests that the Court deny Plaintiff's motion *in limine* as to third-party USPTO registrations.

WHEREFORE, Defendants Consolidated Distributors, Inc. respectfully requests that the Court deny Plaintiff's motions in limine numbers 1, 2, 4, and 5 and grant such further relief for

Defendant CDI as the Court deems just and proper.

Respectfully submitted this 19th day of November, 2012.


_____/s/_____        /s/  Peter J. Mackey___
MOSHE MORTNER, ESQ.                         Peter J. Mackey
New York Bar No.: 2085801                   Florida Bar No.: 0629138
mm@mortnerlaw.com                           Kristina Hager Snyderman
The Mortner Law Offices                     Florida Bar No.: 0089327
40 Wall Street, 28th Floor                  MCKEY LAW GROUP, P.A.
New York, NY 10005                          1402 Third Avenue West
646-820-8770 Telephone                      Bradenton, FL 34205
646-304-3169 Facsimile                      (941) 746-6225 Telephone
Lead Counsel pro hac vice for Defendant     (941) 748-6584 Facsimile
CONSOLIDATED DISTRIBUTORS, INC.             Local Counsel for Defendants,
                                            CONSOLIDATED DISTRIBUTORS, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2012, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

_____/s/_____
Moshe Mortner