**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MONSTER ENERGY COMPANY, f/k/a
HANSEN BEVERAGE COMPANY,          Case No. 6:11-CV-329-ORL-22DAB
d/b/a MONSTER BEVERAGE
COMPANY,

               Plaintiff,

vs.

CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC., and DAVID
BAKSHT (a/k/a David Lipsker a/k/a
David Bakshet a/k/a D Bakht a/k/a DM
Schneerson a/k/a Abraham
Shneorson),

               Defendants.

_____ /

**PLAINTIFF MONSTER ENERGY COMPANY'S MOTION TO STRIKE THE
DEFENDANTS' UNTIMELY JURY INSTRUCTIONS AND OBJECTIONS, AND
FOR A DETERMINATION THAT CDI HAS WAIVED ITS COUNTERCLAIMS**

      Plaintiff Monster Energy Company ("MEC") hereby moves this Court for an

Order striking two sets of jury instructions submitted by the Defendants.  The first set

of jury instructions was provided by the Defendants to MEC at 9:42 p.m. on Monday

December 17, 2012, the due date for filing the Joint Final Pretrial Statement, which

was required to include a single set of jointly-filed jury instructions.  The Defendants'

first set of jury instructions consisted of references to unmodified model instructions

from the Seventh and Eleventh Circuits, plus two customized instructions related to

punitive damages and spoliation.    Notably, the Defendants' first set of jury

instructions contained no instructions concerning CDI's counterclaims.[1]   Though MEC was able to rush and integrate the Defendants' eleventh-hour input, MEC had no time to prepare responses or objections to the Defendants' proposed jury instructions.   MEC instead was forced to object to those instructions *in toto* as untimely.   *See* D.I. 217 at 78.   Thus, the Defendants did not participate in good faith in producing a single set of jointly-filed jury instructions as required by the Court's Scheduling Order.

The Defendants submitted their second set of jury instructions on December 18, 2012, the day ***after*** the filing of the Joint Final Pretrial Statement.   On that day, without permission from MEC, the Defendants unilaterally sent the Court a new and different set of jury instructions via email to chambers.   The Defendants falsely represented in their transmittal email that this second set of instructions was a joint submission.   The Defendants' second set of jury instructions has never been filed with the Court — not in the Joint Final Pretrial Statement or in any other document.   And, as of the date of the present Motion, the Defendants have not sought leave to file them.   The Defendants' second set of jury instructions is different

---

[1] Because the Defendants submitted unmodified Seventh Circuit jury instructions on trademark infringement, MEC cannot be absolutely certain that the Defendants submitted those instructions for MEC's claim of trademark infringement, rather than CDI's own counterclaim of reverse confusion.  However, this ambiguity should be resolved against the Defendants because they did not even identify which claim the submitted model instructions related to.  The Defendants' first set of jury instructions plainly did not include instructions on CDI's six other counterclaims. Those counterclaims are:  1) Cancellation of MEC's Federal Trademark Registrations; 2) Common Law Unfair Competition; 3) Wrongful Seizure; 4) Common Law Abuse of Process; 5) Common Law Interference with Contractual Relations; and 6) Declaratory Judgment regarding the ownership of the 3DL design.

from their first set and does include instructions on CDI's counterclaims, as well as a new collection of objections to MEC's proposed jury instructions.

MEC now moves the Court to strike as untimely the first set of the Defendants' proposed jury instructions and seeks confirmation that the Court will disregard the Defendants' unfiled second set of instructions and objections, or in the alternative, MEC moves to strike the Defendants' late and never-filed second set of instructions and objections.  Finally, because CDI did not file jury instructions on its counterclaims, CDI cannot be permitted to present those counterclaims at trial. Accordingly, MEC seeks a finding that CDI has waived its counterclaims.

## BACKGROUND

The preparation of the Joint Final Pretrial Statement and accompanying jury instructions in this action was unfortunately not a joint undertaking, but instead a one-sided effort by MEC.  The hallmarks of this process were diligence by MEC and complete inaction and procrastination by the Defendants.

