UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MONSTER ENERGY COMPANY, f/k/a
HANSEN BEVERAGE COMPANY,
d/b/a MONSTER BEVERAGE
COMPANY,

    Plaintiff,

vs.

CONSOLIDATED DISTRIBUTORS,
INC., METTEMP, INC., and DAVID
BAKSHT (a/k/a David Lipsker a/k/a
David Bakshet a/k/a D Bakht a/k/a DM
Schneerson a/k/a Abraham
Shneorson),

    Defendants.

Case No. 6:11-CV-329-ORL-22DAB

_____/

**PLAINTIFF'S RESPONSE TO ATTORNEY MOSHE MORTNER'S MOTION FOR A DECLARATION THAT HE IS COUNSEL FOR DEFENDANT CONSOLIDATED DISTRIBUTORS, INC. [D.I. 224]**

Plaintiff Monster Energy ("MEC") hereby submits this response to Attorney Moshe Mortner's "Motion to Enforce the Local Rules to Confirm his Representation of Consolidated Distributors, Inc." MEC respectfully requests that the following points be considered as the Court provides Mr. Mortner with the guidance he has requested regarding the representation of the Defendants.

### I. INTRODUCTION

David Baksht is the President and Chief Executive Officer of Defendant Consolidated Distributors, Inc. ("CDI"), a New York corporation. D.I. 179-2 ¶ 1;

1

Ex. 2; Ex. 4 at 17:6-8; *id.* at 18:24-25; Ex. 5 at 26:3-8.[1]  On or about November 8, 2012, Mr. Baksht fired Mr. Mortner as counsel for CDI.  Mr. Baksht did this in the most definitive way possible.  He hired counsel who sent a letter to Mr. Mortner informing Mr. Mortner that he had been fired by CDI.  D.I. 226, Ex. 2.  That letter enclosed a "Notice of Discharge" and accused Mr. Mortner of a variety of misdeeds, including the misappropriation of $150,000.  *Id.*

Mr. Baksht ratified his decision to fire Mr. Mortner on several occasions.  On December 13, 2012, Mr. Baksht forwarded a copy of the letter terminating Mr. Mortner to MEC's counsel, with a cover note stating that Mr. Mortner is "not authorized to act or negotiate on behalf of consolidated distributors inc." Ex. 1.  The next day, Mr. Baksht sent the following email to his purported local counsel, John Paradis:

> moshe mortner esq. was fired by consolidated distributors, inc. as attorney in the monster energy vs consolidated distributors, inc. case long before he hired your services. he hired your services after he was fired, and, had no authority to do so. if you think you were hired, then, you are hereby fired from any representation of consolidated distributors inc., a ny corporation. do not,repeat, do not file any papers on behalf of consolidated didtributors, inc.. mortner refuses to be fired despite the fact that he was, and may have to pay for such refusal with his bar ticket.  if you think authority was given to you to represent our corporation, then any such authorization is here by withdrawn.
>
> govern yourself accordingly,
> david baksht, ceo, and,
> president of consolidated
> distributors, inc., a ny corp.

---

[1] Unless otherwise indicated, all Exhibits are attached to the Declaration of Paul A. Stewart, submitted herewith.

2

> defendant in monster
> energy vs consolidated et al

Ex. 2.

It is an elementary principle of corporate law that the President or CEO of a corporation has the authority to hire and fire counsel.  *See*, *e.g.*, *Goldston v. Bandwidth Tech. Corp.*, 52 A.D.3d 360, 859 N.Y.S.2d 651, 654-55 (N.Y. App. 2008); *see also Twyeffort v. Unexcelled Mfg. Co.*, 188 N.E. 138, 139, 263 N.Y. 6 (1933). No resolution of the Board of Directors is required, and the desires of the lone dissenting member of the Board are simply irrelevant.  Accordingly, Mr. Mortner is no longer counsel for CDI, and this Court should so declare.

