UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

---

MONSTER ENERGY COMPANY
*d/b/a* Monster Beverage Company
*f/k/a* Hansen Beverage Company

    Plaintiff,

    -against-

CONSOLIDATED DISTRIBUTORS, INC.;
METTEMP INC.; DAVID BAKSHT a/k/a
David Lipsker, a/k/a David Bakshet, a/k/a
David Bakht, a/k/a DM Shneerson, a/k/a
David Shneorson,,

    Defendants.

---

Civil Action
Case No. 6:11-cv-329-Orl-22DAB

DECLARATION OF DAVID BAKSHT

    DECLARANT, DAVID BAKSHT, declares under the penalty of perjury and says:

1. Declarant is one of the above captioned Defendants and is the president of CONSOLIDATED DISTRIBURORS, INC., (hereinafter Defendant CONSOLIDATED"), a New York Corporation. Declarant is now submitting this Declaration in response to the Order to Show Cause issued by United States Magistrate Judge David A. Baker, done and ordered on January 8, 2013.

2. At the outset Declarant wishes this Court to know that Declarant's failure to appear before this Court was not an act of disrespect to this Court. Declarant is suffering from a chronic Cellulitis condition that makes simple walking a painful chore. Declarant had previously brought this condition to this Court's attention at the time that

1

Declarant's deposition was to be scheduled. At that time Declarant submitted a letter to this Court from Declarant's physician that Declarant's Cellulitis condition made it impossible for Declarant to travel to Orlando, Florida to attend such Deposition. This Court graciously allowed the Deposition to be held in Declarant's home in Brooklyn, New York (Deposition of David Baksht p.6:1-9).

3. Declarant to further verify this continuing disability is submitting herewith a letter from Declarant's physician who is continuing to treat Declarant for this debilitating Cellulitis condition. My physician has made it plain to Declarant that Declarant is not well enough to travel outside Declarant's neighborhood. Unfortunately in Declarant's haste to obtain counsel to appear before this Court on January 8, 2013, Declarant was unable to gets such a letter and to apprise counsel Abraham Neuhaus, Esq., of the severity of Declarant's condition. See Exhibit M.

4. Declarant wishes this Court to know that the papers submitted by Attorney MORTNER and Defendant SCHNEORSON are intentionally full of half-truths intended to mislead this Court. For example, Attorney MORTNER would have this Court believe that Defendant SCHNEORSON was involved in the negotiation of the Retainer Agreement (Exhibit "A") that is the touchstone for his representation of Declarant and Defendant CONSOLIDATED. This is patently false.

5. Declarant was the only one who negotiated the Retainer Agreement. I point of fact Attorney MORTNER presented Declarant with an agreement that Declarant rejected as it did not contain the language that vested control of the litigation in Declarant that is contained in the executed document. Declarant signed the Retainer Agreement in Declarant's individual capacity and as president of Defendant CONSOLIDATED.

6. What is true is that Defendant SCHNEORSON was in the room when the Retainer Agreement was executed by Declarant and Attorney MORTNER as he was in Declarant's home/office in his capacity as Defendant CONSOLIDATED'S marketing director. Equally spurious is the "Modified Retainer Agreement" executed by Defendant SCHNEORSON as president of Defendant CONSOLIDTATED (Exhibit "B"). Both Attorney MORTNER and Defendant SCHNEORSON know that Defendant SCHNEORSON was never an officer of Defendant CONSOLIDTATED, let alone president. This fact is evinced in a e-mail from Attorney MORTNER to Declarant (Exhibit "C") which stated that Defendant SCHNEORSON was never an officer of Defendant CONSOLIDATED.

