**EXHIBIT "F"**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------X

CONSOLIDATED DISTRIBUTORS, INC. and
DAVID BAKSHT

                                    Plaintiffs,

            - against -

THE MORTNER LAW OFFICES, PC,
MOSHE MORTNER, ESQ. and
MENACHEM SCHNEORSON

                                    Defendants.
-------------------------------------------------------------X

Index Number: *S00114/2013E*
*Date Purchased: 1/8/13*

The basis for the venue is
Plaintiff's Residence
Pursuant to
CPLR §503(a) and (c)

**SUMMONS**

Plaintiff's principal
place of business:
719 Eastern Parkway,
Apartment 4
New York, New York 11213

*To the above-named Defendants:*

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to
serve a notice of appearance, on the Plaintiff's Attorneys within 20 days after the service
of this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons if not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded herein.

Dated: New York, New York
        January 7, 2013

MARK S. FRIEDLANDER, ESQ.
Attorney for Plaintiff
15 Maiden Lane- Suite 2000
New York, New York 10038
(212) 962-2877

*Defendants' Address:*
MORTNER LAW OFFICES, PC
40 Wall Street, 28th Floor,
New York, New York 10005

MOSHE MORTNER
40 Wall Street, 28th Floor,
New York, New York 10005.

MENACHEM SCHNEORSON
719 Eastern Parkway, Apartment 4,
Brooklyn, New York 11213

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------------X
CONSOLIDATED DISTRIBUTORS, INC. and
DAVID BAKSHT

               Plaintiff,

    -against-

THE MORTNER LAW OFFICES, PC,
MOSHE MORTNER, ESQ. and
MENACHEM SCHNEORSON

              Defendants.
----------------------------------------------------------------X

Index No. 500114/2013E

VERIFIED
COMPLAINT

     Plaintiff CONSOLIDATED DISTRIBUTORS, INC. and DAVID BAKSHT

(collectively, the "Plaintiffs") by their attorney, MARK S. FRIEDLANDER, ESQ.,

complaining of Defendants THE MORTNER LAW OFFICES, MOSHE MORTNER and

MENACHEM SCHNEORSON (collectively the "Defendants") respectfully alleges as

follows:

## PARTIES

    1.    At all times relevant to this action, Plaintiff CONSOLIDATED

DISTRIBUTORS, INC ("Plaintiff CONSOLIDATED"), was a domestic corporation

duly registered and validly existing pursuant to the laws of the State of New York with its

principal place of business located at 719 Eastern Parkway, Apartment 4, Brooklyn, New

York 11213 which is operated by its sole director, shareholder and officer, Plaintiff

DAVID BAKSHT ("Plaintiff BAKSHT")

    2.    Plaintiff BAKSHT ("Plaintiff BAKSHT") is a natural person residing in

Kings County at 719 Eastern Parkway, Apartment 4, Brooklyn, New York 11213.

3.     Upon information and belief, at all times relevant to this action, Defendant MORTNER LAW OFFICES, PC ("Defendant MORTNER LAW OFFICES") is a professional service corporation engaged in the practice of law with an office address at 40 Wall Street, 28th Floor, New York, New York 10005.

4.     Upon information and belief, at all relevant times, Defendant MOSHE MORTNER ("Defendant MORTNER") was and is an attorney at law admitted to practice in the State of New York and is Defendant MORTNER LAW OFFICES'S sole director, shareholder, and officer.

5.     Upon information and belief, Defendant MENACHEM SCHNEORSON ("Defendant SCHNEORSON") is a natural person residing in Kings County at 719 Eastern Parkway, Apartment 4, Brooklyn, New York 11213 and is an employee of Plaintiff CONSOLIDATED.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

6.     Plaintiff BAKSHT has been in the business of trademark registration and consultations regarding potential infringement claims, as well as trademark litigation support in a non-attorney capacity for over 25 years.

7.     Plaintiff BAKSHT started this work in 1984 under the corporate style of "National Trademarks Corporation" in Florida. Plaintiff BAKSHT had originally lived in New York and returned here twelve years ago to carry on the same business.

8.   In or about the fall of 2007, shortly after Plaintiff BAKSHT moved into his current residence in Brooklyn, Plaintiff BAKSHT became acquainted with Defendant SCHNEORSON who at that time was the owner and resident of the Building in which Plaintiff BAKSHT resides.

9.  Plaintiff BAKSHT and Defendant SCHNEORSON became friendly with and as a result, Defendant SCHNEORSON became interested in Plaintiff BAKSHT's intellectual property business and wanted to become actively involved in such business. Eventually, Plaintiff BAKSHT introduced Defendant SCHNEORSON to his work in acquiring intellectual property and they decided to do some work together.

10.  Plaintiff CONSOLIDATED was originally formed by Plaintiff BAKSHT in December 2008 as the sole incorporator. A copy of the Certificate of Incorporation is annexed as Exhibit "A". Plaintiff BAKSHT has signed as president of Plaintiff CONSOLIDATED a biennial statement which he then filed with the Department of State that indicates that Plaintiff BAKSHT is the Chairman/Chief Executive Officer of Plaintiff CONSOLIDATED. There are no other corporate officers named on records filed with the Department of State and no other corporate officers have been elected to act on behalf of Plaintiff CONSOLIDATED.

11.  Plaintiff CONSOLIDATED was created to acquire, develop, license and sell intellectual properties. Plaintiff CONSOLIDATED has been actively engaged in this effort since it was incorporated in 2008 and has successfully filed applications for various trademarks for various clients who engaged Plaintiff CONSOLIDATED for its support and expertise in processing submissions with the United States Patent and Trademarks Office as a non-attorney.

