**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| MONSTER ENERGY COMPANY, f/k/a HANSEN BEVERAGE COMPANY, d/b/a MONSTER BEVERAGE COMPANY, | Case No. 6:11-CV-329-ORL-22DAB |
| Plaintiff, | |
| vs. | |
| CONSOLIDATED DISTRIBUTORS, INC., METTEMP, INC., and DAVID BAKSHT (a/k/a David Lipsker a/k/a David Bakshet a/k/a D Bakht a/k/a DM Schneerson a/k/a Abraham Shneorson), | |
| Defendants. | |
| _____ / | |

**PLAINTIFF MONSTER ENERGY COMPANY'S MOTION TO STRIKE THE
PLEADINGS OF DEFENDANT CONSOLIDATED DISTRIBUTORS, INC.**

Plaintiff Monster Energy Company ("MEC") respectfully requests the Court to render an Order striking all pleadings of Defendant Consolidated Distributors, Inc. ("CDI"), including its Answer, Affirmative Defenses, and Counterclaims. This is warranted because at least until January 9, 2013, CDI had no Board of Directors and no Officers. Accordingly, no one had authority to retain attorney Moshe Mortner or any other attorney as counsel for CDI, and thus no one had authority to bring any Counterclaims or file any other pleadings on CDI's behalf. Similarly, no one had authority to accept the assignment of any trademark rights from the Joe Cool Defendants, rights which underlie many of CDI's purported Counterclaims.

## <u>BACKGROUND</u>

In December 2008, David Baksht filed a Certificate of Incorporation with the State of New York, Department of State, purporting to create CDI as a New York corporation.   D.I. 237-5, Ex. D.   Mr. Baksht has represented throughout this case that he is the Chief Executive Officer and a Director of CDI.   For example, Mr. Baksht testified under oath in his deposition that "I am the Chief Executive Officer" of CDI.   D.I. 246, Ex. 1 (Baksht Depo. at 17:6-8).   *See also* D.I. 110-1 ¶ 2. Similarly, Mr. Baksht testified that CDI's Board of Directors consists of "Mr. Schneerson and I."   D.I. 246, Ex. 1 (Baksht Depo. at 21:5-12).   Menachem Schneorson testified to the same effect during the Rule 30(b)(6) deposition of CDI. D.I. 246, Ex. 2 (Schneorson Depo. at 26:3-8).

It is now clear that this testimony was all false.   As Mr. Baksht now concedes, "At no time until today [January 9, 2013] was any action taken to adopt By-Laws, issue stock certificates, elect a board of Directors or to elect officers."   D.I. 237-1 ¶ 8. *Accord* D.I. 237 at 3 ("no elections were held for a Board of Directors or corporate officers, no stock was issued and no By-Laws adopted"); D.I. 238 ¶ 2 ("Baksht and Schneorson did not execute a shareholders' agreement formally appointing a board of directors, and consequently, there are no resolutions of a board of directors appointing officers of the corporation").   Thus, at least until January 9, 2013, CDI had no Directors or Officers.

As a result of these fundamental failings, this Court has already concluded that CDI had no authority to retain attorney Moshe Mortner or any other attorney to

act as CDI's legal counsel in this case. *See* D.I. 243. As this Court has found, "Baksht and/or Schneorson have – admittedly – failed to implement for CDI the requirements of corporate governance which would require an election of board of directors, appointment of officers to manage the corporation, issuance of stock, and adoption of by-laws." *Id.* at 4. Accordingly, this Court explained that "[n]either Baksht nor Schneorson, having failed to follow the 'formalities' of corporate governance, had the authority to bind the corporation to a retainer agreement with Mr. Mortner during the litigation." *Id.* This Court then directed the clerk to terminate all counsel for the defendants. *Id.* at 5. As a corporation, of course, CDI can appear in this Court only through counsel. L.R. 2.03(e).

MEC now moves for an Order striking the pleadings purportedly filed by Mr. Mortner and his local counsel on behalf of CDI. Because no one had authority to retain Mr. Mortner or his local counsel on behalf of CDI, these attorneys had no authority to file the pleadings and those pleadings should be stricken.

## ARGUMENT

New York law governs the organization of New York corporations and is directly on point here. When a New York corporation is formed but fails to appoint Directors or Officers, no one has authority to retain counsel on behalf of the corporation, and any claims purportedly filed by counsel on behalf of the corporation should be dismissed. *Concrete Construction Systems v. Jensen*, 65 A.D.2d 918, 919, 410 N.Y.S.2d 460, 462 (N.Y. App. 1978).

Indeed, *Concrete Construction* is on all fours with the situation here.  There, the plaintiff was a New York corporation incorporated by Darrell Parks.  *Id.* at 918, 410 N.Y.S.2d at 461.  After incorporation, "no action was taken to comply with the corporate form as prescribed by the Business Corporation Law."  *Id.*  In particular, "No organizational meeting was held, no directors were elected, no officers were named and no shares were issued."  *Id.*  Nevertheless, Mr. Parks described himself as "president" of the corporation and conducted business through the corporation.  *Id.*  Mr. Parks and the defendant, Donald Jensen, signed a document indicating that each owned 50% of the corporation.  *Id.*  A dispute subsequently arose between the corporate plaintiff and Mr. Jensen, leading to the lawsuit.

