UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MONSTER ENERGY COMPANY,**

      **Plaintiff,**

v.                                                                                                  Case No:  6:11-cv-329-Orl-22DAB

**CONSOLIDATED DISTRIBUTORS, INC., METTEMP, INC. and DAVID BAKSHT,**

      **Defendants.**
_____/

**ORDER**

This cause comes before the Court on Plaintiff Monster Energy Company's ("MEC") Motion to Strike the Pleadings of Defendant Consolidated Distributors, Inc. ("CDI")  (Doc. No. 249), filed on January 22, 2013.  Defendant CDI failed to respond to the motion.[1]

**I.     BACKGROUND**

A quick glance of the docket sheet reveals the tumultuous path of this litigation; however, for purposes of this motion, the Court will focus only on the pertinent facts relating to the pending motion.

Immediately before a *Daubert* hearing, MEC's counsel filed a notice containing emails apparently reporting that CDI and Defendant David Baksht ("Baksht") terminated Moshe Mortner, Esquire ("Attorney Mortner") as their counsel as of November 8, 2012.  However, Attorney Mortner continued to make filings in the case, including a designation of a new local

---

[1] On January 23, 2013, the Court ordered Defendant Consolidated Distributors, Inc. ("CDI") to respond to the motion by January 28, 2013.  The Court forewarned CDI, "Failure to respond by this date may result in the resolution of this motion without further notice."  (Doc. No. 251). Currently, attorney Lawrence A. Farese represents CDI and Baksht.  (Doc. No. 248); *see* M.D. Fla. R. 2.03(a), (b).

counsel. (Doc. No. 218). The new local counsel was unaware of the termination, informing the Court that he only communicated with Attorney Mortner on the phone and through email and that he never communicated with CDI and Baksht. (*Id.*). As a result of this notice, Magistrate Judge David Baker held a hearing on January 8, 2013 to determine the status of Attorney Mortner's representation of CDI and Baksht.

After holding a hearing and ordering post-hearing filings by the attorneys who appeared at the hearing, Magistrate Judge Baker noted that the attorneys purporting to represent CDI conceded that CDI, a New York corporation, failed to follow corporate formalities. (Doc. No. 243 at p. 2). CDI's putative principals, Baksht and Menachem Schneorson ("Schneorson"), failed to undertake the formalities of creating corporate documentation, failed to execute a shareholders' agreement, failed to appoint a board of directors, and failed to adopt a resolution of a board of directors appointing officers of the corporation or a resolution determining who had the authority to represent CDI before this Court. (*Id.*). Although CDI has filed a certificate of incorporation and a biennial certificate, there was still no election of a board of directors or corporate officers, no issuance of stock, and no by-laws adopted. (*Id.* at p. 3).[2] Magistrate Judge Baker noted that the day after this Court raised questions as to Baksht's lack of authority and the day after CDI filed a suit in New York state court, Baksht created several purported corporate documents, including a "statement of sole incorporator in lieu of organization meeting"; a "resolution" appointing himself president of CDI; and a "resolution" terminating Attorney Mortner and local counsel for CDI. (*Id.* at p. 4).

---

[2] At the hearing, the Court also was advised by David Baksht, through his declaration, that, in his personal capacity, he terminated Attorney Mortner and that CDI had filed suit against Attorney Mortner in New York state court, alleging breach of his fiduciary duties and other claims. As well, Baksht advised that a bar grievance by a third party was filed against Attorney Mortner. (Baksht Dec. (Doc. No. 237-1)).

Magistrate Judge Baker concluded that Attorney Mortner had been terminated as Baksht's personal counsel and determined that Attorney Mortner should be stricken as counsel for CDI because neither Baksht nor Schneorson, having failed to follow the "formalities" of corporate governance, had the authority to bind the corporation to a retainer agreement with Mr. Mortner during the litigation. (*Id.* at pp. 4, 5).

