# APPENDIX C

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MONSTER ENERGY COMPANY, f/k/a HANSEN BEVERAGE COMPANY, d/b/a MONSTER BEVERAGE COMPANY,

Plaintiff,

Case No. 6:11-CV-329-ORL-22DAB

vs.

CONSOLIDATED DISTRIBUTORS, INC., METTEMP, INC., and DAVID BAKSHT (a/k/a David Lipsker a/k/a David Bakshet a/k/a D Bakht a/k/a DM Schneerson a/k/a Abraham Shneorson),

Defendants.
_______________________________________ /

**AMENDED PROPOSED JURY INSTRUCTIONS**

## MEC's General Objection

MEC objects to the Defendant's proposed instructions in their entirety as untimely because Defendant first provided them to MEC at 4:14 PM EST on the February 10, 2012 filing deadline, affording MEC insufficient time to fully respond.

## DEFENDANT BAKSHT'S GENERAL OBJECTIONS

**(Specific Objections are reflected in the line edits below, but are not intended to and do not limit these general objections):**

1. **Plaintiff Monster Energy Corporation ("MEC") did not plead claims for secondary copyright infringement, including but not limited to contributory, vicarious or inducement infringement. Any instructions relating to unpled secondary liability claims should be deleted.**

MEC responds as follows: MEC is not aware of any authority requiring it to plead with specificity the legal theories of contributory infringement, induced infringement, or vicarious infringement. MEC pled infringement by Baksht relating to the M Claw Trademark. In opposing Baksht's Motion to Dismiss, and before close of discovery, MEC explicitly argued that Baksht caused and was liable for the infringement by CDI. *See* D.I. 142. This gave Baksht more than fair notice of the nature of the allegations against him. Moreover, it is Baksht who has pled the existence of a joint venture between his alter ego CDI and Joe Cool, D.I. 122 ¶ 150, creating liability for Joe Cool's conduct. In addition, Baksht did not object to the presentation of any of these theories of liability when the parties submitted their original Joint Final Pretrial Statement on December 17, 2012. To the contrary, Baksht offered his own proposed interpretation of individual liability under *Chanel. See* D.I. 217 at 71-72 ¶ 3.

2. **MEC did not plead claims for secondary trademark infringement, including but not limited to contributory, vicarious or inducement infringement. Any instructions relating to unpled secondary liability claims should be deleted.**

MEC responds as follows. Please see response to Objection No. 1.

3. **MEC did not plead an alter ego theory vis-à-vis Defendant Baksht and Defendant in Bankruptcy Consolidated Distributors, Inc. ("CDI"). Furthermore, pursuing an alter ego theory would violate the automatic stay in the CDI bankruptcy. Any instructions relating to an alter ego theory should be deleted.**

MEC responds as follows. As explained in the Statement of the Case portion of the Joint Pretrial Statement, MEC's claim that CDI can be disregarded as an entity is based on new admissions by Baksht that CDI never had any officers, directors, or shareholders until January 9, 2013. *See, e.g.,* D.I. 237-1 ¶ 8. Before Baksht made these admissions, he lied to MEC in discovery and lied to this Court in declarations by claiming under oath that CDI had officers, directors, and shareholders. *See, e.g.,* D.I. 179-2 ¶ 1; Baksht Depo. at 17:5-10, 21:5-12. It is only because Baksht lied under oath that the issue of piercing the corporate veil did not arise until recently.

4. **MEC revised the draft instructions by changing all references to "their M Claw" and the like (referring to the defendant's alleged mark) to "the 3DL design." This change is prejudicial in that, *inter alia*, it assumes similarity, infringement and confusion. All references to "the M Claw" in connection with Defendant should revert to references to the "3DL design".**

MEC responds as follows. In light of Baksht's objection, MEC has adopted Baksht's proposed change in the jury instructions.

5. **Yosef/Joseph Amar is not a defendant – the instructions as drafted by MEC improperly suggest that he is.**

MEC responds as follows. Mr. Amar is not mentioned in the jury instructions. Thus, the instructions cannot possibly suggest that Mr. Amar is a defendant.

## **Preliminary Instructions (Before Trial)**[1]

Ladies and Gentlemen:

You have now been sworn as the Jury to try this case. By your verdict you will decide the disputed issues of fact.

[Defendant proposes: There is one Plaintiff and one Defendant in this case.]

[Plaintiff objects to Defendant's proposed instruction because it is factually incorrect. While the case is scheduled to go to trial against Baksht only, claims against CDI remain pending, and MEC asserted claims against the Joe Cool defendants, which have since been resolved.]

The Plaintiff is Monster Energy Company, formerly known as Monster Beverage Company. The lawyers and the Court may refer to the Plaintiff as "MEC." The Defendant is an individual named David Baksht.

I will decide all questions of law and procedure that arise during the trial, and, before you retire to the jury room at the end of the trial to deliberate upon your verdict and decide the case, I will explain to you the rules of law that you must follow and apply in making your decision.[2]

The evidence presented to you during the trial will primarily consist of the testimony of the witnesses, and tangible items including papers or documents called "exhibits."[3]

Transcripts Not Available. You should pay close attention to the testimony because it will be necessary for you to rely upon your memories concerning what the testimony was. Although, as you can see, the Court Reporter is making a stenographic record of everything that is said, typewritten transcripts will not be prepared in sufficient time or appropriate form for your use during your deliberations and you should not expect to receive them.[4]

---

[1] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[2] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[3] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[4] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

Exhibits Will Be Available. On the other hand, any exhibits admitted in evidence during the trial will be available to you for detailed study, if you wish, during your deliberations. So, if an exhibit is received in evidence but is not fully read or shown to you at the time, don't be concerned because you will get to see and study it later during your deliberations.[5]

Notetaking - Permitted. If you would like to take notes during the trial you may do so. On the other hand, of course, you are not required to take notes if you do not want to. That will be left up to you, individually.

If you do decide to take notes, do not try to write everything down because you will get so involved in notetaking that you might become distracted from the ongoing proceedings. Just make notes of names, or dates and places - - things that might be difficult to remember.

Also, your notes should be used only as aids to your memory, and, if your memory should later differ from your notes, you should rely upon your memory and not your notes.

If you do not take notes, you should rely upon your own independent recollection or memory of what the testimony was and you should not be unduly influenced by the notes of other Jurors. Notes are not entitled to any greater weight than the recollection or impression of each Juror concerning what the testimony was.[6]

**Trademark Infringement Preliminary Instruction**

[5] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[6] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[Plaintiff proposes: Plaintiff Monster Energy seeks damages against the Defendant, David Baksht, for trademark infringement. The Defendant denies infringing the trademarks and contends that his use of the 3DL design is lawful for reasons I will explain to you later. To help you understand the evidence that will be presented in this case, I will explain some of the legal concepts you will hear about during the trial.[7]]

[7] ABA Model Jury Instruction 2.1 (2008).

[Defendant proposes: Plaintiff Monster Energy seeks damages against the Defendant, David Baksht, for trademark infringement.  The Defendant denies infringing the trademarks and contends that he did not personally use the 3DL design and that in any event, any use of the 3DL design is lawful for reasons I will explain to you later.  To help you understand the evidence that will be presented in this case, I will explain some of the legal concepts you will hear about during the trial.[7]]

[Plaintiff objects to Defendant's proposed instruction because its reference to personal use is an incorrect characterization of the law of individual liability in the trademark infringement context.  *See, e.g., Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477-78 (11th Cir. 1991).]

---

[7] ABA Model Jury Instruction 2.1 (2008).

Definition of a Trademark: A trademark is a word, name, symbol, device, or a combination of these items that indicates the source of goods. The owner of a mark has the right to prevent others from using the same mark or a similar mark that is likely to cause confusion in the marketplace.[8]

How a Trademark Is Obtained: A person or company acquires the right to prevent others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace. The owner of a trademark has the right to prevent others from using the same mark or a similar mark that is likely to cause confusion in the marketplace.[9]

---

[8] ABA Model Jury Instruction 2.1 (2008).

[9] ABA Model Jury Instruction 2.1 (2008).

[Defendant's proposed instruction on Trademark Interests:

Trademark Interests: The owner of a trademark may transfer, give, or sell to another person the owner's interest in the trademark. This type of agreement is called an assignment, and the person who receives the owner's interest is called an assignee and becomes the owner of the mark. To be enforceable, the assignment must be in writing and signed if the mark is a registered mark, but if the mark is a common law mark there is no requirement of a writing. An assignment must also include the goodwill of the business connected with the trademark. The owner of a trademark may also enter into an agreement that permits another person to use the trademark. This type of agreement is called a license, and the person permitted to use the trademark is called a licensee. In an action for infringement, a trademark owner or exclusive licensee may enforce the right to prevent others from using the same mark or a similar mark that is likely to cause confusion in the marketplace.[10]]

[Plaintiff's objects to Defendant's proposed instruction as unnecessary because the effectiveness of the purported trademark assignment between Joe Cool and CDI is not at issue in the trial against Baksht. Plaintiff further objects that the language "but if the mark is a common law mark there is no requirement of a writing" is contrary to the law and is not present in the cited model instruction. Plaintiff proposes that if the overall instruction is to be included, that the sentence containing this language is omitted in its entirety, or only the first half of that sentence is included.]

[10] ABA Model Jury Instruction 2.1 (2008).

Trademark Registration: The owner of a mark may apply to obtain a certificate of registration issued by the United States Patent and Trademark Office by submitting an application showing use of the mark in commerce or showing a bona fide intent to begin such use and then in fact using the mark in commerce. After obtaining a trademark registration certificate, the owner, in an action for infringement, may rely on the certificate to create a presumption that the mark is valid, that the registrant owns it, and that the owner has the right to prevent others from using the same mark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.[11]

Likelihood of Confusion: To prove infringement, Plaintiff Monster Energy must prove, by a preponderance of the evidence, that the Defendant, without Plaintiff's consent, used in commerce a reproduction, copy, counterfeit, or colorable imitation of Plaintiff's mark in connection with the distribution or advertisement of goods, such that the Defendant's use of the mark is likely to cause confusion as to the source of the goods. It is not necessary that the mark used by the Defendant Baksht be an exact copy of Plaintiff Monster Energy's mark. Rather, Plaintiff must demonstrate that, when viewed in its entirety, the mark used by the Defendant, if any, is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.[12]

[11] ABA Model Jury Instruction 2.1 (2008).

[12] ABA Model Jury Instruction 2.1 (2008).