**The Joint Statement Process**

On December 3, 2012, lead counsel for the parties, John Sganga and Moshe Mortner,[2] met in person in Chicago to discuss preparation of the Joint Final Pretrial Statement.  As required by the Case Management Order, the parties exchanged Witness Lists and Exhibit Lists at this meeting.  In addition, MEC provided the Defendants with its deposition designations and a list of Proposed Stipulated Facts

---

[2] The Court has more recently questioned Mr. Mortner's authority to act as counsel on behalf of the Defendants.  *See* D.I. 218.  A hearing on Mr. Mortner's authority is scheduled for January 8, 2013.  *Id.*

and Agreed Upon Principles of Law for inclusion in the Joint Final Pretrial Statement. *See* Ex. 1.[3]  Counsel discussed MEC's facts and principles of law at the Chicago meeting but reached no final agreements.  This was the last input of any kind from the Defendants until December 17, 2012, the due date of the Joint Final Pretrial Statement.

On Friday December 7, 2012, MEC sent to the Defendants by email a revised set of Proposed Stipulated Facts and Agreed Upon Principles of Law.  *See* Ex. 2. MEC again invited the Defendants to provide their feedback on these proposals.  *Id.* Counsel for the Defendants replied that he would respond on Monday December 10, 2012.  *See* Ex. 3.  However, the Defendants did not respond on December 10, and ultimately did not respond until less than 24 hours before the filing deadline.

On Monday December 10, 2012, MEC sent to the Defendants by email a set of proposed jury instructions relating to MEC's claims for relief.  *See* Ex. 4.  MEC invited the Defendants to provide their feedback, including any stipulations or objections, and to provide their own jury instructions on their counterclaims.  *Id.*  The Defendants did not respond until December 17, the due date for the Joint Final Pretrial Statement and accompanying jury instructions.  Ex. 16.  That response by the Defendants was a blanket objection to all of MEC's instructions because, according to the Defendants, "they are very incorrect statements of the law."  *Id.*

---

[3] All exhibits referenced herein are attached to the Declaration of Paul A. Stewart, filed concurrently herewith.

On Tuesday December 11, 2012, MEC sent to the Defendants by email a Proposed Verdict Form.  *See* Ex. 6.  MEC again invited the Defendants' input and reminded the Defendants that the Joint Proposed Verdict Form was due the following Monday.  *Id.*  The Defendants never did respond to the Verdict Form, nor did the Defendants offer their own Proposed Verdict Form.

Also on Tuesday December 11, 2012, in an effort to prompt some sort of response from the Defendants, MEC sent to the Defendants by email a complete draft of the Final Joint Pretrial Statement.  *See* Ex. 7.  In this document, MEC included all materials that belong in the Joint Pretrial Statement except for those portions that state the Defendants' position and must be prepared by the Defendants.  *Id.*  MEC had hoped that the Defendants would simply fill in their portions of the Joint Final Pretrial Statement, since they had failed to send those portions to MEC for inclusion in the document.  Unfortunately, the Defendants again failed to respond until less than 24 hours before the filing deadline.

On Wednesday December 12, 2012, MEC sent to the Defendants by email a set of Proposed Voir Dire Questions and also expressed its concern that MEC had received no feedback at all from the Defendants on any aspect of the joint filing. *See* Ex. 8.  Later that day, MEC received a brief email from the Defendants' counsel indicating that he would respond to all prior emails the next day, Thursday December 13, 2012.  *See* Ex. 9.  No such response ever came.

On Friday December 14, 2012, MEC raised the issue of the Defendants' non-responsiveness at the oral argument on MEC's *Daubert* motion.  The Defendants did

not seize that opportunity to seek leave from the Court for more time.  Instead, after the hearing, the Defendants again promised to promptly provide their materials.  However, nothing would be forthcoming from the Defendants until the filing deadline.