Indeed, it is critical that the Court clarify Mr. Mortner's status promptly.  In the early stages of this litigation, CDI and Mr. Baksht made no appearance and had a default entered against them.  D.I. 104, D.I. 105.  CDI and Mr. Baksht successfully argued that they believed that the attorney for co-defendant Joe Cool Inc. also represented them.  D.I. 110.  As a result, the Court lifted the default against CDI and Mr. Baksht.  D.I. 120.  MEC does not want the Defendants to get yet another "do over" in this case by arguing that there is again confusion over the authority of counsel to act on their behalf.

Finally, CDI already has had approximately two months to retain new counsel and has failed to do so.  Therefore, with trial fast approaching, this Court should give CDI only a short time – two weeks – to retain new counsel.  If CDI fails to do so, this Court should strike CDI's Answer and Counterclaim.

## II. <u>MR. BAKSHT HAD THE AUTHORITY TO FIRE MR. MORTNER AS CDI'S COUNSEL AND HAS DONE SO</u>

Mr. Baksht is the President and CEO of CDI.  D.I. 179-2 ¶ 1; Ex. 2; Ex. 4 at 17:6-8; *id.* at 18:24-25; Ex. 5 at 26:3-8.  CDI is a New York corporation.  D.I. 122 ¶¶ 6, 135; D.I. 217 § IX, ¶ 3.  Under New York law, the President of a corporation has the authority to hire and fire counsel for the corporation.[2]  *Goldston*, 52 A.D.3d 360, 859 N.Y.S.2d at 654-55; *Twyeffort*, 188 N.E. at 139, 263 N.Y. 6.

Mr. Baksht has plainly exercised his authority and fired Mr. Mortner as counsel for CDI.  Mr. Baksht hired separate counsel, Jon Lefkowitz, to send the following letter to Mr. Mortner, terminating Mr. Mortner as counsel for CDI.

> Dear Mr. Mortner:
>
> This office has been retained by Consolidated Distributors, INC. with respect to the pending case in the Middle District of Florida. Accordingly, please find enclosed a Notice of Discharge, signed by your erstwhile client. Your clients are very displeased that you have taken out a litigation loan on the case without Mr. Baksht's knowledge, and that you have misappropriated the monies from the trust account, and converted the monies to your own use, rather than for legitimate expenses.
>
> What is more, you have caused a rift and machlokot between Menachem and Baksht, who were business associates, and which is contrary to halacha and Jewish law.
>
> Additionally, you are not a partner in this case; you are only entitled to a share of the settlement, if any. It is Consolidated, which is the sole owner of the case.

---

[2] A New York corporation may restrict the powers of its President or CEO in its Certificate of Incorporation.  *See* N.Y. Bus. Corp. Law § 402(c).  However, CDI's Certificate of Incorporation contains no such restrictions.  *See* Ex. 7.

4

> You have also not communicated with Mr. Baksht, and this has motivated him to sever the relationship. Specifically, you did not forward to him each filing by Monster, nor show him every one of his filings before you filed them. Further, you have filed motions late, and were reprimanded by the judge.
>
> There is one document that Menachem apparently stole from the office of Mr. Baksht, while he was asleep, and signed. Of course this is illegal, and your true client never did ratify this loan and that you have pressured him to steal from my office.
>
> As a member of the bar, we hope you can and will account for the $150,000.00 you misappropriated, so that Mr. Baksht need not hold you responsible for malpractice, as well as pursue other remedies.
>
> Sincerely,
>
> Jon A. Lefkowitz

Ex. 1; D.I. 226, Ex. 2. This letter not only terminated the attorney-client relationship, but set forth numerous reasons for the termination, including an allegation that Mr. Mortner had misappropriated $150,000, and a suggestion that he may have conspired with Menachem Schnoerson to steal a document from Mr. Baksht's office.

Mr. Baksht then took the extraordinary step of forwarding this letter to MEC's counsel, and cautioned MEC that Mr. Mortner is "not authorized to act or negotiate on behalf of consolidated distributors inc." Ex. 1. Mr. Baksht then informed his purported local counsel, Mr. Paradis, that "moshe mortner esq. was fired by consolidated distributors, inc. as attorney in the monster energy vs consolidated distributors, inc. case." Ex. 2. Mr. Baksht went on to explain that Mr. Paradis was never retained by CDI, because he was hired only by a fired attorney, Mr. Mortner. *Id.* During the recent preparation of the Joint Pretrial Statement, Mr. Baksht again

5

reiterated directly to MEC's counsel that Mr. Mortner had been fired. Commenting on Mr. Mortner's contributions to the Joint Pretrial Statement, Mr. Baksht wrote:

> Paul,
>
> This was not authorisedby defendant consolidated distributors in[c.] and should bedisregarded and not filoed with the court. It was forwarded to you by a fired attorney without authorization of cdi.