7. Declarant has been advised that this Court is seeking clarification regarding the corporate status of Defendant CONSOLIDATED. Declarant as the sole incorporator of Defendant CONSOLIDATED is in a unique position to offer this Court some illuminating facts. Declarant was the one who filed the Certificate of Incorporation for Defendant CONSOLIDATED with the New York Secretary of State. (Exhibit "D"). Declarant is also the one who filed with the New York Department of State the biennial certificate that names Declarant as Chairman of the Board/Chief Executive Officer (Exhibit "E").[1]

---

[1] Pursuant to New York Business Corporation Law § 404(b), Declarant, as the sole incorporator of Defendant CONSOLIDATED, properly executed a statement in lieu of organization meeting wherein he was appointed sole director and chairman of the board of Defendant CONSOLIDATED. Thereafter, Declarant, as the sole director and chairman of the board of Defendant CONSOLIDATED, resolved that Declarant was appointed President of the corporation with the authority to terminate Attorneys Mortner and Paradis's representation of Defendant CONSOLIDATED in the instant litigation and appoint Attorney Neuhaus to take over the representation of the corporation in the instant litigation and appoint Attorney Friedlander to commence an action against Attorney Mortner and Defendant Schneorson in Supreme Court, Kings County. Copies of the statement in lieu of organization and corporate resolutions are collectively annexed hereto as Exhibit "L."

8. At no time until today was any action taken to adopt By-Laws, issue stock certificates, elect a board of Directors or to elect officers. Declarant was and still is the moving force behind Defendant CONSOLIDATED to the chagrin of Attorney MORTNER and Defendant SCHNEORSON who both seek to isolate Declarant from this litigation despite the express language in the Retainer Agreement which vests sole discretion as to the conduct of this litigation with Declarant.

9. Declarant respectfully submits to this Court that Defendant CONSOLIDATED is a de facto corporation under the laws of the state of New York. The filing of the Certificate of Incorporation and biennial statement signed by Declarant as president of Defendant CONSOLIDATED is sufficient indicia for that entity to operate as if it were a fully formed and developed corporation. Moreover, since Declarant signed the biennial statement as president and filed same with the Department of State showing Declarant to be Plaintiff CONSOLIDATED'S Chairman/Chief Executive Officer, Declarant qualifies as a de facto officer and director of Defendant CONSOLIDATED.

10. The status of Defendant SCHNEORSON should be clarified by these documents. At no time was he ever elected as a director or an officer. Nor was he ever issued any shares. Declarant respectfully submits to this Court that Declarant made no damaging admissions in Declarant's deposition regarding Defendant SCHNEORSON'S position with Defendant CONSOLIDATED. Declarant never admitted that Defendant SCHNEORSON was a 50% shareholder (Deposition of David Baksht p.17:9-19) and did not understand the question posed by Plaintiff's counsel regarding a "board of directors", as Declarant was under the influence of very strong pain killers for Declarant's Cellulitis

4

condition. (Deposition of David Baksht p.21: 5-24). Declarant at the outset of the deposition advised Plaintiff's counsel of this fact and that Declarant would try to cooperate to answer his questions. (Deposition of David Baksht p 9:6-25).

11. Declarant also wants this Court know that Attorney MORTNER never gave Declarant the transcript of the deposition to review and correct. Declarant was therefore deprived of the ability to review the question and to clarify Defendant SCHNEORSON'S role with Defendant CONSOLIDATED.

12. Declarant further wishes this Court to know that Declarant has commenced an action in the Supreme Court of the State of New York, County of Kings seeking to recover damages from Attorney MORTNER and Defendant SCHNEORSON arising out of their efforts to usurp this litigation. A copy of the complaint is annexed as Exhibit "F". Attorney MORTNER toward this end has: (i) without Declarant or Defendant CONSOLIDATED'S consent "sold" a part of the proceeds of this action to a company INCLINE TEXAS LLC; (ii) received an advance of $150,00 for litigation expenses that he has put in his own pocket.

13. As a result of Attorney MORTNER'S misappropriation of the $150,0000 Incline Texas has filed a grievance complaint with the Disciplinary Committee for the First Judicial Department of the Supreme Court of the State of New York (Exhibit "G") and a complaint with the District Attorney for New York County (Exhibit "H"). This malfeasance by Attorney MORTNER was the triggering event that precipitated the commencement of the action in State Court.

14. Declarant has been in the business of trademark registration and consultations regarding potential infringement claims, as well as trademark litigation

5

support in a non-attorney capacity for over 25 years. Declarant started this work in 1984 under the corporate style of "National Trademarks Corporation" in Florida. Declarant had originally lived in New York and returned here twelve years ago to carry on the same business.