12.  Plaintiff CONSOLIDATED since its inception in 2008 has been actively engaged in litigation support involving trademark infringement cases and has offered practical advice as a non-attorney for the protection against claims of trademark infringement.

3

13.   At all times relevant herein, Plaintiff BAKSHT is and was the President, Chairman and Chief Executive Officer of Plaintiff CONSOLIDATED as evidenced by the biennial statement filed with the Secretary of State a copy of which is annexed as Exhibit "B".

14.   At all times relevant herein, Plaintiff CONSOLIDATED had and has no other directors or corporate officers besides for Plaintiff BAKSHT, though Defendant SCHNOERSON has been listed as the person designated to receive process on behalf of Plaintiff CONSOLIDATED.

15.   No stock has been issued by Plaintiff CONSOLIDATED nor have any By-Laws been adopted or Board of Directors elected. Plaintiff BAKSHT, as the Incorporator of Plaintiff CONSOLIDATED, has been the sole voice and active driving force of Plaintiff CONSOLIDATED at all relevant times herein.

16.   That at all times mentioned herein, the only person who had the right to enter into contracts and/or agreements or modify existing contracts and/or agreements on behalf of Plaintiff CONSOLIDATED is and was Plaintiff BAKSHT.

17.   That at all relevant times herein, Defendant SCHNEORSON is and was only a signatory on the corporate bank account and the agent designated for service of process in addition to his role as the marketing expert for Plaintiff CONSOLIDATED.

18.   At all times mentioned herein Plaintiff CONSOLIDATED has acted in all respects as an ordinary domestic corporation in the transaction of its business despite the fact that no formal By-laws have been adopted, that no formal elections have been held for officers or directors.

4

19.    At no time was Defendant SCHNEORSON ever a shareholder, officer or director of Plaintiff CONSOLIDATED and was hired in or about June 2010, by Plaintiff CONSOLIDATED as a marketing specialist to participate in the sale of the merchandise under the trademark which at that time was assigned by Yosef Amar to Plaintiff CONSOLIDATED, commonly referred to as "3 Drooping Lines ["3DL"]", which in turn was licensed to Yosef Amar's corporation JOE COOL, INC., for the sale of merchandise bearing the 3DL mark.

20.    This assignment and licensing arrangement entered into in or about June 2010 was the result of Plaintiff BAKSHT being contacted by Yosef Amar, a business acquaintance that Plaintiff BAKSHT has known for over twenty five years. Mr. Amar knew that Plaintiff BAKSHT was actively engaged in registering and offering advice on the protection of trademarks.

21.    In or around early 2010 Yosef Amar came to Plaintiff BAKSHT'S to discuss the use of a trademark that he had been using since 1993 the 3DL trademark because this trademark bears a striking resemblance to the trademark used by MONSTER ENERGY COMPANY ("MEC") and he was as concerned about being sued for trademark infringement.

22.    Upon information and belief, Mr. Amar wanted Plaintiff BAKSHT business and financial assistance as he did not have the resources to defend a case that might be brought against him by MEC.  Therefore, in or about June 2010, Plaintiff BAKSHT and Mr. Amar worked out this  assignment of the 3DL trademark to Plaintiff CONSOLIDATED, with a license back to Mr. Amar's entity JOE COOL, INC., and the

5

creation of joint venture for the sale of trademarked items between JOE COOL, Inc. and Plaintiff CONSOLIDATED.

23. In or around February 2011 MEC commenced an action in the United States District Court, Middle District of Florida, Orlando Division against Plaintiff alleging infringement, trademark dilution, copyright infringement, and other related claims for use of the 3DL trademark by Plaintiffs BAKSHT and CONSOLIDATED. (*Monster Energy Company v. Consolidated Distributors, David Baksht, et. al.* – 6:11-CV-329-ORL-22DAB[the "MONSTER LITIGATION"]).

24. A default judgment had been entered against Plaintiff CONSOLIDATED which required that counsel be obtained to vacate such default. In order to vacate this default judgment and to continue with the defense of the MONSTER LITIGATION, Defendant MORTNER and the MORTNER LAW OFFICES were retained on or about February 12, 2012 pursuant to a written retainer agreement. A copy of the Retainer Agreement is annexed as Exhibit "C".

25. Since in or about April 2012, Defendant MORTNER ceased to have any communication with Plaintiffs and began to manage the MONSTER LITIGATION without any participation or consultation with Plaintiffs despite the fact that the Retainer Agreement places control over the litigation in the hands of the Plaintiffs.

26. That in or about May 2012 Defendant MORTNER, without the knowledge or consent of Plaintiffs, began to negotiate a sale of the proceeds from the MONSTER LITIGATION and an Attorney Agreement for the payment of $150,000 to Defendant MORTNER for litigation expenses to be placed in a client trust account with Incline Texas LLC.

27.    That on or about May 31, 2012 Defendant MORTNER signed an Attorney Agreement with Incline Texas LLC for the delivery of $150,000 to a client trust account in his name and on June 4, 2012 Defendant SCHNEORSON posing as the president of Plaintiff CONSOLIDATED signed a Purchase Agreement whereby the sum of $594,000 was to be paid to Incline Texas LLC out of the proceeds of the MONSTER LITIGATION in exchange for the immediate payment of $166,000, $150,00 of which was to be delivered to Defendant MORTNER.

28.    Over the next ensuing months the relationship between Plaintiffs and Defendants deteriorated and Plaintiffs elected to terminate the attorney-client relationship as evinced in a letter from Jon Ari Lefkowitz dated December 3, 2012. Defendant MORTNER has ignored this letter and has been insisting that he is still Plaintiffs' counsel in the MONSTER LITIGATION.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Fidicuary Duty Against Defendants MORTNER and THE MORTNER LAW OFFICES)

29.    Plaintiffs' repeat and reallege each and every allegation contained in paragraphs "1" through "28" as if fully set forth at length herein.