The appellate court held that the corporate plaintiff's lawsuit must be dismissed.  *Id.* at 919, 410 N.Y.S.2d at 462.  "Officers," the court explained, "are appointed or elected by the board of directors unless the certificate of incorporation provides that officers shall be elected by the shareholders."  *Id.*  Here, "neither body came into existence."  *Id.*  Thus, Mr. Parks was not an officer and "lacked authority to direct the commencement of this action."  *Id.*  As a result, the corporate plaintiff's claims were dismissed.  *Id.*

The situation here is precisely the same.  At least until January 9, 2013, CDI had no Board of Directors and no Officers, and no one had authority to assert counterclaims on behalf of CDI.  Accordingly, as in *Concrete Construction*, the counterclaims filed in the name of the corporation must be dismissed.

In addition, it follows logically from the reasoning and holding of *Concrete Construction* that all pleadings purportedly filed in the name of CDI in this case, including CDI's Answer, should be stricken.   Because CDI had no Directors or Officers, no one had the authority to retain counsel to file any pleadings on behalf of CDI, or to authorize the filing of any such pleadings.   These pleadings, therefore, should be stricken as well.

The reasoning and holding of *Concrete Construction* also suggest another consequence of CDI's fundamental failings:   CDI lacks standing to maintain its trademark counterclaims (D.I. 122, Counts I-III) against MEC, or to argue in its Sixth Affirmative Defense that it has priority of trademark rights over MEC (D.I. 122, ¶ 127).   Just as CDI failed to appoint an individual with the capacity to retain counsel under *Concrete Construction* and the findings of this Court, so too it failed to appoint an individual with the capacity to cause CDI to enter into its purported oral contract in 2010 with former defendant Joe Cool to acquire rights in the 3DL logo.   *See* D.I. 122 ¶ 150(a).   Indeed, New York law treats the power of a corporation to bring suit and the power to purchase personal property equivalently.   *See* N.Y. Bus. Corp. Law § 202(a)(2),(4).   Both powers are "subject to any limitations" provided in the New York statutes, *id.*, such as the requirement that a corporation conduct an organizational meeting to appoint Directors, N.Y. Bus. Corp. Law § 404.   As a result, a finding that CDI lacked authority to hire counsel and bring suit leads to the conclusion that CDI also lacked the power to execute an oral purchase of rights in the 3DL logo.   Without rights to the 3DL logo, CDI lacks standing to assert its

trademark claims against MEC, including its claim that it is entitled to priority of trademark rights. *Florida VirtualSchool v. K12, Inc.*, No. 6:11-cv-831-Orl-31KRS, 2012 WL 2920998 at *2, 2012 U.S. Dist. LEXIS 98096 at *4 (M.D. Fla. July 16, 2012) (to have standing under the Lanham Act, the plaintiff must be either the owner of the trademark or the exclusive licensee).

CDI's attempt to appoint Mr. Baksht as the sole Director and Officer of CDI on January 9, 2013 does not alter this outcome. *See* D.I. 237-13, Ex. L. Such an appointment, if effective, may at most give Mr. Baksht authority to hire new counsel on behalf of CDI going forward. But it remains true that CDI's past pleadings were filed by an attorney without authority from CDI, and therefore must be stricken. Similarly, CDI cannot somehow retroactively fix its lack of standing, because Article III standing is evaluated at the time claims are filed. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1265 (11th Cir. 2011); *Steven Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1373 (M.D. Fla. 2004) (J. Conway) (actions taken after suit is commenced are immaterial to question of standing); *see also Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1306, 1310 (Fed. Cir. 2003) (plaintiff corporation cannot retroactively create standing to sue where acquisition of patent rights was ineffective because acquisition occurred while plaintiff was administratively dissolved).

## CONCLUSION

CDI lacked the capacity or authority to retain counsel to file its Counterclaims and other pleadings in this case because CDI had no Directors or Officers at the

time counsel was purportedly hired or at the time any of the pleadings were filed. Similarly, CDI lacked the capacity or authority to acquire any rights to the 3DL design from Joe Cool.  For this reason as well, CDI lacks standing and capacity to bring its Counterclaims against MEC or to assert its Sixth Affirmative Defense of priority.   Accordingly, MEC respectfully requests the Court to render an Order striking CDI's Answer, Affirmative Defenses, and Counterclaims, and awarding MEC all other appropriate relief under the circumstances.

Respectfully submitted,

Dated:  January 22, 2013             By:  /s/ *Paul A. Stewart*

JOHN B. SGANGA, JR. ESQ.
(Admitted *Pro Hac Vice*)
john.sganga@kmob.com
PAUL A. STEWART, ESQ.
paul.stewart@kmob.com
(Admitted *Pro Hac Vice*)
LAUREN K. KATZENELLENBOGEN, ESQ.
(Admitted *Pro Hac Vice*)
lauren.katzenellenbogen@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, California  92614
(949) 760-0404  Telephone
(949) 760-9502  Facsimile

Lead Trial Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

– and –

RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
GRAYROBINSON, P.A.

301 East Pine Street, Suite 1400
Orlando, Florida  32801
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

Local Counsel for Plaintiff,
MONSTER ENERGY COMPANY f/k/a
HANSEN BEVERAGE COMPANY d/b/a
MONSTER BEVERAGE COMPANY

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of January, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

 /s/ *Paul A. Stewart*
Paul A. Stewart