As a result of the foregoing, MEC filed the present motion, arguing that because no one had the authority to retain Attorney Mortner, no one thus had the authority to bring CDI's amended counterclaim (Doc. No. 122) ("counterclaim") or to file any other pleadings on CDI's behalf. *See also* M.D. Fla. R. 2.03(e) ("A corporation may appear and be heard only through counsel admitted in the Court pursuant to Rule 2.01 and 2.02."). MEC relies on various deposition testimonies by Baksht and Schneorson (CDI's Rule 30(b)(6) deponent) to argue that CDI allegedly claimed falsely to be a fully formed corporation. (Doc. No. 249 at p. 2). As well, MEC notes even Baksht conceded, "At no time until [January 9, 2013] was any action taken to adopt By-Laws, issue stock certificates, elect a board of Directors or to [sic] elect officers." (Baksht Dec. (Doc. No. 237-1 at ¶ 8)). CDI failed to respond to this argument.

## II.   THE EFFECT OF THE AUTOMATIC STAY

On January 24, 2013, CDI, through a New York attorney named Noson A. Kopel, filed a suggestion of bankruptcy, noting that CDI had filed for Chapter 11 bankruptcy in the Eastern District of New York. (Doc. No. 254).[3]

Under 11 U.S.C. § 362, an automatic stay applies to all proceedings against a debtor; however, no such stay applies to counterclaims asserted by the debtor. *See First Wis. Nat'l Bank*

---

[3] In his suggestion, Noson A. Kopel claimed that his suggestion was for information purposes only. (Doc. No. 254).

*of Milwaukee v. Grandlich Dev. Corp.*, 565 F.2d 879 (5th Cir. 1978) (per curiam).[4] In *First Wisconsin National Bank*, the Fifth Circuit held that a district court, despite the automatic stay, could dismiss Chapter 11 debtors' counterclaim for failure to follow pretrial requirements. *Id.* at 880. Addressing a *Federal Rule of Civil Procedure* 60(b)(4) challenge to the district court's ruling, the court reasoned that the dismissal of the counterclaim could not be challenged as void because the counterclaim was not a proceeding against the debtor. *Id.*

As the Southern District of Florida explained in *Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.*, "Section 362 does not stay the independent prosecution of a counterclaim by a party in reorganization. If *prosecution* of a counterclaim (or a crossclaim) is not barred by Section 362, then *dismissal* of that counterclaim (or crossclaim) cannot be prohibited by that statute." *Trans Caribbean Lines, Inc.*, 49 B.R. 360, 362 (S.D. Fla. 1985) (emphasis in the original); *see also Crosby v. Monroe County*, 394 F.3d 1328, 1331 n. 2 (11th Cir. 2004) ("The automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, does not extend to lawsuits initiated by debtor." (citing, *inter alia*, *Trans Caribbean Lines, Inc.*, 49 B.R. at 362)); *Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994) (per curiam) (stating that the court has recognized that the automatic stay is applicable to only proceedings against the debtor).

To determine whether an action is against a debtor, the court examines the debtor's status at the time the proceedings were initiated. *Park Nat'l Bank v. Univ. Ctr. Hotel, Inc.*, No. 1:06-cv-00077-MP-AK, 2007 WL 604936, at *3 (N.D. Fla. Feb. 22, 2007) (citation omitted). When CDI initiated its counterclaim, it did so as a counter-plaintiff. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1991) ("Judicial proceedings resting on

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit prior to the close of business on September 20, 1981).

counterclaims and third-party claims asserted by a defendant-debtor are not stayed, while same-case proceedings arising out of claims asserted by the plaintiff are stayed." (citing *First Wisconsin National Bank*, 565 F.2d at 880)). Therefore, the Court finds that it has the power to determine whether CDI's counterclaim may be dismissed. However, the Court's ruling on MEC's motion is limited to CDI's counterclaim only.