[Plaintiff's proposed instruction on induced trademark infringement:

Induced Infringement: A person is liable for trademark infringement by another if the person intentionally induces another to infringe the trademark, or if the person had direct control and monitoring of the goods used by another to infringe, and knew or should have known that the other party would infringe.[13]]

[13] ABA Model Jury Instruction 2.4.5 (2008).

[Plaintiff's proposed instruction on vicarious trademark infringement:

Vicarious Infringement: A party is liable for the trademark infringement of another where the two have an actual or apparent partnership and have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.[14] An individual officer of a company is liable for the trademark infringement of his company if he actively and knowingly caused the infringement.[15] ]

[14] ABA Model Jury Instruction 2.4.6 (2008).

[15] *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477-78 (11th Cir. 1991).

## Copyright Infringement Preliminary Instructions

[Plaintiff's proposed instruction:

The Plaintiff, Monster Energy, claims ownership of a copyright and seeks damages against the Defendant David Baksht for copyright infringement. The Defendant denies infringing the copyright and asserts the allegedly infringing design was created independently. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.[16]]

[16] Ninth Circuit Model Jury Instruction 17.0 (2007).

[Defendant’s proposed instruction:

The Plaintiff, Monster Energy, claims ownership of a copyright and seeks damages against the Defendant David Baksht for copyright infringement. The Defendant denies infringing the copyright and asserts, in any event, that any mark he may have used was created independently. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.]

[Plaintiff objects to Defendant’s proposed instruction because its reference to use is an incorrect characterization of the law of individual liability in the copyright infringement context. *Microsoft Corp. v. Technology Enterprises, LLC*, 805 F. Supp. 2d 1330, 1333 (S.D. Fla. 2011); *Southern Bell Tel. & Tel. Co. v. Assoc. Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985). The instruction is also an incorrect characterization of the law because “use” is not necessary to establish liability for copyright infringement. *See* 17 USC § 106.]

Definition of Copyright: The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

Copyrighted work can be a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.[17]

Copyright Interests: The copyright owner may transfer to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, preparing a derivative work from, distributing, performing, or displaying, the copyrighted work. To be valid, the transfer must be in writing. The person to whom a right is transferred is called an assignee.[18]

How Copyright Is Obtained: Copyright automatically exists in a work the moment it is fixed in any tangible medium of expression. The owner of the copyright may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.[19]

Plaintiff's Burden of Proof: In this case, the plaintiff, Monster Energy, contends that the defendant, David Baksht, has infringed the Plaintiff's copyrights. The Plaintiff has the burden of proving by a preponderance of the evidence that the Plaintiff is the owner of the copyright and that the Defendant copied original elements of the copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.[20]

---

[17] Ninth Circuit Model Jury Instruction 17.0 (2007).

[18] Ninth Circuit Model Jury Instruction 17.0 (2007).

[19] Ninth Circuit Model Jury Instruction 17.0 (2007).

[20] Ninth Circuit Model Jury Instruction 17.0 (2007).

Proof of Copying: To prove that the Defendant copied the Plaintiff's work, the Plaintiff may show that the Defendant had access to the Plaintiff's copyrighted work and that there are substantial similarities between the Defendant's work and the Plaintiff's copyrighted work.[21] Alternatively, Plaintiff may show that there is striking similarity between the Plaintiff's copyrighted work and the Defendant's work.[22]

Liability for Infringement: One who reproduces, prepares derivative works from, distributes, or displays a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright.

---

[21] Ninth Circuit Model Jury Instruction 17.0 (2007).

[22] ABA Model Jury Instruction 1.5.3 (2008).

[Plaintiff's proposed instruction on vicarious and contributory copyright infringement:

Copyright may also be infringed by vicariously infringing and contributorily infringing.[23]

Vicarious Infringement: A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.[24]

Contributory Infringement: A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces, causes, or materially contributes to the activity.[25]]

---

[23] Ninth Circuit Model Jury Instruction 17.0 (2007).

[24] Ninth Circuit Model Jury Instruction 17.0 (2007).

[25] Ninth Circuit Model Jury Instruction 17.0 (2007).

Defenses to Infringement: The Defendant contends that there is no copyright infringement. There is no copyright infringement if the Defendant independently created the challenged work.[26]

**Additional Preliminary Instructions**

During the trial you should keep an open mind and should avoid reaching any hasty impressions or conclusions. Reserve your judgment until you have heard all of the testimony and evidence, the closing arguments or summations of the lawyers, and my instructions or explanations to you concerning the applicable law.[27]

Because of your obligation to keep an open mind during the trial, coupled with your obligation to then decide the case only on the basis of the testimony and evidence presented, you must not discuss the case during the trial in any manner among yourselves or with anyone else, nor should you permit anyone to discuss it in your presence; and you should avoid reading any newspaper articles that might be published about the case. You should also avoid seeing or hearing any television or radio comments about the trial.[28]

From time to time during the trial I may be called upon to make rulings of law on objections or motions made by the lawyers. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. And if I should sustain an objection to a question that goes unanswered by a witness, you should not guess or speculate what the answer might have been nor should you draw any inferences or conclusions from the question itself.[29]

During the trial it may be necessary for me to confer with the lawyers from time to time out of your hearing with regard to questions of law or procedure that require consideration by the court or judge alone. On some occasions you may be excused from the courtroom for the same reason. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.[30]

---

[26] Ninth Circuit Model Jury Instruction 17.0 (2007).

[27] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[28] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[29] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[30] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

The order of the trial's proceedings will be as follows: In just a moment the lawyers for each of the parties will be permitted to address you in turn and make what we call their “opening statements.” The Plaintiff will then go forward with the calling of witnesses and presentation of evidence during what we call the Plaintiff's “case in chief.” When the Plaintiff finishes (by announcing “rest”), the Defendant will proceed with witnesses and evidence, after which, within certain limitations, the Plaintiff may be permitted to again call witnesses or present evidence during what we call the “rebuttal” phase of the trial. The Plaintiff proceeds first, and may rebut at the end, because the law places the burden of proof or burden of persuasion upon the Plaintiff (as I will further explain to you as a part of my final instructions).[31]

When the evidence portion of the trial is completed, the lawyers will then be given another opportunity to address you and make their summations or final arguments in the case, after which I will instruct you on the applicable law and you will then retire to deliberate upon your verdict.[32]

Now, we will begin by affording the lawyers for each side an opportunity to make their opening statements in which they may explain the issues in the case and summarize the facts they expect the evidence will show.[33]

I caution you that the statements that the lawyers make now (as well as the arguments they present at the end of the trial) are not to be considered by you either as evidence in the case or as your instruction on the law. Nevertheless, these statements and arguments are intended to help you understand the issues and the evidence as it comes in, as well as the positions taken by both sides. So I ask that you now give the lawyers your close attention as I recognize them for purposes of opening statements.[34]

---

[31] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[32] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[33] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

[34] Eleventh Circuit Pattern Jury Instructions, Preliminary Instructions Before Trial (2005).

## Final Jury Instructions

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished you will go to the jury room and begin your discussions - - what we call your deliberations.

## Claims and Defenses

### Plaintiff's Claims

Plaintiff Monster Energy Corporation has brought claims against Defendant David Baksht for:

1. Federal Copyright Infringement under 17 U.S.C. § 501

2. Federal Trademark Infringement and Counterfeiting under 15 U.S.C. § 1114

3. Federal Trademark Dilution of the M Claw Trademark under 15 U.S.C. § 1125(c)

4. Federal False Designation of Origin under 15 U.S.C. § 1125(a)

5. Florida Common Law Unfair Competition

I will now explain more about each of Monster Energy's claims and the issues you should consider in your deliberations of these claims.

### Copyright Infringement

### Introduction

Plaintiff here claims the ownership of copyrights in the Stylized Claw with Jagged Edges (Federal Copyright Registration No. VA 1-789-900) and the Monster Energy Can Art (Federal Copyright Registration. No. VA 1-727-577). A copyright grants the owner exclusive rights to do any of the following: reproduce, distribute, or display the copyrighted work. A copyright also grants the owner exclusive rights to create a new work that is based upon the copyrighted work. The new work is called a "derivative work." Because these rights are exclusive, if someone else takes one of these actions, they are said to have "infringed" the copyright. Plaintiff here alleges that the Defendant

has infringed Plaintiff's copyright in the Stylized Claw and the Monster Energy Can Art.[35] Defendant David Baksht denies that he has done so.

## Exclusive Rights

As I mentioned before, a copyright in a work grants to the owner of the copyright certain specified exclusive rights. In this case, the Plaintiff asserts that the Defendant infringed its copyright by:

1. Making copies of the copyrighted works;

2. Preparing derivative works based upon the works;

3. Distributing copies of the works to the public; and

4. Displaying the copyrighted works publicly

In order to prove infringement, Plaintiff must prove by a preponderance of the evidence that the Defendant has violated any of these exclusive rights.[36]

## Authorship, Ownership and Licensing

## Proof of Legal and Beneficial Ownership of an Exclusive Right

To sue for copyright infringement, Plaintiff must be a legal owner of an exclusive right under a copyright.

To be a legal owner of a copyright in a work, Plaintiff must prove by a preponderance of the evidence that it has legally obtained and held the exclusive right in the works that have allegedly been infringed by the Defendant.[37]

## Ownership Through Valid Transfer

Plaintiff claims ownership through a transfer of rights. The owner of a copyright may transfer all or any one of the exclusive rights that I described earlier, but the transfer must be made in writing and signed by either the owner of the rights conveyed or the owner's authorized agent. An oral transfer that is later reduced to such a signed writing satisfies this requirement.

In addition to proving the existence of a written document confirming the transfer of rights, Plaintiff must prove that it exclusively owned the right at the time defendant

[35] ABA Model Jury Instruction 1.1 (2008).

[36] ABA Model Jury Instruction 1.2 (2008).

[37] ABA Model Jury Instruction 1.3.1 (2008).

allegedly infringed that right; or that it expressly obtained the right to sue for infringement based upon acts that occurred before Plaintiff obtained ownership.[38]

**Proof of Ownership by Submission of Certification of Registration**

In addition to proving ownership of the copyrighted work, Plaintiff Monster Energy must prove that its claim of copyright is a valid claim. Plaintiff has submitted Certificates of Registration issued by the Register of Copyrights as proof of valid claims of copyright. The existence of those certificates gives rise to a presumption that the copyrights are valid and that the facts as set forth on those certificates are true and correct.

In this case, that presumption has not been rebutted. This means that you must find that the copyrights are valid and that each of the facts set forth in the certificates are true.[39]

[38] ABA Model Jury Instruction 1.3.8 (2008).

[39] ABA Model Jury Instruction 1.3.10 (2008).