On the same day, out of an abundance of caution, MEC provided the Defendants with MEC's proposed jury instructions on MEC's affirmative defenses to Defendant CDI's counterclaims.  Ex. 10.  MEC did so even though the Defendants had not provided any proposed jury instructions of any kind, nor had the Defendants provided any facts or principles of law.  Thus, MEC was left to shoot blind with its proposed jury instructions on its affirmative defenses.  MEC also pleaded for the Defendants to provide their portions of the Joint Final Pretrial Statement, and informed the Defendants that MEC likely would seek leave to file a unilateral Final Pretrial Statement because of the lack of input from the Defendants.  *See id.*

In the early morning hours of Monday December 17, the Defendants finally provided their first substantive input on the joint filing.  *See* Ex. 5.  That input consisted of several portions of the Joint Final Pretrial Statement that contain the Defendants' positions.  Noticeably absent, however, were any proposed jury instructions, input on the Verdict Form, or input on the Voir Dire Questions.  During the day on December 17, MEC was able to integrate the Defendants' input and their subsequent revisions thereto into the Joint Statement.  MEC repeatedly sought the Defendants' input on the missing items, such as jury instructions and objections to jury instructions, throughout the day on December 17.

**The Defendants' Jury Instructions**

At 8:29 p.m. Eastern Time on December 17, the Defendants, who had yet to provide any proposed jury instructions, explained via email that their "first set of proposed jury instructions was not in good shape."  Ex. 11.  At 9:42 p.m., the Defendants sent an email attaching unmodified model jury instructions from the Seventh and Eleventh Circuits with directions as to which instructions therein constituted the Defendants' proposed jury instructions.  *See* Ex. 12.  The Defendants' unmodified model jury instructions did not contain jury instructions on CDI's counterclaims.  MEC integrated the Defendants' instructions into the Joint Statement, but due to the exceedingly late submission, MEC was unable to respond substantively and was instead forced to object to the instructions in their entirety as untimely.  *See* D.I. 217 at 78.

At 10:42 p.m., the Defendants sent an email with a single additional proposed jury instruction — concerning spoliation of evidence.  *See* Ex. 13.  MEC integrated this instruction into the Joint Statement as well, again reserving all objections due to its timing.  At 10:54 p.m., the Defendants sent an email with one additional proposed jury instruction — concerning punitive damages.  *See* Ex. 14.  MEC integrated this instruction as well.  MEC then filed the Joint Statement and its appendices before the midnight deadline.  MEC provided chambers a copy of its proposed jury instructions in Word Perfect format via email pursuant to the Case Management and Scheduling Order (D.I. 121).  Thus, the filed version of the Joint Statement included no jury instructions on CDI's counterclaims.

The next day, without the consent of or even notice to MEC, the Defendants unilaterally provided chambers with a different set of proposed jury instructions via email. Ex. 15. The Defendants represented to the Court that their late submission was somehow a joint submission. *Id.* It was not. The Defendants' submission included new jury instructions that had never been shared with MEC, or filed with the Court. In this late submission, the Defendants for the first time provided 1) jury instructions on CDI's counterclaims, and 2) specific objections to some of MEC's proposed jury instructions. *Id.* The Defendants' late submission also purports to adopt the bulk of Plaintiff's proposed jury instructions, which the Defendants just the day before described as "very incorrect statements of the law." Exs. 15, 16. Notably, as of the date of this Motion, the Defendants still have not filed their second set of instructions with the Court. Accordingly, there are no jury instructions concerning CDI's counterclaims on file with the Court.

Due to the Defendants' complete failure to comply with the joint filing process, complete failure to timely provide MEC with copies of their proposed jury instructions, and unilateral late submission of a different set of proposed jury instructions, MEC seeks an order 1) striking the Defendants' first set of jury instructions; 2) confirming that the Court will disregard the Defendants' unfiled, late, and improperly submitted second set of jury instructions and objections to MEC's proposed jury instructions; and 3) finding that CDI has waived its counterclaims due to its failure to file jury instructions concerning those counterclaims.