Ex. 3 (errors in original). Significantly, Mr. Mortner has submitted no declaration from Mr. Baksht retracting any of his many statements that he has terminated the employment of Mr. Mortner.

Mr. Mortner argues that he remains counsel for CDI unless and until the Board of Directors of CDI votes to fire him. D.I. 224 at 5 ¶ 4. But that simply is not the law. As President and CEO of CDI, Mr. Baksht had the authority to fire Mr. Mortner, *Goldston*, 52 A.D.3d 360, 859 N.Y.S.2d at 654-55, and he has exercised that authority. Mr. Schnoerson, a shareholder and director of CDI, apparently dissents from Mr. Baksht's decision. But under the law, it was Mr. Baksht's decision to make. *Id.*

Mr. Mortner also suggests that, even if he has been fired, he should be permitted to represent CDI because that is allegedly in CDI's best interests. D.I. 224 at 6. In support, Mr. Mortner cites *Vanhorn v. Behavioral Support Services, Inc.*, Case No. 6:07-cv-1696-Orl-22DAB, 2008 U.S. Dist. LEXIS 14763 (M.D. Fla. Feb. 27, 2008). However, *Vanhorn* is clearly distinguishable.

First, *Vanhorn* acknowledges that an attorney who has been fired is ethically obligated to file a motion to withdraw as counsel. *Id.* at *2-3. This is based on Rule 4-1.16(a)(3) of the Rules Regulating the Florida Bar, which explicitly states that an attorney must file a motion to withdraw when "the lawyer is discharged." Here, unlike *Vanhorn*, counsel has not filed a motion to withdraw and should not be rewarded for failing to follow ethical requirements. Indeed, counsel has done the opposite of what the ethical rules require by filing the present motion for reinstatement.

Second, *Vanhorn* merely stands for the general proposition that this Court has the power to force a terminated attorney to continue representing the former client in litigation. Mr. Mortner offers no reason why this Court should exercise this extraordinary power in the present case. In particular, there is no evidence that CDI would suffer any substantial prejudice if its wishes are honored and Mr. Mortner is removed from this case. CDI can and should expeditiously retain new counsel, such as Mr. Lefkowitz or any other attorney of CDI's choosing, to represent it in this case.

Certainly, CDI has made no showing of prejudice. Mr. Schnoerson states only that he is "fearful" that CDI "will be prejudiced in this action" if Mr. Mortner is not reinstated as counsel. D.I. 225 ¶ 7. But he does not explain what prejudice CDI will suffer or explain why that prejudice would not be alleviated by the retention of new counsel. Moreover, Mr. Baksht, who has the authority to make decisions of this type, clearly believes that Mr. Mortner is not serving CDI's interests, and that CDI would be better served by new counsel.

Finally, in *Vanhorn*, the Court exercised its power judiciously. The Court instructed the Defendant in its original order that "it must obtain substitute counsel or proceed with Mr. Finnigan [its terminated counsel]." *Vanhorn v. Behavioral Support Services, Inc.*, Case No. 6:07-cv-1696-Orl-22DAB (M.D. Fla. Feb. 25, 2008) (attached as Exhibit 6). Thus, the Defendant was given the option of retaining new counsel, precisely as MEC proposes here. In contrast, Mr. Mortner seeks to thrust his services upon CDI without the option of retaining new counsel.