15. Defendant CONSOLIDATED was created to acquire, develop, license and sell intellectual properties. Plaintiff CONSOLIDATED has been actively engaged in this effort as illustrated by the applications for various trademarks that Plaintiff CONSOLIDATED has filed with the United States Patent and Trademarks Office.

16. In or about the fall of 2007, shortly after Declarant moved into Declarant's apartment at 719 Eastern Parkway, Brooklyn, New York, Declarant became acquainted with Defendant SCHNEORSON who at that time was the owner of the Building and also lived there. The two of us became friendly and Declarant helped Defendant SCHNEORSON solve a serious business problem. As a result, Defendant SCHNEORSON became interested in Declarant's intellectual property business and wanted to become actively involved in such business.

17. Eventually, Declarant introduced Defendant SCHNEORSON to Declarant's work in acquiring intellectual property and we decided to do some work together. When Declarant formed Defendant CONSOLIDATED, Defendant SCHNEORSON became a signatory on the corporate bank account and the agent designated for service of process. Defendant SCHNEORSON was never issued any stock, was never elected as an officer or director of Defendant CONSOLIDATED. Declarant was the prime mover of Defendant CONSOLIDATED and for that reason

Declarant executed the biennial certificate filed with the Department of State in New York as president of Defendant CONSOLIDATED.

18. Declarant respectfully submits that under New York law, Declarant as the president of a de facto corporation has the authority to act on behalf of that imperfect entity with the public and third parties. Declarant and Declarant alone has the authority to hire and fire counsel on behalf of Defendant CONSOLIDATED. To eliminate any confusion, Declarant has now sent e-mails to both Attorney MORTNER and local counsel John Paradis, Esq., discharging them as counsel for Declarant personally and as counsel for Defendant CONSOLIDATED. Copies of the e-mails are annexed as Exhibit "I".

19. Defendant SCHNEORSON cannot properly assert any authority to speak for Defendant CONSOLIDATED with regard to the attorney to be selected to represent Defendant CONSOLIDATED in this action. Defendant SCHNEORSON was only made a part of the business to be the marketing director for Defendant CONSOLIDTATED (Deposition of David Baksht p21: 15-24). The letter sent by Jon Ari Lefkowitz, Esq., dated November 12, 2012 discharging Attorney MORTNER, quoted by him in his submission, was done at Declarant's direction and is beyond challenge by either Defendant SCHNEORSON or Attorney MORTNER. Copy of that letter is annexed as Exhibit "J".

20. Defendant CONSOLIDATED became enmeshed in this controversy when Declarant was contacted in June 2010 by Yosef Amar, a business acquaintance that Declarant has known for over twenty-five years. Mr. Amar knew that Declarant was actively engaged in registering and offering advice on the protection of trademarks. For

7

that reason, he came to Declarant's home in 2010 to discuss a trademark that he had been using since 1993. This trademark, THREE DROOPING LINES, ("3DL") used by Mr. Amar had a striking resemblance to the trademark used by MONSTER ENERGY COMPANY ("M CLAW") and he was as concerned about being sued for trademark infringement.

21. Mr. Amar wanted Declarant's business and financial assistance as he did not have the resources to defend a case that might be brought against him by MONSTER ENERGY COMPANY. Accordingly, in or about June 2010, we worked out an assignment of his trademark to Defendant CONSOLIDATED, a license back to him and a joint venture for the sale of trademarked items between his entity JOE COOL, Inc. and Defendant CONSOLIDATED.

22. Unfortunately Mr. Amar's worst fear was realized when MONSTER ENERGY commenced litigation in March 2011. On or about March 7, 2011 MONSTER ENRGEY obtained an Order of Seizure against Joe Cool, Inc. and seized garments with the challenged 3DL mark. At a hearing on March 24, 2011 it was established that MONSTER ENERGY has misrepresented material facts to the Court and was denied a preliminary injunction and the Order of Seizure was vacated.