30.    Plaintiff BAKSHT undertook to retain counsel individually and on behalf of Plaintiff CONSOLIDATED in the MONSTER LITIGATION. In or around December 2011, Plaintiff BAKSHT was introduced to Defendant MORTNER by a mutual friend.

31.    Upon information and belief, Defendant MORTNER did not have any experience with trademark litigation. Defendant MORTNER agreed to undertake representing Plaintiffs for a 50% contingency fee because Plaintiff CONSOLIDATED did not have the funds to pay a normal hourly fee for such representation and this

7

unusually high contingency fee was to compensate Defendant MORTNER adequately for his legal work in the absence of monies in hand to pay for such services.

32.    On or about February 10, 2012 Plaintiffs entered into an "Attorney Retainer Agreement" executed by Plaintiff BAKSHT individually and on behalf of Plaintiff CONSOLIDATED as President, as the "client", and Defendant MORTNER on behalf of Defendant MORTNER LAW OFFICES, as the "attorney" (the "Retainer Agreement"). A copy of the Retainer Agreement is annexed as Exhibit "C".

33.    As part of the Retainer Agreement the parties agreed that client shall pay contingency fees upon the following terms: "A Contingency Fee of fifty percent (50%) of any money received in connection with the defense of the [MONSTER LITIGATION] Action and/or the prosecution of counterclaims in the [MONSTER LITIGATION] Action, through settlement, award or judgment." See Exhibit "C".

34.    The Retainer Agreement also states that the "ultimate control of Client's defense and counterclaims in the Action [MONSTER LITIGATION], including the consummation of any settlements thereof, remains exclusively in the hands of the Client. Attorney shall request Client's direction in all decisions pertaining to the Action [MONSTER LITIGATION], and with regard to the assertion of any counterclaims.... Please be advised that Client has the right to terminate this attorney-client relationship for any reason, and at any time, in which case Attorney may have a claim for quantum meruit and an attorney's lien on the file to the extent permitted by law."

35.    As an attorney retained by Plaintiffs, Defendants MORTNER and THE MORTNER LAW OFFICES owe a fiduciary duty to Plaintiffs, including, but not limited to, the obligation to (i) reasonably consult with the client about the means by which the

8

client's objectives are to be accomplished, (ii) keep the client reasonably informed about the status of the matter, (iii) explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation, and (iv) promptly notify a client or third person of the receipt of funds, securities, or other properties in which the client or third person has an interest.

36.     Defendants MORTNER and THE MORTNER LAW OFFICES have breached their fiduciary duties to Plaintiffs by making a conscious effort to isolate Plaintiff BAKSHT from the Trademark Infringement Litigation by not communicating with Plaintiff BAKSHT since about September 2012.

37.     On or about on June 4, 2012, without consulting with Plaintiffs, Defendant SCHNEORSON at the direction of Defendant MORTNER entered into a "Purchase Agreement" with Incline Texas LLC ("INCLINE TEXAS") for the sale of the proceeds from the MONSTER LITIGATION in the amount of $599,400 without the consent, authorization, acquiescence, or knowledge of Plaintiff BAKSHT.

38.     The sale of such proceeds of the MONSTER LITIGATION without the consultation and consent of the Plaintiffs under was a violation of the Retainer Agreement and Rule 1.1 (c) (1) of Professional Conduct, which states that a lawyer shall not intentionally fail to seek the objectives of the client through reasonably available means permitted by law.

39.     On or about May 31, 2012, without consulting with Plaintiffs, Defendant MORTNER executed an Attorney Agreement with INCLINE TEXAS whereby the sum of $150,000 was to be wired into a client trust account maintained by Defendant

MORTNER and THE MORTNER LAW OFFICES, for the payment of litigation expenses.

40.    The execution of this Attorney Agreement without Plaintiff's involvement and consent was a violation of the Retainer Agreement Rule 1.1 (c) (1) of Professional Conduct, which states that a lawyer shall not intentionally fail to seek the objectives of the client through reasonably available means permitted by law.

41.    On or about on May 31, 2012, Defendant MORTNER allegedly entered into a "Modification of the "Retainer Agreement" signed by Defendant SCHNEORSON as president of the Plaintiff CONSOLIDATED, when in fact Defendant MORTNER knew that Defendant SCHNEORSON was not Plaintiff CONSOLIDATED'S president and had never been an officer of Plaintiff CONSOLIDATED.

42.    The "Modification of Retainer Agreement" was signed the same date that Defendant MORTNER signed the Attorney Agreement with INCLINE TEXAS and this putative agreement states that the $150,000 to be wired into a client trust account under the Attorney Agreement will in fact be repaid to INCLINE TEXAS from the proceeds of the Action [MONSTER LITIGATION] by the CLIENT and that any amounts due to INCLINE TEXAS, pursuant to the PURCHASE AGREEMENT, in excess of $150,000 shall be deducted from and paid out of the Attorney's contingency fee of fifty per cent of any money received in connection with the Action [MONSTER LITIGATION].

43.    The "Modification of the Retainer Agreement" document upon information and belief was made to cover up the misappropriation of the $150,000 by Defendant MORTNER, which monies were never deposited into a client trust account and went directly into the pocket of Defendant MORTNER.

10

44.   The "Modification of the Retainer Agreement" document was made by Defendant MORTNER without consultation of the Plaintiffs who are the client under the original retainer agreement and therefore in patent violation of the terms of that agreement.