### III.   WHETHER CDI'S COUNTERCLAIM SHOULD BE DISMISSED

MEC argues that when a New York corporation files its certificate of incorporation but fails to appoint a board of directors, any claims purportedly filed by counsel on behalf of the corporation should be dismissed. (Doc. No. 249 at p. 3); *see* Fed. R. Civ. P. 17(b) (stating that a corporation's capacity to sue is determined by the law under which it is organized). For this argument, CDI relies almost exclusively on *Concrete Construction Systems, Inc. v. Jensen*, 65 A.D.2d 918 (N.Y. App. Div. 1978). Again, CDI failed to respond to this motion, depriving itself of the opportunity to provide any law regarding New York corporations.[5]

In *Concrete Construction Systems, Inc.*, the corporation was incorporated in 1973 by Darrell Parks ("Parks"); however, "no action was taken to comply with corporate form as prescribed by the Business Corporation Law. No organization meeting was held, no directors were elected, no officers were named and no shares were issued." *Concrete Constr. Sys., Inc.*, 65 A.D.2d at 918. Nevertheless, the principals, Parks and Donald Jensen ("Jensen"), continued to engage in business under the corporate name. Eventually, a dispute arose between the two principals and the corporation filed suit against Jensen, the principal who disassociated himself from the business. *Id.* at 918-19.

---

[5] The Court notes that it would have benefited from a more detailed briefing by the parties regarding New York corporate law.

Jensen moved to dismiss the action, claiming that Concrete Constructions Systems, Inc. lacked the legal capacity to sue. The court agreed, concluding that since neither the board of directors nor the shareholders existed, Parks "lacked the authority to direct the commencement of this action." *Id.* at 919. The Court explained that because officers are appointed or elected by the board of directors unless the certificate of incorporation provides that officers should be elected by shareholders, Parks was not a corporate officer as he was not properly designated. *Id.* at 919. Thus, finding that an incorporator cannot operate a business indefinitely, the Court dismissed the corporation's action. *Id.*

In the present case, similar to Parks, Baksht filed CDI's certificate of incorporation. (Doc. No. 237-5). Moreover, CDI, similar to Concrete Construction Systems, Inc., failed to adopt by-laws, issue stock certificates, elect a board of directors or elect officers. (*See* Baksht Dec. (Doc. No. 237-1 at ¶ 8)); (Doc. No. 243 at p. 4). As well, similar to the principals of Concrete Construction Systems, Inc., Baksht and Schneorson's relationship appears to have soured. (Doc. Nos. 233 & 243). Therefore, using the same rationale as the court in *Concrete Construction Systems, Inc.*, this Court finds that CDI lacked the legal capacity to assert its counterclaim. CDI lacked this legal capacity because neither the board of directors nor the shareholders existed and thus, no one had the authority to retain counsel to file this counterclaim. *See Concrete Constr. Sys., Inc.*, 65 A.D.2d at 919. Again, CDI failed to respond to the present motion, offering no argument to the contrary.[6]

---

[6] Based on CDI's conduct in this litigation, this failure by its counsel to respond appears to be of CDI's own doing. From its first appearance in this litigation, CDI has shuffled around its attorneys and purported attorneys, leaving all parties, including CDI's own attorneys, to decipher who is representing CDI. *See* (Doc. No. 110 (claiming that a misunderstanding between Robert Pershes, counsel for co-defendants, and CDI and Baksht resulted in the entry of default against CDI and Baksht)); (Doc. Nos. 218, 233 & 243 (detailing the bizarre relationship between CDI, Baksht, and Attorney Mortner)); (Doc. No. 255 (Attorney Lawrence A. Farese ("Attorney

## IV. ATTORNEY LAWRENCE A. FARESE'S REPRESENTATION OF CDI AND BAKSHT

On January 22, 2013, Attorney Lawrence A. Farese ("Attorney Farese") filed a Notice of Appearance of Counsel for CDI and Baksht. (Doc. No. 248). However, in response to the Court's January 24, 2013 Order regarding CDI's purported bankruptcy, Attorney Farese requested to withdraw his notice of appearance. (Doc. No. 255). As well, in response to another Order to Show Cause regarding his representation of CDI and Baksht, Attorney Farese informed the Court that on January 24, 2013, he and his firm terminated their attorney-client relationship with CDI and Baksht. (Doc. No. 261). Additionally, Attorney Farese argued that he construed the Magistrate Judge's order to show cause regarding his and Attorney Mortner's respective representations of CDI and Baksht as the court not accepting his appearance. Thus, he claimed that he would not file any further documents unless ordered by the Court. (*Id.*).