[Plaintiff's proposed instruction on direct copyright infringement:

**Infringement**

**Elements of Direct Infringement**

Plaintiff contends that its copyrights were infringed by the Defendant, by Consolidated Distributors, by Joe Cool, and by the alleged joint venture between Consolidated Distributors and Joe Cool. Plaintiff also contends that the Defendant is responsible for any copyright infringement by any of these businesses. For convenience, I will refer to Consolidated Distributors, Joe Cool and the alleged joint venture between them as "the allegedly infringing businesses."

I will explain to you momentarily what Plaintiff must prove to establish that the Defendant is responsible for any copyright infringement by the allegedly infringing businesses. But first I will explain to you the elements of direct copyright infringement.

To prove direct infringement of the copyright in a work, Plaintiff must prove the following by a preponderance of the evidence:

1. Plaintiff owns a valid copyright in the work;

2. The Defendant or one of the allegedly infringing businesses copied matter from the work; and

3. An ordinary reasonable observer would find that the copied matter includes substantial protected matter.

I will explain each of these elements further.[40]]

[40] ABA Model Jury Instruction 1.5.1 (2008).

[Defendant's proposed instruction on copyright infringement:

**Infringement**

**Elements of Infringement**

Plaintiff contends that its copyrights were infringed by the Defendant. I will explain to you the elements of copyright infringement.

To prove infringement of the copyright in a work, Plaintiff must prove the following by a preponderance of the evidence:

1. Plaintiff owns a valid copyright in the work;

2. The Defendant copied matter from the work; and

3. An ordinary reasonable observer would find that the copied matter includes substantial protected matter.

I will explain each of these elements further.[41]]

[Plaintiff objects to Defendant's proposed instruction because it does not allow for secondary liability.]

[41] ABA Model Jury Instruction 1.5.1 (2008).

[Plaintiff's proposed instruction on copying - proof by direct or circumstantial evidence:

**Copying—Proof by Direct or Circumstantial Evidence**

Plaintiff claims that the Defendant and the allegedly infringing businesses copied from Plaintiff's copyrighted works. Copying may be established, as is the case with other facts, by direct or circumstantial evidence. An example of direct evidence would be an admission by Joe Cool that part or all of the work was copied. Direct evidence may also be the credible testimony of a witness who saw the work being copied. An example of circumstantial evidence would be that Joe Cool exerted efforts to obtain a copy of Plaintiff's work, and Joe Cool's work appeared soon after it obtained a copy. In considering the evidence, you should take into account all the evidence presented by Plaintiff and the Defendant and give the evidence the weight you think it deserves, whether it is direct or circumstantial evidence.[42]]

[42] ABA Model Jury Instruction 1.5.2 (2008).

[Defendant's proposed instruction on copying - proof by direct or circumstantial evidence:

**Copying—Proof by Direct or Circumstantial Evidence**

Plaintiff claims that the Defendant copied from Plaintiff's copyrighted work. Copying may be established, as is the case with other facts, by direct or circumstantial evidence. An example of direct evidence would be an admission by the Defendant that part or all of the work was copied. Direct evidence may also be the credible testimony of a witness who saw the work being copied. An example of circumstantial evidence would be that Defendant exerted efforts to obtain a copy of Plaintiff's work, and Defendant's work appeared soon after it obtained a copy. In considering the evidence, you should take into account all the evidence presented by Plaintiff and the Defendant and give the evidence the weight you think it deserves, whether it is direct or circumstantial evidence.[43]]

[Plaintiff objects to Defendant's proposed instruction because it does not allow for secondary liability.]

[43] ABA Model Jury Instruction 1.5.2 (2008).

[Plaintiff's proposed instruction on copying - proof by circumstantial evidence of similarity:

**Copying—Proof by Circumstantial Evidence of Similarity**

Plaintiff claims that the Defendant and the allegedly infringing businesses copied matter from Plaintiff's copyrighted works. In addition to using other forms of circumstantial evidence, Plaintiff may seek to prove copying by pointing to similarities between Plaintiff's and the allegedly infringing works. Plaintiff may seek to do this in two ways: (1) by proving access and probative similarity, or (2) by proving striking similarity. If Plaintiff proves either of these alternatives by a preponderance of the evidence, the Defendant then has the burden of proving independent creation. I will explain these alternatives further.[44]]

---

[44] ABA Model Jury Instruction 1.5.3 (2008).

[Defendant's proposed instruction on copying - proof by circumstantial evidence of similarity:

**Copying—Proof by Circumstantial Evidence of Similarity**

Plaintiff claims that the Defendant copied matter from Plaintiff's copyrighted works. In addition to using other forms of circumstantial evidence, Plaintiff may seek to prove copying by pointing to similarities between Plaintiff's and the allegedly infringing works. Plaintiff may seek to do this in two ways: (1) by proving access and probative similarity, or (2) by proving striking similarity. If Plaintiff proves either of these alternatives by a preponderance of the evidence, the Defendant then has the burden of proving independent creation. I will explain these alternatives further.[45]]

[Plaintiff objects to Defendant's proposed instruction because it does not allow for secondary liability.]

[45] ABA Model Jury Instruction 1.5.3 (2008).

[Plaintiff's proposed instruction on copying - indirect evidence: access and probative similarity:

**Copying—Indirect Evidence: Access and Probative Similarity**

Plaintiff may seek to prove copying indirectly by proving both of the following by a preponderance of the evidence:

1. The Defendant or the allegedly infringing businesses had access to Plaintiff's copyrighted works; and

2. There are similarities between the allegedly infringing work and Plaintiff's work that, given all the circumstances, make it more likely than not that the Defendant or the allegedly infringing businesses copied parts of its work from Plaintiff's work. This is called "probative similarity."

The Defendant or the allegedly infringing businesses had access to Plaintiff's works if it had a reasonable opportunity to see Plaintiff's work before creating the 3DL design.

You may consider any evidence that is relevant to determine whether Plaintiff has proved both these elements by a preponderance of the evidence. If Plaintiff has done so, then the Defendant bears the burden of presenting evidence that he or the allegedly infringing businesses created their work independently, as I will explain to you shortly. If the Defendant presents such evidence, you should decide, based on all the evidence, whether Plaintiff has proved by a preponderance of the evidence the elements of infringement that I have presented to you.[46]\

[46] ABA Model Jury Instruction 1.5.4 (2008).

[Defendant's proposed instruction on copying - indirect evidence: access and probative similarity:

**Copying—Indirect Evidence: Access and Probative Similarity**

Plaintiff may seek to prove copying indirectly by proving both of the following by a preponderance of the evidence:

1. The Defendant had access to Plaintiff's copyrighted works; and

2. There are similarities between the allegedly infringing work and Plaintiff's work that, given all the circumstances, make it more likely than not that the Defendant copied parts of its work from Plaintiff's work. This is called "probative similarity."

The Defendant had access to Plaintiff's works if it had a reasonable opportunity to see Plaintiff's work before creating the 3DL design.

You may consider any evidence that is relevant to determine whether Plaintiff has proved both these elements by a preponderance of the evidence. If Plaintiff has done so, then the Defendant bears the burden of presenting evidence that he created their work independently, as I will explain to you shortly. If the Defendant presents such evidence, you should decide, based on all the evidence, whether Plaintiff has proved by a preponderance of the evidence the elements of infringement that I have presented to you.[47]]

[Plaintiff objects to Defendant's proposed instruction because it does not allow for secondary liability.]

[47] ABA Model Jury Instruction 1.5.4 (2008).

[Plaintiff's proposed instruction on copying - indirect evidence: striking similarity:

**Proof of Copying by Indirect Evidence: Striking Similarity**

Plaintiff may also try to prove copying by presenting evidence that there is a striking similarity between its works and the alleged copy. Striking similarity is similarity that can only be rationally explained by copying, rather than by coincidence, independent creation, a common source of inspiration, or inclusion of similar matter from a work created by third parties. In order for Plaintiff to prove copying in this way, Plaintiff must convince you by a preponderance of the evidence that an element or combination of elements found in both works, whether or not they are protected matter, would not exist in the alleged copy unless the Defendant or the allegedly infringing businesses had copied it from Plaintiff's work. The fact that certain elements are present in both Plaintiff's and the alleged copy might not imply that copying was involved if the same elements are also found in numerous other works. But in the absence of that or another plausible explanation, the similarities may lead you to conclude that the elements must have been copied. You may consider whether the two works contain the same mistakes, idiosyncrasies or other unexpected matter in determining whether the similarities are so striking that the Defendant or the allegedly infringing businesses must have copied from Plaintiff.

Similarities that are obvious are not necessarily striking. If other circumstances are such that obvious similarities do not cause you to infer copying, such as if two photographs of Niagara Falls are very similar because they were taken at the same time from the same spot, the similarities are not "striking" and should not cause you to infer copying.

Proving striking similarity is an alternative to proving access and probative similarity. The degree or nature of the similarity required for striking similarity is therefore greater than the similarity required for probative similarity because a finding of striking similarity permits you to conclude that there has been copying even if there has been no proof that the Defendant or the allegedly infringing businesses had access to Plaintiff's work. Of course, if the Defendant proves by a preponderance of the evidence that he and the allegedly infringing businesses in fact had no access to Plaintiff's work, either direct or indirect, then it could not have copied from Plaintiff's work, and you should find for the Defendant.

If you find that the alleged copy is strikingly similar to Plaintiff's work, the Defendant has the burden of proving by a preponderance of the evidence that, despite the striking similarity, he or the allegedly infringing businesses created the work independently. If he fails to meet that burden, you should conclude that the Defendant or the allegedly infringing businesses copied from Plaintiff's work and therefore that Plaintiff has proven this element of infringement.[48]

[48] ABA Model Jury Instruction 1.5.5 (2008).

[Defendant's proposed instruction on copying - indirect evidence: striking similarity:

**Proof of Copying by Indirect Evidence: Striking Similarity**

Plaintiff may also try to prove copying by presenting evidence that there is a striking similarity between its works and the alleged copy. Striking similarity is similarity that can only be rationally explained by copying, rather than by coincidence, independent creation, a common source of inspiration, or inclusion of similar matter from a work created by third parties. In order for Plaintiff to prove copying in this way, Plaintiff must convince you by a preponderance of the evidence that an element or combination of elements found in both works, whether or not they are protected matter, would not exist in the alleged copy unless the Defendant had copied it from Plaintiff's work. The fact that certain elements are present in both Plaintiff's and the alleged copy might not imply that copying was involved if the same elements are also found in numerous other works. But in the absence of that or another plausible explanation, the similarities may lead you to conclude that the elements must have been copied. You may consider whether the two works contain the same mistakes, idiosyncrasies or other unexpected matter in determining whether the similarities are so striking that the Defendant must have copied from Plaintiff.