**ARGUMENT**

The Court admonished the parties in the Case Management and Scheduling Order that the "case must be fully ready for trial at the time that the Joint Final Pretrial Statement is due" and that "[s]anctions may be imposed for failure to comply, including the striking of pleadings."  D.I. 121 at 7.   MEC took heed and exerted great effort, diligence, and expense to comply with the Court's order.   In contrast, the Defendants dawdled.

As this Court has cautioned, "[a] Scheduling Order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000) (quoting *Payne v. Ryder Sys. Long Term Disability Plan*, 173 F.R.D. 537, 540 (M.D. Fla. 1997)).   Rule 16(b)(4) of the Federal Rules of Civil Procedure governs the modification of a Scheduling Order and provides that the "schedule may be modified only for good cause and with the judge's consent."   The Eleventh Circuit has determined that the "good cause" standard of Rule 16 "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension."   *Sosa v. Airprint Sys. Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quotation omitted).   "Thus, a party seeking to amend must be able to demonstrate diligence."   *Romano v. Secretary, DOC*, No. 2:06-cv-375-FtM-29DNF, 2011 WL 2292135, at *1 (M.D. Fla. June 8, 2011).

Here, the Defendants have not even sought leave from the Court to amend the Scheduling Order.   They instead have unilaterally disregarded the joint filing

requirement for the jury instructions by not participating in the preparation of jury instructions until 9:42 p.m. on the filing due date.   Even worse, the Defendants submitted a second set of instructions and a set of objections to MEC's jury instructions a day late — via email to chambers.   In short, the Defendants have simply flouted the Scheduling Order and this Court's rules.

Even if they had sought leave, the Defendants cannot come close to showing the requisite diligence in attempting to participate in the preparation of a joint set of jury instructions by the December 17 deadline.   The Defendants provided MEC with no jury instructions, whatsoever, until 9:42 p.m. on the filing deadline.   This severely prejudiced MEC, leaving MEC no time to consider those jury instructions, formulate objections to those jury instructions, or formulate alternative instructions.

Moreover, the Defendants' proposed instructions were simply unmodified circuit court model jury instructions that demonstrated minimalist effort on the Defendants' behalf.   Had the Defendants participated in the joint submission process, it is likely that the parties could have found substantial areas of common ground.   Indeed, one of the models cited by the Defendants in their first set of proposed instructions was the very same set of Eleventh Circuit model jury instructions that formed the basis for many of MEC's own proposed instructions.

The Defendants' day-late second set of instructions, which the Defendants provided to the Court via email only, and have never been filed with the Court, are an even more egregious violation of the Court's rules and process.   Not only is the Defendants' late submission unexcused, the Defendants passed those jury

instructions off as being a joint submission.  Such conduct by the Defendants further necessitated the present Motion.  Notably, as of the date of this Motion, the Defendants still have not filed their second set of instructions with the Court.

If the Defendants' untimely first and second sets of jury instructions are permitted to stand, MEC will be unnecessarily and unfairly prejudiced, and the Defendants will again disregard the Court's process without significant consequence.  MEC will have had no opportunity to object to the Defendants' two sets of jury instructions, formulate alternative jury instructions, or attempt to compromise with the Defendants on joint instructions.  Only the Defendants have had these opportunities, precisely because they flouted the Scheduling Order.  Such tactics should not be permitted.

During the December 19, 2012 meet and confer of counsel concerning this Motion, the Defendants provided no justification, whatsoever, for their failure to participate in the joint submission process or for their late jury instructions.  Instead, the Defendants offered to stipulate that MEC should be given time to now respond to the Defendants' jury instructions.  However, this entirely misses the mark.

If the Defendants are permitted to file their untimely proposed jury instructions, MEC would be forced to devote time and resources to those jury instructions when it should be free to conduct other preparations for trial.