### III. MR. MORTNER'S MOTION FAILS TO ADDRESS THE CONSEQUENCES OF THE APPARENT CONFLICT OF INTEREST BETWEEN MR. BAKSHT AND CDI

Mr. Mortner's motion acknowledges that in November 2012 "Mr. Baksht threatened to undertake actions in conflict with the litigating position of CDI in this Action." D.I. 224 at 2. Apparently because of this conflict between two clients, Mr. Mortner attempted to withdraw as counsel for Mr. Baksht in this action. *Id.* However, as Mr. Mortner concedes, Mr. Baksht refused to permit Mr. Mortner's withdrawal. *Id.* at 2-3. Thus, there is a conflict of some kind between Mr. Baksht and CDI that is so severe that Mr. Mortner felt compelled to attempt to withdraw from representing one of his clients. There is absolutely no evidence that the circumstances giving rise to this conflict have changed.

Despite this conflict, Mr. Mortner asks the Court to reinstate him as counsel for CDI. And Mr. Mortner asks the Court to do so without knowledge of the nature of the conflict between Mr. Baksht and CDI. This is something the Court should not do. Even if the Court has the technical power to compel an attorney to represent a client

8

despite a conflict of interest, such an extraordinary power should be exercised only with full knowledge of the facts and full knowledge of the likely consequences to all concerned parties. At present, none of the facts are known.

### IV. MR. MORTNER CONTINUES TO REPRESENT MR. BAKSHT

Mr. Mortner seeks the Court's guidance on whether he should continue to represent Mr. Baksht individually. D.I. 224 at 7. It is unclear why Mr. Mortner believes there is any doubt on this issue. As Mr. Mortner concedes, "Defendant Baksht has demanded that Attorney Mortner continue as his personal counsel of record." *Id.* At the same time, Mr. Baksht has fired Mr. Mortner as CDI's counsel of record. Exs. 1-3. Thus, Mr. Mortner must continue to represent Mr. Baksht and must cease representing CDI, consistent with both parties' expressed intent. Moreover, as just discussed, a conflict of interest apparently precludes Mr. Mortner from resuming his role as counsel for CDI.

Significantly, Mr. Mortner has presented no legal grounds whatsoever for withdrawing from his representation of Mr. Baksht. Rule 4-1.16 specifies the grounds for mandatory and permissive withdrawal from representation, but Mr. Mortner does not claim that any of these grounds are present. He simply asks the Court for guidance for unspecified reasons – perhaps to eliminate the conflict that prevents his representation of CDI. That, of course, is not grounds for withdrawal. Mr. Mortner cannot ethically drop Mr. Baksht as a client in order to pave the way for his resumed representation of CDI. *See Merck Eprova v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009) (discussing the "hot potato rule" that

precludes an attorney from dropping one client so that he may represent another client).

## V. **CONCLUSION**

CDI clearly terminated Mr. Mortner's employment as counsel for CDI. Accordingly, Mr. Mortner's request for a Court order stating that he may continue to act as counsel for CDI should be denied. CDI should be instructed to retain new counsel within two weeks. Mr. Baksht has never terminated Mr. Mortner as counsel for Mr. Baksht individually. Accordingly, this Court should instruct Mr. Mortner that he must continue to represent Mr. Baksht unless and until he files an appropriate motion to withdraw, which is granted by this Court.

    Respectfully submitted,

Dated: January 4, 2013     By: /s/ *Paul A. Stewart*
    JOHN B. SGANGA, JR. ESQ.
    (Admitted *Pro Hac Vice*)
    john.sganga@kmob.com
    PAUL A. STEWART, ESQ.
    paul.stewart@kmob.com
    (Admitted *Pro Hac Vice*)
    LAUREN K. KATZENELLENBOGEN, ESQ.
    (Admitted *Pro Hac Vice*)
    lauren.katzenellenbogen@kmob.com
    KNOBBE, MARTENS, OLSON & BEAR, LLP
    2040 Main Street, Fourteenth Floor
    Irvine, California 92614
    (949) 760-0404 Telephone
    (949) 760-9502 Facsimile

    Lead Trial Counsel for Plaintiff,
    MONSTER ENERGY COMPANY f/k/a
    HANSEN BEVERAGE COMPANY d/b/a
    MONSTER BEVERAGE COMPANY

    – and –

RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida  32801
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

Local Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida  32801
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

Local Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of January, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

                                            /s/ *Paul A. Stewart*
                                              Paul A. Stewart

14589427