23. However, by that time the damage had been done and the litigation for trademark infringement commenced by MONSTER ENERGY ("MONSTER LITIGATION") continued in earnest. A default judgment had been entered against Plaintiff CONSOLIDATED, which required that counsel be obtained to vacate such default. As a consequence of this Declarant was introduced to Attorney MORTNER by a mutual friend. Though Attorney MORTNER did not have any experience with trademark

8

litigation he agreed to undertake the case for a 50% contingency fee subject to the terms of the Retainer Agreement (Exhibit "A"). Declarant agreed to this fee because Defendant CONSOLIDATED did not have the funds to pay a normal hourly fee for such representation.

24. Declarant desperately needing legal representation entered into a retainer agreement with Defendant MORTNER with the aforementioned 50% contingency fee. (Exhibit "A"). As stated above, Declarant executed that agreement individually and as President of Defendant CONSOLIDATED. Declarant has due to lack of financial resources felt compelled to keep Attorney MORTNER as his counsel. Declarant does not have the money to retain new counsel who would have to be brought up to speed. This desperation forced Declarant to send the e-mails to Attorney MORTNER seeking to keep him as Declarant's counsel. Declarant now sees the folly of this and has discharged Attorney MORTNER.

25. Keeping Attorney MORTNER as Declarant's counsel became untenable as the reality of his malfeasance, arising from his conscious choice to ignore the obligations impressed upon him by the clear language of the Retainer Agreement. Declarant could not continue to retain Attorney MORTNER who has sacrificed Declarant's rights in the litigation by seeking to act strictly in his own self-interest.

26. The Retainer Agreement expressly states that:

> "The ultimate control of the Client's defense and counterclaims in the Action, including any settlements thereof, remains exclusively in the hands of the Client, Attorney shall request Client's direction in all decisions pertaining to the Action and with regard to the assertion of any counterclaims.
> Please be advised that Client has the right to terminate this attorney client relationship for any reason, and at any time, in which case Attorney may

have a claim for quantum meruit and an attorney's lien on the files to the extent permitted by law."

27. Declarant also submits to this Court that the Retainer Agreement expressly states that Declarant individually and Defendant CONSOLIDATED are jointly defined as the "CLIENT" (Exhibit "A"). Attorney MORTNER by virtue of this precise language in the Retainer Agreement has no right to take any independent action with regard to the MONSTER LITIGATION. Despite this clearly enunciated limitation in the Retainer Agreement, Defendant MORTNER, without Declarant's knowledge, entered into a "Purchase Agreement" with Incline Texas LLC ("INCLINE TEXAS") for the sale of the proceeds from MONSTER litigation in the amount of $599,400. See Exhibit "G".

28. This Purchase Agreement also provided that the sum of $150,000 was to be wired into Defendant MORTNER'S "client trust account". Defendant MORTNER also executed an "Attorney Agreement" that stated that this $150,000 to be wired into the "client trust account" would be used exclusively for legal expenses. See Exhibit "G". Declarant never authorized this transaction and no client trust account was ever created with Declarant's knowledge, acquiescence or participation.[2]

29. The Purchase Agreement was never signed by Declarant. Instead, Attorney MORTNER engaged the assistance of Defendant SCHNEORSON to sign the document as the "President" of CONSOLIDATED. This was a patent fraud perpetrated upon INCLINE TEXAS, as Defendant MORTNER and Defendant SCHNEORSON knew that Declarant was the President of CONSOLIDATED as evidenced by the biennial statement annexed as Exhibit "E".

---

[2] Further, it is very suspicious that prior to receiving the $150,000 in his "client trust account," Defendant MORTNER'S law firm, The Mortner Law Firm P.C., was dissolved by New York State in April 2011 for non-payment of taxes. Copy of a printout from the NYS Department of State's website showing such dissolution is annexed hereto as Exhibit "K."

10

30. This deception perpetrated by Attorney MORTNER and Defendant SCHNEORSON was discovered by Mr. John Sherriff, the principal of INCLINE TEXAS after the fact. On November 8, 2012, Mr. Sherriff in an e-mail to Attorney MORTNER demanded Declarant's signature on the lien or the return of the $150,000 wired to Defendant MORTNER. Defendant MORTNER obliquely responded that he would be "in touch with you tomorrow with a status".