45.   The "Modification of the Retainer Agreement" document was made by Defendant MORTNER in violation of Rule 1.5 (b) which states that a lawyer shall communicate to a client the scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible. Any changes in the scope of the representation or the basis or rate of the fee or expenses shall be communicated to the client.

46.   Defendant MORTNER by failing and refusing to consult with Plaintiffs about the MONSTER LITIGATION since in or about September 20012 has attempted to usurp the control of the MONSTER LITIGATION in violation of the Retainer Agreement that expressly states that : "The ultimate control of Client's defense and counterclaims in the Action [MONSTER LITIGATION] including the consummation of any settlements thereof, remains exclusively in the hands of the Client [defined in the Agreement as Plaintiff David BAKSHT and Plaintiff CONSOLIDATED]. Attorney shall request Client's direction in all decisions pertaining to the Action [MONSTER LITIGATION] and with regard to the assertion of any counterclaims."

47.   Defendant MORTNER by failing and refusing to consult with Plaintiffs about the status of the MONSTER LITIGATION and the prospects at trial has violated Rule 1.4 (a) (1) through (5) which require Defendant MORTNER to : (i) apprise Plaintiffs of the material developments in the MONSTER LITIGATION, (ii) consult with

Plaintiffs about the means by which Plaintiffs' objectives can be accomplished; (iii) the status of the MONSTER LITIGATION; (iv) promptly comply with Plaintiffs' requests for information; (v) inform Plaintiffs of any Court rulings.

48.    Defendant MORTNER has now willfully repudiated and violated the Retainer Agreement that he made with Plaintiffs and has consciously violated relevant Rules of Professional responsibility all in furtherance of his own personal aggrandizement.

49.    Defendant MORTNER has intentionally breached his duty to Plaintiffs by: (i) repudiating the express terms of the Retainer Agreement; (ii) improperly seeking to modify the retainer agreement with a spurious document signed by Defendant SCHNEORSON who had no authority to execute such document on Plaintiff's; (iii) refusing to consult with Plaintiffs about the MONSTER LITIGATION; (iv) entering into the Purchase Agreement and Attorney Agreement without Plaintiffs knowledge or consent; (v) misappropriating $150,000 intended for litigation expenses for his own personal use.

50.    THE MORTNER LAW OFFICE is jointly and severally liable with Defendant MORTNER for the enunciated breaches of fiduciary duty by Defendant MORTNER that were committed within the scope of Defendant MORTNERS activities on its behalf and in furtherance of its purpose as a professional corporation.

51.    The above enumerated breaches of fiduciary duties are the proximate causes of Plaintiff CONSOLIDATED'S damages, to wit: liability to INCLINE TEXAS in the amount of $599,400 for the proceeds from the MONSTER LITIGATION and $166,000 pursuant to the "Purchase Agreement".

52.     By reason of the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial but no less than $599,400 jointly and severally from Defendants MORTNER and THE MORTNER LAW OFFICES.

53.     In engaging in said acts, Defendants MORTNER and THE MORTNER LAW OFFICES acted willfully, with oppression, fraud and malice; Plaintiffs are therefore also entitled to punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Against Defendant SCHNEORSON For Aiding and Abetting the Breach of Fiduciary Duty by Defendant MORTNER and THE MORTNER LAW OFFICES)

54.     Plaintiffs' repeat and reallege each and every allegation contained in paragraphs "1" through "53" as if fully set forth at length herein.

55.     At all times mentioned herein Defendant SCHNEORSON was never an officer, director or shareholder of Plaintiff CONSOLIDATED and had no express, implied or apparent authority to act on behalf of Plaintiff CONSOLIDATED.

56.     Defendant SCHNEORSON in order to induce Incline Texas LLC to execute the Purchase Agreement represented that he was the President of Plaintiff CONSOLIDATED with the authority to execute that agreement.

57.     Defendant SCHNEORSON in order to ratify the procurement of the Purchase Agreement and the execution of the Attorney Agreement by Defendant MORTNER executed a "Modified Retainer Agreement" posing as the President of Plaintiff CONSOLIDATED.

58.     Defendant SCHNEORSON has misrepresented in a declaration dated January 2, 2013, submitted by Defendant MORTNER in support of a motion to ratify his representation of Plaintiff CONSOLIDATED in the MONSTER LITIGATION, that as

an officer of Plaintiff CONSOLIDATED he wanted Defendant MORTNER to remain as counsel in the course of the MONSTER LITIGATION.

59. That at all time mentioned herein Defendant SCHNEORSON knew or should have known that his actions described above and taken at the direction of Defendant MORTNER were in furtherance of acts by Defendant MORTNER that violated his Retainer Agreement with Plaintiffs and his professional responsibility as counsel to the Plaintiffs.

60. That at all times mentioned herein Defendant SCHNEORSON knew or should have known that his actions were assisting Defendant MORTNER in his actions that were adverse to the interests of the Plaintiffs in the MONSTER LITIGATION.

61. That at all times mentioned herein Defendant SCHNEORSON knew or should have known that his actions were assisting Defendant MORTNER in putting his own financial interests above the Plaintiffs' interests in the MONSTER LITIATION and in the violation of his fiduciary duty to Plaintiffs as their attorney.

62. Defendant SCHNEORSON'S intentional and willful aiding and abetting of Defendant MORTNER and the MORTNER LAW OFFICES above enumerated breaches of fiduciary duties is the proximate cause of Plaintiff CONSOLIDATED'S damages, to wit: liability to INCLINE TEXAS in the amount of $599,400 for the proceeds from the MONSTER LITIGATION and $166,000 pursuant to the "Purchase Agreement".

63. By reason of the foregoing, Plaintiffs are entitled to recover damages from Defendant SCHNEORSON in an amount to be determined at trial but no less than $594,000.