First, Attorney Farese improperly requested relief in a response to a court order rather than in a separate motion. *See* M.D. Fla. R. 3.01. Second, under the Court's Local Rules, every

---

Farese") advised the Court that CDI and Baksht never informed him that CDI planned to file for bankruptcy and that Attorney Farese first learned of the bankruptcy from the Court's Order (Doc. No. 253).)); (Doc. Nos. 256 & 257 (documenting Attorney Mortner's claim that Baksht filed a fraudulent email from Attorney Mortner's email account falsely stating, "i know menachem schneerson was never an officer of consolidated distributors inc and you are sole officer"; that Baksht fraudulently induced Attorney Mortner to file a general appearance on behalf of Baksht and CDI when Baksht never informed Attorney Mortner that he was simultaneously instructing another attorney to file a Chapter 11 petition for CDI; and that Menachem Schneorson approved Attorney Mortner's retention for CDI without knowledge of Baksht's plan to place CDI in bankruptcy)); *see also* (Baksht Dec. (Doc. No. 237-1 at ¶ 6 (Baksht claimed that Attorney Mortner sent an email (Doc. No. 273-4) to Baksht that Schneorson was never an officer of CDI; this appears to be the same email Attorney Mortner claims Baksht sent fraudulently from Attorney Mortner's email account))).

In fact, Attorney Farese and Attorney Mortner, both filed appearances in this action in response to Magistrate Judge Baker's Order (Doc. No. 243); however, it seems that neither Attorney Farese nor Attorney Mortner knew of the other's existence.

Although this brief summary only partially captures the machinations CDI and Baksht have engaged in during this litigation, it clearly shows that CDI and Baksht have created this current situation and have engaged in numerous actions to prevent resolution of this matter.

pleading or paper of any kind filed by an attorney shall constitute a general appearance. M.D. Fla. R. 2.03(a). As well, any attorney making a general appearance under Local Rule 2.03(a) shall not thereafter abandon the case or proceeding or withdraw as counsel for any party therein "except by written leave of Court obtained after giving ten (10) days' notice to the party or client affected thereby, and to opposing counsel." M.D. Fla. R. 2.03(b). Therefore, the Court finds that Attorney Farese is still the attorney of record for Baksht and CDI. The Court expects Attorney Farese to conduct himself accordingly.

As well, the Court further notes that Attorney Mortner is not an attorney of record. Magistrate Judge Baker previously struck Attorney Mortner's appearance as counsel. (Doc. No. 243). Since reappearing in the case, Attorney Mortner has failed to apply for pro hac vice status and secure local counsel. (*See* (Doc. No. 252)).[7]

## V. CONCLUSION

Therefore, based on the foregoing, it is **ORDERED** as follows:

1. MEC's Motion to Strike the Pleadings of Defendant Consolidated Distributors, Inc. (Doc. No. 249), filed on January 22, 2013, is **GRANTED in part but only to the extent** the Court dismisses CDI's Amended Counterclaim (Doc. No. 122).

2. CDI's Amended Counterclaim (Doc. No. 122) is **DISMISSED without prejudice**.

3. Pursuant 11 U.S.C. § 362, MEC's claims against CDI are **STAYED**. MEC is **DIRECTED TO FILE AND SERVE** on or before May 1, 2013 and every

---

[7] Additionally, the Court notes that during Attorney Mortner's prior appearance in this case, he repeatedly failed to comply with the Local Rules and the Case Management and Scheduling Order, among other issues.

8

three months thereafter a status report regarding CDI's bankruptcy proceedings.

4. The Court **SHALL PROCEED** with a trial only on MEC's claims against Baksht. This matter is set for trial commencing on February 21, 2013 at 9 a.m.

5. Attorney Lawrence A. Farese **IS** the attorney of record for CDI and Baksht.

**DONE** and **ORDERED** in Orlando, Florida on January 30, 2013.

*Anne C. Conway*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
Magistrate Judge David Baker