Similarities that are obvious are not necessarily striking. If other circumstances are such that obvious similarities do not cause you to infer copying, such as if two photographs of Niagara Falls are very similar because they were taken at the same time from the same spot, the similarities are not "striking" and should not cause you to infer copying.

Proving striking similarity is an alternative to proving access and probative similarity. The degree or nature of the similarity required for striking similarity is therefore greater than the similarity required for probative similarity because a finding of striking similarity permits you to conclude that there has been copying even if there has been no proof that the Defendant had access to Plaintiff's work. Of course, if the Defendant proves by a preponderance of the evidence that he in fact had no access to Plaintiff's work, either direct or indirect, then it could not have copied from Plaintiff's work, and you should find for the Defendant.

If you find that the alleged copy is strikingly similar to Plaintiff's work, the Defendant has the burden of proving by a preponderance of the evidence that, despite the striking similarity, any work that he used was created independently. If he fails to meet that burden, you should conclude that the Defendant copied from Plaintiff's work and therefore that Plaintiff has proven this element of infringement.[49]

[49] ABA Model Jury Instruction 1.5.5 (2008).

[Plaintiff objects to Defendant's proposed instruction because it does not allow for secondary liability, and it improperly limits infringement to "use". *See* 17 USC § 106]

[Plaintiff's proposed instruction on copying - indirect evidence: : significance of dissimilarities:

**Copying—Indirect Evidence: Significance of Dissimilarities**

When considering similarity, for the purpose of determining whether the Defendant or the allegedly infringing businesses copied from Plaintiff's work, your primary focus should be on the points of similarity rather than the points of dissimilarity. If you find by a preponderance of the evidence, however, that dissimilarities between the two works so heavily outweigh the similarities that you do not believe copying occurred, or that the works are dissimilar in the very aspects in which Plaintiff claims they are similar, you should find in favor of the Defendant.[50]]

---

[50] ABA Model Jury Instruction 1.5.7 (2008).

[Defendant's proposed instruction on copying - indirect evidence: significance of dissimilarities:

**Copying—Indirect Evidence: Significance of Dissimilarities**

When considering similarity, for the purpose of determining whether the Defendant copied from Plaintiff's work, your primary focus should be on the points of similarity rather than the points of dissimilarity. If you find by a preponderance of the evidence, however, that dissimilarities between the two works so heavily outweigh the similarities that you do not believe copying occurred, or that the works are dissimilar in the very aspects in which Plaintiff claims they are similar, you should find in favor of the Defendant.[51]]

[Plaintiff objects to Defendant's proposed instruction because it does not allow for secondary liability.]

[51] ABA Model Jury Instruction 1.5.7 (2008).

[Plaintiff's proposed instruction on sufficiency of copying:

**Sufficiency of Copying**

If you conclude that Plaintiff has proven, whether by direct or circumstantial evidence, that the Defendant or one of the allegedly infringing businesses has copied matter from Plaintiff's work, you must then determine whether the matter copied is sufficient to constitute infringement. You should find infringement if the matter copied from Plaintiff's work, as viewed by an ordinary reasonable observer, includes substantial protected matter. You should not find infringement because of the copying of unprotected matter, such as ideas. You should find infringement only if an ordinary reasonable observer would find that the protected matter copied from Plaintiff's work is substantial.

Substantiality is determined by considering both the amount, or quantity, and the significance, or quality, of the protected matter that has been copied. You should not find infringement if only a small amount of relatively unimportant protected matter has been copied. However, the significance of the copied protected matter to Plaintiff's work may outweigh the fact that not a large amount of material has been copied. Because the organization of the matter in a work may itself be protected, in determining whether substantial protected matter has been copied, you may take into account similarities or dissimilarities in the organization of protected matter that has been copied.

Substantiality is not determined simply by the percentage of Plaintiff's work that was copied. In order for you to find infringement it is not necessary to find that a large fraction of Plaintiff's work was copied. Similarly, substantiality is not determined by the percentage of the Defendant's work that was not copied. It is not a defense to infringement that a large fraction of the Defendant's work was created independently.[52]]

---

[52] ABA Model Jury Instruction 1.5.8 (2008).

[Defendant's proposed instruction on sufficiency of copying:

**Sufficiency of Copying**

If you conclude that Plaintiff has proven, whether by direct or circumstantial evidence, that the Defendant has copied matter from Plaintiff's work, you must then determine whether the matter copied is sufficient to constitute infringement. You should find infringement if the matter copied from Plaintiff's work, as viewed by an ordinary reasonable observer, includes substantial protected matter. You should not find infringement because of the copying of unprotected matter, such as ideas. You should find infringement only if an ordinary reasonable observer would find that the protected matter copied from Plaintiff's work is substantial.

Substantiality is determined by considering both the amount, or quantity, and the significance, or quality, of the protected matter that has been copied by Defendant. You should not find infringement if only a small amount of relatively unimportant protected matter has been copied. However, the significance of the copied protected matter to Plaintiff's work may outweigh the fact that not a large amount of material has been copied. Because the organization of the matter in a work may itself be protected, in determining whether substantial protected matter has been copied, you may take into account similarities or dissimilarities in the organization of protected matter that has been copied.

Substantiality is not determined simply by the percentage of Plaintiff's work that was copied by Defendant. In order for you to find infringement it is not necessary to find that a large fraction of Plaintiff's work was copied. Similarly, substantiality is not determined by the percentage of the Defendant's work that was not copied. It is not a defense to infringement that a large fraction of the Defendant's work was created independently.[53]

[Plaintiff objects to Defendant's proposed instruction because it does not allow for secondary liability.]

[53] ABA Model Jury Instruction 1.5.8 (2008).

[Plaintiff's proposed instruction on irrelevance of intent:

**Irrelevance of Intent**

For purposes of determining whether the Defendant or the allegedly infringing businesses has directly infringed Plaintiff's copyrights, you are not to consider whether the Defendant or the allegedly infringing businesses intended to infringe the copyrights. An unintentional infringement is an infringement nonetheless. In other words, for you to find infringement, it is not necessary to find that the Defendant or the allegedly infringing businesses intended the infringement.[54]]

---

[54] ABA Model Jury Instruction 1.5.9 (2008).

[Defendant's proposed instruction on irrelevance of intent:

**Irrelevance of Intent**

For purposes of determining whether the Defendant has infringed Plaintiff's copyrights, you are not required to consider whether the Defendant intended to infringe the copyrights. An unintentional infringement is an infringement nonetheless. In other words, for you to find infringement, it is not necessary to find that the the Defendant intended the infringement.[55]]

[Plaintiff objects to Defendant's proposed instruction because it is an incorrect statement of the law in that it impermissibly permits the jury to consider the Defendant's intent as a predicate to determining whether the Defendant infringed MEC's copyrights. Intent is relevant to damages but is not a requirement for infringement per se.]

[55] ABA Model Jury Instruction 1.5.9 (2008).

[Plaintiff's proposed instruction on contributory copyright infringement:

**Contributory Infringement**

As I mentioned before, Plaintiff contends that the Defendant is responsible for any copyright infringement by the allegedly infringing businesses, which include Joe Cool, Consolidated Distributors or the alleged joint venture between them. Plaintiff relies on two legal theories in support of this claim: contributory infringement and vicarious infringement. I will explain each of these theories to you now.

Plaintiff contends that the Defendant has engaged in contributory infringement of Plaintiff's copyrights. Contributory infringement is a distinct claim from direct infringement. To prove contributory infringement, Plaintiff must prove the following three elements by a preponderance of the evidence:

1. Another party—in this case Joe Cool, Consolidated Distributors, or the alleged joint venture between them—directly infringed Plaintiff's copyright;

2. The Defendant knew or should have known of the infringing activity of the allegedly infringing business; and

3. The Defendant induced, caused, or materially contributed to the infringing activity of the allegedly infringing business.

If Plaintiff proves all three of these elements, you should find that the Defendant is responsible for any infringement by Joe Cool, Consolidated Distributors, or the alleged joint venture between them. If Plaintiff fails to prove any of these elements, you should find for the Defendant.[56]]

---

[56] ABA Model Jury Instruction 1.5.12 (2008).

[Plaintiff's proposed instruction on vicarious copyright infringement:

**Vicarious Infringement**

Plaintiff also contends that the Defendant vicariously infringed Plaintiff's copyright. Vicarious infringement is a distinct claim from direct infringement and contributory infringement. To prove vicarious infringement, plaintiff must prove the following three elements by a preponderance of the evidence:

1. Another person—in this case Joe Cool, Consolidated Distributors, or the alleged joint venture between them—directly infringed plaintiff's copyrights;

2. The Defendant profited from or had a financial interest in the infringing activities of the allegedly infringing businesses; and

3. The Defendant had the right and ability to supervise or control the infringing activities of the allegedly infringing businesses.

If Plaintiff fails to prove any of these elements, you should find for the Defendant. However, if Plaintiff proves these elements, it need not prove that the Defendant knew of the infringement.[57]]

---

[57] ABA Model Jury Instruction 1.5.13 (2008).

[Plaintiff's proposed instruction on liability for infringement of CDI:

**Liability for the Infringement of Consolidated Distributors**

Plaintiff also contends that Defendant should be held liable for any infringement by Consolidated Distributors for an additional reason.

Plaintiff claims that Consolidated Distributors was a mere instrument or tool – what the law calls the alter ego – of the Defendant so that the separate status of Consolidated Distributors should be disregarded and the Defendant should be held legally responsible for the acts of Consolidated Distributors.

Under our free enterprise economic system, the law permits, even encourages, the formation of corporations as a means of attracting investments by stockholders who can invest their money in the corporate enterprise without risking individual liability for corporate acts and transactions. In return, society gets the benefit of the jobs and other commercial activity generated by the business of the corporation. In most cases, therefore, the status of a corporation as a separate legal entity apart from its owners must be respected and preserved.

This rule is not absolute, however, and the separate status of a corporation can be disregarded where a stockholder uses a corporation as a mere instrumentality or tool for the purpose of evading or violating a statutory or other legal duty, or for accomplishing some fraud or illegal purpose.