Nor is the Defendants' present conduct an isolated occurrence.  Instead, a pattern has developed.  That pattern is Defendants' unpreparedness and lack of respect for the Court's process, all at a heavy toll to the Court and MEC.

Defendants continue to divert the focus away from resolving the merits of the dispute by their procedurally improper conduct.  The Defendants demonstrated this pattern from the very start of this litigation when both CDI and Baksht dodged service of MEC's complaint for months.  *See* D.I. 116 at 4-6.  During discovery, the Defendants repeatedly cancelled the depositions of CDI's principals, including the Defendants' cancellation of David Baksht's deposition after counsel for MEC was aboard a cross-country flight to take that deposition.  D.I. 150 at 2.  Ultimately, MEC was required to file a motion to compel the depositions of both of CDI's principals, burdening the Court and wasting MEC's resources.  D.I. 150.  Also during discovery, the Defendants offered the irrelevant and misleading expert opinion of Dr. Kenneth Lehrer, which the Court recently excluded in response to an MEC motion.  *See* D.I. 215.  The Defendants further demonstrated their lack of preparedness when they sought leave of the Court to file Baksht's untimely and meritless summary judgment motion.  D.I. 179.  Again, the Court and MEC had to expend precious resources in response.  The Defendants' pattern of unpreparedness and disregard for this Court's rules continued when they filed not one, but two motions objecting to the timing of MEC's summary judgment briefing and MEC's submission of a reply brief on summary judgment.  D.I. 198, D.I. 200.  The Court rejected those motions out of hand, and further noted the Defendants' apparent failure to read the Scheduling Order, their non-compliance with the Court's rules, and their wasting of judicial resources.  D.I. 202.

In light of the Defendants' track record and the Court's admonitions in the

Scheduling Order, the relief MEC seeks is reasonable and proper.   Serious consequences should flow from repeated dilatory tactics and disregard of the Court's schedule.   Otherwise, history has shown that the Defendants will continue the same pattern of misconduct.   Thus, the Defendants' belated jury instructions should be stricken and the Defendants' unfiled jury instructions should be disregarded.   This would leave no proposed instructions on the Defendants' counterclaims.   Since the jury will get no guidance on the legal standards to be applied to the counterclaims, and the Defendants have failed to diligently prosecute those counterclaims, the Defendants should not be permitted to present those counterclaims to the jury.

## CONCLUSION

MEC respectfully requests that the Court strike the Defendants' first set of jury instructions, confirm that it will disregard the Defendants' unfiled and improperly-submitted second set of instructions and objections to MEC's jury instructions, and hold that CDI has waived its counterclaims for its failure to timely file jury instructions on those counterclaims.

Respectfully submitted,


Dated:  December 21, 2012          By: *s/ Paul A. Stewart*
                                        JOHN B. SGANGA, JR. ESQ.
                                        (Admitted *Pro Hac Vice*)
                                        john.sganga@kmob.com
                                        PAUL A. STEWART, ESQ.
                                        paul.stewart@kmob.com
                                        (Admitted *Pro Hac Vice*)
                                        LAUREN K. KATZENELLENBOGEN, ESQ.
                                        (Admitted *Pro Hac Vice*)
                                        lauren.katzenellenbogen@kmob.com
                                        KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main Street, Fourteenth Floor
Irvine, California 92614
(949) 760-0404 Telephone
(949) 760-9502 Facsimile

Lead Trial Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

– and –

RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida 32801
(407) 843-8880 Telephone
(407) 244-5690 Facsimile

Local Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

## CERTIFICATION OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 3.01(g), undersigned counsel for MEC conferred in good faith with counsel for Defendants Baksht and Consolidated Distributors, Inc. regarding the relief requested in this motion and was unable to reach an agreement. The conference took place via telephone on December 19, 2012.

*s/ Paul A. Stewart*
Paul A. Stewart

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

                                    _s/ Paul A. Stewart_____
                                    Paul A. Stewart

14526916

122012