31. On November 20, 2012 Mr. Sherriff advised Attorney MORTNER that his attorney was preparing a complaint to the "state bar about your behavior on this case." Further if the $165,000 paid by INCLINE TEXAS was not returned by the following Monday by wire transfer, the complaint would be filed the next day.

32. Attorney MORTNER attempted to deflect all this with a further lie telling Mr. Sherriff that he was retained by CDI following a shareholders meeting attended by Baksht and Defendant SCHNEORSON. No such meeting ever took place. In point of fact, Attorney MORTNER tried to coerce Declarant into signing a shareholder's agreement that he prepared, telling Declarant that if Declarant wanted any voice in the MONSTER LITIGATION, Declarant had to sign this agreement.

33. Attorney MORTNER has made a conscious effort to isolate Declarant from the MONSTER LITIGATION. Attorney MORTNER has not spoken to Declarant in over five months. Strangely enough, Declarant learned from Defendant SCHNEORSON that Attorney MORTNER has used up the $150,000 that was wired to an account he controlled. Defendant SCHNEORSON in or about early November 2012 told Declarant that Attorney MORTNER asked him for money to travel to Florida to

11

appear in Court there. Defendant SCHNEORSON told me that when he asked Attorney MORTNER where the $150,000 was, Attorney MORTNER told him it was gone.

34. This conversation lends great credence to the complaint against Attorney MORTNER with the Departmental Disciplinary Committee for the First Judicial Department. That complaint from INCLINE TEXAS (Exhibit "G"), delineates the facts, which objectively demonstrate the fraud that has been perpetrated by Defendants MORTNER and SCHNEORSON. The fraud of these two Defendants has morphed into criminal embezzlement. INCLINE TEXAS has notified the New York District Attorney's Office Investigations Bureau, Special Prosecutions Bureau, at 80 Centre Street, New York, New York 10013 of this misappropriation of funds by Defendant MORTNER. See Exhibit "H".

35. This Court is aware that Declarant has engaged counsel to advise Attorney MORTNER that he has been terminated as counsel for Declarant and Defendant CONSOLIDATED. On November 12, 2012 John Ari Lefkowitz, Esq. sent a letter with a Notice of Discharge to Defendant MORTNER. This letter in the opening paragraph makes plain Defendant MORTNER'S malfeasance and the reason for his discharge:

> Dear Mr. Mortner:
>
> This office has been retained by Consolidated Distributors, INC. with respect to the pending case in the Middle District of Florida. Accordingly, please find a Notice of Discharge, signed by your erstwhile client. Your clients are very displeased that you have taken out a litigation loan on the case without Mr. Baksht's knowledge, and that you have misappropriated the monies from the trust account and converted the monies to your own use, rather than for legitimate expenses.

36. This letter in plain language puts Attorney MORTTNER on notice that he has been discharged. If Attorney MORTNER needed any confirmation of this, Declarant

sent him e-mails today discharging him as Declarant's personal counsel and reminding him that he was previously discharged as Defendant CONSOLIDATED'S counsel. Copies of the e-mails are annexed as Exhibit "I".

37. It is most peculiar that Attorney MORTNER continues to resist the termination of his role as attorney for Declarant and Defendant CONSOLIDATED. Further, Attorney MORTNER conveniently omits the Retainer Agreement (Exhibit "A") from his motion to the Federal District Court which seeks the protection of the "local rules to confirm his representation". Attorney MORTNER also makes the self-serving statement that he was told by Mr. Lefkowitz that he was not retained by Declarant or Plaintiff CONSOLIDATED, when he sent the discharge letter. This is a twisting of words that is strikingly refuted in the companion decalaration of John Ari Lefowitz, Esq. This hearsay statement is unworthy of consideration as it is made by the serial prevaricator, Attorney MORTNER. Mr. Lefkowitz is a personal friend and the fact that he chose to act on Declarant's and Plaintiff CONSOLIDATED'S behalf gratuitously is of no consequence to the import of his letter.