64.  In engaging in said acts, Defendants MORTNER and THE MORTNER LAW OFFICES acted willfully, with oppression, fraud and malice; Plaintiffs are therefore also entitled to punitive damages.

### AS AND FOR A THIRD CAUSE OF ACTION
(CONVERSION against Defendants MORTNER and THE MORNER LAW OFFICE)

65.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "64" as if fully set forth at length herein.

66.  On or about May 31, 2012 Defendant MORTNER executed an Attorney Agreement with INCLINE TEXAS whereby Defendant MORTNER was to receive $150,000 for litigation expenses, which monies were to be wired to a client trust account in Defendant MORTNER'S name as Plaintiffs' counsel

67.  On or June 4, 2012 Defendant SCHNEORSON at the direction of Defendant MORTNER and posing as Plaintiff CONSOLIDATED'S President, entered into a "Purchase Agreement" with INCLINE TEXAS which among other terms provided for the delivery of $150,000 for litigation costs in the MONSTER LITIGATION, on behalf of Plaintiff CONSOLIDATED.

68.  Upon information and belief sometime shortly after June 4, 2012 the sum of $150,000 was wired into a bank account in Defendant MORTNER'S name and the money was thereafter misappropriated by him for his own personal use.

69.  That at all times mentioned herein until such time that the PURCHASE AGREEMENT and ATTORNEY AGREEMENT are rescinded based upon the fraud perpetrated by Defendants MORTNER and SCHNEORSON, Plaintiffs are liable for the $150,000 wrongfully taken by Defendant MORTNER and therefore have the standing to

seek the recovery of those funds improperly converted by Defendant MORTNER for his own personal use.

70.    By reason of the foregoing, Plaintiffs' are entitled to a money judgment in the amount of $150,000 representing the monies converted by the Defendants MORTNER.

71.    In engaging in said acts, Defendants MORTNER and THE MORTNER LAW OFFICES acted willfully, with oppression, fraud and malice; Plaintiffs are therefore also entitled to punitive damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

72.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "71" as if fully set forth at length herein.

73.    The Retainer Agreement (Exhibit "C") reserved to Plaintiffs the unconditional and unequivocal right to discharge Defendant MORTNER for any reason and at any time, without any cause.

74.    Plaintiffs exercised this right to terminate Defendant MORTNER by sending him a letter dated December 3, 2012 from John Ari Lefkowitz, Esq., accompanied by a Notice of Discharge to Defendant MORTNER which states: "This office has been retained by Consolidated Distributors, INC. with respect to the pending case in the Middle District of Florida. Accordingly, please find a Notice of Discharge, signed by your erstwhile client. Your clients are very displeased that you have taken out a litigation loan on the case without Mr. Baksht's knowledge, and that you have misappropriated the monies from the trust account and converted the monies to your own use, rather than for legitimate expenses."

75.    Defendant MORTNER, an attorney admitted to practice in this state and subject to the regulatory process of the Courts of this state, is refusing to acknowledge that he has been discharged as Plaintiffs' counsel and is despite the letter sent on December 3, 2012 insisting that he is the counsel for Plaintiff CONSOLIDATED in the MONSTER LITIGATION.

76.    The issue regarding Defendant MORTNER'S continued representation of Plaintiff BAKSHT and Plaintiff CONSOLIDATED in the MONSTER LITIGATION, where he is only provisionally admitted to practice, has come to the attention of United States Magistrate David A. Baker of The United States District Court, Middle District of Florida, Orlando Division, who has now scheduled a hearing on that issue for January 8, 2013.

77.    Defendant MORTNER in an effort to avoid this hearing and retain control of the MONSTER LITIGATION has made a motion to enforce local court rules to confirm his representation of Plaintiff CONSOLIDATED. In support of that motion Defendant MORTNER has used the perjurious declaration of Defendant SCHNEORSON that he has the authority to speak for Plaintiff CONSOLIDATED seeking to keep Defendant MORTNER as counsel for Plaintiff CONSOLIDATED.

78.    There presently exists a justiciable controversy ripe for determination, for which there is no adequate remedy at law, as to whether Defendant MORTNER, an attorney admitted to practice in this state, was properly discharged on December 3, 2012 and therefore has no right to hold himself out as counsel for Plaintiffs in the MONSTER LITIGATION.

79.     There presently exists a justiciable controversy ripe for determination, for which there is no adequate remedy at law, as to whether the letter sent on December 3, 2012, discharging Defendant MORTNER, as Plaintiffs' counsel, is legally effective to bar Defendant MORTNER, an attorney admitted to practice in this state, from participating in the hearing that is now scheduled before United States Magistrate David A. Baker of The United States District Court on January 8, 2013.

80.     By reason of the foregoing Plaintiffs are entitled to a judgment of this Court declaring that Defendant MORTNER was properly terminated as Plaintiffs' counsel by the letter sent on December 3, 2012 and may not any longer hold himself out as Plaintiffs' counsel in the MONSTER LITIGATION.

81.     By reason of the foregoing Plaintiffs are entitled to a judgment of this Court declaring that Defendant MORTNER, an attorney admitted to practice in this state, having been properly terminated as Plaintiffs' counsel has no legitimate right to even participate in the proceedings in the MONSTER LITIGATION now pending before THE UNITED STATES DISTRICT COURT, FOR THE MIDDLE DISTRICT OF FLORDIA, where he is only provisionally admitted to practice.

### AS AND FOR A FIFTH CAUSE OF ACTION
(INJUNCTIVE RELIEF)

82.     Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "81" as if fully set forth at length herein.