In deciding whether Consolidate Distributors should be treated in this case as the alter ego of the Defendant, you should consider:

1. The purpose for which Defendant formed Consolidated Distributors;

2. The absence of formalities, i.e., the issuance of stock, the election and regular meetings of directors, and the keeping of corporate records

3. Whether the funds of the corporation were intermingled or not intermingled with the funds of Defendant;

4. Whether Consolidated Distributors was inadequately capitalized;

5. Whether Consolidated Distributors shared common office space, address, and telephone numbers with Defendant

6. The activity or inactivity of others as officers or directors in the business affairs of the corporation; and

7. Any other factors disclosed by the evidence and tending to show that Consolidated Distributors was or was not operated as an entity separate and apart from Defendant.[58]]

[58] Eleventh Circuit Pattern Jury Instruction 1.10.5.1; *Peery v. United Capital Corp.*, 84 A.D.3d 1201, 1202, 924 N.Y.S.2d 470, 472-73 (N.Y. App. 2011).

**Defenses**

[Plaintiff's proposed instruction on the defense of independent creation:

**Defenses - Independent Creation**

The Defendant denies that he or the allegedly infringing businesses copied matter from Plaintiff's works, and contends that his work was created independently; in other words, without copying.

If you find that evidence presented by the Defendant, weighed along with all the other evidence in this case, makes it more likely that the Defendant or the allegedly infringing businesses created the work independently than that they copied from Plaintiff, you should find in favor of the Defendant.[59]]

[59] ABA Model Jury Instruction 1.6.1 (2008).

[Defendant's proposed instruction on the defense of independent creation:

**Defenses - Independent Creation**

The Defendant denies that he copied matter from Plaintiff's works, and contends that his work was created independently; in other words, without copying.

If you find that evidence presented by the Defendant, weighed along with all the other evidence in this case, makes it more likely that the work was created independently than that he copied from Plaintiff, you should find in favor of the Defendant.[60]]

[Plaintiff objects to Defendant's proposed instruction because it does not allow for secondary liability.]

[60] ABA Model Jury Instruction 1.6.1 (2008).

**Copyright Damages**

**Introduction**

If you find that the Defendant has infringed Plaintiff's copyrights, then Plaintiff may recover either:

1. The Defendant's profits attributable to infringement; or, at the copyright owner's option,

2. Statutory damages.[61]

**Infringer's Profits**

In establishing the amount of the Defendant's profits, Plaintiff is required to present proof only of the Defendant's gross revenue and that there is some reasonable relationship, either direct or indirect, between those revenues and the infringement. Once these two elements are established, the burden of proof then shifts to the Defendant to reduce this amount. The Defendant must then prove, by a preponderance of evidence, the amount of his deductible expenses, and other elements of profit attributable to factors other than the infringement.

In other words, you are to calculate the profits attributable to the infringement, if you find any, as the Defendant's gross revenues proven by Plaintiff, less the costs and other elements that the Defendant proves are related to factors other than infringement. Such costs and other deductible amounts may include, for example, a reasonable portion of overhead expenses such as rent, marketing, and other business costs that are related to the production of the infringing product.[62]

**Statutory Damages**

A copyright owner may elect to recover statutory damages for each infringed work that was timely registered. Within certain limits that I will describe below, the statute gives you broad discretion to determine the amount of statutory damages that you find to be just in light of the evidence presented. In deciding what amount is just, you should take into consideration the purposes and factors that I will describe to you.

The general purposes of statutory damages include the following:

1. Relieving copyright owners of the often difficult burden of proving their actual damages and the defendant's profits;

---

[61] ABA Model Jury Instruction 1.7.1 (2008).

[62] ABA Model Jury Instruction 1.7.3 (2008).

2. Providing adequate compensation to the copyright owner and disgorgement of the infringer's benefits from infringement;

3. Deterring the infringer and others similarly situated from future infringement; and

4. Where appropriate, punishing the infringer.

Thus, statutory damages are available without proof of plaintiff's actual damages, the Defendant's profits, or other direct economic effects of the infringement.[63]

**One Statutory Damages Award per Work**

Each timely registered, infringed work is entitled to one award of statutory damages within a certain range specified by Congress, which I will provide to you in a moment. You must make one and only one award of statutory damages for each "work" infringed. This remains true no matter how many infringing copies have been made.

In this case you are to regard each of Plaintiff's two copyrights as a "work" for purposes of statutory damage awards.[64]

**State of Mind and Corresponding Ranges of Statutory Damages**

In awarding statutory damages, for each infringed work you are to choose one of three categories, depending upon your determination of the Defendant's state of mind: (1) innocent infringement; (2) willful infringement; or (3) infringement that was neither innocent nor willful. As I will describe, each category has an associated range of statutory damages, and you must determine the award that is just under the circumstances within the range for the applicable category.

You have wide discretion in setting the amount of statutory damages, using the factors I will give you as guidance, as long as you do not go below or above the statutory range applicable to each work. For example, even if you find that the infringement was willful, you need not award the statutory maximum. Similarly, even if you find the infringement was innocent, you need not award the statutory minimum.

Innocent Infringement: An infringement is innocent if the Defendant was not aware, and had no reason to believe, that his acts constituted an infringement of copyright. It is the Defendant's burden to prove, by a preponderance of the evidence, that his infringement was innocent. If Plaintiff provided proper notice of copyright prior to the infringement, such as by affixing a copyright notice on the work, the infringement cannot be innocent.

---

[63] ABA Model Jury Instruction 1.7.4 (2008).

[64] ABA Model Jury Instruction 1.7.6 (2008).

The level of sophistication of the Defendant in business is a factor you may consider in determining the Defendant's state of mind, including whether the Defendant's infringement was innocent.

If you find that the infringement of a work was innocent, you must award between $200 and $30,000 for each work so infringed.

Willful Infringement: An infringement is willful if the Defendant had actual knowledge that he was infringing Plaintiff's copyright, or acted in reckless disregard of that right. It is Plaintiff's burden to prove, by a preponderance of the evidence, that the infringement was willful.

You need not find that the Defendant acted maliciously in order to find willful infringement. Also, you may infer the Defendant's state of mind, including reckless disregard, from his conduct.

You are to consider all of the facts and circumstances, and in particular any notice that the Defendant had of the copyright.

If you find by a preponderance of the evidence that the infringement was willful, you must award between $750 and $150,000 for each work so infringed.

Infringement Neither Innocent Nor Willful: If you find that the infringement was neither innocent nor willful, you must award between $750 and $30,000 for each work so infringed.[65]

**Factors to Consider in Assessing Statutory Damages**

There are many facts and considerations that could impact your determination of the amount of statutory damages in a given case. In this case, you are the ultimate judge of the facts and the appropriate award, within the statutory ranges. The following are some of the factors that may help guide your assessment of an appropriate award and you may consider any or all of them:

1. The revenues, if any, lost by Plaintiff as a result of the Defendant's infringement;

2. The expenses saved or profits reaped by the Defendant in connection with the infringement;

3. Other benefits that infringement may have provided to the Defendant;

4. The value and/or nature of Plaintiff's copyrights;

---

[65] ABA Model Jury Instruction 1.7.7 (2008).

5. The duration and scope of infringement;

6. The need to deter the Defendant and others similarly situated from committing future copyright infringements;

7. The Defendant's financial situation;

8. The number of works infringed and number of awards made (that is, the overall result);

9. The Defendant's state of mind, including innocence or willfulness; and

10. In the case of willful infringement, the need to punish Defendant, if you find punishment appropriate under the facts.[66]

[66] ABA Model Jury Instruction 1.7.8 (2008).

## Trademark Infringement

### Introduction

A trademark is any word, name, symbol, device, or any combination thereof used by a person to identify and distinguish that person's goods and indicate the source of the goods. A trademark is sometimes referred to simply as a "mark."[67]

### Acquiring Trademark Rights

### Generally

The first person or company to use a trademark in the marketplace as a source of origin acquires the right to prevent others from using the same or a similar mark that is likely to cause confusion in the marketplace. . This right to prevent such use may be transferred, sold, licensed, or given by the owner to another person. An assignee then has the same right to prevent others from using the trademark or a similar mark that is likely to cause confusion in the marketplace.[68]

### Use in Commerce

A manufacturer or merchant may obtain trademark rights through actual use in commerce of any word, name, symbol or device, or combination thereof, to identify its goods. A mark is used in commerce when it is placed in any manner on the goods or their containers or the associated displays, or on the tags or labels affixed thereto, or on documents associated with the goods or their sale, and the goods are sold or transported in commerce.

### Duty to Enforce

A trademark owner has the affirmative duty to take reasonable measures to enforce its trademark rights. Failure to do so can result in the loss of trademark rights.[69]

---

[67] ABA Model Jury Instruction 2.2.2 (2008).

[68] ABA Model Jury Instruction 2.3.1 (2008).

[69] 6 *J.T. McCarthy, McCarthy on Trademarks & Unfair Competition* § 31.1 *et seq.* (4th ed. 2012).

[Defendant's proposed instruction on assignee:

**Assignee**

The owner of a mark may transfer, give, or sell the owner's interest in the mark to another person. This is called an assignment. To be enforceable, the assignment of the mark must also include the goodwill of the business connected with that mark. "Goodwill" is that part of the value of a business that reflects the propensity of buyers to continue doing business with that seller because the buyers like and/or need what the seller is selling. The requirement of accompanying transfer of goodwill can thus be understood as requiring that the assignment not disrupt the existing significance of the mark to consumers. (The person who receives the owner's interest in the mark is called an assignee and acquires all the rights of the assignor, including the right to prevent others from using the same or a similar mark that is likely to cause confusion in the marketplace. However, an assignee acquires only those rights owned by the assignor.[60] ]

[Plaintiff's objects to Defendant's proposed instruction as not relevant to any issue before the jury in the trial against Baksht because the effectiveness of the purported trademark assignment between Joe Cool and CDI is not at issue. Plaintiff further objects that the proposed instruction improperly modifies the model instruction to add the sentence "The requirement of accompanying transfer of goodwill can thus be understood as requiring that the assignment not disrupt the existing significance of the mark to consumers."

[60] ABA Model Jury Instruction 2.3.3 (2008).

[Plaintiff's proposed instruction on the effect of federal registration:

**Effect of Federal Registration**

An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectibility of the trademark and of the certificate holder's ownership of the trademark covered by that certificate. A certificate of registration issued by the U.S. Patent and Trademark Office creates a presumption that the mark is valid and owned by the holder of the certificate. Exhibits 273 and 278-285 are certificates of registration from the United States Patent and Trademark Office. They were submitted by Plaintiff Monster Energy as proof of the validity of the M Claw trademarks and the M Claw with Monster Energy trademarks, and that Plaintiff owns the trademarks.[70]

[70] ABA Model Jury Instruction 2.3.7 (2008).