38. Declarant asks this Court to consider as well that the motion made by Attorney MORTNER is tainted by the fact that Attorney MORTNER relies upon Defendant SCHNEORSON to continue as Defendant CONSOLIDATED'S counsel in the MONSTER LITIGATION. In support of Defendant MORTNER'S application to remain as Plaintiff CONSOLIDATED'S counsel in that action, Attorney MORTNER states that Defendant SCHNEORSON is not discharging him in that capacity. Defendant SCHNEORSON in support of retaining Attorney MORTNER as counsel for Defendant CONSOLIDATED in the MONSTER LITIGATION has submitted a perjurious

declaration as an "officer" of Plaintiff CONSOLIDATED stating how dangerous it would be to discharge Defendant MORTNER as counsel for Plaintiff CONSOLIDATED at this stage of the MONSTER LITIGATION. Defendant SCHNEORSON is not now nor has he ever been an officer of Defendant CONSOLIDATED as Attorney MORTNER knows and has actively concealed from this Court.

39. Declarant is most troubled by the actions of Defendant SCHNEORSON, whom Declarant considered a friend and colleague. Declarant introduced Defendant SCHNEORSON to this world of intellectual property at his request and started to teach him the intricacies of trademark registration, protection and licensing. In or about 2008 Declarant and Defendant SCHNEORSON formed Associated Business Consultants Inc., ("ASSOCIATED BUSINESS") for that purpose.

40. Defendant SCHNEORSON had no experience with such matters but because he had a business background, he was made a signatory on the bank accounts for that corporation in the account opened with the Kingston Avenue branch of Bank of America and the Coney Island branch of TD Bank. Defendant SCHNEORSON was trusted by Declarant to handle the finances of ASSOCIATED BUSINESS, but was not made an officer or director.

41. Defendant SCHNEORSON became involved with the project involving Joe Cool Inc., because of his own business contacts that were going to be useful to market the licensed merchandise as part of the Joint Venture entered into with JOE COOL, INC., Defendant SCHNEORSON was never made an officer, director or issued any stock in Defendant CONSOLIDATED and was only going to receive remuneration when the Joint Venture launched to market the 3DL merchandise became profitable.

Defendant SCHNEORSON has no writing to establish any ownership in Defendant CONSOLLIDATED or which would demonstrate that he has any authority to act for Plaintiff CONSOLIDATED.

42. As indicated in the complaints filed by Mr. John Sherriff with both the Disciplinary Committee and the District Attorney's Office, Defendant SCHNEORSON is an active participant in the fraud being perpetrated by Defendant MORTNER. It also appears that Defendant SCHNEORSON'S malfeasance is not limited to his misrepresentation of his authority to speak for Defendant CONSOLIDATED. See Exhibits "G" and "H". Declarant has been advised by bank officers from Bank of America that Defendant SCHNERSON has "washed" substantial amounts of monies through the ASSOCIATED BUSNISNESS account maintained in that bank, leaving that account with a negative balance.

43. In furtherance of this illicit banking activity Defendant SCHNEORSON used various aliases. Defendant SCHNEORSON used the names "Abraham Schneorson", "Menachem Hartman", "Ami Cohen", and "Margalite Schneorson d/b/a Star Express Diam".

44. Defendant SCHNEORSON'S misrepresentation of his status as President of Plaintiff CONSOLIDATED is borne out by his own words. At his deposition in the MONSTER LITIGATION, when asked if there was a president or chairman of Plaintiff CONOLIDATED, a defendant in the MONSTER LITIGATION, Defendant SCHNEORSON stated that it was Declarant. (Deposition of Menachem Schneorson p 26: 2-14).

45. For the above reasons, Declarant asks this Court to deny Attorney MORTNER'S motion to confirm his representation of Defendant CONSOLIDATED and which also seeks "clarification" as to his representation of Declarant. Declarant having actively terminated Attorney MORTNER'S representation of Defendant CONSOLIDATED as it president and properly terminated his representation of Declarant, such motion should be denied as moot.

Dated: Brooklyn, New York
January 10, 2013

Respectfully

*[signature]*
DAVIDBAKSHT