83.     Defendant MORTNER has intentionally breached his duty to Plaintiffs by: (i) repudiating the express terms of the Retainer Agreement; (ii) improperly seeking to modify the retainer agreement with a spurious document signed by Defendant SCHNEORSON who had no authority to execute such document on Plaintiff's; (iii)

refusing to consult with Plaintiffs about the MONSTER LITIGATION; (iv) entering into the Purchase Agreement and Attorney Agreement without Plaintiffs knowledge or consent resulting in the sale of the proceeds of the MONSTER LITIGATION to the extent of $594,000; (v) misappropriating $150,000 intended for litigation expenses for his own personal use.

84.     Defendant MORTNER has now been properly discharged pursuant to the terms of the Retainer Agreement when he received a letter sent on behalf of Plaintiffs by Jon Ari Lefkowitz, Esq., dated December 3, 2012, but has refused to acknowledge that his services as counsel for Plaintiffs have been terminated.

85.     Defendant SCHNERSON at all times mentioned herein willfully, intentionally and wrongfully represented and held himself out as the President of Plaintiff CONSOLIDATED to the detriment of Plaintiffs, when in fact he was never an officer, director or shareholder of Plaintiff CONSOLIDATED.

86.     At all times mentioned herein, all of the actions taken by Defendant SCHNEORSON were at the direction of Defendant MORTNER in furtherance of his own personal interests and in violation of his fiduciary duty as Plaintiff CONSOLIDATED'S attorney.

87.     As a direct consequence of Defendants' actions described herein, Plaintiffs have suffered and will continue to suffer damage and injury to its business and goodwill.

88.     Upon information and belief, Plaintiffs will continue to suffer irreparable harm if Defendant MORTNER is not permanently restrained and enjoined from acting as counsel for the Plaintiffs as his actions will only serve to benefit him personally and cause damage to Plaintiffs' interest in the MONSTER LITIGATION.

89. Upon information and belief, Plaintiffs will continue to suffer irreparable harm if Defendant SCHNEORSON is not permanently restrained and enjoined from holding himself out and/or acting as an officer, director or shareholder of Plaintiff CONSOLIDATED.

90. By reason of the foregoing Plaintiffs are entitled to a permanent injunction restraining and enjoining Defendant MORTNER from acting as Plaintiffs' attorney in the MONSTER LITIGATION.

91. By reason of the foregoing Plaintiffs are entitle to a permanent injunction restraining and enjoining Defendant SCHNEORSON from holding himself out and/or acting as President, or officer or director of Plaintiff CONSOLIDATED.

## AS AND FOR A SIXTH CAUSE OF ACTION
(CONVERSION against Defendant SCHNEORSON)

92. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "91" as if fully set forth at length herein.

93. Defendant SCHNEORSON is the signatory of Plaintiff CONSOLIDATED'S corporate bank accounts at the Kingston Avenue Branch of Bank of America and the Coney Island branch of TD Bank. (hereafter "CONSOLIDATED'S BANK ACCOUNTS").

94. Upon information and belief, Defendant SCHNEORSON fraudulently created fictitious payees for the purpose of washing funds through Plaintiff CONSOLIDATED'S BANKS ACCOUNTS without detection by such banks or the relevant governmental authorities.

95. Upon information and belief Defendant SCHNERORSON, using various aliases such as "Abraham Schneorson", Menachem Hartman", "Ami Cohen", and "Margalite Schneorson d/b/a Star Express Diam" created fictitious payees for the purpose of making spurious banking transactions that would not be detected by Plaintiff CONSOLIDATED'S banks.

96. Upon information and belief, as signatory of Plaintiff CONSOLIDATED'S BANK ACOUNTS, Defendant SCHNEORSON fraudulently made withdrawals, transfers, and/or payments from Plaintiff CONSOLIDATED'S BANK ACCOUNTS to fictitious persons and entities with Defendant SCHNEORSON'S aliases as "payee" and/or "transferee".

97. As a result of these fraudulent acts, by creating fictitious payees and/or transferees, and using his signatory powers to negotiate these checks, Defendant SCHNEORSON has inappropriately, fraudulently, and intentionally converted the monies in Plaintiff CONSOLIDATED'S corporate bank account for his own use in an amount not less than $150,000.

98. By reason of the foregoing, Plaintiffs' are entitled to a money judgment in the amount of $150,000 representing the monies converted by the Defendant SCHNEORSON.

99. In engaging in said acts, Defendant SCHNEORSON acted willfully, with oppression, fraud and malice; Plaintiffs are therefore also entitled to punitive damages.

**WHEREFORE**, Plaintiffs' respectfully requests that this Court enter judgment as follows:

(A)   Judgment on the First Cause of Action against Defendant MORTNER and THE MORTNER LAW OFFICES in the amount of $594,000 or such other amount to be fixed by this Court;

(B)   Judgment on the First Cause of Action for punitive damages to be determined at trial;

(C)   Judgment on the Second Cause of Action against Defendant SCHNEORSON in the amount of $594,000 or such other amount to be fixed by this Court;

(D)   Judgment on the Second Cause of Action for punitive damages to be determined at trial;

(E)   Judgment on the Third Cause of Action against Defendant MORTNER in the amount of $150,000;

(F)   Judgment on the Third Cause of Action for punitive damages to be determined at trial;

(G)   Judgment on the Fourth Cause of Action against Defendant MORTNER declaring that Defendant MORTNER was properly terminated as Plaintiffs' counsel and may no longer act as Plaintiffs' counsel in the MONSTER LITIGATION;

(H)   Judgment on the Fourth Cause of action against Defendant MORTNER declaring that since he was properly terminated as Plaintiffs' counsel and therefore has no right to participate in the