[Defendant's proposed instruction on the effect of federal registration:

**Effect of Federal Registration**

An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectibility of the trademark and of the certificate holder's ownership of the trademark covered by that certificate. A certificate of registration issued by the U.S. Patent and Trademark Office creates a presumption that the mark is valid and owned by the holder of the certificate. Exhibits 273 and 278-85 are certificates of registration from the United States Patent and Trademark Office. They were submitted by Plaintiff Monster Energy as proof of the validity of the M Claw trademark and the M Claw with Monster Energy trademark, and that Plaintiff owns the trademarks.

However, the Defendant alleges that the certificates cannot be considered proof of validity of the trademark because the Defendant alleges that Joe Cool Inc.'s use of the 3DL Myrtle Beach design predates Monster Energy's first use of its M Claw. Unless the Defendant proves by a preponderance of the evidence that Joe Cool's first use of the 3DL Myrtle beach design predates Monster Energy's first use of its M Claw, you must consider the trademark to be conclusively proved as valid and owned by Plaintiff. However, if the Defendant shows that Joe Cool's first use of the 3DL design predates Monster Energy's first use of the M Claw by a preponderance of the evidence, then the facts stated in the certificate are no longer conclusively presumed to be correct. You should then consider whether all of the evidence admitted in this case, including this certificate of registration, shows by a preponderance of the evidence that the trademark is valid.[71]

[Plaintiff's objects to Defendant's proposed instruction because the only priority claim Baksht has made that is based on a prior design is the purported prior use of the three skinny lines or skinny 3DL design. The Court ruled that Baksht could not use that design for tacking purposes. Tacking as to any other design has been waived by Baksht. Moreover, Baksht no longer alleges that the 3DL design was used prior to MEC's first use of the M Claw mark, therefore the instruction on priority is improper. Plaintiff further objects to the use of the designation "3DL Myrtle Beach design" as highly prejudicial in that it gives the impression that the Myrtle Beach design is somehow related to the 3DL design.]

---

[71] ABA Model Jury Instruction 2.3.7 (2008).

[Plaintiff's proposed instruction on incontestability:

**Incontestability**

When a registered mark has been issued and in use for more than five years, the mark owner can seek to have the mark declared "incontestable". In this case Trademark Registration No. 2,903,214 is incontestable. An incontestable mark is conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.[72]]

[72] 15 U.S.C. §§ 1065, 1115(b).

[Defendant's proposed instruction on incontestability:

**Incontestability**

When a registered mark has been issued and in use for more than five years, the mark owner can seek to have the mark declared "incontestable". In this case Trademark Registration No. 2,903,214 is incontestable for use of the M Claw on beverage cans only – and is not incontestable for use on clothing. An incontestable mark is conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.[73]]

[Plaintiff's objects to Defendant's proposed instruction because it is factually inaccurate as Registration No. 2,903,214 is not merely for beverage cans. Moreover, Defendant's instruction is an incorrect statement of the law concerning the effect of mark incontestability.]

[73] 15 U.S.C. §§ 1065, 1115(b).

**Infringement**

**Infringement Generally**

In an action for infringement, the owner of a valid mark may enforce the right to prevent others from using the same or a similar mark that is likely to cause confusion in the marketplace. Anyone who, without the consent of the owner of a valid mark, uses the same or a similar mark in connection with the sale or offering for sale of goods in a manner likely to cause confusion among consumers as to the source, affiliation, or sponsorship of goods, infringes the mark.[74]

**Infringement of a Federally Registered Mark—Elements**

To prove infringement of a federally registered mark, Plaintiff Monster Energy must prove, by a preponderance of the evidence, that:

1. Plaintiff owns a mark that is registered in the U.S. Patent and Trademark Office; and

2. The Defendant used in commerce, without Plaintiff's consent, a reproduction, copy, counterfeit, or colorable imitation of Plaintiff's mark in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion.

It is not necessary that the mark used by the Defendant be an exact copy of the Plaintiff's M Claw trademark. Rather, Plaintiff Monster Energy must demonstrate that, when viewed in its entirety, the Defendant's use of the 3DL design is likely to cause confusion in the minds of reasonably prudent purchasers or other relevant members of the public, as to the source, origin, sponsorship, approval or affiliation of the product in question.[75]

**Likelihood of Confusion Factors**

In evaluating whether or not there is a likelihood of confusion, you are to consider various factors, including those that I will discuss momentarily. These factors are simply a guide to help you determine whether confusion is likely to result from simultaneous use of the two parties' marks. No single factor or consideration is dispositive, and plaintiff need not prove that all, or even most, of the factors listed below are present in any particular case to be successful. Nor are you limited to consideration of only these

---

[74] ABA Model Jury Instruction 2.4.1 (2008).

[75] ABA Model Jury Instruction 2.4.2 (2008).

factors. You must consider and weigh all of the relevant evidence in determining whether there is a likelihood of confusion.[76] Factors you may consider include: [77]

1. Strength or weakness of Plaintiff's M Claw mark. Strong marks receive a broad level of protection under the trademark laws; weak marks receive a narrower range of protection. In evaluating the strength of Plaintiff's mark, you should not rely solely on the fact that plaintiff has a registered trademark as an indicator of strength. A mark's strength is measured by both its inherent strength (how distinctive it is) and by its acquired strength (the degree of consumer recognition it has obtained in the marketplace). The more that purchasers or users associate Plaintiff's trademark uniquely with a single source of a product, then the stronger Plaintiff's mark is and the more likely it is that purchasers or users would be confused about the source of the products if the Defendant uses a similar mark.

2. Degree of similarity or dissimilarity between the Plaintiff's M Claw mark and the 3DL design. In evaluating the similarity or dissimilarity of the respective marks, each mark must be considered as a whole. Likelihood of confusion cannot be based on dissection of a mark, that is, on only part of a mark. Although there is nothing improper in giving more or less weight to a particular feature of a mark, the ultimate conclusion as to the similarity or dissimilarity of the marks must rest on consideration of the marks in their entireties. You should consider the overall impression created by the marks, keeping in mind all the things that the general buying public will likely perceive and remember about the marks, including their similarities in sight, sound, and meaning, as well as designs, fonts, colors, and other elements.

3. Degree of similarity of the parties' products. If both parties use their marks to market the same, related, or complementary types of products, then the likelihood of confusion increases. If the parties' respective goods are unrelated, then the likelihood of confusion decreases.

4. Degree of similarity of the parties' retail outlets and customers. If the parties' respective products are likely to be sold in the same or similar channels of trade, or to the same or similar classes of customers this may increase the likelihood of confusion. Conversely, if the parties' respective products are likely to be sold in different outlets, or to different classes of customers this may reduce any likelihood of confusion.

5. Degree of similarity of the parties' advertising media. If the parties' respective products are likely to be advertised in similar media, this may increase the likelihood of confusion. Conversely, if the parties' respective products are likely to be advertised in different media, this may reduce any likelihood of confusion.

---

[76] ABA Model Jury Instruction 2.4.4 (2008).

[77] *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

6. The Defendant's intent — in other words, the Defendant's good or bad faith in adopting and using the 3DL design. Proof of the Defendant's intent to confuse or deceive consumers by adopting and using a mark that is the same or similar to Plaintiff's M Claw mark is not necessary to establish a likelihood of confusion, but is relevant to determining whether or not confusion is likely. If the Defendant intended to cause confusion, it may be more likely that confusion will occur. Conversely, proof of the Defendant's good faith may also be considered.

7. Actual confusion. Actual confusion is not required for you to find a likelihood of confusion. However, if the Defendant's use of the 3DL design has led to instances of actual confusion among relevant consumers, an almost overwhelming amount of proof is necessary to refute such evidence.[78]

**Strength as a Likelihood of Confusion Factor**

As I mentioned, one factor you may consider in assessing likelihood of confusion is the strength of the Plaintiff's trademark. In determining the strength of a trademark, you should consider two factors.

First, you should consider any evidence of how strongly consumers associate the Plaintiff's trademark with the Plaintiff. This may include evidence of significant advertising expenditures, consumer surveys, or any other evidence you find relevant.

Second, you should consider whether the trademark is arbitrary, suggestive, or descriptive. Arbitrary trademarks are the strongest trademarks, while descriptive trademarks are the weakest. Suggestive trademarks fall in the middle.

Arbitrary Marks. Arbitrary trademarks involve the arbitrary, fanciful or fictitious use of a word or phrase or symbol to designate the source of a product. Such a trademark is a word or symbol that in no way describes or has any relevance to the particular product it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words that are applied in a fanciful, fictitious or unfamiliar way, solely to function as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

Suggestive Marks. The next category is suggestive marks. These trademarks are

---

[78] *Ford Motor Co. v. O.E. Wheel Distributors, LLC*, Case No. 8:09-cv-2137-T-30TBM, 868 F. Supp. 2d 1350, 2012 WL 1231877, *6 (M.D. Fla. April 12, 2012).

also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the product is or to its components, quality, or characteristics, suggestive trademarks suggest some characteristic or quality of the product to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

Descriptive Marks. The third category is descriptive trademarks. These marks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.[79]

---

[79] Ninth Circuit Model Jury Instruction 15.17 (2007); *Fortune Dynamic v. Victoria's Secret Stores Brand*, 618 F.3d 1025, 1032-35 (9th Cir. 2010).

[Plaintiff's proposed instruction on inducing trademark infringement:

**Inducing Infringement**

Liability for trademark infringement may extend beyond those who actually commit the infringement under certain circumstances.

1. If the Defendant intentionally induced another to infringe a trademark, he is also liable for that infringement;

2. If the Defendant continued to supply his product to a third party whom he knew or had to know (from being willfully blind) was engaging in trademark infringement, the Defendant is also liable for that infringement; and

3. If the Defendant had direct control and monitoring of the instrumentality used by a third party to infringe a trademark, and knew or should have known that the third party would so use the instrumentality, he is also liable for that infringement.[80]]

---

[80] ABA Model Jury Instruction 2.4.5 (2008).

[Plaintiff's proposed instruction on vicarious trademark infringement:

**Vicarious Infringement**

A defendant who himself committed no wrongful act is liable for another person's trademark infringement under the following circumstances:

1. The Defendant is liable for trademark infringement by another person or company where the two have an actual or apparent partnership and have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.[81]

2. The Defendant is liable for trademark infringement by CDI if he actively and knowingly caused the infringement.[82]]

---

[81] ABA Model Jury Instruction 2.4.6 (2008).

[82] *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477-78 (11th Cir. 1991).

[Plaintiff's proposed instruction on liability for the infringement of CDI:

**Liability for the Infringement of Consolidated Distributors**

Plaintiff also contends that Defendant should be held liable for any infringement by Consolidated Distributors for an additional reason.