22

proceedings in the MONSTER LITIGATION before The Federal District Court, Middle District of Florida on January 8, 2013 or any other date;

(I)    Judgment on the Fifth Cause of Action granting Plaintiffs a permanent injunction against Defendant MORTNER permanently enjoining Defendant MORTNER from acting as Plaintiffs' counsel in the MONSTER LITIGATION;

(J)    Judgment on the Fifth Cause of action granting Plaintiffs a permanent injunction against Defendant SCHNEORSON permanently enjoining Defendant SCHNEOERSON from holding himself out and/or acting as President, an officer, director or shareholder of Plaintiff CONSOLIDATED;

(K)    Judgment on the Sixth Cause of Action against Defendant SCHNEORSON in the amount of $150,000;

(L)    Judgment on the Sixth Cause of Action for punitive damages to be determined at trial; and

(M)    For such other and further relief as to this Court seems just and proper, together with interest from May 31, 2012, and the costs and disbursements permitted by law.

Dated: New York, New York
January 7, 2013

MARK S. FRIEDLANDER, ESQ.
Attorney for Plaintiffs
15 Maiden Lane – Suite 2000
New York, New York 10038
(212) 962-2877

23

State of New York      )
                       ): ss.
County of New York )

Mark S. Friedlander, being duly sworn deposes and says:

That he is the attorney for the Plaintiffs CONSOLIDATED DISTRIBUTORS, INC. and DAVID BAKSHT, in the above entitled action, with offices located at 15 Maiden Lane-Suite 2000, New York, New York 10038, that he has read the foregoing Complaint and knows the contents thereof and that the same is true to his knowledge except as to the matters stated to be alleged upon information and belief, and as to those matters he believes them to be true.

That the reason why this Verification is made by deponent instead of one of the plaintiffs is because the plaintiffs do not reside in the within County of New York, which is the County where deponent has his office. Deponent further says that the grounds of his belief as to all matters in the Complaint not stated to be upon his knowledge are based upon the books, records and documents maintained by Plaintiffs in the regular course of their business.

_____
Mark S. Friedlander

Sworn to before me this
8th day of January 2013

Douglas Ryan Michaels
Notary Public, State of New York
No. 02MI6225601
Qualified in Queens County
Commission Expires 07/26/20__14

EXHIBIT "A"

OPALID: 609671

081229 00

231

## Incorporator Information Required

X<u>d bakshet</u>
*(Signature)*

<u>d bakshet</u>
*(Type or print name)*

<u>719 eastern pkwqy</u>
<u>719 eastern pkwy</u>
*(Address)*

<u>bklyn , NY  11231   USA</u>
*(City, State, Zip code, and Country)*

-------------------------------------------------

## CERTIFICATE OF INCORPORATION
## OF

<u>consolidated distributors Inc</u>
*(Insert corporate name)*
Under Section 402 of the Business Corporation Law

**STATE OF NEW YORK
DEPARTMENT OF STATE**

FILED DEC 29 2008

TAX $ _____

BY: _____

Filed by:_ <u>d bakshet</u>
*(Name)*

<u>719 eastern pkwu</u>

*(Mailing address)*

<u>brooklyn , NY  11231   USA</u>
*(City, State, Zip code, and Country)*

King

250

Note: This online form was prepared by the NYS Department of State and the NYS Governor's Office of Regulatory Reform for filing a certificate of incorporation for a business corporation. It does not contain all option provisions under the law. You are not required to use this from.

You may draft you own form or use forms available at legal stationery stores. The Department of State recommends that legal documents be prepared under the guidance of an attorney. The fee for a certificate of incorporation is $125 plus the applicable tax on shares required by Section 180 of the Tax Law. The minimum tax on shares is $10. The tax on 200 no par value shares is $10 (total $135) The certificate must be submitted with filing fee and applicable tax.

FILED

2008 DEC 29  PM 12:50

**081229000**

231

OPALID: 609671

New York State
Department of State
Division of Corporations, State Records
and Uniform Commercial Code
Albany, NY 12231

(This form must be printed or typed in black ink)

# CERTIFICATE OF INCORPORATION
# OF

consolidated distributors Inc
*(Insert corporate name)*

Under Section 402 of the Business Corporation Law

**FIRST:** The name of the corporation is:   consolidated distributors Inc

**SECOND:** This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

**THIRD:** The county, within this state, in which the office of the corporation is to be located is:   Kings

**FOURTH:** The total number of shares which the corporation shall have authority to issue and a statement of the par value of each share or a statement that the shares are without par value are: 200 No Par Value

**FIFTH:** The Secretary of State is designated as agent of the corporation upon whom process against the corporation may be served. The address to which the Secretary of State shall mail a copy of any process accepted on behalf of the corporation is:

dm schneerson

483 kinfston av

brooklyn, NY  11231   USA

EXHIBIT "B"





NYS Department of State
Division of Corporations, Records and UCC
Albany, NY 12231-0002
www.dos.ny.gov

**Business Corporation
Biennial Statement**

For Internal Use Only

**3756846**

**Business Name:**

CONSOLIDATED DISTRIBUTORS INC

3756846

DM SCHNEERSON
483 KINFSTON AVE
BROOKLYN, NY 11231

12091300
213

Filed By: _____

Cash a (if different than file a): _____

| Required Fee: | $9.00 |
| Filing Period: | 12/2010 |

(Make checks payable to the Department of State)

The Business Corporation Law requires corporations to update information with the Department of State every two years in the calendar month in which the corporation was formed or authorized. Farm Corporations are EXEMPT from this requirement and should complete Parts 4 and 5 ONLY. Please review the information in Parts 1, 2 and 3. Update the information in the space provided, if necessary. If no changes are necessary, proceed to Part 5. A corporation which fails to timely file its Biennial Statement shall be shown to be past due on the Department of State's records.