Plaintiff claims that Consolidated Distributors was a mere instrument or tool – what the law calls the alter ego – of the Defendant so that the separate status of Consolidated Distributors should be disregarded and the Defendant should be held legally responsible for the acts of Consolidated Distributors.

Under our free enterprise economic system, the law permits, even encourages, the formation of corporations as a means of attracting investments by stockholders who can invest their money in the corporate enterprise without risking individual liability for corporate acts and transactions. In return, society gets the benefit of the jobs and other commercial activity generated by the business of the corporation. In most cases, therefore, the status of a corporation as a separate legal entity apart from its owners must be respected and preserved.

This rule is not absolute, however, and the separate status of a corporation can be disregarded where a stockholder uses a corporation as a mere instrumentality or tool for the purpose of evading or violating a statutory or other legal duty, or for accomplishing some fraud or illegal purpose.

In deciding whether Consolidate Distributors should be treated in this case as the alter ego of the Defendant, you should consider:

1. The purpose for which Defendant formed Consolidated Distributors;

2. The absence of formalities, i.e., the issuance of stock, the election and regular meetings of directors, and the keeping of corporate records

3. Whether the funds of the corporation were intermingled or not intermingled with the funds of Defendant;

4. Whether Consolidated Distributors was inadequately capitalized;

5. Whether Consolidated Distributors shared common office space, address, and telephone numbers with Defendant

6. The activity or inactivity of others as officers or directors in the business affairs of the corporation; and

7. Any other factors disclosed by the evidence and tending to show that Consolidated Distributors was or was not operated as an entity separate and apart from Defendant.[83]]

[83] Eleventh Circuit Pattern Jury Instruction 1.10.5.1; *Peery v. United Capital Corp.*, 84 A.D.3d 1201, 1202, 924 N.Y.S.2d 470, 472-73 (N.Y. App. 2011).

[Plaintiff's proposed instruction on the defense of prior use:

**Defenses — Prior Use**

The Defendant contends that he is not liable to Plaintiff for infringement because Joe Cool began using the 3DL design before Plaintiff's first use of the M Claw Trademark. This is known as prior use or priority. The Defendant has the burden of proving priority by a preponderance of the evidence. In order to establish the defense of priority, the Defendant must show all of the following:

1) that Joe Cool first used the 3DL design before Monster Energy began using the M Claw trademark

2) that Joe Cool continuously used the 3DL design without significant interruption from before Monster Energy's first use of the M Claw Trademark

3) that Joe Cool's prior continuous use of the 3DL design was a trademark use, meaning that the 3DL design was used by Defendants as an identifier of the source of Defendants' goods, and not merely as a decoration or ornamentation.[84]

---

[84] *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 623 (6th Cir. 1998); *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998); *In re Dimitri's Inc.*, 9 U.S.P.Q.2d. (BNA) 1666, 1667 (T.T.A.B. 1988).

[Defendant's proposed instruction on the defense of prior use:

**Defenses — Prior Use**

The Defendant contends that he is not liable to Plaintiff for infringement because Joe Cool began using the 3DL design before Plaintiff's first use of the M Claw Trademark. This is known as prior use or priority. The Defendant has the burden of proving priority by a preponderance of the evidence. In order to establish the defense of priority, the Defendant must show all of the following:

1) that Joe Cool first used the 3DL design before Monster Energy began using the M Claw trademark

2) that Joe Cool continuously used the 3DL design without significant interruption from before Monster Energy's first use of the M Claw Trademark.]

[Plaintiff objects to Defendant's proposed instruction because it excludes the requirement that to be effective any prior use must be a trademark use.]

[Plaintiff's proposed instruction on prior use - sufficiency of evidence:

**Prior Use – Sufficiency of Evidence**

The mere assertion by a witness, unsupported by any documents or other evidence, that the witness made prior use of a trademark, is insufficient to establish the defense of prior use.[85]]

---

[85] *World Triathlon Corp. v. Dunbar*, No. Civ. 05-00351JMS/KSC, 2006 WL 897586, at *4 (D. Haw. 2006).

[Plaintiff's proposed instruction on prior use - tacking:

**Prior Use – Tacking**

The Defendant contends that even if Joe Cool did not use the 3DL design before Monster Energy began using its M Claw Trademark, the Defendant is still entitled to priority based upon Joe Cool's earlier use of a different trademark. The Defendant may rely upon Joe Cool's earlier use of a different mark only if it is virtually identical to the 3DL design.[86] To satisfy this requirement, the two trademarks must create the same, continuing commercial impression and be indistinguishable from each other.[87] If you determine that Defendants have satisfied this requirement, you then still must consider whether the Defendant has proven each of the three requirements for priority with respect to the earlier trademark.]

[86] *One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1161 (9th Cir. 2009).

[87] *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047-48 (9th Cir. 1999).

[Defendant's proposed instruction on prior use - tacking:

**Prior Use – Tacking**

The Defendant contends that even if Joe Cool did not use the 3DL design before Monster Energy began using its M Claw Trademark, the Defendant is still entitled to priority based upon Joe Cool's earlier use of a different 3Dl design called the 3DL Myrtle Beach design. The Defendant may rely upon Joe Cool's earlier use of a different mark only if it is virtually identical to the 3DL design alleged to infringe.[88] To satisfy this requirement, the two designs must create the same, continuing commercial impression. Because of business decisions and changing advertising schemes, a party's mark may undergo changes over time. Such changes may occur without a party losing its priority in the mark if the change is done in such a way that the continuing common element of the mark retains its impact and symbolizes a continuing commercial impression. The test is one of continuity.[89] If you determine that Defendant **has** satisfied this requirement, you then still must consider whether the Defendant has proven each of the three requirements for priority with respect to the earlier trademark.]

[Plaintiff objects to Defendant's proposed instruction because it is an incorrect statement of the law. Plaintiff further objects to the use of the designation "3DL Myrtle Beach design" as highly prejudicial in that it gives the impression that the Myrtle Beach design is somehow related to the 3DL design.]

---

[88] *One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1161 (9th Cir. 2009).

[89] 3 McCarthy on Trademarks, at §17:25; § 17:26; *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047-48 (9th Cir. 1999).

[Plaintiff's proposed instruction on the effect of prior use defense:

**Effect of Prior Use Defense**

If the Defendant prevails in proving prior use, you must decide in which geographic regions of the country the Defendant used the 3DL design continuously before Monster Energy began using the M Claw Trademark. The Defendant is entitled to priority of trademark rights only in those geographic areas in which its use predates that of Monster Energy.[90]]

[90] *Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010); *Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512 (C.C.P.A. 1980); 5 J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 26:53 (4th ed. 2012); 3 J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 20.84 (4th ed. 2012).

[Defendant's proposed instruction on the effect of prior use defense:

**Effect of Prior Use Defense**

If the Defendant prevails in proving prior use, you must decide in which geographic regions of the country the Defendant used the 3DL design continuously before Monster Energy began using the M Claw Trademark. The Defendant is entitled to priority of trademark rights in all geographic areas in which the prior use predates that of Monster Energy.[91]

[Plaintiff objects to Defendant's proposed instruction because it is an incorrect statement of the law to the extent it suggests that priority is established in all geographic areas, as opposed to only those specific areas in which there was prior use.]

[91] *Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010); *Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512 (C.C.P.A. 1980); 5 J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 26:53 (4th ed. 2012); 3 J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 20.84 (4th ed. 2012).

## Damages and Monetary Relief

### Entitlement to Recover Defendant's Profits

If Plaintiff proves infringement, Plaintiff is entitled to recover any of the Defendant's profits that are attributable to the infringement, which Plaintiff must prove by a preponderance of the evidence.[92]

### Calculation of Defendant's Profits

In determining the amount of the Defendant's profits to be awarded, Plaintiff has the initial burden of proving, by a preponderance of the evidence, the Defendant's gross sales revenue resulting from the infringement.

The Defendant then has the burden of proving, by a preponderance of the evidence, the amount of expenses that should be deducted from gross sales revenue to determine profit, and any portion of his profit he alleges is attributable to factors other than use of the infringing trademark.

Unless you find that the Defendant proved that a portion of the profit from the sale of the products using the infringing trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.[93]

### Intentional Infringement

If you find that the Defendant infringed Plaintiff's trademark, you must also determine whether the Defendant intentionally or willfully used the trademark to trade on the goodwill and/or reputation of Plaintiff.[94]

### Statutory Trademark Damages

If you find that the Defendant infringed Monster Energy's M Claw Trademark, you must determine if Monster Energy can recover statutory damages against the Defendant, and, if so, the amount of those statutory damages.

To recover statutory damages, Monster Energy must prove 1) that the Defendant's alleged 3DL design is a counterfeit of Monster Energy's M Claw Trademark, and 2) that consumers were actually confused or deceived as a result of the

---

[92] ABA Model Jury Instruction 2.8.4 (2008).

[93] ABA Model Jury Instruction 2.8.6 (2008).

[94] ABA Model Jury Instruction 2.8.5 (2008).

Defendant's conduct.[95] Under the law, a design is counterfeit when it is identical to or substantially indistinguishable from the Plaintiff's mark.[96]

The law permits recovery of only one award of statutory damages for each trademark infringed for each type of goods or services sold. This means that the statutory award cannot be multiplied by the number of counterfeit items that were sold or offered for sale.[97]

If you find that Monster Energy is entitled to statutory damages, you must further determine whether the Defendant's infringement was willful. Willful infringement under the law requires proof that a defendant acted voluntarily and intentionally and with the specific intent to commit the act. If you find that the Defendant's infringement was not willful, you must award statutory damages between $1,000 and $200,000 per type of goods sold. If you find that the Defendant's infringement was willful, you can award statutory damages up to $2,000,000 per type of goods sold.[98]

---

[95] 15 U.S.C. § 1117(c).

[96] 15 U.S.C. §§ 1116(d)(1)(B), 1127.

[97] 15 U.S.C. § 1117(c).

[98] 15 U.S.C. § 1117(c).

**Trademark Dilution**

**Elements of Trademark Dilution Claim**

In this case, Plaintiff Monster Energy also contends that the Defendant has diluted Plaintiff's M Claw trademark. "Dilution" means a lessening of the capacity of a famous mark to identify and distinguish goods, regardless of the presence or absence of competition, actual or likely confusion, mistake, deception, or economic injury.