**Part 1: Name and Business Address of Chief Executive Officer**

| | Name | | |
| | DAVID BAKSHT | | |
| | Address | | |
| | 719 EASTERN PARKWAY  STE 3 | | |
| | City | State | Zip |
| | BROOKLYN | NY | 11213 |

**Part 2: Street Address of the Principal Executive Office** (A Post Office Box cannot be substituted)

| | Address Line 1 | | |
| | 719 EASTERN PARKWAY , STE 3 | | |
| | Address Line 2 | | |
| | City | State | Zip |
| | BROOKLYN | NY | 11213 |

**Part 3: Address for Service of Process**

| DM SCHNEERSON | Name | | |
| 483 KINFSTON AVE | M. SCHNEORSON | | |
| BROOKLYN, NY 11231 | Address | | |
| | 719 EASTERN PARKWAY , STE 3 | | |
| | City | State | Zip |
| | BROOKLYN | NY | 11213 |

**Part 4: Farm Corporation Exemption**

☐   This corporation is a farm corporation and is NOT required to update information with the Department of State every two years. A farm corporation is a corporation engaged in the production of crops, livestock and livestock products on land used in agricultural production. Farm corporations should complete Parts 4 and 5 ONLY and return the form to the Department of State. No filing fee is required for farm corporations.
Check if applicable

**Part 5: Signature of Officer, Director, Attorney-in-Fact or Authorized Person**

S/DAVID BAKSHT
Signature

DAVID BAKSHT
Name of Signer (Please Print)

PRESIDENT
Title of Signer (Please Print)

DOS-1179 (08/00)

EXHIBIT "C"

## ATTORNEY RETAINER AGREEMENT

This Attorney Retainer Agreement is entered on this 10th day of February 2012, by and between the following parties:

> The Mortner Law Offices ("Attorney"), with offices at 40 Wall Street, 28th Floor, New York, NY 10005, represented by Moshe Mortner, Esq.;

and the following clients (referred to together as the "Client"):

> David Baksht, Consolidated Distributors, Inc. , each with offices at 719 Eastern Parkway, Apartment 4, Brooklyn, NY 11213;

### RECITALS

WHEREAS, Client has been sued in a trademark infringement action by Hansen Beverage Company d/b/a Monster Beverage Company ( "Monster") in the United States District Court for the Middle District of Florida, and a Default Judgment has been entered against Client therein. Client wishes to move to vacate the default and assert defenses and counterclaims in the Monster action (the "Action");

WHEREAS, Client's primary objective is to procure a monetary settlement from Monster;

WHEREAS, Client wishes to retain Attorney as counsel to represent Client in connection with the foregoing; and

NOW, THEREFORE, in consideration of the foregoing, Client and Attorney mutually agree as follows:

### I.    Retention

The undersigned Client hereby retains Attorney to appear on Client's behalf to move to vacate the default, defend against Monster's trademark infringement claims, assert counterclaims and negotiate with Monster any potential settlement.

### II.    Fees

In consideration of the services to be rendered by Attorney, Client agrees to pay the following fees:

#### a.  Local Counsel's Fee

Because the Action is pending in the State of Florida, Attorney is required to retain local Florida Counsel. The role of local counsel will be limited to the minimum

requirements of a local counsel. Attorney intends to retain The Mackey Law Group, located at 1402 Third Avenue West, Bradenton, FL 34205, with whom Attorney has a prior working relation. The Mackey Law Group will bill by the hour, and requires an initial $2,500 retainer. Attorney does not anticipate that The Mackey Law Group will require the retainer to be replenished in the course of this action. Client shall pay the initial retainer of The Mackey Law Group, which is necessary for Attorney's appearance in the Action on behalf of Client as counsel, pro hac vice.

### b. Contingency Fee

Client shall pay contingency fees upon the following terms:

A Contingency Fee of fifty percent (50%) of any money received in connection with defense of the Action and/or the prosecution of counterclaims in the Action, through settlement, award or judgment (the "Recovery"). Such percent shall be computed on the net sum recovered after deducting from Recovery expenses and disbursements for local counsel fees, travel, expert testimony and investigative or other services properly chargeable to the defense of the Action or prosecution of the counterclaims therein.

Client hereby agrees that Attorney is authorized to hold and retain the Contingency Fee out of any moneys that may come into Attorney's possession as a result of the Action.

## III.   Expenses and Disbursements

*[handwritten: LIMITED TO TOTAL $ 2500 — TOTAL]*

Expenses and disbursements, including but not limited to, local counsel fees, travel expenses, expert testimony and investigative or other services properly chargeable to the Action shall be paid by Client. No expense, with the exception of local counsel fees, hotel and airline tickets, greater than $250 shall be incurred without Client's prior approval.

The ultimate control of Client's defense and counterclaims in the Action, including the consummation of any settlements thereof, remains exclusively in the hands of the Client. Attorney shall request Client's direction in all decisions pertaining to the Action, and with regard to the assertion of any counterclaims.

Please be advised that Client has the right to terminate this attorney-client relationship for any reason, and at any time., in which case Attorney may have a claim for quantum meruit and an attorney's lien on files to the extent permitted by law.

**Attorney Retainer Agreement**
Page 3 of 3

The Attorney and Client hereby execute this Attorney Retainer Agreement in several counterparts, any executed copy of which shall be considered for all purposes as an original.

IN AGREEMENT WHEREOF, the parties have affixed their signatures as of the date above stated.

THE PORTNER LAW OFFICES

By: _____
     Moshe Mortner

_____
David Baksht

CONSOLIDATED DISTRIBUTORS, INC.

By: _____