To prove this claim, Plaintiff Monster Energy has the burden of proving by a preponderance of evidence the following elements:

1. that Plaintiff is the owner of a trademark that is famous;

2. that the famous mark is distinctive, either inherently or through acquired distinctiveness;

3. that the Defendant is making or has made use in commerce of an identical or nearly identical trademark or trade name;

4. that the Defendant's use began after Plaintiff's mark became famous; and

5. that use of the Defendant's alleged mark is likely to cause dilution by blurring or tarnishment of Plaintiff's mark.[99]

**Fame of Plaintiff's Mark**

A trademark is famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the goods of the trademark's owner. In determining whether plaintiff's mark is famous, you may consider several factors I will describe for you in a moment. These factors are only suggestions and may not constitute all of the possible types of evidence indicating whether a mark is famous. The presence or absence of any one particular factor on this list should not necessarily determine whether a mark is famous. You should consider all the relevant evidence in making your determination. The factors you should consider are:

1. the duration, extent and geographic reach of advertising and publicity of the trademark, whether advertised or publicized by the owner or third parties;

2. the amount, volume and geographic extent of sales of goods offered under the mark;

3. the extent of actual recognition of the trademark; and

4. whether the mark was federally registered.[100]

---

[99] ABA Model Jury Instruction 2.6.1 (2008).

**Standard Required for Fame**

To be “famous,” Plaintiff’s mark must have been truly prominent and renowned at the time of the Defendant’s first commercial use of the accused design. The mark must have become very widely recognized by the consuming public as the designator of Plaintiff’s goods and must have such significant consumer associations that even uses of marks on non-competing goods can affect the mark’s value.[101]

**Dilution by “Blurring” or “Tarnishment”**

Dilution by blurring is an association arising from the similarity between the Defendant’s trademark and the Plaintiff’s famous trademark that impairs the distinctiveness of the famous trademark. Dilution by tarnishment is an association arising from the similarity between the Defendant’s alleged design and Plaintiff’s famous trademark that harms the reputation of the famous trademark. In determining whether a trademark is likely to cause dilution by blurring or by tarnishment, you may consider all relevant factors, including the following:

1. the degree of similarity between the Defendant’s alleged design and the famous trademark;

2. the degree of inherent or acquired distinctiveness of the famous trademark;

3. the extent to which the owner of the famous trademark is engaging in substantially exclusive use of the trademark;

4. the degree of recognition of the famous mark;

5. whether the Defendant intended to create an association with the famous trademark; and

6. any actual association between the Defendant’s alleged design and the famous trademark.[102]

---

[100] ABA Model Jury Instruction 2.6.2 (2008).

[101] ABA Model Jury Instruction 2.6.3 (2008).

[102] ABA Model Jury Instruction 2.6.4 (2008).

## Damages and Monetary Relief for Dilution

### Willful Dilution Required for Damages

To recover monetary relief for trademark dilution by blurring, Plaintiff bears the further burden of proving by a preponderance of the evidence that the Defendant willfully intended to trade on the recognition of the famous trademark.

To recover monetary relief for trademark dilution by tarnishment, Plaintiff Monster Energy bears the burden of proving by a preponderance of the evidence that the Defendant willfully intended to harm the reputation of the famous trademark.

You should award monetary relief to Plaintiff for its dilution claim only if you find such willful dilution.[103]

### Entitlement to Recover Defendant's Profits

If Plaintiff proves willful dilution, Plaintiff is entitled to recover any of the Defendant's profits that are attributable to the dilution, which Plaintiff must prove by a preponderance of the evidence.[104]

### Calculation of Defendant's Profits

In determining the amount of the Defendant's profits to be awarded, Plaintiff has the initial burden of proving, by a preponderance of the evidence, the Defendant's gross sales revenue resulting from the dilution.

The Defendant then has the burden of proving, by a preponderance of the evidence, the amount of expenses that should be deducted from gross sales revenue to determine profit, and any portion of his profit he alleges is attributable to factors other than use of the diluting trademark.

Unless you find that the Defendant proved that a portion of the profit from the sale of the products using the diluting trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the dilution.[105]

---

[103] ABA Model Jury Instruction 2.6.8 (2008).

[104] ABA Model Jury Instruction 2.8.4 (2008); 15 U.S.C. § 1125(c).

[105] ABA Model Jury Instruction 2.8.6 (2008); 15 U.S.C. § 1125(c).

**Federal False Designation of Origin under 15 U.S.C. § 1125(a)**

To prevail on a claim of false designation of origin, Plaintiff Monster Energy must show, by a preponderance of the evidence, that:

1. Plaintiff is the owner of a valid mark through priority of use in commerce (in the case of an inherently distinctive mark), or through acquisition of secondary meaning (in the case of a descriptive mark); and

2. The Defendant's subsequent use in commerce, on or in connection with goods or services, of a word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of defendant with plaintiff, or as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person.

The term "origin," as used here, is not restricted to its geographical meaning, but rather, includes a representation regarding the origination of the product, such as from a particular manufacturer or seller.

It is not necessary that the design used by the Defendant be an exact copy of Plaintiff's mark. Rather, Plaintiff Monster Energy must demonstrate that, when viewed in its entirety, the Defendant's use of the 3DL design is likely to cause confusion in the minds of reasonably prudent purchasers or other relevant members of the public as to the source, origin, sponsorship or approval of the product in question, or as to affiliation, connection or sponsorship.[106]

[106] ABA Model Jury Instruction 2.4.3 (2008).

**Florida Common Law Unfair Competition** [107]

To prevail on a claim of unfair competition under Florida common law Plaintiff Monster Energy much show, by a preponderance of the evidence:

1) deceptive or fraudulent conduct of the Defendant; and

(2) likelihood of consumer confusion

An award of punitive damages is appropriate if you find that the Defendant's unfair competition was willful, wanton, or reckless.[108]

**Punitive Damages — In General**

Monster Energy also claims that the acts of Unfair Competition by the Defendant were done with malice or reckless indifference to its rights so as to entitle Monster Energy to an award of punitive damages in addition to compensatory damages.

If you find for Monster Energy, and if you further find that the Defendant did act with malice or reckless indifference to its rights, the law would allow you, in your discretion, to assess punitive damages against the Defendant as punishment and as a deterrent to others.

When assessing punitive damages, you must be mindful that punitive damages are meant to punish the Defendant for the specific conduct that harmed the Plaintiff in the case and for only that conduct.

For example, you cannot assess punitive damages for the Defendant being a distasteful individual. Punitive damages are meant to punish the Defendant for this conduct only and not for conduct that occurred at another time. Your only task is to punish the Defendant for the actions they took in this particular case.

If you find that punitive damages should be assessed against the Defendant, you may consider the financial resources of the Defendant in fixing the amount of such damages.[109]

---

[107] *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1252, 1267 (S.D. Fla. 2002)

[108] Fla. Stat. Ann. § 768.72

[109] Eleventh Circuit Pattern Jury Instructions, Supplemental Damages Instruction 2.1 (2005).

[Defendant's proposed instruction on duty to mitigate:

**Duty To Mitigate — In General**

You are instructed that any party who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages - - that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So, if you should find from a preponderance of the evidence that Monster Energy failed to seek out or take advantage of a business opportunity that was reasonably available to it under all the circumstances shown by the evidence, then you should reduce the amount of Monster Energy's damages by the amount that could have been reasonably realized if the non-mitigating party had taken advantage of such opportunity.[94]]

[Plaintiff objects to Defendant' proposed instruction because the duty to mitigate is not applicable to trademark and copyright infringement claims. The duty to mitigate is also not applicable to claims for statutory damages or disgorgement of profits, the only two remedies MEC seeks.]

[94] Eleventh Circuit Pattern Jury Instructions, Supplemental Damages Instruction 1.1 (2005).

[Defendant’s proposed instruction on spoliation:

**Defendant’s Proposed Spoliation Charge**

Defendant contends that MEC at one time possessed art work, heat transfers and t-shirts dating from the 1990’s that bore the 3DL marks and would have established the continuous use in commerce of the 3DL Myrtle Beach mark since that time. Defendant argues that these documents and things would support Baksht’s claim of prior use by Joe Cool of the 3DL Myrlte Beach design, and were previously in the possession of an assignor of the 3DL marks, Joe Cool, Inc. You may assume that such evidence would have been unfavorable to MEC only if you find by a preponderance of the evidence that:

(1) MEC intentionally caused the evidence to be destroyed; and

(2) MEC caused the evidence to be destroyed in bad faith.

Bad faith is when a party purposely loses or destroys or causes to be lost or destroyed relevant evidence.

[Plaintiff objects to Defendant’ proposed instruction because the Court has already found that there is no evidence of bad faith. *See* D.I. 228 at 44. Moreover, the instruction presupposes that evidence existed, which has not been shown by any proof. In the Eleventh Circuit, “an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith.” *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (per curiam) (emphasis added); *Mann v. Taser Int’l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009). Accordingly, the instruction is highly prejudicial to MEC and legally and factually erroneous. Finally, Plaintiff objects to the use of the phrase the 3DL Myrtle Beach mark as prejudicial.]

**Consideration Of The Evidence — Duty To Follow Instructions — Corporate Party Involved**

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence - - that is, the testimony of the witnesses and the exhibits I have admitted in the record - - but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.[110]

**Credibility Of Witnesses**

Now, in saying that you must <u>consider</u> all of the evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the

---

[110] Eleventh Circuit Pattern Jury Instructions, Basic Instruction 2.2 (2005).

questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?[111]

**Impeachment Of Witnesses — Inconsistent Statement**

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.[112]

**Burden Of Proof**

In this case each party asserting a claim or a defense has the responsibility to prove every essential part of the claim or defense by a “preponderance of the evidence.” This is sometimes called the “burden of proof” or the “burden of persuasion.”

A “preponderance of the evidence” simply means an amount of evidence that is enough to persuade you that a claim or contention is more likely true than not true.

When more than one claim is involved, and when more than one defense is asserted, you should consider each claim and each defense separately; but in deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence you should find against the party making that claim or contention.[113]

**Duty To Deliberate**

---

[111] Eleventh Circuit Pattern Jury Instructions, Basic Instruction 3 (2005).

[112] Eleventh Circuit Pattern Jury Instructions, Basic Instruction 4.1 (2005).

[113] Eleventh Circuit Pattern Jury Instructions, Basic Instruction 6.2 (2005).

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges - - judges of the facts. Your only interest is to seek the truth from the evidence in the case.[114]

**Election Of Foreperson — Explanation Of Verdict Form(s)**

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

[Explain verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.[115]

14791763
020513

[114] Eleventh Circuit Pattern Jury Instructions, Basic Instruction 7.2 (2005).

[115] Eleventh Circuit Pattern Jury Instructions, Basic Instruction 8 (2005).